```
 1              IN THE UNITED STATES DISTRICT COURT

 2              FOR THE EASTERN DISTRICT OF TEXAS

 3                       MARSHALL DIVISION

 4   BARCO, INC., ET AL.,          )(

 5        PLAINTIFFS,              )(   CIVIL ACTION NO.

 6                                 )(   2:23-CV-521-JRG-RSP

 7   VS.                           )(   MARSHALL, TEXAS

 8   YEALINK (USA) NETWORK         )(

 9   TECHNOLOGY CO., LTD., ET AL., )(   NOVEMBER 15, 2024

10        DEFENDANTS.              )(   9:01 A.M.

11                        MOTION HEARING

12              BEFORE THE HONORABLE ROY S. PAYNE

13              UNITED STATES MAGISTRATE JUDGE

14

15   FOR THE PLAINTIFFS:     Mr. Erik J. Halverson
                             K&L Gates LLP
16                           4 Embarcadero Center
                             Suite 1200
17                           San Francisco, CA 94111

18                           Mr. Tom Gorham
                             Gillam & Smith LLP
19                           102 N. College
                             Suite 800
20                           Tyler, TX 75702

21   FOR THE DEFENDANTS:     Mr. Stephen Yang
                             Dentons US LLP
22                           1221 Avenue of the Americas
                             New York, NY 10020

23
                             Mr. Forrest Gothia
24                           Dentons US LLP
                             100 Crescent Court
25                           Suite 900
                             Dallas, TX 75201
```

```
 1   COURT REPORTER:            Ms. Shelly Holmes, CSR, TCRR
                                Official Court Reporter
 2                              Honorable Robert W. Schroeder III
                                United States District Judge
 3                              Eastern District of Texas
                                Texarkana Division
 4                              500 North State Line Avenue
                                Texarkana, TX 75501
 5                              shelly_holmes@txed.uscourts.gov

 6   (Proceedings recorded by mechanical stenography, transcript
     produced on a CAT system.)
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | | |
|---|---|---|
| 09:01:38 | 1 | COURT SECURITY OFFICER:  All rise. |
| 09:01:42 | 2 | THE COURT:  Good morning.  Please be seated. |
| 09:01:55 | 3 | For the record, we're here for the motion hearing |
| 09:02:02 | 4 | in Barco, Inc. versus Yealink Network Technology, et al., |
| 09:02:08 | 5 | which is Case No. 2:23-521 on our docket. |
| 09:02:12 | 6 | Would counsel state their appearances for the |
| 09:02:15 | 7 | record? |
| 09:02:15 | 8 | MR. GORHAM:  Good morning, Your Honor.  Tom Gorham |
| 09:02:18 | 9 | on behalf of Barco.  With me here today is Erik Halverson. |
| 09:02:22 | 10 | Barco's ready to proceed, Your Honor. |
| 09:02:23 | 11 | THE COURT:  All right.  Thank you, Mr. Gorham. |
| 09:02:25 | 12 | MR. GOTHIA:  Good morning, Your Honor.  Forrest |
| 09:02:28 | 13 | Gothia with Dentons US for the Yealink Defendants.  With me |
| 09:02:31 | 14 | is my colleague, Stephen Yang, also of Dentons US.  We are |
| 09:02:35 | 15 | ready to proceed. |
| 09:02:36 | 16 | THE COURT:  All right.  Thank you, Mr. Gothia. |
| 09:02:37 | 17 | We're here on the Plaintiffs' motion, so I'll turn |
| 09:02:41 | 18 | it over first to Plaintiff. |
| 09:02:43 | 19 | MR. HALVERSON:  Good morning, Your Honor. |
| 09:02:43 | 20 | THE COURT:  Good morning. |
| 09:02:54 | 21 | MR. HALVERSON:  Barco filed its complaint almost a |
| 09:02:56 | 22 | year ago to the day, November 14th, 2023. |
| 09:03:00 | 23 | In its complaint, it alleges that certain Yealink |
| 09:03:04 | 24 | products infringe -- infringe at least Claim 1 of six |
| 09:03:08 | 25 | different U.S. patents.  Yealink filed its first answer |

09:03:12   1   approximately four months later, denying infringement of

09:03:16   2   all claims.

09:03:18   3         Yealink amended its answer, withdrawing all of

09:03:20   4   its counterclaims, in June -- on June 7th of this year,

09:03:25   5   and then filed a second amended answer on September 20th

09:03:28   6   of this year, admitting that it infringes Claim 1 but

09:03:32   7   denying that it infringes all other claims in the asserted

09:03:35   8   patents.

09:03:35   9         We're here today because Barco seeks basic

09:03:40   10  technical discovery into the development of the accused

09:03:44   11  products and the operation of the accused products.

09:03:46   12  Yealink has refused to provide that discovery.

09:03:48   13        The parties met and conferred in June and again in

09:03:53   14  August, and at each meet and confer, Yealink continues to

09:03:59   15  say documents are coming, information is coming, and at no

09:04:02   16  point in time has that information actually come.

09:04:04   17        THE COURT:  Mr. Halverson, is it your reading of

09:04:10   18  the second amended answer that it does deny infringement of

09:04:17   19  other claims of the asserted patents or just that it only

09:04:23   20  admits infringement of the one specified claim?

09:04:28   21        MR. HALVERSON:  There is a sentence at the end of

09:04:30   22  each paragraph in each count where Yealink says Yealink did

09:04:34   23  denies all other allegations.  And in the complaint, the

09:04:37   24  paragraphs that are being denied expressly say Barco

09:04:40   25  accuses Yealink of infringing at least Claim 1 of the XXX

09:04:45  1  patent.  And so my read of that answer is, Your Honor,

09:04:48  2  yes, they are denying infringement of all of the other

09:04:50  3  claims.

09:04:51  4      THE COURT:  And your infringement contentions

09:04:54  5  specifically call out other claims of each of the asserted

09:05:00  6  patents as infringed?

09:05:00  7      MR. HALVERSON:  That's correct, Your Honor, both

09:05:03  8  in the cover pleading, as well as the charts, there are

09:05:05  9  approximately a hundred or so claims that are expressly

09:05:08  10 accused of infringement in this case.

09:05:10  11     THE COURT:  What is your response to the argument

09:05:16  12 that your damages would be the same regardless of how many

09:05:21  13 claims of a patent are infringed, and, therefore, it's not

09:05:28  14 relevant?

09:05:29  15     MR. HALVERSON:  So there are some claims in the

09:05:31  16 case that involve multiple products.  There are some system

09:05:34  17 claims that implicate both the dongle that is accused of

09:05:39  18 infringement, the thing that plugs into the laptop, as well

09:05:42  19 as a base station that sits at the front of the room during

09:05:44  20 the presentation.  And so there are differences in the

09:05:48  21 scope of accused products across the different claims of

09:05:51  22 the different patents.

09:05:52  23     Now, I agree that damages -- you cannot collect

09:05:57  24 more damages for infringement of a dependent claim.

09:06:00  25 There's -- there's no doubt about that.

09:06:01  1     But I think what's perhaps missing from that

09:06:04  2  analysis is Barco has elected to challenge some claims in

09:06:10  3  an invalidity proceeding at the Patent Office, including

09:06:13  4  the claims it admits of infringement.  But it does not

09:06:16  5  challenge all of the claims of the asserted patents.

09:06:19  6     THE COURT:  So there -- what you're saying is that

09:06:22  7  all of the claims as to which it has expressly admitted

09:06:29  8  infringement in the second amended answer are being

09:06:32  9  challenged in the IPR?

09:06:35  10     MR. HALVERSON:  That's correct, Your Honor.

09:06:37  11     THE COURT:  All right.

09:06:37  12     MR. HALVERSON:  And there are other claims that

09:06:40  13  are expressly identified in the infringement contentions as

09:06:45  14  infringed and in those charts that are not being accused of

09:06:48  15  infringement -- or, excuse me, that are not being

09:06:51  16  challenged in those IPR proceedings.

09:06:54  17     THE COURT:  All right.  And tell me, are there

09:06:59  18  other products that Yealink makes that you believe

09:07:05  19  infringe?

09:07:06  20     MR. HALVERSON:  Beyond the ones that are

09:07:11  21  identified in the contentions?

09:07:12  22     THE COURT:  Beyond the two that are admitted in

09:07:17  23  the second amended answer.

09:07:18  24     MR. HALVERSON:  Yes, Your Honor, there are.  There

09:07:20  25  are other products in the contentions that are not admitted

| | | |
|---|---|---|
| 09:07:22 | 1 | to infringe in Yealink's second amended answer. |
| 09:07:26 | 2 | THE COURT:  All right.  And you have discussed |
| 09:07:29 | 3 | with Defense counsel getting technical discovery as to |
| 09:07:35 | 4 | those products? |
| 09:07:36 | 5 | MR. HALVERSON:  All of the products, yes, Your |
| 09:07:40 | 6 | Honor. |
| 09:07:40 | 7 | THE COURT:  All right.  I'm going to give the |
| 09:07:45 | 8 | Defendants a chance to address this general issue, but when |
| 09:07:49 | 9 | we get back to the motion itself, I'd like to approach it |
| 09:07:57 | 10 | as specifically as possible.  In other words, I'm going to |
| 09:08:03 | 11 | want you to identify an interrogatory that you believe is |
| 09:08:10 | 12 | not properly responded to and take that up so that we can |
| 09:08:16 | 13 | do as specific a resolution of these issues as possible. |
| 09:08:22 | 14 | But I want to hear from the Defense on this |
| 09:08:26 | 15 | general issue before we get into the specifics of your |
| 09:08:30 | 16 | motion. |
| 09:08:31 | 17 | So thank you, Mr. Halverson. |
| 09:08:32 | 18 | MR. HALVERSON:  Thank you, Your Honor. |
| 09:08:33 | 19 | MR. YANG:  Good morning, Your Honor. |
| 09:08:38 | 20 | Your Honor, this case is now a damages case. |
| 09:08:44 | 21 | Defendants have been trying to streamline and simplify this |
| 09:08:48 | 22 | case by admitting infringement to all six of the asserted |
| 09:08:53 | 23 | patents.  Not only have they admitted infringement, they |
| 09:08:56 | 24 | removed the infringement product from the U.S. market and |
| 09:09:01 | 25 | recalled everything. |

09:09:02  1       THE COURT:  Is it your intent to admit

09:09:06  2  infringement of all asserted claims?

09:09:10  3       MR. YANG:  Your Honor, I want to address that real

09:09:12  4  quickly.  First of all, we admitted what was in the

09:09:15  5  operative complaint, and that complaint only has Claim 1.

