# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

|  |  |
|---|---|
| BARCO, INC. and BARCO NV, | ) |
| Plaintiffs, | ) ) ) ) Case No. 2:23-CV-00521-JRG-RSP |
| v. | ) ) JURY TRIAL DEMANDED |
| YEALINK (USA) NETWORK TECHNOLOGY CO., LTD., and YEALINK NETWORK TECHNOLOGY CO., LTD. | ) ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

**Table of Contents**

I. NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II. STATEMENT OF THE ISSUES .................................................................................... 2

III. STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................. 2

IV. LEGAL STANDARDS ................................................................................................. 3

V. ARGUMENT .................................................................................................................. 9

   A. By admitting infringement, Yealink has mooted its defenses ..................................... 9

   B. No invalidity under 101 ............................................................................................. 11

      1. Yealink Cannot Prevail on Step 1 .......................................................................... 12

      2. Yealink cannot prevail on Step 2 ........................................................................... 14

   C. No invalidity under 102 or 103 ................................................................................. 14

   D. No invalidity under 112 ............................................................................................. 14

      1. Yealink Cannot Prevail on an Enablement Theory ............................................... 15

      2. Yealink Cannot Prevail on a Written Description Theory ................................... 15

VI. CONCLUSION .............................................................................................................. 16

I.       NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Barco NV and Barco Inc. ("Barco") filed this case against Defendants Yealink Network Technology Co., Ltd. and Yealink (USA) Network Technology Co., Ltd. ("Yealink") on November 14, 2023 asserting infringement of six patents. Dkt. 1. The six patents, U.S. Patent Nos. 10,762,002 ("the '002 Patent"), 10,795,832 ("the '832 Patent"), 10,904,103 ("the '103 Patent"), 11,258,676 ("the '676 Patent"), 11,403,237 ("the '237 Patent"), and 11,422,951 ("the '951 Patent") (collectively, the "Asserted Patents"), generally relate to presentation systems and components of presentation systems. *See generally* Dkt. 1, Exs. 1-6.

In its March 18, 2024, Answer, Yealink included affirmative defenses of noninfringement and invalidity (Dkt. 19 at 11) as well as Counterclaims seeking declaratory judgment of noninfringement (Dkt. 19 at 14-18 (Counts I-VI)) and invalidity, including under 35 U.S.C. §§ 101, 102, 103 and 112 (Dkt. 19 at 18-22 (Counts VII-XII)). In its June 7, 2024, First Amended Answer, Yealink withdrew its Counterclaims, leaving its noninfringement defenses and limiting its invalidity defenses to "35 U.S.C. §§ 112 and/or 101." Dkt. 44 at 10-11. In its March 12, 2025, Third Amended Answer, Yealink admitted that it infringed all asserted claims of the six Asserted Patents. *See generally* Dkt. 85. The asserted claims, and admittedly infringed claims, of the '002 Patent are claims 1-7 and 10. Dkt. 85 at 7-9. The asserted claims, and admittedly infringed claims, of the '832 Patent are claims 1-4, 6-8, 13-14 and 16-19. Dkt. 85 at 9-10. The asserted claims, and admittedly infringed claims, of the '103 Patent are claims 1, 2, 16-17 and 19-20. Dkt. 85 at 11-12. The asserted claims, and admittedly infringed claims, of the '676 Patent are claims 1-20. Dkt. 85 at 12-15. The asserted claims, and admittedly infringed claims, of the '237 Patent are claims 1-5, 7-8, and 19. Dkt. 85 at 15-17. The asserted claims, and admittedly infringed

1

claims, of the '951 Patent are claims 1-15 and 17-21. Dkt. 85 at 17-20. Collectively, these claims are the "Asserted Claims."

## II. STATEMENT OF THE ISSUES

Whether this Court should grant partial summary judgment of no-invalidity of the Asserted Claims because Yealink waived its defenses to Barco's causes of action of patent infringement through Yealink's admissions of infringement of all Asserted Claims.

Whether this Court should grant partial summary judgment of no-invalidity under 35 U.S.C. §§ 102 and 103 because Yealink affirmatively withdrew its Counterclaims and Affirmative Invalidity defenses under 35 U.S.C. §§ 102 and 103.

Whether this Court should grant partial summary judgment of no-invalidity under 35 U.S.C. § 101 because Yealink has not proffered any evidence that any Asserted Claim of the '676 Patent is directed towards an abstract idea and has not provided any evidence regarding whether any claim fails to amount to significantly more than the abstract idea.

