# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

|  |  |
|---|---|
| BARCO, INC. and BARCO NV, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 2:23-CV-00521-JRG-RSP |
| | ) |
| v. | ) JURY TRIAL DEMANDED |
| | ) |
| YEALINK (USA) NETWORK | ) ▮▮▮▮▮▮▮▮▮▮ |
| TECHNOLOGY CO., LTD., and | ) |
| YEALINK NETWORK | ) |
| TECHNOLOGY CO., LTD. | ) <u>PUBLIC / REDACTED VERSION</u> |
| | ) |
| Defendants. | ) |
| | ) |

# PLAINTIFFS' MOTION TO STRIKE
# DR. ALMEROTH'S OPINIONS

i

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | NATURE AND STAGE OF THE PROCEEDINGS | 3 |
| III. | LEGAL STANDARD | 4 |
| IV. | NON-INFRINGING ALTERNATIVES | 6 |
| V. | COMPARISON TO PRIOR ART | 8 |
| VI. | PREJUDICE | 9 |
| VII. | CONCLUSION | 10 |

I. **INTRODUCTION**

Defendants seek to offer expert testimony regarding, among other things, several alleged "non-infringing alternatives" that were purportedly available and acceptable to the Accused Products' end users and certain alleged "prior art" references that their expert, Dr. Kevin Almeroth believes "the Patent Trial and Appeal Board will [allegedly use to] cancel most of the claims of the asserted patents." Exhibit A (Almeroth Expert Report, served May 15, 2025). These alleged "non-infringing alternatives" and "prior art" references, however, were not timely disclosed by Defendants during discovery and Plaintiff Barco was not provided the opportunity to investigate or challenge these late identified allegations. As a result, Defendants attempted reliance on these untimely disclosed facts should be stricken from the Almeroth Expert Report and Defendants should be precluded from offering evidence at trial, expert or otherwise, concerning them.

For example, on June 25, 2024, Barco served Interrogatory 13 asking Defendants to "Identify and describe in detail each alleged non-infringing alternative for each invention claimed by the Asserted Patents, including, without limitation, any such alternatives that Defendants may rely on as evidence to attempt to establish a reasonable royalty…." Exhibit B (Barco's Second Set of Interrogatories served June 25, 2025). Rather than provide a substantive response, Defendants instead stated: "it will supplement its response to this Interrogatory as more information becomes available and as required by the Court's Docket Control Order." Exhibit C (Defendants' Response to Barco's Second Set of Interrogatories, served July 25, 2024). A year of discovery proceeded, and only at 5:46 PM on the *last* day of fact discovery, did Defendants provide its first, and only, substantive response:

> *at least other methods for connecting a personal, or peripheral, device such as a computer or a laptop to a base unit, including wired connections, and other wireless connections including connections through protocols such as AirPlay,*

1

> *MiraCast, SmartShare, Screen Mirroring, and SmartView. Yealink further identifies meeting platforms such as Microsoft Teams, Zoom, Cisco WebEx, and Google Meet provide the capability for a user to connect a personal, or peripheral device and wirelessly share contents from that device.*

Exhibit D (Defendants' First Supplemental Response to Barco's Second Set of Interrogatories, Interrogatory 13, serve by email at 5:46 PM on April 18, 2025). This late disclosure left no opportunity for Barco to investigate these products, or to probe either their alleged acceptability and availability to end users.

Similarly, Defendants' P.R. 3-3 and 3-4 Invalidity Contentions, served June 7, 2024, identified *no* allegedly invalidating prior art references. Exhibit E. Instead, for the first time, only after the close of fact discovery and service of Barco's expert reports, did Defendants seek to identify *ten* allegedly invalidating "prior art" references that it contends "the difference from the patented invention and the prior art is minimal, if there is even a patentable distinction, which I disagree with." Exhibit A at ¶107. Like the alleged "non-infringing alternatives", Defendants untimely attempt to use a ***rebuttal*** expert report to inject an undisclosed prior art defense, left Barco, or its expert, Dr. Mike Brogioli, no opportunity to respond.

