UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BARCO, INC. and BARCO NV, <br><br>    Plaintiffs, <br><br> v. <br><br> YEALINK (USA) NETWORK TECHNOLOGY CO., LTD., and YEALINK NETWORK TECHNOLOGY CO., LTD. <br><br>    Defendants. | Case No. 2:23-CV-00521-JRG-RSP |

**OPPOSITION TO DEFENDANTS' *DAUBERT* MOTION
TO STRIKE OPINIONS OF DR. BROGIOLI**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  **DR. BROGIOLI'S OPINIONS ARE PROPER** ............................................................ 2

   A.  **Dr. Brogioli's Opinions on Infringement Are Proper** ..................................................... 2

   B.  **Dr. Brogioli's Opinions Regarding Yealink's Ongoing Infringement are Proper** ...... 4

   C.  **Dr. Brogioli's Opinions Regarding Yealink's Failure to Cease its Willful Infringement are Proper** ........................................................................................................ 6

III. **DR. BROGIOLI'S RELIANCE ON BARCO'S EVIDENCE IS PROPER** ................ 7

i

I. **INTRODUCTION**

Yealink admits infringement of each Asserted Claim of the Asserted Patents. *See e.g.,* Dkt. 85 (Third Amended Answer) at ¶¶ 41, 51, 61, 71, 81, 91. One issue the parties will contest at trial is whether Yealink's infringement is ongoing. *Compare e.g.,* Dkt 1 at ¶ 39 (alleging infringement is ongoing) *with* Dkt. 85 at ¶ 39 (denying ongoing infringement). For example, Barco alleges both direct and indirect infringement in its complaint. Dkt. 1 at ¶¶ 41, 51, 61, 71, 81, 91. In response, "Yealink admits that its WPP30 Presentation Pod and WPP20 Presentation Pod, **when used** with a connected device, infringed claims 1-7 and 10 of the '002 Patent." Dkt. 85 at ¶ 41. Yealink makes similar representations for the remaining patents. *See* Dkt. 85 at ¶¶ 51, 61, 71, 81, 91. Yealink seeks to qualify its admissions, however, by repeatedly stating "Yealink has already **recalled** its WPP30 Presentation Pod and WPP20 Presentation Pod products in the U.S. and has expressly instructed its U.S. distributors to cease all sales of Yealink's WPP30 Presentation Pod and WPP20 Presentation Pod products" in an attempt to cabin its liability to acts before May 2024. Barco intends to establish through Dr. Brogioli, that Yealink continued to induce its customers infringement long after May 2024, and seek damages for those acts. *See e.g.,* 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer.").

Mr. Brogioli plans to testify that Yealink's customers continue to infringe through their ongoing use of the Accused Products and Yealink induces its customers' continued infringement. For example, Yealink was aware of its infringement as of May 2023, and certainly as of September 2024 when it first admitted infringement of a subset of the Asserted Claim. *See* Dkt. 47 at ¶¶ 41, 51, 61, 71, 81, 91. Dr. Brogioli will opine that Yealink continues to advertise, support and instruct end-users of Yealink's admittedly infringing products in the United States at least as of his June 10, 2025 deposition, inducing direct infringement by its customers. Yealink's novel assertion that

Dr. Brogioli's opinions should be stricken as "conclusory" because he *agrees* with Yealink's admissions of infringement is not proper grounds to exclude his offered testimony.

## II.    DR. BROGIOLI'S OPINIONS ARE PROPER

Yealink seeks to strike ¶¶ 101-103, 112-116, 123-130, 138-142, 150-156, 165-170, 176, 24, and 184, and portions of Appendix B concerning Yealink, of Dr. Brogioli's expert report as inadmissible under *Daubert* and Rule 702, and strike ¶¶ 83, 85, and 86 of Dr. Brogioli's report that rely on the belatedly disclosed Barco document. Dkt. 112 at 5.

### A.  Dr. Brogioli's Opinions on Infringement Are Proper

Yealink admits the accused products infringe all asserted claims. *See* Dkt. 85 (Third Amended Answer) at ¶¶ 41, 51, 61, 71, 81, 91. Dr. Brogioli's statements that Yealink infringes are not "unsupported," rather they rely, in part, on Yealink's own admission. Despite its admission, Yealink seeks to exclude Dr. Brogioli's ability to rely on Yealink's admission because Dr. Brogioli did not provide enough analysis of why or how Yealink's productions operate in the manner Yealink admits they do.

Yealink's motion is a last-minute Hail Mary attempt to mitigate its failure to appreciate the impact of its admissions and now tries to limit the fallout. Yealink, in admitting infringement of all asserted claims and cessation of selling its product, attempted to terminate its liability. However, Yealink continues to support and actively encourage its customers' ongoing infringement. As a result, it is liable for ongoing willful indirect infringement. It is this indirect infringement that is the core of what Yealink's motions now seek to exclude.

