UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BARCO, INC. and BARCO NV,<br><br>Plaintiffs,<br><br>v.<br><br>YEALINK (USA) NETWORK TECHNOLOGY CO., LTD., and YEALINK NETWORK TECHNOLOGY CO., LTD.<br><br>Defendants. | Case No. 2:23-CV-00521-JRG-RSP<br><br>▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br><br>**PUBLIC / REDACTED VERSION** |

**RESPONSE TO YEALINK'S *DAUBERT* MOTION AND MOTION
TO EXCLUDE EXPERT OPINION OF WILLIAM B. SCALLY**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. MR. SCALLY'S OPINIONS ARE PROPER ............................................................... 3

   A. Mr. Scally's Apportionment ..................................................................................... 3

   B. Mr. Scally's Opinions Regarding Base Units ........................................................... 4

   C. Mr. Scally's Reliance on Accepted Datapoints ........................................................ 5

      1. Proper boundary conditions ................................................................................ 6

      2. Proper factors ...................................................................................................... 6

      3. Proper base unit division .................................................................................... 7

      4. Factual underpinnings ......................................................................................... 7

      5. Mr. Scally's Opinions Are Well-supported ........................................................ 8

   D. Mr. Scally's Projections Are Properly Disclosed .................................................... 9

   E. Mr. Scally's Reliance on Barco's Factual Evidence Is Proper ............................... 11

I.     INTRODUCTION

Yealink's motion to strike the entirety of Mr. Scally's opinion is predicated on a fundamental misapplication of the facts and the governing law.  Unlike every case relied upon by Yealink's motion, this case presents the rare instance of a patent licensor approaching patent owner Barco, **before** developing a competing product to negotiate a license to the Asserted Patents. Exhibit A, ▇▇▇ Deposition, 58:10-23:



Since both the Crestron and the Yealink products operate in substantially the same manner, including essentially the same patented (and unpatented) features, there need not be any further apportionment.  *Vectura Ltd. v. Glaxosmithkline LLC*, 981 F.3d 1030, 1040 (Fed. Cir. 2020) ("when a sufficiently comparable license is used as the basis for determining the appropriate royalty, further apportionment may not necessarily be required…. because a damages theory that is dependent on a comparable license (or a comparable negotiation) may in some cases have 'built-in apportionment.'").  Not only is the Crestron License sufficiently comparable, like that of *Vectura*, it is "much closer than you [typically] ever find in a patent case." *Id.*  And Yealink offers

1

no evidence that Crestron licensed products had more valuable patented features that Yealink's Accused Products lack.

Moreover, Yealink's admission that its products infringe Barco's patents ***when used*** means that, its continued, ongoing, support and directions to customers to continue ***using*** the infringing dongles constitutes willful indirect infringement. This ongoing, willful, infringement is infringement that Barco is entitled to no less than a reasonable royalty from Yealink until it stops inducing its customers' continued direct infringement.

Yealink's motion is simply a disagreement with Mr. Scally's opinions. But Yealink's assertions that Mr. Scally should have weighed the evidence differently does not establish that Mr. Scally's opinions are unreliable or should be stricken.

Finally, Yealink seems to fault Mr. Scally for relying on Barco's testimony that it views Yealink as a bad actor and was more willing to enter into a license agreement with Crestron. This does not mean, however, that Mr. Scally's opinion that Yealink would pay more than Crestron is incorrect. Yealink's assertion that it would have received the same deal, or a better deal, as Crestron is no more correct. For example, Yealink ignores that [REDACTED], whereas Yealink's continued, unauthorized infringement of Barco's patents, even after this case was brought, supported by Barco's testimony that Yealink is an unreliable business partner, leads to Mr. Scally's opinion of a higher negotiated hypothetical royalty rate. These "book of wisdom" facts, [REDACTED], the competitive relationship between Barco and Yealink, and the future terms of the Crestron license, are all properly accounted for and weighed by Mr. Scally. Yealink has not established that any aspect of Mr. Scally's opinion is unreliable or should otherwise be excluded.

