# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| BARCO, INC. and BARCO NV, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action No. 2:23-cv-00521-JRG-RSP |
| | § | |
| YEALINK (USA) NETWORK TECHNOLOGY CO., LTD., and YEALINK NETWORK TECHNOLOGY CO., LTD. | § § § § | JURY TRIAL DEMANDED |
| | § | |
| *Defendants*. | § | |

# DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE DR. ALMEROTH'S OPINIONS

## **TABLE OF CONTENTS**

I.   DR. ALMEROTH'S OPINIONS ON NONINFRINGING ALTERNATIVES ARE TIMELY AND PROPER.................................................................................................... 2

    A.   Yealink timely disclosed the noninfringing alternatives........................2

    B.   Dr. Almeroth's opinions properly rebut Barco's expert opinions. ........4

    C.   Case law does not support striking Dr. Almeroth's opinions. ..............5

II.  DR. ALMEROTH'S OPINIONS ON INCREMENTAL VALUE AND STATE OF THE ART ARE ADMISSIBLE................................................................................................ 7

III. BARCO HAS SUFFERED NO PREJUDICE. ..................................................................... 9

IV.  CONCLUSION..................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AstraZeneca AB v. Apotex Corp.*,
   782 F.3d 1324 (Fed. Cir. 2015)..................................................................................................8

*BNJ Leasing, Inc. v. Portabull Fuel Serv., LLC*,
   591 F. Supp. 3d 125 (S.D. Miss. 2022).....................................................................................10

*Correct Transmission, LLC v. Nokia of Am. Corp.*,
   No. 22-cv-00343-JRG-RSP, 2024 WL 1289821 (E.D. Tex. Mar. 26, 2024) .........................5, 6

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014)..................................................................................................8

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*
   879 F.3d at 1351 .......................................................................................................................9

*Lionra Techs. Ltd. v. Fortinet, Inc.*,
   No. 22-cv-00322-JRG-RSP, 2024 WL 3331643 (E.D. Tex. July 8, 2024) ...............................9

*Mojo Mobility, Inc. v. Samsung Elecs. Co.*,
   No. 22-cv-00398-JRG-RSP, 2024 WL 3497905 (E.D. Tex. July 22, 2024) .............................9

*Panasonic Commc'ns Corp. of Am. v. United States*,
   108 Fed. Cl. 412 (2013) ............................................................................................................5

*Realtime Data LLC v. EchoStar Corp.*,
   No. 17-cv-00084, 2018 WL 6266300 (E.D. Tex. Nov. 15, 2018).......................................6, 11

## TABLE OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---|---|
| A | Excepts from the Deposition Transcript ▮▮▮▮▮▮, dated April 18, 2025 |
| B | Excerpts from the Deposition Transcript of Erwin Six, dated April 25, 2025 |
| C | Excerpts from the Deposition Transcript of Wesley W. Lightcap, dated April 23, 2025 |
| D | Excerpts from the Deposition Transcript of Dunxiong Cai, dated April 13, 2025 |
| E | Expert Report of Michael C. Brogioli, Ph.D., dated April 27, 2025 |
| F | Expert Report of William B. Scally, CFA, dated April 28, 2025 |
| G | Expert Report of Richard F. Bero, dated May 15, 2025 |
| H | Excerpts from the Deposition Transcript of Kevin C. Almeroth, Ph.D., dated May 23, 2025 |
| I | Excerpts from the Deposition Transcript of Michael C. Brogioli, Ph.D., dated June 10, 2025 |

Barco's motion to strike Yealink's expert Dr. Almeroth's opinions, D.I. 109, includes a series of misstatements and relies on inapposite case law. Indeed, relevant facts, most of which are missing from Barco's motion, paint a different picture:

- Barco claims that Yealink's disclosure of, and Dr. Almeroth's opinions on, noninfringing alternatives are untimely, but Barco does not mention that it had been able to depose Yealink's corporate witness, and that its own corporate witnesses testified, on the very same noninfringing alternatives. Yealink also identified these noninfringing alternatives within days, and indeed on the same day, of obtaining meaningful and substantive testimony about them. Barco also does not mention that its own expert witnesses, Dr. Brogioli and Mr. Scally, opine on these very noninfringing alternatives, and that Barco had deposed Dr. Almeroth on these noninfringing alternatives. Dr. Almeroth's opinions, therefore, are based on timely disclosed evidence and properly rebut Barco's own expert opinions.

