# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| BARCO, INC. and BARCO NV, | § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 2:23-cv-00521-JRG-RSP |
| YEALINK (USA) NETWORK TECHNOLOGY CO., LTD., and YEALINK NETWORK TECHNOLOGY CO., LTD. | § § § § § | JURY TRIAL DEMANDED |
| *Defendants*. | § § | |

**DEFENDANTS' REPLY TO *DAUBERT* MOTION AND MOTION TO EXCLUDE EXPERT OPINION OF WILLIAM B. SCALLY (D.I. 113)**

Barco's response, D.I. 122, does not change that Mr. Scally's opinions are inadmissible.

## I.     Mr. Scally fails to apportion for patented and unpatented features.

Barco claims that Mr. Scally does not need to apportion for patented and unpatented features, because he relies on the Crestron license. D.I. 122 at 1, 3. Barco is wrong.

**First**, Barco plainly ignores Mr. Scally's own analysis, that he "*do[es] not* consider the Crestron License Agreement to be a proxy for a Reasonable Royalty Rate." D.I. 113-2 at ¶ 62 (emphasis added). Mr. Scally has not, as Barco's current attorney argument suggests, "performed the required apportionment by relying on the Crestron license itself." D.I. 122 at 2. Put simply, Mr. Scally has not analyzed, or relied on, the Creston license the way Barco now claims he has.

In addition, Barco also plainly ignores its own corporate testimony, that Barco *does not* consider the Crestron license to be a comparable license. *See, e.g.*, Ex. J at 183:8-195:4 (Mr. Six explaining the perceived differences between the Crestron and Yealink license situations, before concluding that the Crestron license as not comparable to any license between Barco and Yealink). Neither Barco nor Mr. Scally has treated the Creston license as a comparable license.

**Second**, Barco misapplies case law. In *Vectura Ltd. v. Glaxosmithkline LLC*, 981 F.3d 1030, 1041 (Fed. Cir. 2020), the Federal Circuit held that "a party relying on a sufficiently comparable license can *adopt* the comparable license's royalty rate and royalty base without further apportionment and without proving that the infringing feature was responsible for the entire market value of the accused product." (emphasis added). Here, Mr. Scally and Barco dismiss the Crestron license as comparable, and Mr. Scally does not adopt the royalty from the Crestron license but opines the reasonable royalty in this case ███████████████. Indeed, whereas Vectura "offered evidence that the circumstances of the 2010 license and the hypothetical negotiation in 2016 were highly comparable and that principles of apportionment were effectively baked into the

1

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

2010 license," *id.*, Barco has done the opposite. Similarly, *in Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1377 (Fed. Cir. 2020), the patentee's expert "relied on the reports, testimony, and conclusions of other witnesses to understand that the licenses were technologically comparable, and that the proportion of licensed/unlicensed features was comparable to the present case." Here, however, Mr. Scally has done no such analysis. *See* D.I. 113 at 3-5. Nor does Dr. Brogioli, who contrary to Barco's characterizations provides only a high-level overview of Crestron's and Yealink's products. *See* Ex. K at ¶¶ 44-62.

**Third**, Barco ignores facts and testimony in this case. For example, whereas the Federal Circuit noted in *CSIRO v. Cisco Sys., Inc.* that the "the parties negotiated over the value of the asserted patent, and no more," the evidence in this case shows that Barco and Crestron negotiated ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. 809 F.3d 1295, 1303 (Fed. Cir. 2015). *See, e.g.*, Ex. J at 193:17-194:8 (Mr. Six testifying that Barco has ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓); Ex. L at 68:17-69:8 (Mr. Scally noting that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓); 73:7-74:3 (there was ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓). Indeed, it is undisputed that Crestron licensed ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Ex. J at 142:9-143:10. This additional value is not attributable to the asserted patents.

"The party proffering a license bears the burden of establishing it is sufficiently comparable to support a proposed damages award. . . . [T]he proponent must account for differences in the technologies and economic circumstances of the contracting parties." *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022). Barco has not carried this burden, and Mr. Scally's opinion is inadmissible for failing to apportion. *See Omega Pats., LLC v. CalAmp Corp.*,

13 F.4th 1361, 1379 (Fed. Cir. 2021) (rejecting patentee's built-in apportion argument where "it failed to show that these agreements attributed a $5.00-per-unit royalty to the value of [asserted patent]," and noting "[t]o hold otherwise would improperly permit Omega to hide behind its generic licensing arrangement to avoid the task of apportionment").

## II.     Mr. Scally fails to apportion for noninfringing uses of Yealink's base units.

Barco does not dispute that Yealink's base units have noninfringing uses. Instead, it first tries to blame Yealink for providing only "rudimentary" discovery and only limited information on the development of use of its products. D.I. 122 at 4-5. But Barco never complained about Yealink's discovery on the use of its products. *See, e.g.*, D.I. 98 (Barco "no longer seeks to compel Yealink's compliance with the Court's standing orders regarding discovery"). Nevertheless, Barco carries the burden to account for the noninfringing uses of Yealink's base units, and it provides no authority excusing its, and Mr. Scally's, complete failure to account for noninfringing uses. *See Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022).

Barco then points to Yealink's *other* base units *not at issue in this case*, and claims Mr. Scally somehow apportioned for those other base unis. D.I. 212 at 5. But there is no evidence that Mr. Scally ever considered or apportioned for these other base units, as he does not know their functions, does not know the differences between these units, and does not even know whether they are available in the U.S. *See* Ex. L at 154:2-24. More importantly, Barco's reference to these additional noninfringing base units underscores the need to apportion. Indeed, if Yealink's dongles can be used with not only the three base units in this case (when infringement takes place) but also with 20 other non-accused base units (when no infringement occurs), then the percentage of infringing uses of Yealink's three base units at issue in this case is, logically, even lower and Mr. Scally's conclusion of 100% infringing use is even more unreasonable.