09:09:20  6       As for all the claims in the -- in the

09:09:23  7  contentions, I want to note a few things.  First of all,

09:09:27  8  it's not necessary that Defendants admit to every single

09:09:33  9  one of those 109, I think, claims because they really have

09:09:36  10  no effect on damages.  Damages do not change --

09:09:42  11       THE COURT:  Well, I can tell you that you're not

09:09:44  12  going to get anywhere with admitting only infringement of

09:09:51  13  claims that you're contending are invalid and not admitting

09:09:57  14  infringement of claims to which you don't have an

09:10:02  15  invalidity defense.  I do not accept that as mooting the

09:10:09  16  liability issue.

09:10:09  17       MR. YANG:  I understand.  In this case, however,

09:10:11  18  we actually do not have an invalidity defense based on

09:10:16  19  prior art -- based on 102/103.

09:10:19  20       Now, Barco mentioned the IPR proceeding.  That is

09:10:22  21  a different proceeding before a different tribunal on a

09:10:26  22  different schedule.

09:10:27  23       In this case, we -- we are exploring potentially

09:10:30  24  some claim construction issues, but we actually do not

09:10:34  25  intend to present a full invalidity challenge.

09:10:37  1    THE COURT:  I understand that.  But it doesn't

09:10:39  2  matter to me which forum invalidity is being asserted in.

09:10:45  3  It's just that it shows that there is relevance to the

09:10:51  4  discovery in support of infringement of other claims.

09:10:56  5    Your argument that the discovery about technical

09:11:04  6  documentation of -- is irrelevant is belied by the fact

09:11:13  7  that if the claims that you have admitted infringement of

09:11:19  8  are invalidated, then that the question of infringement of

09:11:27  9  the other asserted claims becomes front and center.

09:11:31  10    MR. YANG:  I understand that, Your Honor.  And I

09:11:34  11  think in that case, we're looking at a speculation because

09:11:38  12  we do not know how the PTAB will rule.

09:11:40  13    And in this case, we have trial in September.  We

09:11:44  14  will not know how the PTAB will rule.  So if we want

09:11:48  15  clarity, and I absolutely see where the Court is coming

09:11:51  16  from, maybe the thing to do is we can stay the case until

09:11:55  17  there is resolution from the PTAB so we don't waste a lot

09:12:00  18  resources, a lot of time from the parties, from the Court,

09:12:04  19  and from the jury on this really full-blown international

09:12:08  20  discovery that may or may not be relevant, because come

09:12:12  21  September, Your Honor, we will be in front of this Court,

09:12:15  22  we will have a jury, and the jury instructions will be

09:12:19  23  you're here to hear evidence -- technical evidence on all

09:12:22  24  these dependent claims, but at the same time, Defendants

09:12:26  25  have admitted infringement to each of the asserted patents.

09:12:32  1    Your Honor, I'm not sure how that's going to work

09:12:34  2  out.  And at that time in September, we will not have a

09:12:37  3  resolution from the PTAB.

09:12:40  4    THE COURT:  You know, it -- I can tell you the way

09:12:42  5  it will work out.  The Plaintiff will have to decide which

09:12:44  6  claims they want to present to the jury, and if they only

09:12:49  7  present claims as to which there is a -- an IPR pending,

09:12:59  8  then that's their decision.

09:13:01  9    But -- so what -- what is confusing about that?

09:13:03  10    MR. YANG:  Because, Your Honor, we've already

09:13:06  11  admitted to infringement of each of the patents-in-suit.

09:13:08  12  So really, the only question left is --

09:13:11  13    THE COURT:  You know, you don't infringe a patent.

09:13:13  14  You infringe a claim.  You've admitted to infringement of

09:13:17  15  certain claims and denied infringement of other claims.

09:13:21  16    So if all the Plaintiff wants to proceed on is the

09:13:27  17  claims that you have admitted infringement of, I agree, the

09:13:31  18  jury is not going to be asked to determine that.

09:13:37  19    But why should the Court limit them to those

09:13:41  20  claims at this stage?

09:13:41  21    MR. YANG:  So, Your Honor, I think procedurally, I

09:13:45  22  don't think we have denied that we infringe other claims.

09:13:49  23  We admit and deny what's in the complaint.  If Plaintiffs

09:13:53  24  want to amend their complaint, and this something I have

09:13:56  25  brought up before, I think they can, then we have something

09:13:59  1  that we can admit or deny.

09:14:01  2      THE COURT:  Their complaint accuses you of

09:14:05  3  infringing at least the designated claim.

09:14:06  4      What is your basis for asserting that those claims

09:14:14  5  are the only claims that they're entitled to go forward on?

09:14:18  6      MR. YANG:  I'm not saying that's the only claim

09:14:22  7  they're entitled to go forward on.  I think, Your Honor,

09:14:24  8  again, we're trying to streamline the case by taking

09:14:28  9  liability out of play.

09:14:29  10      THE COURT:  My impression at this stage is that

09:14:32  11  you're trying to prevent discovery into the technical

09:14:37  12  aspects of your products because if you really want to take

09:14:42  13  the technical discovery off the board, then admit

09:14:49  14  infringement of all of the asserted claims, and then I

09:14:53  15  agree with you that that greatly reduces the technical

09:15:01  16  discovery that they'd be entitled to.

09:15:02  17      MR. YANG:  Your Honor, if I may just have two more

09:15:05  18  points on that?

09:15:05  19      THE COURT:  All right.

09:15:06  20      MR. YANG:  All right.  So, first of all, we do not

09:15:09  21  think it has legal effect on damages.  But, second, we

09:15:13  22  don't know if that will really change everything because

09:15:17  23  Plaintiffs are also saying, well, we have willfulness in

09:15:20  24  the case, and because we have willfulness, we're also

09:15:22  25  entitled to the full discovery of all of our research and

09:15:26    1  development documents, of all of our technical documents.

09:15:29    2  We do not agree with that.

09:15:31    3        And the third point, Your Honor, Plaintiffs are

09:15:35    4  already using our admission in the case they filed in

09:15:38    5  Europe about two weeks after we admitted infringement here.

09:15:43    6  They filed a case in Brussels.  In the complaint, they're

09:15:46    7  using our admission to further that case in mentioning that

09:15:50    8  Yealink has admitted to infringing U.S. patents.

09:15:55    9        THE COURT:  What's wrong with that?

09:15:56   10        MR. YANG:  Well, again, if we are to admit to all

09:15:58   11  claims, which, again, I don't think makes a difference on

09:16:01   12  damages, we're concerned because we don't know how that

09:16:03   13  will be used in the European proceeding.

09:16:07   14        THE COURT:  I understand that.  And I'm certainly

09:16:10   15  not saying that you have any obligation to admit

09:16:13   16  infringement at all.  But if you want to prevent technical

09:16:17   17  discovery, then you have to really make it irrelevant.  And

09:16:24   18  a partial admission or an admission of infringement of only

09:16:28   19  certain of the asserted claims doesn't get you there.

09:16:35   20        MR. YANG:  So, Your Honor, we actually did not

09:16:37   21  challenge all of the asserted claims in the IP -- well, all

09:16:42   22  patents in the IPRs were challenged for.

09:16:44   23        So my question now is, okay, well, let's say

09:16:48   24  tomorrow somebody else challenges in the PTAB or elsewhere

09:16:51   25  the remaining two patents, are we going to be held liable

| | | |
|---|---|---|
| 09:16:58 | 1 | just because now Barco has the possibility of losing those |
| 09:17:02 | 2 | claims to invalidity? |
| 09:17:03 | 3 | The point, Your Honor, is we're here.  We want to |
| 09:17:06 | 4 | move on.  We want to give them the discovery they need for |
| 09:17:09 | 5 | damages for willfulness.  And now what they're arguing, I |
| 09:17:14 | 6 | think, is there is this possibility that they may lose some |
| 09:17:19 | 7 | of the patents to invalidity in a different proceeding. |
| 09:17:24 | 8 | But in this case, Your Honor, we believe that does |
| 09:17:27 | 9 | not matter because we're here.  This is now a damages case. |
| 09:17:33 | 10 | We're here because we have admitted infringement.  We want |
| 09:17:36 | 11 | to move on -- |
| 09:17:36 | 12 | THE COURT:  Mr. Yang, you keep saying this is now |
| 09:17:39 | 13 | a damages case.  You're not hearing me.  This is not just a |
| 09:17:43 | 14 | damages case.  That's done. |
| 09:17:43 | 15 | MR. YANG:  Okay. |
| 09:17:46 | 16 | THE COURT:  Until you get to the Federal Circuit, |
| 09:17:49 | 17 | that -- this is not just a damages case. |
| 09:17:51 | 18 | So go ahead. |
| 09:17:53 | 19 | MR. YANG:  Well, I understand. |
| 09:17:56 | 20 | One thing I also -- one last thing I wanted to |
| 09:18:00 | 21 | note is Plaintiffs do agree that the only issue left really |
| 09:18:02 | 22 | is damages at this point. |
| 09:18:04 | 23 | THE COURT:  Who agrees? |
| 09:18:05 | 24 | MR. YANG:  The Plaintiffs agree.  We have an email |
| 09:18:08 | 25 | from them, Your Honor, less than 48 hours ago where they |

09:18:12 | 1 | said -- they reiterate their belief that this case should

09:18:15 | 2 | be resolvable without extended litigation.

09:18:18 | 3 | They also say that given Yealink's admission of

09:18:21 | 4 | infringement and withdrawal of the accused products from

09:18:25 | 5 | the market, coupled with the closed universe of damages and

09:18:29 | 6 | established license practice for the asserted patent family

09:18:32 | 7 | suggests all that is left for the Court to decide is

09:18:38 | 8 | damages.

09:18:38 | 9 | So, Your Honor, I think there's agreement here

09:18:42 | 10 | that there is a way to streamline this case.  And, again,

09:18:45 | 11 | there is no more infringement going on because the products

09:18:49 | 12 | are out of the market.

09:18:50 | 13 | THE COURT:  If there is an agreement here, then

09:18:54 | 14 | why am I hearing a dispute?

09:18:55 | 15 | MR. YANG:  Your Honor, I thought when they sent us

09:18:59 | 16 | this email, they would agree, and, Your Honor, I must admit

09:19:03 | 17 | I'm a little confused, too, as to why we're here on a

09:19:07 | 18 | motion to compel.  It seems that the parties agree at this

09:19:10 | 19 | point, this is a simple case, and all that is left to

09:19:13 | 20 | decide is damages.