Whether this Court should grant partial summary judgment of no-invalidity under 35 U.S.C. § 112 because Yealink has not proffered any evidence that any Asserted Claim of any Asserted Patent is indefinite, not enabled, or invalid for lack of written description.

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS

On June 7, 2024, Yealink served invalidity contentions (attached hereto as Exhibit A). Yealink's invalidity contentions contain no disclosure to support its Counterclaims, which were withdrawn on June 7, 2024, that the Asserted Claims are invalid under 35 U.S.C. §§ 102 and 103.

On June 7, 2024, Yealink served eligibility contentions (attached hereto as Exhibit B).

Yealink did not serve any expert report regarding invalidity. The first expert reports served by Yealink were its rebuttal reports of Mr. Robert Bero—responding to Barco's damages

report—and of Dr. Kevin Almeroth—supporting Mr. Bero's Report (attached hereto as Exhibits C and D respectively).

Yealink has no expert testimony regarding 35 U.S.C. §§ 101, 102, 103, or 112.

Yealink objected to Barco's 30(b)(6) topic regarding Yealink's affirmative defenses and indicated that "Yealink will not provide a witness to testify regarding this Topic." Yealink's objections are attached hereto as Exhibit E.

When asked, Yealink's 30(b)(6) designee, Yan Wang, indicated that Yealink was not aware of any facts that supported its affirmative defenses. An excerpt of Ms. Wang's testimony is attached as Exhibit F.

Yealink has no fact testimony regarding 35 U.S.C. §§ 101, 102, 103 or 112.

## IV.     LEGAL STANDARDS

### A.  Standard for Summary Judgment

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex v. Catrett*, 477 U.S. 317, 322 (1986). Where the movant bears the burden of proof on an issue, the movant must present evidence for each required element of the dispositive issue. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The burden then shifts to the non-movant to raise a genuine issue of material fact in order to defeat the motion. *Id.* If the non-movant bears the burden, the movant is entitled to summary judgment by demonstrating that the non-movant failed to proffer sufficient evidence to make a prima facie case. *See Celotex*, 477 U.S. at 323. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material

3

fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Disputes over irrelevant or unnecessary facts will not defeat a summary judgment motion; rather, the dispute must include a material fact and be genuine "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In ruling on a motion for summary judgment, all facts and evidence must be viewed in the light most favorable to the non-movant. *Id.* at 255.

Mere conclusory allegations are not competent summary judgment evidence and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

### B. Invalidity under 101

Anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. Since patent protection does not extend to claims that monopolize the "building blocks of human ingenuity," claims directed to laws of nature, natural phenomena, and abstract ideas are not patent eligible. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216-17 (2014). The Supreme Court instructs courts to distinguish between claims that set forth patent-ineligible subject matter and those that "integrate the building blocks into something more." *Id.*

The Court determines whether patent claims cover ineligible subject matter using a two-step analytical framework set out by the Supreme Court of the United States in *Alice*. 573 U.S. 208. At the first step, the Court evaluates whether the claims are directed to ineligible subject matter, such as an abstract idea. *Id.* at 217. To do so, the Court looks to the claims' "character as a whole." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Although all claims embody abstract ideas and other ineligible subject matter at some level, the Court's task is to examine "whether the claims [ ] focus on a specific means or method that

4

improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016). In cases like this, the Court is to "consider the claim as a whole...in light of the specification...[and] whether the focus of the claims is on a specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1309 (Fed. Cir. 2020) (cleaned up).

If the challenged claims recite a patent-ineligible concept, the Court then "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Alice*, 573 U.S. 208, 217-18 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78-79 (2012)). This step is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. at 225). The Federal Circuit has explained that "[w]hile the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). As such, "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional **to a skilled artisan** in the relevant field is a question of fact" that must be "proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) (emphasis added).

5

Patent eligibility is a question of law, based on underlying facts. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 2747 (2019), *reh'g denied*, No. 18-1199, 2019 WL 3976449 (Aug. 23, 2019). Whether the claim elements or combination are well-understood, routine, and conventional is a question of fact. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

### C. Invalidity under 102 and 103

Under 35 U.S.C. 102 (pre-AIA), "[a] person shall be entitled to a patent unless" a variety of conditions are met regarding the prior art. Similarly, under 35 U.S.C. 103 (pre-AIA) "[a] patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." However, the burden to establish invalidity rests with the defendant. *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195 (Fed. Cir. 1999) (citing 35 U.S.C. § 282 (1994)).