Further, Defendants' attempted reliance on events allegedly pending before the Patent Trial and Appeal Board is in direct contradiction to this Court's Standing MIL No. 6:

> *The parties shall be precluded from introducing evidence, testimony, or argument concerning the Patent Trial and Appeal Board, inter partes review, the Smith-Leahy America Invents Act, or any alternative structure that does not relate directly to an Article III trial in a district court.*

Accordingly, Dr. Almeroth's opinions at ¶¶17, 54-65, 80-109 (opining on and comparing the differences of the prior art to the patented features of the Asserted Claims and the technical

2

importance of the patented features over the non-infringing alternatives at the time of the hypothetical negotiation) and ¶¶114-137 (opining on allegedly available and acceptable non-infringing alternatives) should be stricken from his report, and Defendants should be precluded from providing trial testimony about them. *See* Exhibit A.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Barco NV and Barco Inc. ("Barco") filed this case against Defendants Yealink Network Technology Co., Ltd. and Yealink (USA) Network Technology Co., Ltd. ("Yealink or Defendants") on November 14, 2023, asserting infringement of six patents. Dkt. 1. The six patents, U.S. Patent Nos. 10,762,002 ("the '002 Patent"), 10,795,832 ("the '832 Patent"), 10,904,103 ("the '103 Patent"), 11,258,676 ("the '676 Patent"), 11,403,237 ("the '237 Patent"), and 11,422,951 ("the '951 Patent") (collectively, the "Asserted Patents"), generally relates to presentation systems and components of presentation systems. *See generally* Dkt. 1, Exs. 1-6.

In its Answer, Defendants included affirmative defenses of non-infringement and invalidity including but not limited to one or more of 35 U.S.C. §§ 101, 102, 103 and 112 (Dkt. 19 at 11) as well as Counterclaims seeking declaratory judgment of non-infringement (Dkt. 19 at 14-18 (Counts I-VI)) and invalidity including but not limited to under 35 U.S.C. 101, 102, 103, and 112. Dkt. 19 at 18-22 (Counts VII-XII). In its First Amended Answer, Defendants withdrew its Counterclaims, leaving its defenses of non-infringement and invalidity under 35 U.S.C. § 112 and/or 35 U.S.C. § 101 (withdrawing any previously asserted prior art defenses under §§ 102 and 103). Dkt. 44 at 10-11. In its Third Amended Answer, Defendants admitted to infringement of all Asserted Claims, leaving only a trial on invalidity under 35 U.S.C. §101 or §112, damages, willfulness, and Barco's request for permanent injunctive relief.[1] *See generally* Dkt. 85. The

---

[1] Barco is simultaneously moving for summary judgement of no invalidity.

3

asserted claims, and admittedly infringed claims, of the '002 Patent are claims 1-7 and 10.  Dkt. 85 at 7-9.  The asserted claims, and admittedly infringed claims, of the '832 Patent are claims 1-4, 6-8, 13-14 and 16-19.  Dkt. 85 at 9-10.  The asserted claims, and admittedly infringed claims, of the '103 Patent are claims 1, 2, 16-17 and 19-20.  Dkt. 85 at 11-12.  The asserted claims, and admittedly infringed claims, of the '676 Patent are claims 1-20.  Dkt. 85 at 12-15.  The asserted claims, and admittedly infringed claims, of the '237 Patent are claims 1-5, 7-8, and 19.  Dkt. 85 at 15-17.  The asserted claims, and admittedly infringed claims, of the '951 Patent are claims 1-15 and 17-21.  Dkt. 85 at 17-20.  These claims collectively are the "Asserted Claims."

### III. LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993).  District courts are accorded broad discretion in making Rule 702 determinations of admissibility.  *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable").  Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate

inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

The purpose of the Local Rules is to "further the goal of full, timely, discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush." *See Personalized Media Communs., LLC v. Apple, Inc.*, No. 2:15-cv-01366-JRG, 2021 WL 310789, at *2 (E.D. Tex. Jan. 29, 2021). While it is a Plaintiff's burden to prove its damages (*Lucent Techs., Inc. v.*

5

*Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) ("The burden of proving damages falls on the patentee.")), this is not an invitation to a defendant "to withhold its evidence of non-infringing alternatives until rebuttal." *Correct Transmission, LLC v. Nokia of Am. Corp.*, No. 2:22-CV-00343-JRG-RSP, 2024 WL 1289821, at *4-5 (E.D. Tex. Mar. 26, 2024).