Yealink attempts to cloud the issue by alleging that Dr. Brogioli's analysis is "too conclusory." Dr. Brogioli, however, is under no obligation to prove facts Yealink has already admitted. This admission is an admission of how the products operate when Yealink "sells" them,

when Yealink "offers to sell" them, when Yealink's customers "use" them, when Yealink's customers construct an infringing system in the manner instructed by Yealink, and when Yealink's distributors "import" them. Notably, nowhere has Yealink alleged that it stopped infringing, only that it stopped *selling* the accused products in the United States. This confirms that as of the Third Amended Answer, Yealink possesses the requisite mental state to willfully induce the ongoing direct infringement by its customers when they, as instructed by Yealink, create and use Yealink's infringing systems. *See* Dkt. 112, Exhibit A at ¶¶ 177-183 (aggregating evidence of how Yealink directs its customers to create infringing systems). Now, realizing the implications of its admissions, for example, "its WPP30 Presentation Pod and WPP20 Presentation Pod, **when used** with a connected device, infringed claims 1-7 and 10 of the '002 Patent," Yealink seeks to strike opinions of Dr. Brogioli confirming his reliance on Yealink's admitted infringement.

In doing so, Yealink cites a number of cases, but none of them stand for the proposition that a plaintiff's expert must prove a defendant's admission of infringement. Instead, Yealink cherry-picks deposition testimony regarding specific questions asked in an effort to confuse Dr. Brogioli. Dkt. 112, 4-5. For example, Dr. Brogioli was asked a number of questions where Defendants' counsel intentionally asked about elements not part of the claim, admitting he was swapping words in his questions. Exhibit A (Brogioli Deposition at 56:13-17, 34:18-23). This has no bearing on whether Dr. Brogioli can properly rely on Yealink's own admission of infringement.

Further, Yealink incorrectly alleges that Dr. Brogioli's knowledge of direct infringement (by certain individuals in the United States) is somehow evidence that he relied on Barco's fact witnesses to conclude Yealink's products infringe. Dkt. 112 at 9. Rather, this evidence is further proof of Yealink's ongoing direct infringement. Dkt. 112 at Ex. B, 99:23-100:8.

3

Dr. Brogioli is not opining, and does not need to opine, that Yealink's system meets each and every claim element of the Asserted Patents, as Yealink has already admitted to infringement of the Asserted Claims. Rather, Dr. Brogioli properly opines that Yealink's admission that the Accused Products meet the claims provides evidence of Yealink's ongoing indirect infringement, through Yealink continuing effort to induce its end-users to *use* the products in an infringing manner. *See* Dkt. 112, Exhibit A at ¶¶ 177-183 (aggregating evidence of how Yealink directs its customers to create infringing systems).

Yealink cannot walk back its admission of infringement at this stage and the opinions in paragraphs 101-103, 112-116, 123-130, 138-142, 150-156, 165-170, and Appendix B are proper and should not be stricken.

### B. Dr. Brogioli's Opinions Regarding Yealink's Ongoing Infringement are Proper

Yealink seeks to strike paragraph 176 of Dr. Brogioli's report, but it does not seek to strike the preceding paragraphs, 174-175, where Dr. Brogioli states "Yealink still supports the use of the WPP30" in the United States and that "Yealink could have issued an update to disable the use of the WPP30 and could disable the WPP30-releated features through a firmware update issued in the United States," while relying on Yealink's 30(b)(6) technical fact witness who confirmed that Yealink could have done so. Dkt. 112, Exhibit A at ¶¶ 173-175; Exhibit B (Cai Deposition) at 56:18-57:13. Dr. Brogioli also confirmed that the most recent firmware update that Yealink provided was issued on July 16, 2024. Dkt. 112, Exhibit A at ¶ 173 (relying on a screenshot of Yealink's firmware update status webpage, BARCO_0067469, attached as Exhibit C).

Yealink alleges that Dr. Brogioli does not explain the basis of his opinion, however that is exactly what he did in paragraphs 174-175, where, relying on Mr. Cai's testimony that Yealink could disable communication between its WPP30 dongles and connected base units through a

4

firmware update, Dr. Brogioli concludes that "Yealink could have issued a firmware update to disable the use of WPP30 in the United States."

Dr. Brogioli's report properly identifies the support for the fact that Yealink can disable functionality via firmware update: Mr. Cai's testimony. Dr. Brogioli's report properly identifies the support for the fact that Yealink continues to support the accused functionality in the United States: Mr. Cai's testimony. Dr. Brogioli's report properly identifies the support for the fact that Yealink's most recent firmware updates, after purportedly "withdrawing" the product from the market did not stop the ongoing use-based infringement in the United States (despite the fact that it could have): Again Mr. Cai's testimony and Yealink's firmware update status webpage (Exhibit C).