## II. MR. SCALLY'S OPINIONS ARE PROPER

Yealink's objections are either overstated, the result of Yealink's own litigation conduct, or are properly managed through cross-examination and the presentation of competing evidence. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of" mitigating); *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). As set forth below, the draconian requested relief to strike the entirety of Barco's damages expert is unwarranted. Rather, Mr. Scally's opinions are properly rooted and should be permitted to be presented.

### A. *Mr. Scally's Apportionment*

Mr. Scally performed the required apportionment by relying on the Crestron license itself. *Vectura Ltd. v. Glaxosmithkline LLC*, 981 F.3d 1030, 1040 (Fed. Cir. 2020); *see also Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1376 (Fed. Cir. 2020) ("there is no blanket rule of *quantitative* apportionment in every comparable license case."). When negotiating the actual license agreement that underscores Mr. Scally's opinions, Barco and Crestron already conducted the exercise of separating the value of Barco's patents from any non-patented aspects of Crestron's products (which, as reflected in Dr. Brogioli's report operate in substantially the same way as Yealink's). *Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015) ("the parties negotiated over the value of the asserted patent, 'and no more.'").

Yealink identifies no feature in the accused product or the Crestron product that provides value that should be excluded from Mr. Scally's analysis. Instead, as supported by the report of Dr. Brogioli, Crestron and Yealink provide, for the purposes of this case, substantially the same

product to Barco's practicing ClickShare product. Unlike most comparable license cases, this case begins with a license to the actually asserted patents, bolstering the understanding that the apportionment is already inherent in the Crestron license. Yealink offers no evidence that the Crestron product includes features licensed from Barco that are not found in the Yealink product, and identifies no patented element Crestron's product possesses that Yealink's infringing products product lack. Further, the license in *Vectura* included "rights to more than 400 patents" but "the fact that other patents were included in the [license] does not fatally undermine [an expert's] theory of comparability." *Vectura* 981 F.3d at 1030, 1041.

Contrary to Yealink's motion, Mr. Scally's analysis already accounts for the value of Barco's patented features and excludes the value of any allegedly unpatented features of Yealink's products.

### B. Mr. Scally's Opinions Regarding Base Units

Mr. Scally allocates some value to base units because there are infringed claims that require base units. While some asserted claims are satisfied by only the importation, sale, offer for sale, or use of the dongles (e.g., all asserted claims of the '103 Patent), other patents in the case expressly require the presence of a base node (e.g., the asserted claims of the '237 Patent), as admittedly infringed by Yealink. Dkt. 113 at 5.

As Yealink points out, Yealink only provided rudimentary data during discovery, sidestepping the sunlight of fulsome discovery in favor of admitting all liability. *Id.* at 6. Mr. Scally was forced to "draw a reasonable inference" regarding the percentage of base units in the United States that were used with dongles. *Id.* citing Dkt. 113, Exhibit B at 226:21-227:7. Yealink is free to cross-examine on the reasonableness of this, but Mr. Scally performed what he considered to be a reasonable approximation given Yealink's strategic decision to provide Barco limited

4

information on the development and use of its admitted infringing dongle and base unit systems. *Daubert v. Merrell Dow*, 509 U.S. at 596. The reasonableness is underscored by the fact that Yealink sold approximately ▉ WPP20 and WPP30 dongles in the United States (including those sold during and before the damages period, but nevertheless used during the damages period). Dkt. 113, Exhibit A (Scally Report) at Exhibit 4. In the same period, only ▉ base units were sold. *Id.* Mr. Scally found it reasonable to make the judicious assumption that, in the absence of database unit use discovery from Yealink, and Yealink's admission that it did not issue a firmware update to disable use of its US-based dongles, that its base units were all used in conjunction with a dongle in a manner that infringed the four asserted system patents.