- Barco argues that Dr. Almeroth's opinions regarding prior art are "attempts to back-door [Yealink's] IPR invalidity theories." D.I. 109 at 8. But as Barco concedes, Dr. Almeroth's opinions it seeks to strike are, in reality, related to "comparing the the differences of the prior art to the patented features of the Asserted Claims and the technical importance of the patented features over the non-infringing alternatives." *Id.* at 3, 9. Dr. Almeroth's opinions, therefore, are not about invalidity but rather, the state of the art and the incremental value of the patented invention, which are not only relevant but required for the reasonable royalty analysis. There is therefore no basis to strike Dr. Almeroth's opinions.

Further, while Barco complains of prejudice, it unsurprisingly cannot point to any specific harm. Barco had ample notice of the evidence on which Dr. Almeroth bases his opinions, had opportunities to – and did – depose Yealink's witness and Dr. Almeroth on the same evidence. Even if Barco did suffer any prejudice, it had ample opportunity and time to cure it. Instead, even though fact discovery closed on April 18 and Barco had Dr. Almeroth's expert report since May 15, Barco raised no objections or complaints, and even deliberately withheld from its own expert Dr. Brogioli Dr. Almeroth's expert report so Dr. Brogioli could not review and address them.

Importantly, Barco does not argue that any of Dr. Almeroth's opinions are unreliable or improper under Rule 702. As explained below, Dr. Almeroth's opinions are timely and proper in scope, and Yealink respectfully submits that the Court should deny Barco's motion to strike.

1

## I. Dr. Almeroth's Opinions On Noninfringing Alternatives Are Timely And Proper.

Dr. Almeroth's opinions in his expert report regarding noninfringing alternatives, D.I. 109-2 at ¶¶ 114-37, are (1) based on timely disclosed evidence, and (2) an appropriate rebuttal to Barco's expert opinions.

### A. Yealink timely disclosed the noninfringing alternatives.

Fact discovery in this case closed on April 18, 2025, but the bulk of the discovery took place within the week before, and *after*, April 18. Indeed, Barco deposed Yealink's three corporate witnesses in Hong Kong on April 12, 13, and 14, while the parties deposed third-party Crestron Electronics on April 18. Further, Yealink accommodated Barco's witnesses' scheduling issues, and agreed to depose both of Barco's corporate witnesses out of time on April 23 and 25. Therefore, while Yealink supplemented its interrogatory responses on April 18, *within* the fact discovery period, it needed the testimony from witnesses deposed during the week before and after April 18, all of whom testified regarding these noninfringing alternatives.

For example,  third-party Crestron Electronics testified on April 18 that

, Ex. A at 23: 17-21; *see also id.* at 23:25-24:10                    ; 25:2-6
       ; 25:10-16                ; 37: 2-10                            also testified
that

. *Id.* at 100:25-101:20.

Further, even though Barco's corporate witnesses were deposed after April 18, both testified regarding the noninfringing alternatives. For example, Barco's Mr. Six testified:

> Q Let's start with around 2020, and I'm just trying to get your understanding of what the term "BYOD" means.
> A The -- the term is 2020?
> Q Yes, sir.
> A And BYOD?
> Q Yes, sir.
> A Again, it is understood on different things. I can tell you one option of what it was.
> Q Let's start with the first option. Go ahead.
> A One option is that with -- and it was the earliest, around 2020, one interpretation is that BYOD is using a protocol like Miracast, AirPlay or Google Cast to share your content.

Six Dep. Tr., Ex. B at 96:15-97:8; *see also id.* at 47:10-23 (Teams and Zoom); 98:7-23 (SmartView); 98:24-99:8; 99:19-22. Barco's other corporate witness, Mr. Lightcap, also testified regarding the noninfringing nature of alternative meeting platforms including Teams, Zoom, and WebEx on April 23. *See* Lightcap Dep. Tr., Ex. C at 45:23-46:25. Clearly, Yealink's interrogatory responses on April 18 were not untimely, as much of the relevant information regarding these noninfringing alternatives, which include technologies such as AirPlay, MiraCast, SmartShare, Screen Mirroring, SmartView, Microsoft Teams, Zoom, Cisco WebEx, Google Meet, and wired connections, D.I. 109 at 1-2, were making into the record in this case on, and *after*, April 18.