3

### III. Mr. Scally's datapoints are improper.

In addition to failing to apportion, Mr. Scally also relies on improper or false datapoints, and even then, his opinion is vague and conclusory. *See* D.I. 113 at 8-14.

For example, whereas Mr. Scally clearly testified that he considers factors not tied to Yealink's infringing activities, such as so-called "brand awareness," Barco somehow blames Yealink for its questions during deposition. D.I. 122 at 6. Barco also mischaracterizes Yealink's argument, which does not state that Mr. Scally's opinion is based "solely" on brand awareness. But the fact remains that Mr. Scally testified under oath that he "certainly" considers brand awareness – in fact, he called this consideration a "necessity." D.I. 113-3 at 71:14-25; 66:18-67:12. This is not proper, and even if it is, Mr. Scally does not explain just how much, in dollar amount or percentage, this "brand awareness" contributed to the reasonable royalty here. In fact, Barco also does not know. *See* D.I. 122 at 6 ("any alleged increase *could* be 0%") (emphasis added).

Barco then acknowledge that Mr. Scally fails to consider Yealink's offers for settlement and Yealink's perspective, but tries to argue "Yealink's offers are plainly unavailable under Federal Rule of Evidence 408." *Id.* at 7. At best, Barco fundamentally misunderstands Rule 408. "The protections of Rule 408 cannot be waived unilaterally because the Rule, by definition, protects both parties from having the fact of negotiation disclosed to the jury." Fed. R. Evid. 408 Advisory Committee Notes, 2006 Amendment. Here, Mr. Scally relies heavily on Barco's settlement offer to Yealink, even setting it as an "upper boundary" and importing from it ████ ███████████████████. *See* D.I. 113 at 2, 12-13. But Yealink never waived Rule 408 protections over Barco's offer. Indeed, the parties' settlement offers, regardless of their origin, are either admissible or they are not. Mr. Scally cannot selectively rely on one but not the other. By

4

Barco's own argument, if Mr. Scally's opinion is not inadmissible for failing to consider Yealink's settlement offers, it is inadmissible for relying, heavily, on R.408-protected Barco settlement offer.

Further, Mr. Scally's opinion is conclusory because he provides no "basis as to how he arrived at his royalty rate other than that he considered the above numbers and factors." *TASER Int'l, Inc. v. Karbon Arms, LLC*, No. 11-cv-426, 2013 WL 6773663, at *1 (D. Del. Dec. 19, 2013). Barco references to the length of his report and his deposition. It then mentions the Crestron license and points to some *Georgia-Pacific* factors in Mr. Scally's report, D.I. 122 at 8-9, but it does not and cannot point to anywhere in the record where Mr. Scally explains *how* he arrived at his proposed reasonable royalty ▮▮▮▮▮ for Yealink's dongles/base units. In fact, Mr. Scally merely walks through the *Georgia-Pacific* factors before suddenly proposing ▮▮▮▮▮ royalty. D.I. 113-2 at 45-47. He provides no explanation or calculation, and even during his deposition, he references only his experience, knowledge, and training. This is not sufficient under *Daubert*.

**IV.    Mr. Scally's projections are improper.**

Mr. Scally improperly projected Yealink's dongle sales in 2024 and 2025 when there were none, essentially advocating for royalty based on infringement that never took place. Moreover, Mr. Scally testified under oath that his report does not include the necessary calculations, and even if Barco's attorney argument to the contrary is correct, the presence of the CAGR for *some* products and *some* years still does not provide the basis of Mr. Scally's analysis, nor does it show *how* Mr. Scally performed his calculations or allow Yealink's expert to verify these calculations.[1]

\*    \*    \*    \*

Yealink respectfully requests that the Court strike Mr. Scally's opinion entirely.

---

[1] It is also disappointing that Barco resorts to mischaracterizing a clear moment of levity during Mr. Scally's deposition as a "threat" from Yealink's counsel (as the video files will demonstrate), in order to make its argument. D.I. 122 at 10.

5

| | |
|---|---|
| Date: July 8, 2025 | **DENTONS US LLP**<br><br>By: /s/ *Victor C. Johnson*<br>Victor C. Johnson<br>Texas Bar No. 24029640<br>Forrest D. Gothia<br>Texas Bar No. 24125250<br>100 Crescent Court, Suite 900<br>Dallas, Texas 75201<br>Email: victor.johnson@dentons.com<br>(214) 259-1876<br>Email: forrest.gothia@dentons.com<br>(214) 259-1887<br><br>Stephen Yang (*pro hac vice* granted)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Email: Stephen.yang@dentons.com<br>(212) 398-4890<br><br>Timothy C. Bickham<br>DC State Bar No. 45614<br>Kevin R. Greenleaf<br>1900 K Street, NW<br>Washington, DC 20006<br>Email: Timothy.bickham@dentons.com<br>(202) 408-6390<br>Email: Kevin.greenleaf@dentons.com<br>(202) 408-6390<br><br>***Attorneys for Defendants Yealink (USA) Network Technology Co., Ltd. and Yealink Network Technology Co., Ltd.*** |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served via email to counsel for Plaintiffs on July 8, 2025.

                                            */s/ Victor Johnson*
                                            Victor C. Johnson

## CERTIFICATE OF AUTHORIZATION TO SEAL

I hereby certify that pursuant to Local Rule CV-5(a)(7), the foregoing document was filed under seal pursuant to the Court's Protective Order entered in this matter (Dkt. 30).

 */s/ Victor Johnson*
Victor C. Johnson