09:19:14 | 21 | THE COURT:  All right.  Do you have a copy of that

09:19:16 | 22 | email?

09:19:16 | 23 | MR. YANG:  I do, Your Honor.  If I may approach,

09:19:19 | 24 | I'm happy to hand a copy of --

09:19:20 | 25 | THE COURT:  You may.

09:19:37   1          MR. YANG:  Thank you.

09:20:20   2          THE COURT:  Well, I have an impression of what

09:20:27   3   this email is about, but I'll let the Plaintiff respond

09:20:31   4   first before I substitute my own interpretation.

09:20:36   5          Mr. Yang, I'm going to interrupt you to have them

09:20:42   6   respond to this November 13 email.

09:20:45   7          MR. YANG:  That's fine.  Thank you, Your Honor.

09:20:46   8          THE COURT:  Thank you, Mr. Yang.

09:20:49   9          MR. HALVERSON:  Your Honor, this email is an

09:20:58   10  effort to elicit settlement discussions.  Barco has

09:21:02   11  repeatedly tried to engage Yealink on settlement

09:21:05   12  discussions throughout the biggest portion of this case,

09:21:09   13  both before the complaint was filed and after the complaint

09:21:11   14  was filed.  And at no point in time has Yealink engaged at

09:21:15   15  all.  That is all this email is.

09:21:19   16         The motion that we're here to -- and I don't mean

09:21:22   17  to jump beyond the email.  I know that I was afforded just

09:21:26   18  this opportunity.

09:21:28   19         Is there further questions here, or can I go on?

09:21:30   20         THE COURT:  Mr. Halverson, that's my impression of

09:21:32   21  this email, as well, but I wanted to give you an

09:21:37   22  opportunity to interpret it before I did, but...

09:21:40   23         MR. HALVERSON:  And perhaps I should have put 408

09:21:43   24  on it, but I think the content of the email is clear what

09:21:45   25  it is attempting to convey to the other side.  And so for

09:21:49    1    that oversight, I apologize.  But I don't know that this is

09:21:52    2    a proper use of this email or discussion for the Court.

09:22:00    3         THE COURT:  All right.  Thank you, Mr. Halverson.

09:22:02    4         Mr. Yang, I don't see anything in this email that

09:22:06    5    says that you have taken technical discovery off the table

09:22:17    6    in terms of an issue.  This is, I would say, a request for

09:22:29    7    reopening settlement discussions.

09:22:30    8         MR. YANG:  Okay.  Your Honor, I -- you know, if

09:22:32    9    that is the request for settlement, I apologize.  I

09:22:35   10    obviously do not intend to use that in court.

09:22:38   11         The reason I brought that up, Your Honor,

09:22:40   12    because -- is because the email does say that they believe

09:22:43   13    that all that is left for the Court to decide is damages.

09:22:46   14    And we absolutely agree with that.

09:22:48   15         THE COURT:  They don't say that actually.

09:22:50   16         It says that it suggests all that is left for the

09:22:55   17    Court to decide is damages.  And the -- I think that is an

09:23:10   18    optimistic view of where we are.

09:23:12   19         If you are really saying that all that is left is

09:23:16   20    damages, then you're admitting that all the accused

09:23:21   21    products are infringing.

09:23:24   22         MR. YANG:  So, Your Honor, I think we have done

09:23:26   23    that.  Earlier, the Court mentioned how many accused

09:23:31   24    products are here in the case.

09:23:33   25         Now, the way the six patents -- the claims are --

09:23:38    1    two of the patents are directed to this what we call a

09:23:41    2    dongle, a wireless presentation pod.  And the other four

09:23:46    3    patents are related to a system where this pod -- this

09:23:49    4    presentation pod is a necessary component.

09:23:54    5         So Yealink has admitted infringement.  They have

09:23:58    6    removed this presentation pod that is central to infringing

09:24:01    7    all six patents out of the market.  And that's what we have

09:24:06    8    in the second amended answer.  We admitted, because this

09:24:10    9    presentation pod was in the U.S., that it infringed all six

09:24:16    10   patents.

09:24:16    11        So, Your Honor, there we have admitted that the

09:24:19    12   accused products -- or the accused systems, when they were

09:24:23    13   in the U.S., they have admitted -- they have infringed the

09:24:26    14   patents.

09:24:29    15        THE COURT:  It seems to me that the admission that

09:24:32    16   you're making is a very narrow admission that certain

09:24:37    17   products, when operated in certain ways, infringe certain

09:24:44    18   claims and that the -- I don't think the Plaintiffs are

09:24:52    19   required to narrow their case to the extent of the

09:24:56    20   admission that you've made in your second amended answer.

09:25:05    21   And so I am going to order that you respond with discovery

09:25:18    22   about the technical operation of the accused products and

09:25:23    23   about other products that operate in a similar fashion.

09:25:29    24        I haven't -- do you contend that there are no

09:25:32    25   other products that operate in a manner similarly to the

09:25:41    1    ones that -- the two products that are named in the

09:25:45    2    complaint?

09:25:47    3        MR. YANG:  Well, Your Honor, I want to be a little

09:25:49    4    careful with that.  I think I will have to go back and look

09:25:52    5    at the products a little more closely, but right now in the

09:25:55    6    contentions, those two are the main products.  And, of

09:25:59    7    course, those two are the main products in the complaint.

09:26:01    8        THE COURT:  Are those the only two products in the

09:26:04    9    contentions?  Obviously, I don't have the infringement

09:26:07    10   contentions in the record.  What I've got is the complaint.

09:26:11    11   But...

09:26:12    12       MR. YANG:  Your Honor, we have -- I believe we

09:26:14    13   have copies of the contentions, but in the contentions,

09:26:18    14   everything was revolved around the presentation pod.  But

09:26:22    15   they do name this video bar, this other product in the

09:26:24    16   complaint, and they do name, Your Honor, two other

09:26:28    17   products.  But the contentions themselves, most of the

09:26:31    18   contentions are on information and belief, but there are

09:26:34    19   some contentions that does mention the other products.

09:26:41    20   Again, I don't want to unfairly characterize what

09:26:42    21   Plaintiffs have.

09:26:43    22       THE COURT:  And have you conceded that the other

09:26:46    23   products that are named in the infringement contentions

09:26:52    24   also infringe the claims that you're conceding the two

09:26:57    25   products infringe?

09:26:58    1          MR. YANG:  We have not done that through the

09:27:02    2    second amended complaint, but I think that is something we

09:27:04    3    can certainly look into.  Again, these are system claims.

09:27:08    4    The system works when all the components are together.

09:27:12    5          So there are no claims directed to these other

09:27:17    6    products.  So specifically, it's when they're all together

09:27:19    7    in a videoconferencing system when the components are

09:27:23    8    there, then there's infringement of the claims.

09:27:28    9          And, Your Honor, if I may just add real quickly, I

09:27:34    10    understand where Plaintiffs are coming from.  I understand

09:27:35    11    where the Court is coming from.  There are other claims.

09:27:41    12    We do want clarity, I think, Your Honor, for everybody.  We

09:27:44    13    want to know what the scope of the case is.  And given that

09:27:49    14    there are no damages, we don't know, again, how the PTAB is

09:27:52    15    going to rule, and will not know before trial.

09:27:56    16          Your Honor, may I suggest then the parties can

09:27:58    17    stay the case until there is clarity instead of spending a

09:28:01    18    lot of resources, a lot of money, a lot of time on this

09:28:05    19    full-blown international discovery when there's a chance

09:28:10    20    all of this could be irrelevant?  There is no more

09:28:15    21    infringement going on at this point.

09:28:17    22          THE COURT:  How do I know that?

09:28:18    23          MR. YANG:  Because, again --

09:28:21    24          THE COURT:  You identified two products that

09:28:24    25    you've withdrawn from the U.S. market.

09:28:27    1         MR. YANG:  No, Your Honor.  Sorry, let me clarify.

09:28:30    2   These are system claims.  The claims are directed to the

09:28:38    3   system work, if and only if all components are working

09:28:42    4   together.  If Yealink sells all components, there's

09:28:47    5   infringement.  Yealink has taken a critical component, this

09:28:51    6   presentation pod, out of the case -- out of the U.S.

09:28:53    7   market.  They have recalled all remaining inventory as of

09:28:58    8   six months ago.  So there is no more system that infringes,

09:29:03    9   Your Honor, four of the six patents-in-suit.  And the other

09:29:05   10   two patents-in-suit are directed to this pod itself, which,

09:29:09   11   again, is no longer in the U.S. market.

09:29:12   12        Again, in that email, Plaintiffs also mentioned

09:29:17   13   this is a close universe of damages.  So there is no more,

09:29:23   14   at this point, infringement happening.  The damages,

09:29:27   15   whatever they may be, are closed.  They are frozen.  And

09:29:32   16   they will not change no matter, again, how many claims we

09:29:37   17   come back and we address.

09:29:44   18      THE COURT:  All right.  Well, I will hear from the

09:29:47   19   Plaintiff on whether they agree with you that your

09:29:51   20   withdrawal of those two products from the market ends the

09:29:58   21   possibility of infringement.

09:30:00   22      MR. YANG:  And, Your Honor, sorry, we withdrew one

09:30:03   23   product.  I just wanted to be absolutely clear with the

09:30:05   24   Court.  We withdrew one product.  But, again, because that

09:30:09   25   one product is withdrawn, the system is no longer there.

| | | |
|---|---|---|
| 09:30:11 | 1 | THE COURT: All right. And which is the product |
| 09:30:12 | 2 | you withdrew? |
| 09:30:13 | 3 | MR. YANG: It's called a WPP20 and a WPP30 |
| 09:30:20 | 4 | presentation pod. We actually have a copy of the Yealink |
| 09:30:25 | 5 | end of sale announcement if the Court would like to see, |
| 09:30:29 | 6 | but that is the dongle or the pod that is -- as counsel has |
| 09:30:35 | 7 | said, the piece that you plug into the computer. That is |
| 09:30:40 | 8 | out of the U.S. market, and that has been recalled. All |
| 09:30:43 | 9 | remaining inventory has been recalled. |
| 09:30:46 | 10 | THE COURT: All right. |
| 09:30:47 | 11 | MR. YANG: Thank you, Your Honor. |
| 09:30:49 | 12 | THE COURT: Thank you, Mr. Yang. |
| 09:30:51 | 13 | MR. HALVERSON: So some of the claims are system |
| 09:30:58 | 14 | claims. Some of the claims are product claims. Product |
| 09:31:01 | 15 | claims are directed towards this WPP20 and WPP30. Given |
| 09:31:06 | 16 | the representation that those two dongle products are no |
| 09:31:11 | 17 | longer offered for sale, the claims directed towards just |
| 09:31:13 | 18 | those products certainly cannot continue to be infringed in |
| 09:31:16 | 19 | the future by Yealink. |
| 09:31:18 | 20 | However, Yealink continues to sell the other |
| 09:31:21 | 21 | products that are identified in the infringement |
| 09:31:22 | 22 | contentions, the meeting bar, the presentation pod, and |
| 09:31:29 | 23 | there's -- there's another base station-type product I'm |
| 09:31:32 | 24 | forgetting the name of. But when Yealink sells those to |
| 09:31:36 | 25 | existing Yealink customers who have already purchased WPP20 |

09:31:40  1  and WPP30s, that's inducing those customers to create an

09:31:44  2  infringing system in the future.