### D. Invalidity under 112

Every issued patent is presumed valid. *Nat'l Recovery v. Magnetic Separation*, 166 F.3d at 1195 (citing 35 U.S.C. § 282 (1994)). The presumption of validity includes a presumption that the patent complies with 35 U.S.C. § 112. *Id.* (citing *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 941, 15 USPQ2d 1321, 1329 (Fed. Cir. 1990)).

Section 112 states the required content of the patent document. *Nature Simulation Sys. Inc. v. Autodesk, Inc.*, 50 F.4th 1358, 1362 (Fed. Cir. 2022). Section 112(a) provides that the specification must describe the invention in full, clear, concise, and exact terms, as to enable its

6

practice **by any person skilled** in the field of the invention, and must include the best mode known to the inventor:

> § 112. Specification
>
> (a) In General. -- The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

*Id.* The claims define the patent right, and perform the "notice" function of legal documents; thus precision and clarity are necessary. *Id.* (citing *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010)).

To satisfy the written description requirement, a patent's specification must "reasonably convey[ ] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1016 (Fed. Cir. 2022) (quoting *Ariad v. Eli Lilly*, 598 F.3d at 1351). Such possession must be "shown in the disclosure." *Id.* It is not enough that a claimed invention is "an obvious variant of that which is disclosed in the specification." *Id.* (quoting *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997)). Disclosure is essential; it is "the *quid pro quo* of the right to exclude." *Id.* (quoting *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 484 (1974); *also citing Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 970 (Fed. Cir. 2002) ("[D]escription is the *quid pro quo* of the patent system.")). Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party. *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d

1299, 1307 (Fed. Cir. 2008) (citing *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1072–73 (Fed. Cir. 2005)).

The requirement of enablement, stated in 35 U.S.C. § 112, enforces the essential "quid pro quo of the patent bargain" by requiring a patentee to teach the public how "to practice the full scope of the claimed invention." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 959 F.3d 1091, 1099–1100 (Fed. Cir. 2020) (quoting *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1244 (Fed. Cir. 2003)). Although a patent's specification need not "describe how to make and use every possible variant of the claimed invention," "there must be reasonable enablement of the scope of the" claimed invention. *Id.* at 1100 (quoting *AK Steel*, 344 F.3d at 1244). To qualify as "reasonable," "the specification...must teach *those skilled in the art* how to make and use the full scope of the claimed invention without 'undue experimentation.'" *Id.* (quoting *ALZA Corp. v. Andrx Pharm., LLC*, 603 F.3d 935, 940 (Fed. Cir. 2010) (citing *Genentech Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997))) (emphasis added). This statutory requirement is limited to what is claimed. *Id.* Enablement is a question of law based on underlying factual inquiries. *Taylor v. Iancu*, 809 Fed. Appx. 811, 814 (Fed. Cir. 2020) (citing *ALZA*, 603 F.3d 935, 940 (Fed. Cir. 2010) (citing *Enzo v. Calgene*, 188 F.3d at 1369)).

The Supreme Court of the United States has "read [35 U.S.C.] § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform *those skilled in the art* about the scope of the invention with reasonable certainty." *WAPP Tech Ltd. P'ship v. Bank of Am., N.A.*, Civil Action No. 4:21-CV-670, 2022 WL 2463569, at *3 (E.D. Tex. July 6, 2022) (quoting *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014)) (emphasis added). "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Id.* (quoting *Datamize, LLC v.*

8

*Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citations and internal quotation marks omitted in *WAPP*), *abrogated on other grounds by Nautilus*, 134 S. Ct. 2120). "Indefiniteness must be proven by clear and convincing evidence." *Id.* (quoting *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017)).

## V. ARGUMENT

This case involves a single cause of action: patent infringement under 35 U.S.C. § 271. Yealink admits that it is liable for that tort. As a result of this admission, all defenses to that cause of action are moot. Yealink had, in its initial Answer, asserted a counterclaim for invalidity under 35 U.S.C. §§101, 102, 103 and 112 for each Asserted Patent. It withdrew those claims and now has waived each such counterclaim.

Even if not mooted, Yealink cannot prevail on any invalidity theory. It has presented no fact testimony, no expert testimony, served no expert report, and cannot advance any theory regarding how a person of ordinary skill in the art would understand any claim of an asserted patent, or how it may allegedly be invalid. Moreover, without expert testimony, it is unable to advance any evidence regarding *Alice* Step-2. Even if Yealink were able to dance around the lack of expert testimony, its fact witnesses and discovery responses confirm there are no underlying facts in Yealink's possession to support any finding of invalidity. At bottom, there are no facts to support overcoming the presumption of validity and Barco is entitled to summary judgment of no-invalidity.