### IV.  NON-INFRINGING ALTERNATIVES

Defendants bear the burden to show that an alternative product is non-infringing, available, and acceptable. As a result, this is an opinion that must be presented in an opening expert report, not in a rebuttal report as Yealink did here. *Correct Transmission v. Nokia*, 2024 WL 1289821, at *4-5 ("The Court agrees with [Plaintiff] that it is [Defendant's] burden to show that an alternative is noninfringing and thus should have been raised in an opening report."). As this Court has already found, "showing that no non-infringing alternatives exist is not a requirement to prove a reasonable royalty." *Id.* at 8 (citing *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971) (describing factors, not requirements, for reasonable royalty awards.); *see also RSB Spine, LLC v. DePuy Synthes Sales, Inc.*, No. CV 19-1515-RGA, 2022 WL 17084156, at *4 (D. Del. Nov. 18, 2022) ("The existence of alternative products may affect some of the fifteen factors, but the entire possibility of an award does not turn on the alternative's existence.")). Further, a reasonable royalty analysis is to limit damages to the advantage of defendants. *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1347, 51 U.S.P.Q.2d 1556 (Fed. Cir. 1999) (noting that the district court ruled that the difference in production costs between infringing and non-infringing products "effectively capped the reasonable royalty award"). As such a non-infringing alternative analysis as part of a reasonable royalty damages theory acts more similarly to an affirmative defense.

The technical showing that an alternative is non-infringing is the burden of Defendants, and Defendants alone. *Correct Transmission v. Nokia*, 2024 WL 1289821, at *4-5; *see also LaserDynamics, Inc. v. Quanta Computer, Inc.*, No. 2:06-CV-348, 2011 WL 197869, at *3 (E.D. Tex. Jan. 20, 2011), *objections overruled,* No. 2:06-CV-348, 2011 WL 13196509 (E.D. Tex. Jan. 28, 2011) ("[Defendant], therefore, bears the burden of proving that the non-infringing alternatives were 'available' to it during the accounting period."). Here, Yealink should have provided its analysis in an opening report. *Id.* It failed to and therefore its offered opinions on allegedly "non-infringing alternatives" should be stricken.

Moreover, the instant facts, where Defendants have admitted infringement and elected to provide *no* opening report at all, means there is simply no argument that Dr. Almeroth's opinions can be considered "responsive" to any Barco infringement analysis.

Even setting aside the burden issue (which should be dispositive regarding these paragraphs of Dr. Almeroth's report), Defendants' decision to withhold identifying any alleged non-infringing alternative until 5:46 PM on the very last day of fact discovery warrants striking the factual basis for these opinions. Defendants' failure to disclose any of these alleged non-infringing alternatives until after 5 PM on the last day of fact discovery should not be rewarded. Early in fact discovery, Barco propounded an interrogatory seeking an identification of any non-infringing alternative Defendants contended existed, was available, and acceptable. Exhibit D at 3 (Interrogatory 13). Defendants provided Barco a non-substantive response, that "it will supplement its response to this Interrogatory as more information becomes available and as required by the Court's Docket Control Order." Exhibit D at 4. Defendants' failure to identify any alleged non-infringing alternative prior to the close of fact discovery is not consistent with a party's obligations under the Discovery Order in this case. Dkt. No. 24 at 8 ("A party is not

7

excused from the requirements of this Discovery Order because it has not fully completed its investigation of the case."). Defendants' response also contravenes its Duty to Supplement, as set forth in the same Discovery Order. *Id.* at 6 ("each party is under a duty to supplement or correct its disclosures **immediately** if the party obtains information on the basis of which it knows that the information disclosed was either incomplete or incorrect when made, or is no longer complete or true.").

By failing to supplement its discovery responses for the better part of 10 months, from June 25, 2024, when this request was first served until April 2025 when Defendants' only substantive response was provided, Defendants have effectively blocked Barco's ability to take discovery into the acceptability and availability of these alleged non-infringing alternatives. Defendants' complete disregard of its discovery obligations should not be rewarded and Dr. Almeroth should not be permitted to testify as to this information.

As a result, Dr. Almeroth's opinions at ¶¶17, 54-65, and 114-137 (opining on allegedly available and acceptable non-infringing alternatives) should be stricken from his report. *See* Exhibit A.