It's unclear what additional analysis Yealink contends Dr. Brogioli should have performed. Yealink's website explains when the most recent firmware update was pushed; Mr. Cai confirmed that Yealink could have disabled the infringing communication through a firmware update. Based on this, Dr. Brogioli draws the very reasonable conclusion that Yealink could have stopped its support and inducement of its customers' ongoing infringement, but has not done so, thereby continuing to support infringing uses by its customers, despite admitting that such a use is an act of infringement. *See e.g.*, Dkt. 85 at ¶ 41 ("Yealink admits that its WPP30 Presentation Pod and WPP20 Presentation Pod, when used with a connected device, infringed claims 1-7 and 10 of the '002 Patent").

Paragraph 176 of Dr. Brogioli's report is supported by the evidence in the preceding paragraphs and the report as a whole and it should not be stricken.

### C. Dr. Brogioli's Opinions Regarding Yealink's Failure to Cease its Willful Infringement are Proper

In addition to the arguments and evidence outlined in Section B above, Dr. Brogioli's opinions in paragraphs 24 and 184 regarding Yealink's ongoing induced infringement are further based on Yealink's own website, as discussed in detail in paragraphs 177-183. Yealink seems to ignore the fact that Dr. Brogioli is not opining on Yealink's intent in paragraph 184, but rather on the ongoing induced infringement, based on the then-existing directions to its customers to use the WPP30 dongles with various base units. *See generally* Dkt. 112, Exhibit A at ¶¶ 177-183. This instruction to its customers on how to use the admittedly infringed WPP30 dongles is ongoing willful indirect infringement. *See e.g.*, Dkt. 85 at ¶ 41 ("Yealink admits that its WPP30 Presentation Pod and WPP20 Presentation Pod, when used with a connected device, infringed claims 1-7 and 10 of the '002 Patent"); 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer."). Every continued act of infringement by Yealink after admitting its products infringe in its September 20, 2024, Second Amended Answer (Dkt. 47) and March 12, 2025 Third Amended Answer (Dkt. 85), constitutes willful infringement.

Unlike Yealink's cited cases, Yealink had admitted infringement, meaning it was aware that, for example, "its WPP30 Presentation Pod and WPP20 Presentation Pod, ***when used*** with a connected device, infringed claims 1-7 and 10 of the '002 Patent." Dr. Brogioli is simply confirming the impact of Yealink's admission that its accused products, ***when used by its customers***, infringe Barco's patents. This is willful induced infringement and, contrary to Yealink's motion, should not be stricken as it is not testimony regarding Yealink's mental state or intent, but rather testimony regarding ongoing willful infringement based on Yealink's own, publicly filed, admissions.

6

Paragraphs 24 and 184 of Dr. Brogioli's report are supported by the evidence in paragraphs 177-183, and Yealink's admission of its own mental state, and they should not be stricken.

### III. DR. BROGIOLI'S RELIANCE ON BARCO'S EVIDENCE IS PROPER

Yealink seeks to exclude paragraphs 83, 85, and 86 under the guise of a document that simply corroborates Barco's witness testimony. As an initial matter, these paragraphs rely on many sources of information, including Barco's witnesses, and third-party Crestron's witnesses, to support Dr. Brogioli's opinions that certain protocols and other features are not acceptable non-infringing alternatives to the admittedly infringed Asserted Patents. *See* Dkt. 112, Exhibit A at ¶¶ 83, 85, 86. Yealink's requested relief of striking these paragraphs in entirety is a gross overstep.

Yealink's motion makes no effort to address why Dr. Brogioli's opinions on acceptable non-infringing alternatives should be stricken, rather it focuses solely on a single reference to a single produced document, Exhibit D to Yealink's motion. *See* Dkt. 112, Exhibit D. For this reason alone, Yealink's requested relief should be denied.

Moreover, this document is merely a graphical representation of what Barco's technical 30(b)(6) deponent testified to, and fully explained to Yealink, during his deposition. Exhibit D (Six Deposition at 199:25-200:7). Yealink does not, and cannot, object to Barco's or Dr. Brogioli's reliance on Mr. Six's deposition testimony.

Yealink's cited case, *Mojo Mobility, Inc. v. Samsung Elecs. Co.*, No. 22-cv-00398-JRG-RSP, 2024 WL 3527240 (E.D. Tex. July 24, 2024) is inapplicable. There, Samsung failed to even respond to Mojo's motion and the evidence at issue was not even provided until after opening expert reports, springing it improperly in a rebuttal report. *Id.* at *8 ("the publication was not addressed in opening reports"), *9 ("Samsung's lack of response undermines any importance of the evidence"), *8 (Samsung "does not address whether the evidence was disclosed prior to Ms.