Moreover, at the very end of fact discovery, Yealink admitted that, in addition to the three base units for which it had provided sales data, Yealink sold an additional ▉ base units products that are infringing for which it has provided *zero* sales data. Exhibit B, Yealink's Response to Rog. 19.[1] These base units are reflected in Mr. Scally's report at, for example, page 27. When pressed for the unit sales information for these products, Yealink responded that "[w]e do not agree the financial information Barco now request is relevant." Exhibit C, Yang Email of May 2.

As a result, Mr. Scally's number is apportioned, as it excludes the unknown thousands of other base units for which Yealink has refused to provide sales information.

### C. Mr. Scally's reliance on accepted datapoints

Yealink further attacks Mr. Scally because it disagrees with the sufficiency of his underlying facts and data. As the Supreme Court explained in *Daubert v. Merrell Dow*, 509 U.S. at 596, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction

---

[1] Yealink initially responded to Interrogatory No. 19 on April 17, and provided this supplemental response on April 18.

on the burden of proof are the traditional and appropriate means of" addressing Yealink's concerns here. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

### 1. Proper boundary conditions

Yealink purports to treat the requirement that the hypothetical negotiation involve "willing parties" as if Barco must have provided the same licensing terms that it accepted from Crestron. Yealink, however, ignores the business realities between Crestron and Yealink vis-à-vis Barco. As Mr. Scally testified, Barco and Crestron do not compete for customers. Dkt. 113, Exhibit A (Scally Report) at ¶54. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, as Mr. Scally addresses in his Factor 5 analysis. *Id.* at ¶¶76-77.

Yealink simply disagrees with Mr. Scally's conclusions and would prefer he perform a different analysis. But as Mr. Scally's report properly articulates a conclusion of the hypothetical negotiation and offers an opinion about what the two willing parties would have agreed to, this is a matter for cross examination, not exclusion.

### 2. Proper factors

Yealink attempts to paint Mr. Scally as if his entire opinion was based solely on "brand awareness," which is not the case. Moreover, Yealink cannot identify any harm, as it acknowledges that any alleged increase could be 0%. Dkt. 113 at 12. Rather than address anything in Mr. Scally's actual report, Yealink elicited testimony during Mr. Scally's deposition in an effort to manufacture a challenge based on an entirely unrelated case. Indeed, nowhere in Mr. Scally's report does he actually say "brand awareness" had any impact on his opinion. *See generally* Dkt. 113, Exhibit A (Scally Report). There are only two instances of the word "brand" in the entire report, one in paragraph 59 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮") and one in paragraph 117 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████"). Neither of these suggest that "brand awareness" had any influence on Mr. Scally's opinions.

### 3. Proper base unit division

Yealink's own paper confirms that Mr. Scally arrived at his proposed 80/20 split in an independent manner. *See* Dkt. 113 at 12. That this is also supported by other data points, such as Barco's licensing practices, does not somehow undermine the fact that Mr. Scally testified it was his number. Yealink's brief improperly attributes a line of questioning tied to the Barco proposal to Yealink as if it were somehow attributable to Mr. Scally's own opinion. *Id.* The 80/20 split referenced at 93:7-10 is the split of the ***Barco proposal***, not Mr. Scally's report. As such, it is entirely reasonable for Mr. Scally to indicate that he did not draft the proposal, because he did not.

Moreover, Yealink takes issue with the fact that Mr. Scally did not rely on ***Yealink's*** offers for settlement; Yealink's offers are plainly unavailable under Federal Rule of Evidence 408. However, if Yealink wishes to waive such protection, Mr. Scally can readily address such evidence. At this stage, such offers remain subject to 408.

Yealink again complains that Mr. Scally weighed evidence differently than it would prefer; yet again, this is not a basis to exclude any opinions but rather is simply the biproduct of the adversarial process that is litigation. Yealink is free to attack Mr. Scally's proposal via cross examination and to advance its own contrary evidence.