Barco's motion makes no mention of these depositions and their timing. Further, Barco's claim that Yealink "effectively blocked Barco's ability to take discovery into the acceptability and availability of these alleged non-infringing alternatives" is, put simply, false. *Id.* at 8. Indeed, Barco does not mention that on April 13, Barco deposed Yealink's corporate witness Mr. Cai, and was able to ask Mr. Cai questions about these noninfringing alternatives:

> Q. And so if there was a Teams or Zoom conferencing system in this room, could I send data from my laptop to that system?
> A. Yes.

3

> Q. Without any sort of physical plug-in device?
> A. Yes.
> Q. How?
> A. Via Teams' or Zoom's software, or what we call the app, there are such functionalities called Team casting or Zoom sharing. In such cases, there's no need to plug in any dongles, and you can do the sharing.

Cai Dep. Tr., Ex. D at 48:16-49:3; *see also id.* at 38:24-39:7 (Wired Connections); 22:1-12, 72:11-73:12 (MiraCast, AirPlay, Teams, and Zoom).

Barco also does not mention that its own expert, Dr. Brogioli, opines on these very noninfringing alternatives in his expert report served on April 28, 2025, in which he states "I understand Yealink alleged there are a number of non-infringing alternatives." *See* Ex. E at pp. 33-35, ¶¶ 82-86. In fact, in his report, Dr. Brogioli analyzes these alternatives, and opines that they are "inadequate solutions and would not be considered acceptable substitutes for products that perform aspects of the Asserted Patents." *Id.* at ¶ 83. In addition to Dr. Brogioli, Barco's damages expert Mr. Scally also opines on these noninfringing alternatives. *See* Ex. F at ¶¶ 95-102. At no point did Barco argue that Dr. Brogioli or Mr. Scally were unable to provide full and complete expert opinions in light of Yealink' allegedly untimely supplemental interrogatory responses.

Yealink disclosed its noninfringing alternatives in a timely manner, and Barco's experts were able to opine on these noninfringing alternatives. The timing of Yealink's supplemental interrogatory responses does not warrant striking Dr. Almeroth's opinions.

      **B.**      **Dr. Almeroth's opinions properly rebut Barco's expert opinions.**

As discussed above, Barco's expert Dr. Brogioli had no issues opining on Yealink's proposed noninfringing alternatives, and does opine in his opening report that they are inadequate and unacceptable substitutes. *See* Ex. E at ¶¶ 82-86. Mr. Scally provides the same opinions on these alternatives. *See* Ex. F at ¶¶ 95-102. In rebuttal, Dr. Almeroth responds to Dr. Brogioli's and Mr. Scally's opinions, analyses, and evidence they rely on, and explains by citing his evidence and

providing his analysis why Dr. Brogioli's and Mr. Scally's opinions are wrong. *See* D.I. 109-2 at ¶¶ 114-37.

Indeed, Barco does not challenge any of Dr. Almeroth's opinions under Rule 702 and does not argue Dr. Almeroth's opinions regarding noninfringing alternatives are not scientific, reliable, or helpful. As Barco's experts offer opinions in their opening expert reports regarding the alleged inadequacy and unacceptability of these noninfringing alternatives, Dr. Almeroth must be able to respond. Indeed, "[t]he truest test for the admission of evidence in an expert rebuttal report is whether the evidence is specifically offered to rebut a conclusion, opinion, or datum put forth by the other side's expert." *Panasonic Commc'ns Corp. of Am. v. United States*, 108 Fed. Cl. 412, 415 (2013) (further noting that "rebuttal evidence is properly admissible when it will explain, repel, counteract, or disprove the evidence of the adverse party"). Here, Dr. Almeroth's opinions directly respond to the opinions of Dr. Brogioli and Mr. Scally, and are supported by evidence and expert analysis, to "repel, counteract, or disprove" Dr. Brogioli's and Mr. Scally's opinions. *Id.*; *see, e.g.*, D.I. 109-2 at 41 (Dr. Almeroth opines that "Dr. Brogioli Overlooks the Realities of the Market's Use of Unified Communications").

As Dr. Almeroth's opinions respond to Dr. Brogioli's and Mr. Scally's opinions, they are admissible. Indeed, it is not proper, fair, or logical to allow Barco's experts to opine at trial that Yealink's proposed noninfringing alternatives are not adequate or acceptable, and at the same time prohibit Yealink's expert from responding to these opinions because Barco claims it somehow did not know about the very noninfringing alternatives its experts had no trouble opining on.