09:31:46  3        So I don't know that I can agree that all Yealink

09:31:49  4  infringement has been foreclosed just because they've

09:31:52  5  withdrawn these couple of products from the market in the

09:31:54  6  U.S.

09:31:55  7        THE COURT:  And what is the status of the IPR, and

09:32:02  8  is it a single IPR that we're talking about?

09:32:04  9        MR. HALVERSON:  They filed four in September of

09:32:09  10  2024, 10 months after the complaint was filed.

09:32:13  11        THE COURT:  So they have not been instituted?

09:32:14  12        MR. HALVERSON:  They have not been instituted.

09:32:16  13  There have been no patent owner papers filed.  They are

09:32:19  14  still in their infancy.

09:32:22  15        THE COURT:  All right.  Clearly, we're not going

09:32:26  16  to stay the case for IPRs that have not even been

09:32:33  17  instituted.

09:32:33  18        All right.  What I'd like you to do now is to get

09:32:36  19  specific about the discovery that you contend has not been

09:32:47  20  provided.

09:32:57  21        MR. HALVERSON:  So I can do it out of the motion,

09:32:59  22  Your Honor, or I also have hard copies of the discovery

09:33:03  23  requests and responses in their entirety.  Do you have a

09:33:05  24  preference?

09:33:06  25        THE COURT:  I guess if you have hard copies

| | | |
|---|---|---|
| 09:33:09 | 1 | available here, that would be helpful. |
| 09:33:24 | 2 | MR. HALVERSON:  May I approach? |
| 09:33:25 | 3 | THE COURT:  Yes. |
| 09:33:25 | 4 | MR. HALVERSON:  So, Your Honor, what you've been |
| 09:33:34 | 5 | handed are Defendants' responses and objections to the 14 |
| 09:33:39 | 6 | interrogatories that have been filed in this case. |
| 09:33:42 | 7 | And so in our motion, we specifically identify 1, |
| 09:33:48 | 8 | 4, 7, 8, 11, 12, and 13.  And I think while we contend that |
| 09:33:56 | 9 | discovery into all of the interrogatories is proper, there |
| 09:34:00 | 10 | are obviously objections lodged and -- at its core, what |
| 09:34:05 | 11 | we're really getting at is what is in Interrogatory No. 8, |
| 09:34:11 | 12 | which is:  Describe in detail the research, design, and |
| 09:34:15 | 13 | development process undertaken by Yealink to develop each |
| 09:34:20 | 14 | accused product, including the dates over which that |
| 09:34:23 | 15 | happened and the source of information that was relied upon |
| 09:34:26 | 16 | in responding to this interrogatory. |
| 09:34:28 | 17 | Now, as part of that, all of the documents that |
| 09:34:32 | 18 | Yealink would look at to prepare that interrogatory should |
| 09:34:35 | 19 | be produced. |
| 09:34:37 | 20 | In the DCO in this case, Yealink agreed that it |
| 09:34:41 | 21 | would produce all relevant documents.  It has not done so. |
| 09:34:46 | 22 | And so we have a dichotomy between -- or not dichotomy, a |
| 09:34:51 | 23 | parallel between the interrogatories which warrant a |
| 09:34:55 | 24 | written response, as well as the document production that |
| 09:34:58 | 25 | is lacking in this case. |

09:35:00　1　　　　　THE COURT:  Now, a part of their response is that

09:35:06　2　the accused products were already on the market at the time

09:35:10　3　the asserted patents issued, and, therefore, the design and

09:35:18　4　development process is not relevant.

09:35:22　5　　　　　What is your response to that?

09:35:24　6　　　　　MR. HALVERSON:  So to the extent the design and

09:35:27　7　development process, the documents that Yealink created in

09:35:31　8　that process say this is Barco's product, we must copy

09:35:36　9　Barco's product, or anything remotely related to that, that

09:35:40　10　is highly relevant to the willful infringement allegations

09:35:43　11　that are at issue in this case.

09:35:44　12　　　　　THE COURT:  Of course, if that is what you're

09:35:49　13　after, then that is what you should request, not all

09:35:54　14　documents because there might be some subset of relevant

09:35:56　15　documents.

09:35:57　16　　　　　MR. HALVERSON:  So in addition to the bases tied

09:36:02　17　to willful infringement, the changes that were made to the

09:36:06　18　product as the product was developed is relevant to the

09:36:08　19　actual infringement analysis as well as the damages

09:36:11　20　analysis.

09:36:11　21　　　　　To the extent Yealink tried to develop a product

09:36:15　22　that designed around Barco's product -- or, excuse me,

09:36:19　23　Barco's patent portfolio and was unable to do that, that's

09:36:22　24　relevant to this case.

09:36:24　25　　　　　THE COURT:  And if the patents had not issued yet,

| | | |
|---|---|---|
| 09:36:27 | 1 | how could they be trying to design around them? |
| 09:36:32 | 2 | MR. HALVERSON: I'm not sure, Your Honor. I think |
| 09:36:33 | 3 | that is part of what we would need to see in discovery. |
| 09:36:36 | 4 | While what comes out of discovery may not be admissible, |
| 09:36:39 | 5 | may not actually prove something that's at issue in this |
| 09:36:42 | 6 | case, it is all relevant to the issues that are at issue in |
| 09:36:45 | 7 | this case. |
| 09:36:45 | 8 | Now, we certainly don't need all documents by any |
| 09:36:48 | 9 | stretch of the imagination. To the extent there are |
| 09:36:50 | 10 | duplicative documents or, you know, different iterations |
| 09:36:54 | 11 | that don't evolve on each other of the same document, we're |
| 09:36:58 | 12 | not looking for a data dump of terabytes of data. |
| 09:37:02 | 13 | However, thus far, we've gotten absolutely |
| 09:37:04 | 14 | nothing. And because of that, we're not really sure how |
| 09:37:06 | 15 | else to tailor these requests beyond asking for these |
| 09:37:10 | 16 | development documents. |
| 09:37:13 | 17 | THE COURT: Uh-huh. What is your understanding or |
| 09:37:18 | 18 | belief as to when the accused products were first marketed |
| 09:37:26 | 19 | by Yealink? |
| 09:37:27 | 20 | MR. HALVERSON: So the WPP30 is a recent release. |
| 09:37:34 | 21 | I don't have the date off the top of my head. |
| 09:37:37 | 22 | THE COURT: So you think it's after the issuance |
| 09:37:39 | 23 | of your patents? |
| 09:37:40 | 24 | MR. HALVERSON: I don't want to speculate. I |
| 09:37:42 | 25 | don't know. But I do know that it was a more recent |

09:37:44    1    release than the WPP20, which I am more confident was

09:37:50    2    before the product -- or the patents issued.

09:37:58    3         THE COURT:  And did -- does Barco have a patent

09:38:02    4    practicing product?

09:38:04    5         MR. HALVERSON:  It does, Your Honor.  It has a

09:38:08    6    pretty robust portfolio of products sold all throughout the

09:38:11    7    world.  It is at the risk of -- go ahead, Your Honor.

09:38:16    8         THE COURT:  That you contend practice the asserted

09:38:20    9    patents?

09:38:20   10         MR. HALVERSON:  Correct.  And that Barco contends.

09:38:23   11    Barco marks on its patent website which patents practice

09:38:28   12    which of its products and has for a number of years.

09:38:35   13         THE COURT:  All right.

09:38:37   14         MR. HALVERSON:  And so that was -- that was No. 8.

09:38:39   15    And I don't want to shortchange the other requests, as

09:38:46   16    well.

09:38:46   17         I would note that the sales data that has been

09:38:49   18    produced thus far is only for a subset of the accused

09:38:52   19    products.  We have only gotten sales data for the two

09:38:55   20    dongle products, the WPP20 and the WPP30, despite

09:39:00   21    Plaintiff -- or Defendants' acknowledgement today that

09:39:02   22    these other base station products are also part of the

09:39:05   23    case.

09:39:06   24         THE COURT:  And is there an interrogatory that

09:39:09   25    specifically addresses the sales data?

09:39:12  1          MR. HALVERSON:  That would be No. 1, Your Honor.

09:39:16  2   I would say No. 1 and No. 3.

09:39:19  3          And No. 3 is the one where -- and I don't want to

09:39:22  4   read it because it is marked as highly confidential,

09:39:25  5   outside counsels' eyes only.  However, 3 is where they

09:39:29  6   provide a subset of the damages data that would be at issue

09:39:33  7   in this case.

09:39:45  8          THE COURT:  And do you have a date range in your

09:39:52  9   sales data request?

09:39:56  10          MR. HALVERSON:  In the request?  No.  As part of

09:40:00  11   the discovery process, we did meet and confer about a date

09:40:03  12   range, and that's how we arrived at the 18 through 24

09:40:08  13   range.

09:40:08  14          The patents, I believe, issued in 2020 or later,

09:40:13  15   and so what we were looking for with the couple of years

09:40:16  16   before the issuance of the patent was to see trendline data

09:40:19  17   on how the sales were progressing.

09:40:26  18          Actually this shows the answer to your prior

09:40:31  19   question about when the WPP30 was released, and so that was

09:40:35  20   decidedly after the earliest patent in this case issued.

09:40:39  21          THE COURT:  And are you saying that the Defendant

09:40:40  22   agreed to produce access data beginning in 2018 or that you

09:40:46  23   agreed that -- or you limited your request to that?

09:40:50  24          MR. HALVERSON:  I would say that the parties

09:40:54  25   coalesced on an understanding that sales data from 2018

09:40:59    1  onward would be appropriate.  I'm not sure that either one

09:41:02    2  of us mandated something, but we both are in agreement that

09:41:07    3  that's an appropriate range of data to provide.

09:41:10    4      Your smile makes me think I'm not answering your

09:41:13    5  question.  I'm not trying to be cute.