### A. By admitting infringement, Yealink has mooted its defenses

This district recognizes there is a difference between counterclaims and affirmative defenses. *Flexuspine, Inc. v. Globus Med., Inc.*, No. 6:15-CV-201-JRG-KNM, 2016 WL 9276025, at *4 (E.D. Tex. Oct. 3, 2016), aff'd, 879 F.3d 1369 (Fed. Cir. 2018) ("a judgment of non-

9

infringement necessarily moots an affirmative defense of invalidity, but not necessarily a counterclaim of invalidity."). An affirmative defense is offered as some reason why the plaintiff's requested recovery for its cause of action should be diminished or eliminated, and a **counterclaim** is "essentially an action which asserts a right to [relief]." *See Am. First Fed., Inc. v. Lake Forest Park, Inc.,* 198 F.3d 1259, 1264 (11th Cir.1999) (quoting *Nat'l Union Fire Ins. v. City Sav.,* 28 F.3d 376, 393 (3d Cir. 1994) (internal quotation marks omitted)); *cf PODS, Inc. v. Porta Stor, Inc.,* 484 F.3d 1359, 1368 (Fed. Cir. 2007) ("[O]ur finding of non-infringement moots any affirmative defense of invalidity, and Porta Stor has not argued its invalidity counterclaim on appeal.");

> Said otherwise:
>
> Imagine a lawsuit as a balance sheet. A plaintiff's claim against a defendant is an asset. Any affirmative defense by the defendant against the plaintiff essentially contests the existence or valuation of that asset. A counterclaim by the defendant against the plaintiff is a liability. Plaintiff's claim and defendant's counterclaim may result in a net recovery for plaintiff or for defendant, but the important thing is that the claim and counterclaim are different lines on the ledger.

*F.D.I.C. v. Stovall*, No. 2:14-CV-00029-WCO, 2014 WL 8251465, at *2 (N.D. Ga. Oct. 2, 2014). Indeed, a counterclaim of invalidity gives rise to federal question jurisdiction when pled, whereas an affirmative defense of invalidity in the same contract dispute does not. Fed. R. Civ. P. 8; *Ameranth, Inc. v. ChowNow, Inc.*, No. 3:20-cv-02167-BEN-BLM, 2021 WL 3686056, at *7, *18 (S.D. Cal. Aug. 19, 2021). When distinguishing the two, a counterclaim requires an independent adjudication of the claim, whereas an affirmative defense can be mooted through other actions in the litigation. *Id.* at *13 (citing *Cardinal Chem. Co. v. Mortin Int'l, Inc.*, 508 U.S. 83, 100-03 n.11, (1993)).

The distinction between Yealink's now withdrawn counterclaims and its mooted affirmative defenses is material in this case. Yealink previously pled a counterclaim of invalidity,

10

that is, an independent cause of action contesting the validity of Barco's patents in its original Answer.  Dkt. 19.  However, Yealink withdrew that independent cause of action, choosing instead to rely on its ***defenses*** to Barco's requested relief.  Dkt. 44 at 10-11.  When Yealink agreed that it was liable for Barco's cause of action, any defenses it may have had to that cause of action became moot.  Because Yealink admits that it is liable for the claim against it, it no longer has any defenses to that claim.

Accordingly, as a matter of law, Yealink is prohibited from raising any defenses to the allegations it has admitted.

### B.  Yealink Cannot Establish Any Claim is Invalid Under § 101

Yealink cannot establish any claim of the '676 Patent is invalid under 35 U.S.C. §101.[1]  The independent claims of the '676 Patent fail both steps of the *Alice* test.  Step 1 of the *Alice* test requires an analysis to determine whether the claims of the '676 Patent are directed towards an ineligible concept, such as an abstract idea.  Yealink incorrectly posits that the claims of the '676 Patent are directed towards nothing more than the abstract idea of "displaying information upon a certain condition being met."  This ignores the myriad limitations that make up the claims of the '676 Patent and runs afoul of a cardinal sin of the 101 analysis: oversimplification of what the claims are directed towards.  *Enfish v. Microsoft*, 822 F.3d at 1338 (reversing district court finding that improperly simplified what the claims were directed towards).