## V.   COMPARISON TO PRIOR ART

Just like the late disclosed non-infringing alternatives, Defendants' failure to timely identify alleged "prior art," and its subsequent attempts to back-door its IPR invalidity theories via its rebuttal report, should also be stricken. Like the disclosures stricken in *Correct Transmission v. Nokia*, this identification of prior art is something that should have been in Defendants' invalidity contentions, or certainly at least in an opening report, not a rebuttal report. 2024 WL 1289821, at *4-5. By failing to serve invalidity contentions identifying any alleged "prior art" arguments or any opening report, Defendants have prevented Barco from being able

8

to present or otherwise respond to these opinions.  Moreover, Dr. Almeroth's statements regarding his involvement in the IPRs and his opinion that "the validity of the independent claims is substantially in doubt, and only a few narrow dependent claims would remain if the PTAB eventually cancels the instituted claim," confirm the true motive behind his inclusion of these references. (Exhibit A, ¶80). Notably, the references he relies on from ¶¶80-109 are all references used in his IPR declarations and are references that form part of Yealink's challenge to some of the Asserted Patents, confirming the intent to present a back-door invalidity theory.  Yealink had the opportunity to raise prior art in either its contentions or in an opening report and it failed to do so.  As a result, those opinions are late-disclosed.  *Correct Transmission v. Nokia*, 2024 WL 1289821, at *4-5.

For the same reasons outlined above, Dr. Almeroth's opinions at ¶¶80-109 (opining on and comparing the differences of the prior art to the patented features of the Asserted Claims and the technical importance of the patented features over the non-infringing alternatives at the time of the hypothetical negotiation) should also be stricken.

## VI.    PREJUDICE

Akin to *Correct Transmission*, "[Defendants'] late disclosure here is grounds to exclude this testimony.  [Defendants'] delay between opening and rebuttal report, while a short delay, is significant at this late stage. [Barco] will be significantly prejudiced by [Defendants'] late disclosure as it prevents [Barco] from providing expert rebuttal without leave of the Court." Allowing Dr. Almeroth's untimely disclosed opinions to be presented would be highly prejudicial given the late stage of the case and close proximity to trial.  Moreover, Defendants' dilatory behavior regarding supplementation of information that otherwise could, and should, have shared much earlier in the case is further evidence that supplemental reports and depositions, coupled

9

with the necessary continuance to account for those exercises, would not be an appropriate remedy.

## VII. CONCLUSION

Dr. Almeroth's opinions at ¶¶17, 54-65, 80-109 (opining on and comparing the differences of the prior art to the patented features of the Asserted Claims and the technical importance of the patented features over the non-infringing alternatives at the time of the hypothetical negotiation) and ¶¶114-137 (opining on allegedly available and acceptable non-infringing alternatives) should be stricken from his report and Defendants should be precluded from presenting testimony on these matters. *See* Exhibit A (Almeroth Report).

Dated: June 17, 2025

Respectfully submitted,

*/s/ Erik J. Halverson*
Melissa Smith (Texas Bar No. 24001351)
Andrew T. Gorham
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: +1 903 934 8450
Facsimile: +1 903 934 9257
melissa@gillamsmithlaw.com
tom@gillamsmithlaw.com

Christopher Centurelli (*pro hac vice*)
christopher.centurelli@klgates.com
Anna E. L'Hommedieu (*pro hac vice*)
Anna.lhommedieu@klgates.com
Joshua N. Andrews (*pro hac vice*)
Joshua.Andrews@klgates.com
**K&L GATES LLP**
1 Congress Street, Suite 2900
Boston, MA 02114-2023
Telephone: (617) 261-3100

Erik J. Halverson (Bar No. 333492CA)
erik.halverson@klgates.com
**K&L GATES LLP**
Four Embarcadero Center,
Suite 1200
San Francisco, CA 94111
Telephone: (415) 882-8238

*Attorneys for Plaintiffs*
*Barco, Inc. and Barco N.V.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a) and served via email on all counsel of record on June 17, 2025.

*/s/ Erik J. Halverson*

## CERTIFICATE OF AUTHORIZATION TO SEAL

I hereby certify that pursuant to Local Rule CV-5(a)(7), the foregoing document was filed under seal pursuant to the Court's Protective Order entered in this matter (Dkt. 30).

*/s/ Erik J. Halverson*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), the undersigned hereby certifies that counsel for the parties met and conferred on June 13, 2025 by telephone, and Defendants have stated they oppose this Motion.

*/s/ Erik J. Halverson*