7

Rowe's reliance."). Here, the evidence that Yealink seeks to strike was produced during fact discovery. *See e.g.*, Dkt. 112 at 12 ("On April 25, **during** the deposition of Barco's final fact witness Mr. Erwin Six, at 12:50 pm eastern time, Barco produced its one-page User Analytics Graphic to Yealink."). The evidence Yealink seeks to strike was available during the parties' opening reports, allowing Yealink the full opportunity to address it in an opening report, respond to it in its rebuttal report, or question Mr. Brogioli's reliance on it. This is entirely different to *Mojo v. Samsung*, where the Court found "Samsung's lack of response undermines any importance of the evidence." *Mojo v. Samsung*, 2024 WL 3527240 at *9. Here, Barco is responding. The evidence is important and entirely consistent with Mr. Six's testimony on the topic.

Yealink's motion further confirms that Dr. Brogioli relies on evidence that Yealink failed to reasonably probe into during Mr. Six's deposition. Mr. Six testified that "From our users who have the app, it's more than 80 percent use the button, 85 even." Exhibit D (Six Deposition at 199:25-200:7). Mr. Six then went on to explain that he knows these numbers because Barco has a user analytics platform. Exhibit D (Six Deposition at 200:8-18). Yealink asked zero follow-up questions about the source of this information. *See generally id.* at 199:25-205:10. Yealink's counsel then asked for a production of this analysis. *Id.* at 204:22-205:8. This information was produced as BARCO_0067568. Yealink cannot exclude information because it elected to not probe into Mr. Six's testimony during his deposition and because the requested information was produced.

Addressing the four *Primrose* factors in turn further supports not striking Barco's reliance on this document. This evidence corroborates Mr. Six's testimony that 85% of Barco's customers prefer to use the dongle as compared to the application. Much of Yealink's damages theory is

8

based on the incorrect, wholly unsupported assumption that an app-based, button-less solution is acceptable to customers. This evidence directly addresses that assumption, confirming that app-based, button-less solutions are not acceptable to customers.

Any prejudice is of Yealink's own making. In response to learning that Barco had a user-analytics platform that confirmed "[f]rom our users who have the app, it's more than 80 percent use the button, 85 even," declined to probe into this platform. Exhibit D, (Six Deposition at 199:25-205:10). Dr. Brogioli's lack of understanding of where this data comes from is irrelevant. Mr. Six testified that the platform exists and described at a high level what the platform was. *Id.* Dr. Brogioli is entitled to rely on that testimony, and the evidence consistent with that testimony.

There is no need to cure any prejudice. This information was timely produced during Mr. Six's deposition in response to the request from Yealink's counsel. Yealink had the opportunity to discuss the platform with Mr. Six, it conducted some discussion during his deposition. There's no need for further investigation out of time.

There is no delayed production. The document requested by Yealink's counsel was produced during Mr. Six's deposition and well before opening expert reports. Unlike in *Mojo*, this document was available to Yealink and Yealink's expert to address in its opening report. It was present and available to address in Yealink's rebuttal report. Yealink has not demonstrated any delay.

To the extent the court believes that the requested and timely-produced exhibit should be stricken, Yealink's requested relief of striking three entire paragraphs is too broad. While Barco disagrees that Yealink is entitled to any relief here, if the court disagrees, only the reference to BARCO_0067568; any reference to Mr. Six or the other evidence in paragraphs 83, 85, and 86 and the conclusions therein should remain.

9

Dated: July 1, 2025                    Respectfully submitted,

*s/ Erik J. Halverson*
Melissa Smith (Texas Bar No. 24001351)
Andrew T. Gorham
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: +1 903 934 8450
Facsimile: +1 903 934 9257
melissa@gillamsmithlaw.com
tom@gillamsmithlaw.com

Christopher Centurelli (*pro hac vice*)
christopher.centurelli@klgates.com
Anna E. L'Hommedieu (*pro hac vice*)
Anna.lhommedieu@klgates.com
Joshua N. Andrews (*pro hac vice*)
Joshua.Andrews@klgates.com
**K&L GATES LLP**
1 Congress Street, Suite 2900
Boston, MA 02114-2023
Telephone: (617) 261-3100

Erik J. Halverson (Bar No. 333492CA)
erik.halverson@klgates.com
**K&L GATES LLP**
Four Embarcadero Center,
Suite 1200
San Francisco, CA 94111
Telephone: (415) 882-8238

*Attorneys for Plaintiffs*
*Barco, Inc. and Barco N.V.*

10

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2025, all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3).

*/s/ Erik J. Halverson*
Erik Halverson