### 4. Factual underpinnings

Mr. Scally states that the royalty rate in the Crestron Agreement, including the Annual Minimum Royalties, is inclusive of a royalty on dongles and base units. Dkt. 113, Exhibit A (Scally Report) at 19, n. 101. Because it is.

Mr. Six testified that there is no royalty based on the number of base units sold by Crestron in the *final* agreement. Dkt. 113, Exhibit D at 137:20-23. However, that's because the parties agreed to the use of a dongle only royalty as a proxy for the sale and use of base unit in an otherwise infringing manner. As the questioning went on, and in the portion not presented to the Court, Yealink's counsel went on to specifically limit Mr. Six to the final agreement. Exhibit D, Six Testimony 137:20-138:8. Mr. Six was plainly about to testify that the parties had previously discussed a base unit royalty, which is why, as Yealink notes, the Crestron License includes a definition for base unit. Dkt. 113, Exhibit H at 1 (defining "Base Unit"); *see also* Exhibit A, 89:14-19 ("███████████████████████████████████████████████████████████████████████████████████"). The fact that the Crestron Agreement accounts for dongles and base units through a combination of annual minimum royalties and a per-unit cost for the dongle, does not establish that Mr. Scally relied on clearly false facts. Rather, it's evidence that Yealink willfully avoided gathering the information Barco's witnesses were clearly willing to discuss.

Yet again, this is not a basis to exclude Mr. Scally's opinion.

     5.    **Mr. Scally's opinions are well-supported**

Yealink incredulously alleges that Mr. Scally provides no analysis for his conclusion of a reasonable royalty in this case is $96 per dongle and $24 per base unit. Mr. Scally provides almost fifty pages of analysis in his report, not to mention the tables and calculations in his exhibits and appendices. Mr. Scally sat for a deposition from 10am until 5pm where he provided and explained the analysis he undertook. Other than citing a series of cases that broadly stand for the proposition that an expert's opinion is not admissible simply because the expert says it is his or her opinion, Yealink makes no actual argument here. *See generally* Dkt. 113 at 14.

8

What is clear is Mr. Scally analyzed a number of different factors, including a thirty-page *Georgia Pacific* analysis. What is not clear is why Yealink contends Mr. Scally's opinion is conclusory. While Mr. Scally's experience, knowledge, and training helps assist in him drawing his opinion, Mr. Scally's opinions are also based on the actual Crestron License. Dkt. 113, Exhibit A (Scally Report) at 17-21. He also relies on the relationship between Barco, Crestron, and Yealink (as well as other companies who used to be in the market) (*id.* at 23-25), the relative positions in the market between Yealink and Crestron (*id.* at 18, 25), the parties' profitability (*id.* at 29-32), the nature of the patented invention and the character of the commercial embodiments (*id.* at 32-39), among other factors.

Once again, Yealink selectively focuses on a brief exchange during deposition, ignoring the remaining paragraphs of opinions and hours of deposition testimony. This does not render Mr. Scally's opinions "conclusory."

### D. *Mr. Scally's Projections Are Properly Disclosed*

Mr. Scally's projections are entirely explained in his report. In Exhibit 4 to his report, which begins on PDF page 111 of Dkt. 113, Exhibit A, Mr. Scally explains that:



9

A similar explanation appears on the next page for the base units. This was actually conveyed to Yealink's counsel during the deposition. Exhibit E, Scally Deposition at 235:9-24. Yealink failed to present this testimony in its motion. The CAGR is readily ascertainable from, and expressly disclosed in, the Scally report. Dkt. 113, Exhibit A (Scally Report) at Exhibit 4 (The CAGR is referenced in Tabular form via Notes 1-4, as well as the headings of the tables themselves). Yealink's counsel threatened to take Mr. Scally's phone were he to actually perform the math during the deposition, despite not directing Mr. Scally to where his report expressly referred to the CAGR. Exhibit E, Scally Deposition at 236:5-21. The calculations and the methodology are present and were going to be provided but for Yealink's deposition tactics. Yealink's deposition tactics should not be rewarded by excluding Mr. Scally's opinions.