### C. Case law does not support striking Dr. Almeroth's opinions.

In its motion, Barco primarily relies on *Correct Transmission v. Nokia*. But there, the Court struck the accused infringer Nokia's expert opinions on noninfringing alternatives as "as untimely

5

and ***ultimately irrelevant*** in light of [its] decision to offer no damages opinion tying any non-infringing alternative to a proper damages analysis." *Correct Transmission, LLC v. Nokia of Am. Corp.*, No. 22-cv-00343-JRG-RSP, 2024 WL 1289821, at *4 (E.D. Tex. Mar. 26, 2024) (emphasis added); *see also id.* at *5:

> Separately, the Court finds that Dr. Jeffay's non-infringing alternative is not relevant to this case. Because none of Nokia's experts provide any financial analysis of the impact of a non-infringing alternative to a reasonable royalty--i.e. rather than infringe Nokia would implement a non-infringing alternative at a certain cost--presenting these alternatives will only operate to confuse the jury.

Here, Yealink's damages expert Mr. Bero does opine on the impact of noninfringing alternatives. *See, e.g.*, Bero Expert Report, Ex. G at 9-11, 14, 17-19, 21, 37-38, 45, 47, 57, 58, 61. Further, the rebuttal expert opinions at issue in *Correct Transmission* do not appear to respond to any of the patentee's expert opinions on noninfringing alternatives, as is the case here.

In *Realtime Data*, the Court recognized that "[f]ailure to timely disclose properly requested information relating to non-infringing alternatives, may serve as grounds to exclude testimony at trial relating to the topic," but did not strike noninfringing alternative first disclosed in a supplemental discovery response served on the last day of fact discovery, finding that "[a]lthough this disclosure was made on the last day of fact discovery, Defendants still supplemented their response to Plaintiff's interrogatory within the period of fact discovery." *Realtime Data LLC v. EchoStar Corp.*, No. 17-cv-00084, 2018 WL 6266300, at *6 (E.D. Tex. Nov. 15, 2018). The Court also noted that "[t]o the extent, Plaintiff claims they suffered prejudice and needed to take additional discovery regarding Defendants' late disclosure, Plaintiff should have filed a motion seeking leave to do so." *Id.* Here, Barco sought no leave to take additional discovery; to the contrary, as discussed above, Barco was able to depose Yealink's fact witness about the very same

6

noninfringing alternative Yealink timely disclosed during fact discovery, and Barco's experts had ample time to prepare and serve expert opinions on these noninfringing alternatives.

## II.    Dr. Almeroth's Opinions On Incremental Value and State of the Art Are Admissible.

Barco next attempts to strike ¶¶ 17, 54-65, and 80-109 of Dr. Almeroth expert report, and argues that in these paragraphs, Yealink attempts to "back-door its IPR invalidity theories" through Dr. Almeroth. D.I. 109 at 8. Barco's characterization of Dr. Almeroth's opinions, to say the least, is simply not accurate. In these paragraphs Barco seeks to strike, Dr. Almeroth clearly opines about (1) the state of the art for the asserted patents, and (2) the incremental value of the patented features of asserted patent claims over the unpatented features – *i.e.*, what has been known in the prior art.

In fact, ¶¶ 54-65 of Dr. Almeroth's report are in a section titled "Background of the Art," where Dr. Almeroth discusses the state of the art relating to screen sharing before the asserted patents' priority date (September 14, 2011), and supports his opinions by referring to specific examples of technology and products – most of which were well-known – that were available before 2011. *See* D.I. 109-2 at 18, ¶¶ 54-65. Further, paragraphs 80 to 109 of Dr. Almeroth's report are in a section titled "Alleged Differences Between the Issued Claims and the Prior Art." In these paragraphs, Dr. Almeroth analyses multiple prior art references and their disclosure in detail, *id.* at ¶¶ 81-98, before comparing them to the asserted claims and the reasons for their allowance before the USPTO. *Id.* at ¶¶ 100-09. Based on this analysis, Dr. Almeroth opines that "the difference from the patented invention and the prior art is minimal," and that "nature of the patent invention is small compared to the prior art." *Id.* at ¶¶ 108-09.

Dr. Almeroth's opinions in these paragraphs are not a "back-door" attempt at invalidity. Dr. Almeroth does not opine anywhere in his report that any of the asserted claims are invalid. In

fact, Dr. Almeroth made clear during his deposition that he *does not* provide an invalidity opinion but rather, his opinions are about apportionment:

> Q. And so are you offering an invalidity opinion in this report?
> A. No, not specifically. It's more about looking at technical issues that I would expect would ultimately feed into an apportionment opinion.