09:41:17    6      THE COURT:  I'm smiling because lawyers use the

09:41:22    7  word "agree" so improperly.  I hear that from both sides

09:41:25    8  all the time.  The other side has conceded or agreed

09:41:28    9  something, and then the other side gets up and says no.

09:41:31   10      So when I hear agree, it raises a red flag.  Show

09:41:38   11  me.

09:41:39   12      MR. HALVERSON:  Something that says the agreement?

09:41:41   13      THE COURT:  Yeah.

09:41:41   14      MR. HALVERSON:  I won't speak for Yealink.  Barco

09:41:45   15  is okay only receiving sales data from 2018 onward.

09:41:48   16      THE COURT:  All right.  I understand what a

09:41:52   17  position is, and it's different from an agreement, but...

09:41:54   18      MR. HALVERSON:  Understood, Your Honor.

09:41:55   19      THE COURT:  All right.

09:41:58   20      MR. HALVERSON:  And then -- sorry, last on the

09:42:00   21  interrogatories themselves, there are a number of

09:42:02   22  interrogatories where the response invokes Rule 33(d).

09:42:08   23  Documents have not been produced or identified in the

09:42:11   24  response sufficient to respond to those interrogatories.

09:42:15   25  Yealink's answer saying we will give you documents or we

09:42:18   1   have given you documents is deficient because nobody can

09:42:24   2   ascertain the response, which is contrary to the rule

09:42:26   3   itself, which says, look, if the answer to this

09:42:29   4   interrogatory can be gleaned equally by both sides from

09:42:33   5   just looking at the documents, I don't have to type it out.

09:42:36   6          However, there are no documents identified or

09:42:38   7   produced from which an answer could be gleaned for those

09:42:43   8   responses.

09:42:46   9          THE COURT:  All right.  You talked specifically

09:42:49   10   about Interrogatory 8 and Interrogatory 1.  I know you also

09:42:55   11   mentioned 4, 7, and 11 through 13.  Is -- if you have a

09:43:03   12   specific argument on those others, I would like to hear it

09:43:08   13   before I turn it over to the Defendants.

09:43:10   14          MR. HALVERSON:  So Interrogatory No. 4 requests

09:43:13   15   facts and circumstances surrounding any license agreements

09:43:17   16   that Yealink has entered into.  And so that concerns any --

09:43:24   17   sorry, go ahead.

09:43:25   18          THE COURT:  It's much --

09:43:26   19          MR. HALVERSON:  I'm sorry, Your Honor.

09:43:26   20          THE COURT:  It's much broader than license

09:43:28   21   agreements.  Is license agreements all you're really

09:43:31   22   looking for from No. 4?

09:43:33   23          MR. HALVERSON:  License agreements and settlement

09:43:34   24   agreements, to the extent any settlement agreements exist,

09:43:36   25   yes.

09:43:37  1          THE COURT:  Okay.  All right.  I'll consider 4

09:43:43  2  with regard to license and settlement agreements.

09:43:46  3          MR. HALVERSON:  7 requests an identification of

09:43:49  4  individuals who are most knowledgeable about the design and

09:43:52  5  development of the accused products.

09:43:55  6          Yealink's response to Interrogatory 7 on the meet

09:44:00  7  and confers has been we'll let you identify the right

09:44:02  8  people based on the documents that we are providing.

09:44:05  9          We don't have any documents from which we could

09:44:08  10 identify those people, and whether or not the documents

09:44:11  11 themselves identify an individual does not let Barco know

09:44:16  12 whether or not those individuals are the most

09:44:18  13 knowledgeable.  Oftentimes the author of a document may not

09:44:20  14 be the person who really owns the information of that

09:44:23  15 document.

09:44:30  16         THE COURT:  Did Yealink serve on you disclosures

09:44:32  17 that identified persons with knowledge?

09:44:35  18         MR. HALVERSON:  They -- or they did serve 26(a)(1)

09:44:41  19 disclosures, yes.

09:44:43  20         THE COURT:  And do those identify persons with

09:44:45  21 knowledge?

09:44:45  22         MR. HALVERSON:  So those do identify persons with

09:44:51  23 knowledge.  Our request seeks an identification of three

09:44:55  24 individuals so that we can test whether or not there might

09:44:58  25 be somebody else who has other knowledge, additional

09:45:00  1  knowledge, or different knowledge.  Whereas, Yealink's

09:45:04  2  26(a)(1)s only identify -- I believe it's one individual on

09:45:07  3  the technical side of things and one individual on the

09:45:10  4  financial side of things.

09:45:11  5      THE COURT:  I don't see any reference to three

09:45:15  6  people in your Interrogatory No. 7.

09:45:29  7      Is that something that developed during the meet

09:45:32  8  and confer process?

09:45:32  9      MR. HALVERSON:  No, Your Honor.  That is a -- I

09:45:44  10  apologize.

09:45:46  11      So I was thinking of -- I was conflating Rog No. 5

09:45:50  12  and Rog No. 7.

09:45:52  13      THE COURT:  All right.

09:45:52  14      MR. HALVERSON:  Where Rog No. 5, we -- or we

09:45:55  15  specifically asked for a finite number of individuals, Rog

09:45:59  16  No. 7 is admittedly a little broad.  However, three

09:46:05  17  individuals, I think, would be sufficient to cover that.

09:46:13  18      THE COURT:  So that would be three people with --

09:46:17  19  who were responsible for design, development, et cetera?

09:46:21  20      MR. HALVERSON:  Correct, Your Honor.

09:46:40  21      THE COURT:  All right.

09:46:40  22      MR. HALVERSON:  And then for 11, 12, and 13, we're

09:46:45  23  simply asking for any sort of response.  Thus far the

09:46:49  24  response that you see in the document in front of you is

09:46:51  25  simply that Yealink's investigation is ongoing.  This case

09:46:55    1    has been ongoing for a year.  We need some information

09:46:59    2    about what it is that supports Yealink's defenses, any

09:47:10    3    alleged non-infringing alternatives, as well as the factual

09:47:18    4    bases for any 112 theories of invalidity.

09:47:22    5         THE COURT:  You know, the main function of

09:47:25    6    interrogatories like this in my experience is that to the

09:47:27    7    extent that a party ultimately relies upon facts for their

09:47:38    8    defenses, as typically established by their experts, if

09:47:44    9    they haven't disclosed those facts, then you have an

09:47:49    10   argument under Rule 37 that they shouldn't be allowed to

09:47:53    11   rely upon them.

09:47:58    12        So the -- I think of these as largely defensive

09:48:03    13   interrogatories.  I don't expect there to be anything more

09:48:09    14   in the answers than the Defendants think they will need to

09:48:13    15   rely upon.  But in any event, I'll --

09:48:18    16        MR. HALVERSON:  And that's entirely fine.  If the

09:48:20    17   answer is either nothing or a brief blurb from a

09:48:24    18   conversation that Yealink intends to have a fact witness

09:48:29    19   present at trial or present to its expert, that's all that

09:48:32    20   needs to be in the response.  But we're entitled to know

09:48:34    21   what those facts are before we see the expert report for

09:48:37    22   the first time after the close of fact discovery --

09:48:40    23        THE COURT:  I agree.  If the --

09:48:41    24        MR. HALVERSON:  -- so we can probe into that.

09:48:43    25        THE COURT:  -- if the Defendant relies upon facts

09:48:46  1  that were in the Defendants' possession and were not

09:48:48  2  disclosed in response to discovery, then you've got a

09:48:53  3  legitimate complaint.

09:48:54  4      MR. HALVERSON:  And that's all we're trying to do

09:48:56  5  with those three.

09:48:56  6      THE COURT:  All right.  Then at this point, let me

09:49:02  7  hear from the Defendants as to these interrogatories, and

09:49:05  8  then we can move on to the next subject.

09:49:14  9      MR. YANG:  Thank you, Your Honor.

09:49:14  10      Just real quick on the contention interrogatories.

09:49:22  11  I think Your Honor is absolutely right, if we have facts

09:49:25  12  that we rely on.  And at this point, the substantial

09:49:28  13  deadline for document production is not until January and

09:49:32  14  fact discovery closes after that.  If there are facts, we

09:49:36  15  do intend to supplement our responses.

09:49:39  16      What Barco is saying is, no, you have to do it

09:49:42  17  now.  Your Honor, I don't think that is workable.  So those

09:49:45  18  are the contention interrogatories.

09:49:47  19      THE COURT:  Well, I'll tell you that I agree with

09:49:49  20  most of what you've said.  But I do want to make it clear

09:49:53  21  that if you disclose facts late in the process at a time

09:50:02  22  when I think it was no longer reasonably available to the

09:50:09  23  Plaintiff to conduct discovery about those facts, you're

09:50:13  24  running the risk that they will be determined to have not

09:50:18  25  been timely disclosed.

09:50:20  1        But as long as you can tie your disclosure of

09:50:27  2    those facts to when you learned them or had reason to

09:50:32  3    disclose them, then, you know, you're right.  It doesn't

09:50:37  4    have to be right now.

09:50:39  5        MR. YANG:  Your Honor, I absolutely agree.  You

09:50:42  6    know, we're not trying to wait until the last minute.  And

09:50:45  7    some of these interrogatories are about 112 defenses, and

09:50:50  8    they have our -- they have our contentions of those.

09:50:53  9        But, yes, Your Honor, we do intend to supplement

09:50:55  10   when we have facts, and we will be reasonable about that so

09:50:59  11   they have an opportunity to explore those facts before the

09:51:03  12   expert reports.

09:51:03  13       Coming back to the other interrogatories, Your

09:51:06  14   Honor, one thing I do want to mention about this issue of

09:51:10  15   willfulness, the patents in this case issued in 2020.  I

09:51:17  16   think the earliest patent, Your Honor, issued in

09:51:22  17   September -- on September 1st, 2020, and some of the

09:51:26  18   patents issued in 2022.

09:51:28  19       Now, Yealink's products, the WPP20, have been on

09:51:33  20   the market since 2018, and it has been under development

09:51:39  21   much before that.

09:51:41  22       WPP30 is just the new version of the same WPP20

09:51:48  23   product.  It's been on the market since 2022, and it's been

09:51:52  24   in development, again, well before that.

09:51:56  25       The question of willfulness is not whether you are

09:51:59  1  aware of Barco, it's whether you are aware that Barco has

09:52:02  2  other patents, it's whether you have knowledge of the

09:52:08  3  asserted patents and what you have done after you gain that

09:52:11  4  knowledge.