Under Step 2, assuming solely for the sake of briefing, that the claims of the '676 Patent are indeed directed towards Yealink's alleged abstract idea, the remaining limitations confirm that "the claims here do more than simply instruct the practitioner to implement the abstract idea...on

---

[1] Yealink's eligibility contentions only questions the patentability of the '676 Patent and therefore Yealink has waived any right to argue the unpatentability of any other Asserted Patent under 35 U.S.C. §101.

11

a generic computer." Rather, the claims of the '676 Patent are directed towards a specific implementation, using specific hardware and steps to display information when specific conditions are present. Furthermore, Yealink has presented no evidence in the record that the claims of the '676 Patent do not transform the allegedly abstract idea into patent eligible subject matter.

At bottom, Yealink can offer no evidence that overcomes the clear and convincing evidence burden it must satisfy, and the Court should grant this motion.

### 1.     Yealink Cannot Prevail on Step 1

The claims of the '676 Patent are not directed towards "displaying information upon a certain condition being met." This type of over-simplification is exactly what the Federal Circuit cautioned against in *Enfish*. 822 F.3d at 1335. Rather, the three independent claims of the '676 Patent have specific steps and hardware associated with the methods and tools claimed therein. For example, Claim 1 of the '676 Patent specifically requires a unique configuration of base unit, display node, and a peripheral presentation that includes within it a wireless transceiver. Exhibit G, Cl. 1. These components are all collectively configured in a manner that allows for the communication of information "between the processing device and a class of peripheral devices." *Id.*

Independent Claim 14 of the '676 Patent requires a base node, a peripheral device, a processing device, and a display, all communicating with each other to facilitate not only the display of media, but the transmission and receipt of that media. *Id.* at Cl. 14. The claim goes on to specifically explain how a forcing rule allows for a user action to determine whether the media from one user or a different user is displayed, without requiring an agreement between those users. *Id.*

Independent Claim 16 of the '676 Patent is expressly directed towards the electronic meeting tool itself (in the same way the patent uses the phrase "tools for collaboration", *see id.* at 1:30), requiring a tool that includes a base unit coupled to a display, a peripheral device, and an input device, all hardware that specifically communicates to allow for the type of collaboration set forth in the '676 Patent. *Id.* at Cl. 16.

Yealink offers no factual evidence or expert testimony in support of what it alleges the claims of the '676 Patent are directed. Rather, the '676 Patent specification and claims are clear. The claims provide specific structure, sufficient to establish that Yealink cannot meet its burden of Step 1 of the *Alice* test. *See Multimedia Techs. Pte. Ltd. v. LG Elecs. Inc.*, No. 2:22-CV-00494-JRG-RSP, 2025 WL 366397, at *9 (E.D. Tex. Jan. 6, 2025), report and recommendation adopted, No. 2:22-CV-00494-JRG-RSP, 2025 WL 366476 (E.D. Tex. Jan. 31, 2025) (confirming that the hardware claimed in the claims of a patent can be sufficient to prevail on step 1).

Moreover, many of the dependent claims provide further evidence of how the claims are not directed towards the abstract idea of "displaying information upon a certain condition being met." For example, dependent Claim 3 specifies that the server program of claim 2 is a "portable application," as the term is defined in the specification. *See id.* at 12:23-13:3. This application is specific to distinguishing the claimed invention from the prior art. *See id.* at 18:54-67. Dependent Claim 4 further specifies additional hardware associated with the claimed peripheral device, that it include an actuator that is triggered by a user. *Id.* at Cl. 4. Dependent Claim 6 provides even more hardware specificity tied to the claimed peripheral device. *Id.* at Cl. 6. Dependent Claim 17 specifically claims the plurality of users, and adds specificity regarding how different user interaction triggers the display of the different user's media. *Id.* at Cl. 17.

13

The claims of the '676 Patent are not directed towards "displaying information upon a certain condition being met."

### 2. Yealink Cannot Prevail on Step 2

Yealink has no expert testimony and no fact testimony regarding step 2. Even if it is successful in establishing that the claims of the '676 Patent are directed towards an abstract idea, it cannot satisfy its burden as it relates to whether the claims add features that are merely "well-understood, routine, and conventional."

Yealink's corporate witness designated to "[t]he complete factual basis for Yealink's affirmative defenses" testified that Yealink had no knowledge of any factual basis to support Yealink's 101 defense. *See* Exhibit F, 89:23-90:7; Exhibit E, Topic 30. Yealink did not serve an expert report regarding invalidity and therefore cannot proffer any evidence regarding step 2 of the *Alice* analysis. As a result, Yealink has no evidence to carry its burden under step 2.