Yealink also takes issue with the "projected" sales in 2024 and 2025. While Yealink has ceased selling its dongles, it has not ceased selling its base units or its infringement. It is undeniable that infringement occurred in 2023, 2024, and 2025. In 2023, Yealink sold admittedly infringing products and induced its customers to use those products in an admittedly infringing manner. In 2024, Yealink sold admittedly infringing products and induced its customers to use those products in an admittedly infringing manner. In 2025, Yealink induced its customers to use those previously sold dongle products in an admittedly infringing manner. The use of base units sold in 2025 includes their use with dongle products sold in 2024, but also sold in 2022, 2021, and 2020 (such that the 2025 use is not exhausted based on the 2023 and 2024 sales). Mr. Scally proposes a manner to compensate Barco for Yealink's infringement in 2023, 2024, and 2025. Barco is entitled to ***at least a reasonable royalty*** for Yealink's infringement, direct and indirect, in 2024 and 2025. *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 410–11 (2018). "[I]f actual damages cannot be ascertained with precision because the evidence available from the

10

infringer is inadequate, damages may be estimated on the best available evidence, taking cognizance of the reason for the inadequate of proof and resolving doubt against the infringer." *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 2:07-CV-468, 2009 WL 4723733, at *6 (E.D. Tex. Sept. 8, 2009) (citing *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996)). Yealink elected to use its admission of infringement as a mechanism to limit discovery, and as a result, certain estimations are necessary.

### E.  Mr. Scally's Reliance on Barco's Factual Evidence Is Proper

Mr. Scally relied on data that was timely produced, and on the corresponding testimony of Mr. Erwin Six. For the reasons set forth in Barco's opposition to Yealink's motion to strike, Mr. Scally's reliance on these variety of sources is proper.

|  |  |
|---|---|
| Dated: July 1, 2025 | Respectfully submitted, |
|  | *s/ Erik J. Halverson* |
|  | Melissa Smith (Texas Bar No. 24001351) |
|  | Andrew T. Gorham |
|  | **GILLAM & SMITH, LLP** |
|  | 303 South Washington Avenue |
|  | Marshall, Texas 75670 |
|  | Telephone: +1 903 934 8450 |
|  | Facsimile: +1 903 934 9257 |
|  | melissa@gillamsmithlaw.com |
|  | tom@gillamsmithlaw.com |
|  |  |
|  | Christopher Centurelli (*pro hac vice*) |
|  | christopher.centurelli@klgates.com |
|  | Anna E. L'Hommedieu (*pro hac vice*) |
|  | Anna.lhommedieu@klgates.com |
|  | Joshua N. Andrews (*pro hac vice*) |
|  | Joshua.Andrews@klgates.com |
|  | **K&L GATES LLP** |
|  | 1 Congress Street, Suite 2900 |
|  | Boston, MA 02114-2023 |
|  | Telephone: (617) 261-3100 |

Erik J. Halverson (Bar No. 333492CA)
erik.halverson@klgates.com
**K&L GATES LLP**
Four Embarcadero Center,
Suite 1200
San Francisco, CA 94111
Telephone: (415) 882-8238

*Attorneys for Plaintiffs*
*Barco, Inc. and Barco N.V.*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served via email on all counsel of record on July 1, 2025.

*/s/ Erik J. Halverson*

**CERTIFICATE OF AUTHORIZATION TO SEAL**

I hereby certify that pursuant to Local Rule CV-5(a)(7), the foregoing document was filed under seal pursuant to the Court's Protective Order entered in this matter (Dkt. 30).

*/s/ Erik J. Halverson*