Almeroth Dep. Tr., Ex. H at 34:1-15. Dr. Almeroth even recognizes that he offered declarations in Yealink's IPR proceedings against Barco, but clarifies that in this case, his expert opinions are about "technical importance." *Id.* at 34:6-15. Indeed, Barco itself acknowledges that Dr. Almeroth's opinions here are directed to "comparing the the differences of the prior art to the patented features of the Asserted Claims and the technical importance of the patented features over the non-infringing alternatives." D.I. 109 at 3, 9.

Expert opinions directed to such "differences of the prior art to the patented features of the Asserted Claims and the technical importance of the patented features over the non-infringing alternatives" are, of course, proper. In fact, they are required:

> When a patent covers the infringing product as a whole, and the claims recite both conventional elements and unconventional elements, the court must determine how to account for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone.

*AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015). Indeed, "[t]he essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). As this Court had held, "[a] non-infringing alternative analysis is one accepted apportionment analysis. It is by analyzing the benefits the accused product enjoys over a non-infringing alternative, that the portions of the accused product that do not make up the accused

8

technology are accounted for and apportioned out of the damages evaluation." *Lionra Techs. Ltd. v. Fortinet, Inc.*, No. 22-cv-00322-JRG-RSP, 2024 WL 3331643, at *2 (E.D. Tex. July 8, 2024).

Here, Dr. Almeroth's discussion of the prior art in ¶¶ 80-109 of his report is entirely proper, and Barco's request to strike it is flawed. *See Exmark*, 879 F.3d at 1351 (finding court abused its discretion in excluding evidence that "would have demonstrated that many of the benefits [the patentee] attributed to the [invention] were already present in the prior art").[1] As explained above, Yealink's damages expert Mr. Bero relies on Dr. Almeroth's opinions in determining the reasonable royalty in this case. Similarly, Dr. Almeroth's discussion of the state of the art in ¶¶ 17 and 54-65, again *without opining on invalidity*, is also proper. *See, e.g.*, *Mojo Mobility, Inc. v. Samsung Elecs. Co.*, No. 22-cv-00398-JRG-RSP, 2024 WL 3497905, at *4 (E.D. Tex. July 22, 2024) (declining to strike expert testimony that "does not go beyond describing his opinions on the state of the art," finding "[t]his testimony is reasonably related to apportionment of damages").

## III. Barco Has Suffered No Prejudice.

As demonstrated above, Barco could not have suffered any prejudice as Yealink timely identified the noninfringing alternatives, and Barco was able to depose Yealink's corporate witness Mr. Cai regarding these noninfringing alternatives. Dr. Brogioli, and Mr. Scally, opined on the same noninfringing alternatives. Further, and importantly, Barco was able to depose Dr. Almeroth regarding the very opinions it now claims to lack the ability to take discovery into:

> Q. And so you're offering an opinion in your report that Crestron offers a non-infringing alternative; is that right?
> A. That is one of the opinions.
> Q. And as part of that opinion, you're pointing to Crestron's software-only based sharing system, correct?

---

[1] To the extent Barco is concerned that Yealink and Dr. Almeroth may "back-door" an invalidity theory at trial, and keeping the Court's standing MIL No. 6 in mind, Yealink is willing to agree to withdraw ¶ 80 of Dr. Almeroth's report to allay Barco's concerns. *See* D.I. 109 at 9.

9

> A. I'm not sure I would call it a system per se. Certainly it's the functionality of being able to not use a peripheral device as required by the claims and accomplish the same screen sharing or presentation sharing functionality.

Ex. H at 40:18-41:4; *see also* 35:12-37:1 (discussing Skype); 37:13-38:7, 44:2-46:15 (discussing Zoom); 38:8-39:1 (discussing Slack); 39:6-41:9 (discussing MiraCast, AirPlay, and Surfly); 42:25-44:1 (discussing Teams). Barco also deposed Dr. Almeroth regarding the differences between the patented features and unpatented features disclosed in the prior art:

> Q. So you're saying that because Internet-based communications can be encrypted or can be secured, that that technology is standardized and isn't something that is provided by the patents themselves?
> A. I think I'm saying much more than that. It's not only Internet communication; it's communication in a wireless context whether you're connected or not. The ability to secure, say, USB-based communication at the USB layer, at the network layer, at the application layer are all technologies that have been standardized and used in exactly this field for this functionality for these kinds of devices as part of the state of the art and the prior art in exactly this context, meaning to support all of the different kinds of uses of the technology for things like videoconferencing, meetings and presentations either remote or in a single location.