09:52:12  5      So, Your Honor, this question of relevance of

09:52:14  6  years of development, years of technical documents, they're

09:52:19  7  not relevant to the issue of willfulness here.  And both on

09:52:24  8  the question that Your Honor brought up, do Barco have

09:52:28  9  products that practice the asserted patents, well, Your

09:52:33  10 Honor, their patents have not been marked until 2022.  And

09:52:36  11 I think --

09:52:37  12      THE COURT:  You mean their products have not been

09:52:40  13 marked?

09:52:40  14      MR. YANG:  They have -- they have not been marked.

09:52:41  15 Right.  They have this constructive marking through the

09:52:44  16 website.  But we have their interrogatory response that

09:52:48  17 say, I think one of the patents was marked -- only one

09:52:53  18 patent was marked in September of 2021.  The others were

09:52:57  19 marked in 2023.  And that is -- and that is their response

09:52:59  20 to Interrogatory No. 4 from Defendants.

09:53:03  21      So, again, this issue of willfulness, it has to be

09:53:07  22 tied to the asserted patents.  And what Plaintiffs -- what

09:53:12  23 Barco is suggesting is they want to get to our documents --

09:53:17  24 all -- all of our research and development.

09:53:20  25      On the meet and confers, Your Honor, I offered, if

09:53:22   1   you want to take a deposition of one of our witnesses, we

09:53:25   2   can arrange that.  If you want limited reasonable documents

09:53:29   3   that is proportional to the needs of the case to this

09:53:33   4   question of willfulness, we can arrange that.  But they say

09:53:35   5   they want all R&D documents.  They want all technical

09:53:39   6   documents.

09:53:39   7          THE COURT:  Yealink's position would be much

09:53:43   8   stronger if Yealink had produced what Yealink contended was

09:53:48   9   a sufficient number of technical documents for the

09:53:55   10  Plaintiff to understand the operation and the development

09:54:01   11  of -- of the accused products, but it's not a persuasive

09:54:10   12  position to me to say we're not producing any documents

09:54:13   13  because you're asking for too much.

09:54:14   14         MR. YANG:  Your Honor, we -- we do want to find a

09:54:18   15  reasonable approach to this.  And our position is not that

09:54:21   16  we will not produce documents, and this is something we

09:54:26   17  discussed earlier.  We had -- it's been our position that

09:54:29   18  infringement is out of play.  But if we have to produce

09:54:31   19  documents -- and, again, the deadline is January, and we

09:54:34   20  will produce documents --

09:54:34   21         THE COURT:  You know --

09:54:36   22         MR. YANG:  -- as long as it's reasonable.

09:54:38   23         THE COURT:  -- let me on the record just disabuse

09:54:41   24  you of the notion that you don't have to produce documents

09:54:43   25  until the deadline for substantial completion.  That is a

09:54:48    1    backstop.  You have an obligation to produce documents, as

09:54:55    2    requested, on a timely basis.  And what I'm hearing and

09:55:01    3    seeing in the record is that so far, you haven't produced

09:55:04    4    any of your technical documents.

09:55:06    5        MR. YANG:  We have produced some, but we will

09:55:08    6    produce more, Your Honor.  And that's not my position that

09:55:10    7    we will wait until the last day.  All I'm saying is they

09:55:14    8    want us to produce all the documents now.

09:55:16    9        THE COURT:  Yeah.

09:55:17    10        MR. YANG:  We need to -- we will produce.  Again,

09:55:20    11    they want all documents, Your Honor.

09:55:22    12        THE COURT:  You know, you didn't even file the

09:55:26    13    second amended answer until September 20, which was long

09:55:34    14    after they requested production.

09:55:36    15        How could you have felt that technical documents

09:55:41    16    were irrelevant long before you filed this admission of

09:55:47    17    infringement?

09:55:47    18        MR. YANG:  Your Honor, we have been in a meet and

09:55:52    19    confer process before that.  Barco understands that Yealink

09:55:56    20    was working to collect all documents.  It's a huge company.

09:56:00    21    And these are, again, international discovery that does

09:56:04    22    take some time.

09:56:06    23        But, Your Honor --

09:56:07    24        THE COURT:  Where are the documents that you were

09:56:09    25    saying during the meet and confer process months ago were

| 09:56:14 | 1 | being reviewed for production? |
| 09:56:17 | 2 | MR. YANG:  All the documents are located in China |
| 09:56:19 | 3 | in Yealink's headquarters.  They're foreign language |
| 09:56:23 | 4 | documents.  And it does take time.  So we came in as |
| 09:56:26 | 5 | counsel in May, and it takes some time for us to review, |
| 09:56:29 | 6 | understand everything. |
| 09:56:30 | 7 | But, Your Honor, again, we're not trying to just |
| 09:56:33 | 8 | say we're not producing documents.  And it's really during |
| 09:56:37 | 9 | that meet and confer process we told them we need time. |
| 09:56:40 | 10 | And then Yealink decided -- it was a hard decision, but |
| 09:56:44 | 11 | Yealink decided to admit infringement of the claims. |
| 09:56:47 | 12 | Well, Your Honor, if the Court orders, we will |
| 09:56:51 | 13 | produce documents.  We're not waiting until the last day. |
| 09:56:53 | 14 | That's certainly not our position.  But what I would like |
| 09:56:58 | 15 | some guidance is we just need to understand the scope, |
| 09:57:02 | 16 | because, again, they're asking for all documents.  And I'm |
| 09:57:04 | 17 | struggling to understand the relevance of years of R&D |
| 09:57:08 | 18 | documents, of years of technical documents.  They say |
| 09:57:12 | 19 | willful.  I'm not sure that works because the patents have |
| 09:57:15 | 20 | been issued so late. |
| 09:57:16 | 21 | THE COURT:  Well, I don't think the willfulness |
| 09:57:19 | 22 | allegation is what's driving their entitlement to |
| 09:57:25 | 23 | discovery.  I think the fact is that the admissions in the |
| 09:57:31 | 24 | second amended answer are not sufficient to take the |
| 09:57:38 | 25 | technical discovery off the table.  The limitation of the |

09:57:44    1    admission to only claims that are being challenged in the

09:57:51    2    IPR certainly explains to me that why the Plaintiffs are

09:57:59    3    not willing to forego technical discovery.  And so I don't

09:58:06    4    think they're just being unreasonable.  I think they have a

09:58:10    5    legitimate litigation interest in being able to prove

09:58:14    6    infringement of the other claims that are clearly set out

09:58:19    7    in their infringement contentions and are not subject to

09:58:28    8    IPR.

09:58:28    9         MR. YANG:  Okay, Your Honor.  So I guess what we

09:58:35    10   would like to have is just some guidance on the -- maybe

09:58:38    11   the temporal scope, because, again, we have a lot of

09:58:41    12   documents.  And we have been trying to work -- we really

09:58:44    13   have been trying to work with Plaintiffs to understand,

09:58:47    14   okay, what is it exactly that you need and what is

09:58:52    15   proportional?

09:58:53    16        All we're hearing right now is all documents, all

09:58:56    17   documents.  We want all R&D.  We want all technical

09:59:01    18   documents.  We want all source code.

09:59:03    19        So this, Your Honor -- it would be great if we

09:59:07    20   could get some guidance and some clarity so we can get the

09:59:10    21   Plaintiffs the documents that they need.

09:59:11    22        THE COURT:  You know, typically the way this works

09:59:14    23   when it's being engaged in in good faith is that the

09:59:22    24   Defendant will produce what it contends are documents

09:59:28    25   sufficient to understand the operation of the accused

09:59:32  1  products.  That's what is set out in the discovery order

09:59:38  2  and based on the local rules.

09:59:40  3      And if the Plaintiff looks at those documents and

09:59:45  4  says, well, we're missing this, that, and the other, then

09:59:51  5  we engage in the process that way.

09:59:51  6      MR. YANG:  Okay.

09:59:54  7      THE COURT:  But so far, you have not produced

09:59:59  8  anything from your client that is even arguably sufficient

10:00:05  9  to understand the operation of the accused products.

10:00:08  10  That's what I'm hearing.

10:00:09  11      If you think you have, tell me about it.

10:00:11  12      MR. YANG:  We have produced some.  But admittedly,

10:00:14  13  Your Honor, there are certain more documents we can

10:00:16  14  produce.

10:00:16  15      One thing, too, these are -- these products are

10:00:20  16  all or they have been publicly available, and I think

10:00:25  17  Plaintiffs have their hands on these products, and I think

10:00:27  18  they have --

10:00:28  19      THE COURT:  You know, my answer to that is then

10:00:30  20  produce those.  It should be no burden to -- if you say

10:00:35  21  these are publicly available and they're sufficient to

10:00:38  22  understand, then just produce them.