In view of the foregoing, Yealink cannot meet its clear and convincing evidence burden to establish that any claim of the '676 Patent is invalid under 35 U.S.C. § 101.

### C. Yealink Cannot Establish Any Claim is Invalid Under §§ 102 or 103

Yealink has identified no prior art-based invalidity theory. Yealink has submitted no invalidity expert report or opening reports of any kind. Yealink's technical expert confirmed that he was not offering an invalidity opinion. Exhibit H, 34:1-5 (Deposition Testimony of Dr. Kevin Almeroth). Yealink's invalidity contentions identify no prior art references or theories. As a result, Yealink cannot provide any evidence in support of any theory of invalidity under either 35 U.S.C. § 102 or 35 U.S.C. § 103.

### D. Yealink Cannot Establish Any Claim is Invalid Under § 112

Invalidity under 35 U.S.C. § 112 necessarily relies on how a person of ordinary skill in the art would understand the claims. As Yealink has no expert testimony on §112, it cannot meet its clear and convincing burden necessary to prevail on a §112-based invalidity theory. As a result, the Asserted Claims are not invalid under 35 U.S.C. §112.

### 1. Yealink Cannot Prevail on an Enablement Theory

A patent specification must include "a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any ***person skilled in the art*** ... to make and use the same." *Amgen Inc. v. Sanofi*, 598 U.S. 594, 605 (2023) (citing 35 U.S.C. § 112(a)). Yealink lacks any testimony regarding whether a person of ordinary skill in the art would be unable to make and use the claimed inventions from the Asserted Patents. Yealink served no expert report regarding enablement or how a person of ordinary skill in the art would interpret any claim element.

Moreover, Yealink's technical expert confirmed that he was not offering an invalidity opinion. Exhibit H, 34:1-5.

As a result, there is no evidence in the case, let alone enough evidence to overcome the presumption of validity the Asserted Patents are entitled to, to support a finding that any claim of any Asserted Patent is invalid for lack of enablement.

### 2. Yealink Cannot Prevail on a Written Description Theory

Yealink has no testimony regarding whether a person of ordinary skill in the art would understand whether the inventors possessed the invention claimed in any of the Asserted Patents. *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1016 (Fed. Cir. 2022) (To satisfy the written description requirement, a patent's specification must "reasonably convey[ ] to

15

***those skilled in the art*** that the inventor had possession of the claimed subject matter as of the filing date.") (emphasis added).  Yealink served no expert report regarding written description.

Moreover, Yealink's technical expert confirmed that he was not offering an invalidity opinion.  Exhibit H, 34:1-5.

As a result, there is no evidence in the case, let alone enough evidence to overcome the presumption of validity the Asserted Patents are entitled to, to support a finding that any claim of any Asserted Patent is invalid for lack of written description.

## VI. CONCLUSION

Yealink has no fact evidence it can marshal, or any expert testimony, in support of any invalidity theory.  Accordingly, Yealink cannot carry its clear and convincing burden to establish that any Asserted Claim is invalid.  There is no genuine dispute about any material fact, and Barco is entitled to judgment as a matter of law that the claims are not invalid.

| | |
|---|---|
| Dated: June 17, 2025 | Respectfully submitted,<br><br>*/s/ Erik J. Halverson*<br>Melissa Smith (Texas Bar No. 24001351)<br>Andrew T. Gorham<br>**GILLAM & SMITH, LLP**<br>303 South Washington Avenue<br>Marshall, Texas 75670<br>Telephone: +1 903 934 8450<br>Facsimile: +1 903 934 9257<br>melissa@gillamsmithlaw.com<br>tom@gillamsmithlaw.com<br><br>Christopher Centurelli (*pro hac vice*)<br>christopher.centurelli@klgates.com<br>Anna E. L'Hommedieu (*pro hac vice*)<br>Anna.lhommedieu@klgates.com<br>Joshua N. Andrews (*pro hac vice*)<br>Joshua.Andrews@klgates.com<br>**K&L GATES LLP**<br>1 Congress Street, Suite 2900<br>Boston, MA 02114-2023<br>Telephone: (617) 261-3100<br><br>Erik J. Halverson (Bar No. 333492CA)<br>erik.halverson@klgates.com<br>**K&L GATES LLP**<br>Four Embarcadero Center,<br>Suite 1200<br>San Francisco, CA 94111<br>Telephone: (415) 882-8238<br><br>*Attorneys for Plaintiffs*<br>*Barco, Inc. and Barco N.V.* |

17

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2025, all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3).

*/s/ Erik J. Halverson*
Erik Halverson