*Id.* at 47:22-48:17; *see also id.* at 33:9-25 (Barco asking Dr. Almeroth "What are the patented features of Barco's patents?").

Not only did Barco ask Dr. Almeroth during deposition about his opinions it now seeks to strike, Barco had ample opportunities to ask further questions but, instead, chose to end Dr. Almeroth's deposition after 84 minutes (starting at 9:01 am and ending at 10:25 am). *See BNJ Leasing, Inc. v. Portabull Fuel Serv., LLC*, 591 F. Supp. 3d 125, 136 (S.D. Miss. 2022) (denying motion to strike accused infringer's evidence on noninfringing alternatives, finding that patentee was not prejudiced because it had the opportunity to depose accused infringer's expert regarding

10

the noninfringing alternatives and that its own expert opined on the same noninfringing alternatives).

Further, if Barco really needed additional discovery, or to have its own expert Dr. Brogioli respond to Dr. Almeroth's opinions it now seeks to strike, it could have requested to do so. It did not. *See Realtime Data*, 2018 WL 6266300, at *6 ("Plaintiff should have filed a motion seeking leave to [take additional discovery]."). Instead, Barco purposely withheld Dr. Almeroth's opinions from its expert Dr. Brogioli, who was not deposed until June 10, almost a month after Dr. Almeroth served his report. *See* Brogioli Dep. Tr., Ex. I at 90:10-14 ("I'm aware that [Dr. Almeroth] provided a report. I was not provided it to read. Beyond that, I'm not sure what may or may not be in there."); 78:2-3 ("**Q** So you haven't read Dr. Almeroth's report? **A** No."). Even assuming there had been any prejudice, Barco could have cured whatever prejudice it now claims to have suffered, but it chose to ignore Dr. Almeroth's allegedly prejudicial opinions and waited until June 13, during the parties' meet-and-confer before its instant motion, to first voice its concerns. Indeed, it appears that Barco is more interested in ridding certain admissible evidence and expert opinions in this case, rather than ensuring the Court has a full record and reaches the right judgement in this case.

## IV.   CONCLUSION

Dr. Almeroth properly opines on the noninfringing alternatives Yealink timely identified, and properly responded to Barco's experts Dr. Brogioli and Mr. Scally who had no issue opining on the very same noninfringing alternatives Barco now claims were untimely disclosed. Dr. Almeroth also properly opines on the state of the art and the incremental value of the patented features of asserted claims over the unpatented features disclosed in the prior art, which opinions are not only relevant to but required for any reasonable royalty analysis. Barco suffered no prejudice, and even if it did, it clearly had no interest in curing any such prejudice. Put simply,

11

Barco has not articulated any reason for striking Dr. Almeroth's opinions, and Yealink respectfully request that the Court deny Barco's motion, D.I. 109.

| | |
|---|---|
| Date: July 1, 2025 | **DENTONS US LLP** |// 

Date: July 1, 2025

          **DENTONS US LLP**

          By: /s/ *Victor C. Johnson*
          Victor C. Johnson
          Texas Bar No. 24029640
          Forrest D. Gothia
          Texas Bar No. 24125250
          100 Crescent Court, Suite 900
          Dallas, Texas 75201
          Email: victor.johnson@dentons.com
          (214) 259-1876
          Email: forrest.gothia@dentons.com
          (214) 259-1887

          Stephen Yang (*pro hac vice* granted)
          1221 Avenue of the Americas
          New York, New York 10020
          Email: Stephen.yang@dentons.com
          (212) 398-4890

          Timothy C. Bickham
          DC State Bar No. 45614
          Kevin R. Greenleaf
          1900 K Street, NW
          Washington, DC 20006
          Email: Timothy.bickham@dentons.com
          (202) 408-6390
          Email: Kevin.greenleaf@dentons.com
          (202) 408-6390

          *Attorneys for Defendants Yealink (USA) Network Technology Co., Ltd. and Yealink Network Technology Co., Ltd.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served via email to counsel for Plaintiffs on July 1, 2025.

          /s/ *Victor Johnson*
          Victor C. Johnson

12

## CERTIFICATE OF AUTHORIZATION TO SEAL

I hereby certify that pursuant to Local Rule CV-5(a)(7), the foregoing document was filed under seal pursuant to the Court's Protective Order entered in this matter (Dkt. 30).

*/s/ Victor C. Johnson*
Victor C. Johnson