10:00:40  23      MR. YANG:  I think they already have them, Your

10:00:42  24  Honor.  But, you know, we can look into -- if they're

10:00:45  25  requesting products that I think they already have, but we

| | | |
|---|---|---|
| 10:00:49 | 1 | can do that, Your Honor. |
| 10:00:52 | 2 | THE COURT:  Well, you are saying that you need |
| 10:00:54 | 3 | some guidance on scope. |
| 10:00:55 | 4 | MR. YANG:  Right. |
| 10:00:56 | 5 | THE COURT:  And you mentioned temporal scope. |
| 10:00:58 | 6 | Tell me what you're proposing. |
| 10:01:00 | 7 | MR. YANG:  Well, these patents, Your Honor, have |
| 10:01:03 | 8 | been issued in 2020 and then on.  I think this timeline |
| 10:01:08 | 9 | that we looked at -- so if they want our information, our |
| 10:01:13 | 10 | documents under development on the WPP and the WPP -- |
| 10:01:17 | 11 | WPP20, WPP30 products, I think that is a reasonable |
| 10:01:24 | 12 | timeline, Your Honor.  And I think that's -- we mentioned |
| 10:01:27 | 13 | this 2018.  We have talked about 2018, and we have in our |
| 10:01:32 | 14 | are interrogatory responses providing information from |
| 10:01:34 | 15 | 2018.  That may be a reasonable timeline that we can work |
| 10:01:37 | 16 | with. |
| 10:01:39 | 17 | THE COURT:  All right.  So your proposal is that |
| 10:01:44 | 18 | the sales data is where the Plaintiff mentioned 2018. |
| 10:01:49 | 19 | Are you saying that 2018 forward would also be a |
| 10:01:54 | 20 | reasonable time frame for the design and development |
| 10:01:58 | 21 | documents? |
| 10:01:59 | 22 | MR. YANG:  I want to -- I believe that's probably |
| 10:02:02 | 23 | workable, Your Honor.  Your Honor, I just want to |
| 10:02:04 | 24 | double-check that with my client.  I don't want to misspeak |
| 10:02:07 | 25 | when development has started. |

| | | |
|---|---|---|
| 10:02:09 | 1 | And on the damages timeline, sales information, I |
| 10:02:13 | 2 | don't believe for that 2018 is reasonable given that the |
| 10:02:16 | 3 | patents have not issued until September of 2020.  I think |
| 10:02:20 | 4 | for sales information, 2020 to the day we withdrew the WPP |
| 10:02:28 | 5 | products from the U.S. market, that is a more reasonable |
| 10:02:31 | 6 | time frame for sales information. |
| 10:02:40 | 7 | THE COURT:  I understand your position on that. |
| 10:02:48 | 8 | And what other temporal issues do you want to |
| 10:02:53 | 9 | discuss? |
| 10:02:53 | 10 | MR. YANG:  I think those are the big ones, Your |
| 10:02:57 | 11 | Honor.  And if I may just really quickly on the other |
| 10:03:00 | 12 | interrogatories my colleague has mentioned here.  On No. 4, |
| 10:03:03 | 13 | if they just want license agreements, if they want |
| 10:03:06 | 14 | settlement agreements, I think that is something that is |
| 10:03:09 | 15 | reasonable and that we can look into.  I mean, right now, |
| 10:03:12 | 16 | that's not the way the interrogatory is drafted. |
| 10:03:15 | 17 | On No. 5, we have identified people that they've |
| 10:03:17 | 18 | asked for. |
| 10:03:18 | 19 | If they're limiting No. 7 to three people, I think |
| 10:03:22 | 20 | that's reasonable.  Because right now No. 7 is drafted to |
| 10:03:26 | 21 | ask for each person with knowledge.  But if we're limiting |
| 10:03:32 | 22 | those to three, then that is something we can do. |
| 10:03:35 | 23 | THE COURT:  All right.  And so I guess what I am |
| 10:03:47 | 24 | inclined to say about the design and development documents |
| 10:03:55 | 25 | is that the Defendant would be ordered to produce |

| | | |
|---|---|---|
| 10:04:00 | 1 | sufficient technical documents to understand the design and |
| 10:04:08 | 2 | development of those products. |
| 10:04:09 | 3 | I'm definitely never going to order all documents |
| 10:04:13 | 4 | that relate to some broad issue like that, but I do think |
| 10:04:20 | 5 | that it's not unreasonable to order something that goes |
| 10:04:27 | 6 | back before the issuance of the patents in a case like |
| 10:04:32 | 7 | this, especially where the Plaintiff contends that it had |
| 10:04:38 | 8 | products on the market that -- before the issuance of these |
| 10:04:43 | 9 | patents that reflected that technology, and, therefore, if |
| 10:04:51 | 10 | there is evidence that the Defendant was relying upon |
| 10:04:58 | 11 | that -- the Plaintiffs' technology, as demonstrated in its |
| 10:05:04 | 12 | products even before the patents issued, that could be |
| 10:05:06 | 13 | relevant to infringement. |
| 10:05:08 | 14 | But I also want to comment on Rule 33(d). Going |
| 10:05:17 | 15 | forward in this case, you should limit your reliance on |
| 10:05:24 | 16 | Rule 33(d) to situations where you think you really can |
| 10:05:30 | 17 | show me that the Plaintiff is as able to look at those |
| 10:05:37 | 18 | documents and locate the relevant information as your |
| 10:05:45 | 19 | employees would be, and that is a much narrower |
| 10:05:50 | 20 | circumstance than these answers to interrogatories reflect. |
| 10:05:57 | 21 | And I understand that they're in the past and -- |
| 10:06:03 | 22 | but I would caution you and I will note that you have been |
| 10:06:11 | 23 | cautioned not to rely upon Rule 33(d) as expansively as |
| 10:06:16 | 24 | these responses do. |
| 10:06:19 | 25 | MR. YANG:  And I understand, Your Honor.  And, |

10:06:22   1   obviously, that goes both ways, Your Honor, right, because

10:06:25   2   I think Plaintiffs have the same reliance on Rule 33(d) for

10:06:30   3   a number of interrogatories.  But we can certainly use

10:06:33   4   33(d) sparingly and really in the -- under the appropriate

10:06:36   5   circumstances.

10:06:37   6          THE COURT:  Well, I guarantee you, I'll apply it

10:06:39   7   the same way both directions --

10:06:43   8          MR. YANG:  Thank you, Your Honor.

10:06:43   9          THE COURT:  -- if anything comes up with them, as

10:06:46  10   well.  It's not intended to be a substitute for a definite

10:06:52  11   answer.

10:06:53  12          MR. YANG:  I agree, Your Honor.  I understand.

10:06:55  13          And just if I may, Your Honor, I'm not sure if

10:06:58  14   Plaintiffs have alleged anywhere in this case that they

10:07:01  15   have products that practice the technology of the asserted

10:07:06  16   patents before the patent's issuance.  I think I heard that

10:07:10  17   for the first time today.

10:07:11  18          And I understand where the Court's coming from, if

10:07:14  19   that is -- really is the case.  If I may just -- if

10:07:16  20   Plaintiffs can make that showing, I think that would be a

10:07:19  21   lot more helpful for us to understand, again, the temporal

10:07:25  22   time scope.

10:07:25  23          THE COURT:  Well, I don't -- I'm not suggesting

10:07:27  24   that there is an admission that they had a product on the

10:07:33  25   market that practiced the patents before the issuance.  But

10:07:36    1   what I am suggesting is that I look at this case

10:07:39    2   differently because they're competitors with products in

10:07:44    3   the marketplace than I would if we simply had a

10:07:51    4   non-practicing entity that had a patent and was seeking to

10:07:56    5   enforce it.

10:07:57    6           MR. YANG:  I understand, Your Honor.

10:07:59    7           THE COURT:  Okay.  Do you have anything else that

10:08:05    8   you want to say on these interrogatories?

10:08:11    9           MR. YANG:  Let me just look through my notes, Your

10:08:13   10   Honor.  No, I think that addresses the questions we have.

10:08:22   11           Of course, I think -- maybe we can talk about that

10:08:25   12   later, Your Honor, is the timing of the productions.  Like

10:08:29   13   I said, I think for Yealink, we do need some time to review

10:08:35   14   everything, but we can certainly do that as quickly as --

10:08:38   15   as quickly as we can.

10:08:40   16           THE COURT:  So what would you ask in terms of time

10:08:46   17   in which to supplement your answers to the interrogatories

10:08:50   18   that we've discussed?

10:08:51   19           MR. YANG:  Oh, I think for the interrogatories --

10:08:56   20   so that would be -- Your Honor, if I'm understanding, that

10:08:59   21   would be Nos. 1, 8, 4, and 7.

10:09:03   22           THE COURT:  That's right.

10:09:04   23           MR. YANG:  Okay.  Your Honor, we can -- you know,

10:09:16   24   with the holidays and everything coming up, but I think we

10:09:19   25   can probably supplement those interrogatory responses in

| | | |
|---|---|---|
| 10:09:24 | 1 | three-weeks' time. We just need to understand -- we need |
| 10:09:24 | 2 | to go back and look at all the products and look at the |
| 10:09:27 | 3 | development. |
| 10:09:27 | 4 | THE COURT: You said two weeks? |
| 10:09:29 | 5 | MR. YANG: Three weeks, Your Honor. |
| 10:09:30 | 6 | THE COURT: Three weeks? |
| 10:09:30 | 7 | MR. YANG: Three, yes. |
| 10:09:31 | 8 | THE COURT: All right. I'll note that that's your |
| 10:09:34 | 9 | request. Thank you. |
| 10:09:36 | 10 | MR. YANG: Thank you, Your Honor. |
| 10:09:38 | 11 | I think that's everything on the interrogatories, |
| 10:09:40 | 12 | unless the Court has further questions for me. |
| 10:09:43 | 13 | THE COURT: All right. Thank you, Mr. Yang. |
| 10:09:44 | 14 | I'll let Mr. Halverson speak to those issues, as |
| 10:09:49 | 15 | well. |
| 10:09:50 | 16 | MR. YANG: Thank you. |
| 10:09:50 | 17 | MR. HALVERSON: Just very briefly, Your Honor, and |
| 10:09:56 | 18 | then I'm happy to address any questions. |
| 10:09:58 | 19 | But what I heard in that presentation is we have a |
| 10:10:01 | 20 | lot of docs. We have a lot of documents, but it's going to |
| 10:10:05 | 21 | take us a long time to look at them, which really begs the |
| 10:10:09 | 22 | question: How are you able to rely on 33(d)? |
| 10:10:12 | 23 | What's in those documents that led you to admit to |
| 10:10:16 | 24 | infringement after 10 months of litigation, while holding |
| 10:10:22 | 25 | out for those full 10 months that you don't infringe? |

| | |
|---|---|
| 10:10:25 | 1 |
| 10:10:27 | 2 |
| 10:10:31 | 3 |
| 10:10:35 | 4 |

1    And so these questions about what is the temporal

2    limitation or how can we limit the document production are

3    particularly concerning to Barco because we're not sure

4    what's trying to be hidden from production here.

5    But the fact that this case has been pending for a

6    year and the production and the responses are as small as

7    they are, and we keep hearing excuses about how Yealink is

8    trying to be reasonable, Yealink has been trying to be

9    reasonable since June, not to mention the fact that the

10    discovery order went in in April.

11    At no point in time are they doing the reasonable

12    thing of producing a reasonable amount of documents for the

13    relevant issues in this case.

14    Now, as far as the timing of three weeks, we have

15    no concern with that.  As far as the other limitations I

16    think that were discussed about the productions, they all

17    seem very reasonable.  However, we're concerned that there

18    is an effort to hide certain information from production in

19    this case.  And I'm not sure how best to mitigate that

20    going forward.

21    THE COURT:  Well, we shall see.  I will limit the

22    sales data to January 1, 2019 forward.  I think that the

23    Plaintiff is entitled to some sales information before the

24    issuance of the patents in order to assess the accuracy of

25    the information that they're getting thereafter.  But,

| | | |
|---|---|---|
| 10:11:57 | 1 | otherwise, I'll proceed with the interrogatories in the |
| 10:12:00 | 2 | manner that we've discussed. |
| 10:12:05 | 3 | And what else do you want to discuss on your |
| 10:12:09 | 4 | motion besides the interrogatories? |
| 10:12:11 | 5 | MR. HALVERSON:  Interrogatories and document |
| 10:12:16 | 6 | production?  Are those -- are those hand-in-hand? |
| 10:12:20 | 7 | THE COURT:  And I guess -- I guess that is the |
| 10:12:30 | 8 | case, frankly. |
| 10:12:34 | 9 | MR. HALVERSON:  Ostensibly -- so the claims really |
| 10:12:40 | 10 | relate to how certain information is conveyed from the |
| 10:12:43 | 11 | user's machine to this dongle and then up to something -- |
| 10:12:46 | 12 | some other device, whether or not the base station is |
| 10:12:48 | 13 | affirmatively claimed. |
| 10:12:49 | 14 | And so as part of that, and we haven't gotten into |
| 10:12:53 | 15 | this discussion yet, but part of the obligation of |
| 10:12:55 | 16 | discovery under the local rules would include source code. |
| 10:12:57 | 17 | And so as part of that, we would -- we would ask it be -- |
| 10:13:04 | 18 | Defendant also include that in its production in |
| 10:13:07 | 19 | pursuant -- or in accordance with the protective order in |
| 10:13:09 | 20 | this case. |
| 10:13:11 | 21 | They've not withheld that or said that they won't |
| 10:13:14 | 22 | do that, but given the issues that we've had so far in |
| 10:13:18 | 23 | getting what would be otherwise reasonable discovery, I |
| 10:13:20 | 24 | just wanted to put that on the record. |
| 10:13:21 | 25 | THE COURT:  Have you made a request to review |

| | | |
|---|---|---|
| 10:13:24 | 1 | source code yet? |
| 10:13:25 | 2 | MR. HALVERSON:  There is a request in the |
| 10:13:28 | 3 | infringement contentions.  We have not sent an express |
| 10:13:31 | 4 | letter or otherwise communicated in -- in a separate |
| 10:13:36 | 5 | communication that we want source code.  However, pursuant |
| 10:13:39 | 6 | to the local rules in this district where you can identify |
| 10:13:42 | 7 | certain elements that you intend to supplement with source |
| 10:13:45 | 8 | code, we've done that in our contentions.  Whether or |
| 10:13:48 | 9 | not -- sorry, go ahead. |
| 10:13:50 | 10 | THE COURT:  So in your contentions, you have |
| 10:13:53 | 11 | alleged that certain limitations would be satisfied through |
| 10:13:58 | 12 | source code? |
| 10:13:59 | 13 | MR. HALVERSON:  That's correct, Your Honor. |
| 10:14:01 | 14 | THE COURT:  All right. |
| 10:14:02 | 15 | MR. HALVERSON:  And I don't -- I don't remember |
| 10:14:03 | 16 | the rule off the top of my head, but there is something in |
| 10:14:08 | 17 | there. |
| 10:14:08 | 18 | THE COURT:  Well, I would expect that y'all will |
| 10:14:11 | 19 | be able to work out an understanding about source code |
| 10:14:15 | 20 | inspection, but I don't think it's fair to put the |
| 10:14:21 | 21 | Defendants to addressing that now if it hasn't been |
| 10:14:25 | 22 | otherwise raised. |
| 10:14:27 | 23 | MR. HALVERSON:  Understood, Your Honor. |
| 10:14:28 | 24 | THE COURT:  Is there anything else in your motion |
| 10:14:30 | 25 | that wouldn't be addressed by what we've done? |

| | | |
|---|---|---|
| 10:14:34 | 1 | MR. HALVERSON:  No. |
| 10:14:40 | 2 | THE COURT:  All right.  Thank you, Mr. Halverson. |
| 10:14:44 | 3 | Mr. Yang, we have been focused on interrogatory |
| 10:14:48 | 4 | answers.  I think it is reasonable to understand that |
| 10:14:53 | 5 | the production of documents will be governed by the same |
| 10:15:00 | 6 | scope. |
| 10:15:01 | 7 | Is -- do you have other issues to raise about |
| 10:15:06 | 8 | document production? |
| 10:15:06 | 9 | MR. YANG:  I think the same -- I think that makes |
| 10:15:10 | 10 | sense, Your Honor, as far as the scope goes. |
| 10:15:12 | 11 | We will try to get the documents ready because, |
| 10:15:16 | 12 | again, they are located in China.  We do need to review |
| 10:15:22 | 13 | them.  They're in a foreign language.  But we will do that. |
| 10:15:25 | 14 | We can do that on a rolling basis.  We can do that as |
| 10:15:28 | 15 | quickly as we can, Your Honor. |
| 10:15:29 | 16 | THE COURT:  All right. |
| 10:15:29 | 17 | MR. YANG:  On the source code, if they make the |
| 10:15:31 | 18 | request, that is something we can look into. |
| 10:15:34 | 19 | Oh, and as far as documents go, you know, we want |
| 10:15:36 | 20 | to produce documents that are sufficient for them to |
| 10:15:40 | 21 | understand the accused products.  I think a lot of that, |
| 10:15:43 | 22 | Your Honor, may be addressed by producing samples.  So we |
| 10:15:46 | 23 | can look into that, as well, so they have the products they |
| 10:15:50 | 24 | can look into, they can use, they can disassemble to make |
| 10:15:54 | 25 | their claim.  So that may be something we can do, as well, |

10:16:01    1    Your Honor.

10:16:01    2         THE COURT:  If the Plaintiffs are agreeable to

10:16:03    3    that, I certainly have no problem with you substituting

10:16:07    4    samples for a certain amount of document production.

10:16:10    5         But at this point, the order is to produce the

10:16:15    6    documents.

10:16:15    7         MR. YANG:  Okay.  I understand, Your Honor.  And

10:16:17    8    we will do that as quickly as practical.

10:16:20    9         The one thing I want to mention, so if there is

10:16:25   10    no -- at this point it seems that there's no effect on

10:16:29   11    the admission of infringement on the independent claims, I

10:16:31   12    just want to get an understanding of going forward,

10:16:35   13    especially when we go to trial in September -- I mean, are

10:16:40   14    the Plaintiffs going to get up, rely on that, and get the

10:16:45   15    damages for those we're expecting to still prove

10:16:49   16    infringement of every dependent claim?

10:16:51   17         THE COURT:  You know, if the Plaintiffs decide to

10:16:54   18    assert additional claims beyond those that you have

10:16:59   19    admitted infringement of, then they'll be required to prove

10:17:03   20    infringement of those additional claims.

10:17:04   21         MR. YANG:  Okay.  Okay.

10:17:07   22         THE COURT:  If -- if they are satisfied with

10:17:14   23    relying only on infringement of the claims that you've

10:17:18   24    admitted infringement of, then I would not expect that the

10:17:26   25    proof of infringement beyond that admission would be

10:17:30   1   relevant.  But at this point, we're a long way from that

10:17:35   2   and --

10:17:35   3       MR. YANG:  I understand, Your Honor.  And

10:17:37   4   admittedly, this is not something I have experienced

10:17:40   5   before.  This is a unique case, given that admission.  But

10:17:43   6   I appreciate the clarification.

10:17:45   7       THE COURT:  All right.  All right.  Well, I will

10:17:50   8   issue an order that memorializes what we've done here and

10:17:57   9   hope that the parties are able to resolve further issues.

10:18:02  10   If you're not able to, if there is something that you think

10:18:06  11   is amenable just to a phone call, I'm willing to take up

10:18:12  12   issues around the fringes on that basis.

10:18:18  13       But if somebody thinks that we need to do it based

10:18:20  14   on a motion and on a record, I'm happy to do it that way,

10:18:24  15   as well.

10:18:25  16       MR. YANG:  Your Honor, just one last thing.  I

10:18:27  17   apologize.

10:18:29  18       We would expect Plaintiffs to also produce

10:18:32  19   documents along similar schedules, because in this case,

10:18:35  20   they also have not produced a lot of documents about their

10:18:38  21   products, about their financials.

10:18:40  22       THE COURT:  Well, I'm -- I certainly will handle

10:18:46  23   issues raised by your side in the same fashion, but I'm not

10:18:53  24   going to simply order them off the cuff to do something.

10:18:56  25       MR. YANG:  That's not what I'm asking.  I'm saying

10:18:59  1   I think we have an expectation going forward.  But thank

10:19:02  2   you, Your Honor.

10:19:02  3          THE COURT:  All right.  Mr. Halverson?

10:19:04  4          MR. HALVERSON:  Briefly, Your Honor.  So

10:19:09  5   throughout most of today, as far as discussions about when

10:19:12  6   document production would happen once we got to that point

10:19:18  7   in today's argument, Yealink had said three weeks.  Just

10:19:21  8   recently they said we would do it on a rolling basis.  And

10:19:25  9   so this rolling basis has been the issue all along in this

10:19:28 10   case.  We need the documents.

10:19:32 11          Substantial completion of discovery is in January,

10:19:37 12   three months from now, which is in early December --

10:19:39 13   mid-December.  And so whether or not there is a rolling

10:19:43 14   basis is going to be a bit of a problem as we get into

10:19:46 15   report drafting and the close of fact discovery, which is

10:19:49 16   coming very quickly.

10:19:51 17          THE COURT:  You know, a rolling basis tells me

10:19:53 18   that if they have them available in one week, they'll

10:19:56 19   produce what they have in one week.  If they have some

10:20:00 20   others in two weeks, they'll produce those.  But the

10:20:04 21   order will be that they make the production within three

10:20:07 22   weeks.

10:20:08 23          MR. HALVERSON:  Perfect.

10:20:09 24          THE COURT:  And if they can do that on a rolling

10:20:12 25   basis, that's fine with me.

10:20:14    1          MR. HALVERSON:  Sounds good.  Thank you, Your

10:20:15    2    Honor.

10:20:15    3          THE COURT:  All right.  All right.  Thank you.  We

10:20:19    4    are adjourned.

10:20:21    5          COURT SECURITY OFFICER:  All rise.

10:20:23    6          (Hearing concluded at 10:20 a.m.)

            7

            8

            9

           10

           11

           12

           13

           14

           15

           16

           17

           18

           19

           20

           21

           22

           23

           24

           25

1                           CERTIFICATION

2

3          I HEREBY CERTIFY that the foregoing is a true and

4     correct transcript from the stenographic notes of the

5     proceedings in the above-entitled matter to the best of my

6     ability.

7

8

9      /S/ Shelly Holmes                    12/2/2024
       SHELLY HOLMES, CSR, TCRR             Date
10     CERTIFIED SHORTHAND REPORTER
       State of Texas No.: 7804
11     Expiration Date: 10/31/2025

12

13

14

15

16

17

18

19

20

21

22

23

24

25