# EXHIBIT H

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| BARCO, INC. and BARCO NV, | ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | Case No. 2:23-CV-00521-JRG-RSP |
|  | ) | |
| v. | ) | |
|  | ) | |
| YEALINK (USA) NETWORK | ) | |
| TECHNOLOGY CO., LTD., and | ) | |
| YEALINK NETWORK | ) | |
| TECHNOLOGY CO., LTD. | ) | |
|  | ) | |
| Defendants. | ) | |
|  | ) | |

**JOINT SUBMISSION OF PLAINTIFF'S AND DEFENDANT'S**
**JURY INSTRUCTIONS**

Plaintiffs Barco Inc. and Barco NV ("Plaintiff" or "Barco") and Defendants Yealink (USA) Network Technology Co., Ltd. and Yealink Network Technology Co., Ltd. ("Yealink") (collectively, the "Parties") submit the attached Jointly Proposed Jury Instructions for this Court's consideration. Text in black has been agreed to by the Parties. Where there are any disagreements, red text reflects Plaintiff's proposed language or objections, and blue text reflects Defendant's proposed language or objections.

The parties filed motions for summary judgment, *Daubert* motions, and motions *in limine* on many issues in this case. The outcomes of these pending motions may require amendments to portions of these proposed instructions. The Parties reserve the right to request supplemental, amended, or modified instructions as appropriate, including without limitation the right to revise the proposed instructions in response to future rulings by the Court or the evidence as it is admitted

at trial. Nothing within these proposed instructions should be construed as a waiver of the parties' positions, arguments, or objections to the proposed instructions.

Dated:  July 28, 2025

By: */s/ Erik J. Halverson*
Melissa Smith (Texas Bar No. 24001351)
Andrew t. Gorham
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: +1 903 934 8450
Facsimile: +1 903 934 9257
melissa@gillamsmithlaw.com
tom@gillamsmithlaw.com

Christopher Centurelli (*pro hac vice*)
christopher.centurelli@klgates.com
Anna E. L'Hommedieu (*pro hac vice*)
Anna.lhommedieu@klgates.com
Joshua N. Andrews (*pro hac vice*)
Joshua.Andrews@klgates.com
**K&L GATES LLP**
1 Congress Street, Suite 2900
Boston, MA 02114-2023
Telephone: (617) 261-3100

Erik J. Halverson (Bar No. 333492CA)
erik.halverson@klgates.com
**K&L GATES LLP**
Four Embarcadero Center,
Suite 1200
San Francisco, CA 94111
Telephone: (415) 882-8238

*Counsel for Plaintiffs Barco, Inc. and Barco NV*

Respectfully submitted,

By:  */s/ Victor C. Johnson*
Victor C. Johnson
Texas Bar No. 24029640
Forrest D. Gothia
Texas Bar No. 24125250
**DENTONS US LLP**
100 Crescent Court, Suite 900
Dallas, Texas 75201
(214) 259-1876
Email: victor.johnson@dentons.com
(214) 259-1887
Email: forrest.gothia@dentons.com

Stephen Yang (*pro hac vice*)
New York State Bar No. 5123492
**DENTONS US LLP**
1221 Avenue of the Americas
New York, New York 10020-1089
(212) 398-4890
Email: stephen.yang@dentons.com

Timothy C. Bickham
DC State Bar No. 45614
Kevin R. Greenleaf (*pro hac vice*)
DC State Bar No. 252893
**DENTONS US LLP**
1900 K Street, NW
Washington, DC 20006-1102
(202) 408-6390
Email: timothy.bickham@dentons.com
Email: kevin.greenleaf@dentons.com

*Attorneys for Defendants Yealink (USA) Network Technology Co., Ltd. and Yealink Network Technology Co., Ltd.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| BARCO, INC. and BARCO NV, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 2:23-CV-00521-JRG-RSP |
| | ) | |
| v. | ) | |
| | ) | |
| YEALINK (USA) NETWORK | ) | |
| TECHNOLOGY CO., LTD., and | ) | |
| YEALINK NETWORK | ) | |
| TECHNOLOGY CO., LTD. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**[PROPOSED] PRELIMINARY JURY INSTRUCTIONS**

[PROPOSED] PRELIMINARY JURY INSTRUCTIONS                            1

INTRODUCTION                                                       3

WHAT IS A PATENT AND HOW IS ONE OBTAINED                           3

BRIEF OVERVIEW OF THE CASE                                         7

OVERVIEW OF THE APPLICABLE LAW                                     10

STANDARD OF PROOF                                                  12

EVIDENCE AND WITNESSES                                             12

OBJECTIONS                                                         15

ROLE OF THE COURT AND JURY                                        17

NOTES                                                             17

TRIAL ROADMAP                                                     19

# INTRODUCTION[1]

You've now been sworn as the jurors in this case.  As the jury, you are the sole judges of the facts and, as such, you will decide and determine all of the facts in this case.  As the Judge, I will give you instructions on the law, decide questions of law that arise during the trial, and handle matters of evidence and procedure.  I'm responsible for maintaining the decorum of the courtroom and overseeing the efficient progression and flow of the evidence in the trial.

At the end of the evidence, I'll give you detailed instructions about the law to apply in deciding this case and I'll give you a list of questions that you are then to answer.  As I mentioned, this list of questions is called the verdict form, and your answers to the questions will need to be unanimous, and those unanimous answers to those questions will constitute the jury's verdict in this case.[2]

# WHAT IS A PATENT AND HOW IS ONE OBTAINED[3]

Now, I want to briefly tell you what this case is about.  This case involves a dispute regarding six United States patents.  I know that you all saw the patent video this morning prepared by the Federal Judicial Center, but I need to give you some additional instructions here and on the record about a patent and how one is obtained.

Patents are either granted or denied by the United States Patent and Trademark Office, sometimes simply called the Patent Office, sometimes simply called the USPTO, or the PTO.  You'll hear it referred to in all those ways during the trial.

---

[1] Adapted from Preliminary Jury Instructions in *Estech Sys., Inc. v. Target Corp. et al.*, No. 2:20-cv-00123-JRG, at 1–2.

[2] Adapted from Preliminary Jury Instructions in *Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc. et al.*, No. 2:10-cv-216-JRG, Trial Tr. (Aug. 12, 2013) at 3.

[3] Adapted from Preliminary Jury Instructions in *Estech Sys., Inc. v. Target Corp. et al.*, No. 2:20-cv-00123-JRG, at 2–5; *see also* The Federal Circuit Bar Association, Model Patent Jury Instructions, (Feb. 2016), at 2–3.

A valid United States patent gives the patent holder the right for up to 20 years from the date the patent application is filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patent holder's permission.  A patent is a form of property called intellectual property, and like all other forms of property, a patent can be bought or sold.  Now, the violation of a patent holder's rights is called infringement.  The patent holder may try to enforce a patent against persons it believes to be infringers by filing a lawsuit in the United States District Court, and that's what we have before us in this case.

The process of obtaining a patent is called patent prosecution.  To obtain a patent, one must first file an application with the PTO, the United States Patent and Trademark Office.  As I mentioned, the PTO is an agency of the United States government, and it employs trained examiners who review applications for patents.  The application submitted to the PTO includes within it what is called a specification.  The specification contains a written description of the claimed invention, telling what the invention is, how it works, how to make it, and how to use it.  The specification concludes or ends with one or more numbered sentences.  These numbered sentences are called the patent claims.  Now, when a patent is granted by the Patent Office, the claims, ladies and gentlemen, define the boundaries of its protection and they give notice to the public of those boundaries.

Patent claims exist in two forms referred to as independent claims and dependent claims.  An independent claim does not refer to any other claim in the patent.  It is independent.  It's not necessary to look at any other claim in a patent to determine what an independent claim covers.  However, a dependent claim refers to at least one other claim in the patent.  A dependent claim includes each of the limitations or elements of that other claim or claims to which it refers or, as

4

we sometimes say, from which it depends, as well as the additional limitations or elements recited within the dependent claim itself.  Therefore, to determine what a dependent patent claim covers, it's necessary to look at both the dependent claim itself and the independent claim or claims to which it refers or, as we say, from which it depends.

The claims of the patents in this suit use the word comprising.  Comprising means including or containing.  A claim that includes the word comprising is not limited to the methods or devices having only the elements recited in the claim, but also covers methods or devices that add additional elements.

Let me give you an example.  If you take, for example, a claim that covers a table, if the claim recites a table comprising a table top, legs, and glue, the claim will cover any table containing these structures even if the table also contains other or additional structures, such as a leaf to expand the size of the table top or wheels to go on the ends of the legs.  Now, it's a simple example using the word comprising and what it means.  In other words, ladies and gentlemen, it can have other features in addition to those that are covered by the patent.  On the other hand, using the same simple example, if a claim recites a table comprising a tabletop, four legs, and glue, it will not cover a table that has only three legs, even if it still has a tabletop and glue.  In other words, if a single feature recited in the claim is missing, a product is not covered by that claim.

[**Plaintiffs' Proposal**: Now, after the applicant files their application with the PTO, an examiner is assigned by the PTO to that application.  The examiner reviews the application to determine whether or not the claims are patentable—that is to is say, appropriate for patent protection—and whether or not the specification adequately describes the claimed invention.  In examining a patent, the examiner reviews certain information about the state of the technology at

the time the application was filed.  The PTO searches for and reviews this type of information that was publicly available or that was submitted by the applicant.

This type of information is called prior art.  The examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time.  Prior art is defined by law, and I'll give you specific instructions at a later time as to what constitutes prior art.  However, in general, prior art includes information that demonstrates the state of the technology that existed before the claimed invention was made or before the application for a patent was filed.

A patent contains a list of certain prior art that the examiner has considered.  Items on this list shown on the patent itself are called the cited references.  Now, after the prior art search and examination of the application, the examiner informs the applicant in writing of what the examiner has found and whether the examiner considers any claim to be patentable and, thus, would be allowed.  This writing from the examiner is called an office action.  If the examiner rejects the claims, the applicant has an opportunity to respond to the examiner to try to persuade the examiner to allow the claims.  The applicant also has a chance to change or amend the claims or to submit new claims.

The papers generated back and forth during these communications between the examiner and the applicant are called the prosecution history.  This process may go back and forth between the applicant and the examiner for some time until the examiner is satisfied that the application

meets the requirements for a patent and, in that case, the application issues as a United States patent.][4]

## BRIEF OVERVIEW OF THE CASE[5]

    To help you follow the evidence, ladies and gentlemen, I'm going to give you a brief summary of the positions of the competing parties in this case. As you know, the party who brings a lawsuit is called the plaintiff. The Plaintiff in this case is Barco Inc. and its parent company Barco NV, which you'll hear referred to throughout the trial as simply the Plaintiff or as Barco.

    And as you also know, the parties against whom a lawsuit is brought are called the defendants. The Defendant in this case are Yealink (USA) Network Technology Co., Ltd. and its parent company Yealink Network Technology Co., Ltd., which you'll hear referred to throughout the trial as simply as the Defendant or Yealink.

    As I've told you during the jury selection process, this case is about Yealink's infringement of six of Barco's patents. These patents are U.S. Patent Nos. 10,762,002; 10,795,832; 10,904,103; 11,258,676; 11,403,237; and 11,422,951. Patents are commonly known by their last three digits, so throughout the trial you will hear the patents referred to most often as simply the '0-0-2 patent or the '9-5-1 patent, for example. They may also be referred to at various times as the "patents-in-suit" or the "asserted patents."

    [**Plaintiffs' Proposal**: Now, the defendant in this case, Yealink, admits that it infringes Barco's patents. So you do not need to determine whether or not Yealink infringed Barco's

---

[4] **Plaintiff's Position:** this language provides helpful context to what a patent is, is commonly used in jury instructions as it tracks the Patent Video, and mirrors what the Court adopted in the Preliminary Jury Instructions in *Estech Sys., Inc. v. Target Corp. et al.*, No. 2:20-cv-00123-JRG. **Defendants' Position:** this language is unnecessary and would needlessly confuse the jury. Invalidity is not at issue in this case, and the parties do not anticipate introducing the prosecution history into evidence or refer to the prosecution history during trial.

[5] Adapted from Preliminary Jury Instructions in *Estech Sys., Inc. v. Target Corp. et al.*, No. 2:20-cv-00123-JRG, at 15–7.

patents.  You are tasked with determining (1) the amount of money damages Barco is entitled to as a result of that infringement; and (2) whether Yealink's infringement of Barco's patents was willful.] [**Defendants' Proposal**: Now, Barco accuses Yealink of infringing its six patents through five different products. Two of the products are what are called Presentation Pods, or as you will hear throughout the trial as "dongles." Yealink has two of these Presentation Pod products, or dongles, (1) the WPP20 Presentation Pod and (2) the WPP30 Presentation Pod.

Regarding these two dongles, Yealink has already admitted that they infringed two of Barco's patents, the '832 Patent and the '103 Patent, when these dongles were on the market in the U.S. So for these two patents, infringement is not at issue.

Yealink has three other products that are accused of infringing Barco's patents. These three other products are what are referred to as "Base Units." Base units can work with a dongle to create a videoconferencing system. Three of Yealink's base units are at issue in this case: (1) A20-020-TEAMS Video Bar, (2) the Meeting Board 65, and (3) the Room Cast.

Yealink's three base units do not infringe the '832 Patent or the '103 Patent, but they can infringe Barco's other four asserted patents if they are used with a dongle. Here, again, Yealink has made the following admissions regarding infringement of these other four patents: the '002, '237, '676, and '951 Patents:

1.       Yealink's WPP20 Presentation Pod or WPP30 Presentation Pod, when used with a connected device, infringed the '002 Patent and the '237 Patent;

2.       Yealink's A20-020-TEAMS Video Bar and Meeting Board, when and only when used together with its WPP20 Presentation Pod or WPP30 Presentation Pod in the same system, infringed the '676 Patent; and

8

3.      Yealink's A20-020-TEAMS Video Bar, Meeting Board, and Room Cast, when and only when used together with its WPP20 Presentation Pod or WPP30 Presentation Pod in the same system, infringed the '951 Patent.

For these four latter patents that involve Yealink's base units, you are to accept Yealink's admissions as true, but you should not draw any other conclusion about the established infringement. Instead, if you find that Barco proves by a preponderance of the evidence that consumers had used Yealink's dongle and base unit products in the manner above in the U.S., then Yealink infringed these four patents.

Thus, with respect to the '832 Patent and the '103 Patent, infringement by Yealink's WPP20 Presentation Pod and WPP30 Presentation Pod is established, and you are tasked with determining (1) the amount of money damages Barco is entitled to as a result of that infringement; and (2) whether Yealink's infringement of Barco's patents was willful. With respect to the '002 Patent, the '237 Patent, the '676 Patent, and the '951 Patent, you are tasked with determining (1) whether Yealink induced consumers to use its A20-020-TEAMS Video Bar, Meeting Board, and Room Cast with the WPP20 Presentation Pod or the WPP30 Presentation Pod and, if so, how many

times, (2) the amount of money damages Barco is entitled to as a result of that induced infringement; and (3) whether Yealink's infringement of Barco's patents was willful.][6]

Now, I know that there are many new words and concepts that have been thrown at you today. I'm going to define a lot of those words and concepts for you as we go through these instructions, the attorneys for the parties are going to discuss them in their opening statements, the witnesses are going to help you through their testimony to understand these words and concepts, so please do not feel overwhelmed at this point. I promise you, it will all come together as we go forward.

## OVERVIEW OF THE APPLICABLE LAW[7]

In deciding the issues that are before you, you'll be asked to consider specific legal rules, and I'll give you an overview of those rules now, and then at the conclusion of the case I'll give you more detailed instructions.

[**Plaintiffs' Proposal**: The first issue] [**Defendants' Proposal**: The first issue you'll need to decide is whether Yealink infringed Barco's six asserted patents. Infringement, ladies and

---

[6] **Plaintiff's Position:** Plaintiff's position tracks the actual posture of the case, whereas Defendant's proposal attempts to manufacture disputes where its admissions are clear. See generally Dkt. 85. Defendants elected to admit infringement in the case to avoid discovery and now it attempts to walk back that admission to require Barco to prove infringement. **Defendant's Position:** Defendants' proposed language accurately reflects their admissions in the Third Amended Answer. See D.I. 85 ¶¶ 2, 41, 51, 61, 71, 81, 91. For the four system patents (the '002, '237, '676, and '951 patents), Defendants admitted that their dongles and base units, *when used together*, meet the claim limitations. These admissions were made to streamline the case and avoid unnecessary technical discovery, including source code production—an efficiency this Court acknowledged. See D.I. 88 at 41:22–24, 54:10–25. But these admissions do not relieve Plaintiffs of their burden to prove indirect infringement. Plaintiffs must still establish that the accused products were actually used in the U.S. in an infringing manner, that Defendants actively encouraged such use, and that Defendants had the requisite knowledge and intent. Plaintiffs' attempt to stretch Defendants' admissions beyond their scope ignores this burden and mischaracterizes the record.

[7] Adapted from Preliminary Jury Instructions in *Estech Sys., Inc. v. Target Corp. et al.*, No. 2:20-cv-00123-JRG, at 8–11.

gentlemen, is assessed on a claim-by-claim basis, and the Barco must show by a preponderance of the evidence that a claim has been infringed. Here, infringement of the '832 Patent and the '103 Patent is established. Thus, you do not need to decide infringement with regard to these two patents. With regard to the '002 Patent, the '237 Patent, the '676 Patent, and the '951 Patent, Barco contends Yealink induced infringement of these four patents because it induced, and continues to induce, users to infringe the '002 Patent, the '237 Patent, the '676 Patent, and the '951 Patent by using Yealink's WPP20 or WPP30 dongles with its base units. I'll provide you with more detailed instructions on the requirements for infringement at the conclusion of the trial. [8]

The second issue][9] you'll need to decide is what amount of money damages should be awarded to Barco to compensate it for Yealink's infringement. A damages award, ladies and gentlemen, must be adequate to compensate the patent holder for the infringement, and, if proven, not less than what the patent holder would have received if it had been paid a reasonable royalty for the use of its patented technology.

However, the damages you award, if any, are meant to compensate the patent holder and they are not meant to punish Yealink, and you may not include in any damages an award additional amount as a fine or as a penalty above what is necessary to fully compensate the patent holder for the infringement. Additionally, damages cannot be speculative, and Barco must prove the amount of its damages for the alleged infringement by a preponderance of the evidence.

I'll give you more detailed instructions on the calculation of damages for the alleged infringement of the asserted patents at the conclusion of the trial, including giving you specific instructions with regard to the calculation of a reasonable royalty.

---

[8] *See* dispute raised in FN. 6
[9] Adapted from Preliminary Jury Instructions in *Estech Sys., Inc. v. Target Corp. et al.*, No. 2:20-cv-00123-JRG, at 8–9.

## STANDARD OF PROOF[10]

Now, over the course of the trial, the standard of proof that you will apply in this case: "preponderance of the evidence." On [**Plaintiff's Proposal:** the issue of what damages are owed,] [**Defendants' Proposal**: infringement and damages,][11] you must decide whether certain facts have been proven by Barco by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, that is, that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor.

## EVIDENCE AND WITNESSES[12]

Now, over the course of the trial, ladies and gentlemen, you're going to be hearing from a number of witnesses, and I want you to keep an open mind while you're listening to the evidence and not decide any facts until you've heard all the evidence.

Also, this is important. While the witnesses are testifying, remember that you, the jury, will have to decide the degree of credibility and believability to allocate to each of the witnesses and the evidence that they present.

So, while the witnesses are testifying, you should be asking yourselves things like this: Does the witness impress you as being truthful? Does he or she have a reason not to tell the truth? Does he or she have any personal interest in the outcome of the case? Does the witness seem to have a good memory? Did he or she have the opportunity and ability to observe accurately the things that they testified about? Did the witness appear to understand the questions clearly and answer them directly? And, of course, does the witness' testimony differ from the testimony of

---

[10] Adapted from Preliminary Jury Instructions in *Estech Sys., Inc. v. Target Corp. et al.*, No. 2:20-cv-00123-JRG, at 11–15.

[11] *See* dispute raised in FN. 6

[12] Adapted from Preliminary Jury Instructions in *Estech Sys., Inc. v. Target Corp. et al.*, No. 2:20-cv-00123-JRG, at 11–15.

other witnesses and, if it does, how does it differ?  These are some of the kinds of things that you should be thinking about while you're listening to each of the witnesses over the course of the trial.

Also, ladies and gentlemen, I want to talk to you briefly about expert witnesses.  When knowledge of a technical subject may be helpful to you as a jury, a person who has special training and experience in that particular field—we call them an expert witness—is permitted to testify to you about his or her opinions on those technical matters.

However, you are not required to accept an expert witness' or any other witness' opinions. It is up to you to decide who to believe and who not to believe and whether an expert witness, or any witness for that matter, is correct or incorrect about what he or she tells you.

I anticipate that there will be expert witnesses testifying in support of each side in this case, but when that happens, it will be up to you to listen to their qualifications, and when they give an opinion and explain the basis for that opinion, you'll have to evaluate what they say and whether you believe it and to what degree, if any, that you want to give those opinions weight.  Remember, ladies and gentlemen, judging and evaluating the credibility and believability of each and every witness is an important part of your job as jurors.

During the trial, it's possible that there will be testimony from one or more witnesses that are going to be presented to you through what's called a deposition. In trials like this, it's difficult to get every witness physically present in the courthouse at the same time.  So lawyers from each side, before the trial begins, take the depositions of the witnesses.  In a deposition, a court reporter is present, the witness is there and is sworn and placed under oath, just as if he or she were in a court of law, and the parties then ask them questions, and their answers are recorded and taken down. Portions of these depositions—these recordings, and many of them are done as video recordings—can be played back to you so that you can hear the questions to the witness, you can

hear the witness's answer, and you can see and hear the witness by video if it is a video deposition. That deposition testimony is entitled to the same consideration and, insofar as possible, is to be judged by you as to the credibility and otherwise considered by the jury in the same way as if the witness had physically appeared in person and had given their testimony from the witness stand in open court.[13]

It's important for you to understand that during the course of this trial when these deposition witnesses are presented to you, you'll probably be seeing video clips and these will be video clips that have been sliced and pasted together so that they can be presented to you. Let me explain this. During a typical deposition taken in advance of a trial, those depositions can last many hours, typically up to seven hours; and to keep you from listening to all seven hours of the video recordings, the parties, through their counsel and prior to the trial, select the portions of those video recordings that they think are the most important. Those are then cut and spliced together and put together in a much shorter segment, and that segment is what will be played to you as video testimony, deposition testimony, during the course of the trial. That means you may see portions of these video depositions that look like they've been spliced and, if they have, that's why they have. And you may hear different voices, because at one point one lawyer is asking questions and at another point another lawyer is asking questions. But the alternative, ladies and gentlemen, is for you to listen to the entire seven-hour video recording, and we're not going to do that. So, when those deposition witnesses are presented to you, don't focus on the fact that there may appear to be some splicing, don't focus on the fact that you may hear different voices; focus on the

---

[13] Adapted from Preliminary Jury Instructions in *Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc. et al.*, No. 2:10-cv-216-JRG, Trial Tr. (Aug. 12, 2013) at 19–20.

questions asked and the answers given just as much as if the witness were present in the courtroom and giving their testimony here from the witness stand.

Also, ladies and gentlemen, over the course of the trial you're going to see quite a few documents and it's possible that some of the documents presented to you will have portions that have been redacted or blacked out. That is because some portions may not be relevant and the redactions are there because the Court has ordered it prior to the trial. You should not ask yourselves what is under those redactions or otherwise infer anything from those redactions.

If you're presented with exhibits that have redactions in them, don't focus on the redactions.  Don't try to speculate about what's been blacked out.  Focus on the remainder of the documents that are clear and easy to read and consider the part that's presented to you.  Don't worry about any portion that's been blacked out or redacted.

### OBJECTIONS[14]

During the course of the trial, it's possible that the lawyers will raise certain objections and, when they do, the Court will issue rulings on those objections.

It's the duty of an attorney for each side of the case to object when the other side offers testimony or other evidence that the attorney believes is not proper under the rules and orders of the Court.

Upon allowing the testimony or other evidence to be introduced over the objection of an attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of that evidence.  As I've said, you, the jury, are the sole judges of the credibility and believability of all the witnesses and what weight and effect to give to all of the evidence.

---

[14] Adapted from Preliminary Jury Instructions in *Estech Sys., Inc. v. Target Corp. et al.*, No. 2:20-cv-00123-JRG, at 15–16.

Now, let me compliment these parties in your presence and tell you that before this trial began, many, many hours were spent going through many, many documents during the pretrial procedures with the Court so that the Court could consider any disputes as to the admissibility of the documents that are going to be presented over the course of the trial. You may not understand this, ladies and gentlemen, but that has saved you many, many hours of having to listen to those arguments and rulings by the Court as to the admissibility of the exhibits. Said another way, all that has already been done means that when a document is presented to you as an exhibit during this trial, you can know that the Court has already determined the admissibility of it and that it is admissible and the lawyers can present it in whatever form they believe is appropriate and put it in a proper context. They do not have to make a formal offer, they do not have to raise objections and give reasons for those objections and arguments and then have the Court consider and rule on those arguments and determine if the document is or is not admissible because we've already done all that, and that's why that saved you and will save you a lot of time over the course of the trial. And I want to compliment the parties for working cooperatively with the Court in getting that process, sometimes a very drawn-out and burdensome process, already done.

So that means if the parties during this trial show you an exhibit, I've already ruled on the admissibility of it and all they have to simply do is present it and ask such questions about it as they wish to put it in the proper context.

However, it's still possible that objections are going to arise over the course of the trial. If I should sustain an objection to a question addressed to a witness, then you must disregard the question entirely and you may draw no inference from its wording, nor should you speculate about what the witness would have said if I had permitted them to answer the question. On the other

hand, if I overrule an objection to a question addressed to a witness, then you should consider the question and the answer just as if no objection had been made.

## ROLE OF THE COURT AND JURY[15]

You should know, ladies and gentlemen, that the law of the United States permits a United States district judge to comment to the jury on the evidence in a case, but such comments by the judge on the evidence are only an expression of the judge's opinion, and the jury may disregard those comments in their entirety because, as I said, you, the jury, are the sole judges of the facts, you are the sole judges of the credibility and believability of the witnesses, and you're the sole body that will decide how much weight and effect to give to all the evidence over the course of this trial.

So even though the law might permit me as a United States district judge to comment to you on the evidence, I am going to work very hard and diligently not to, and you should not pay anything you see or hear or you think you see or hear as coming from me as something for you to consider in determining the ultimate facts in this case.

## NOTES[16]

In front of me is _____, our court reporter, who is transcribing everything that's said in the courtroom.  Every word that's said is written down and printed in an official transcript. However, that transcript of all the testimony is not going to be available to you to consider during your deliberations in the jury room.  That transcript is prepared in case there is a later appeal of any decision reached in this case.

---

[15] Adapted from Preliminary Jury Instructions in *Estech Sys., Inc. v. Target Corp. et al.*, No. 2:20-cv-00123-JRG, at 17.

[16] Adapted from Preliminary Jury Instructions in *Estech Sys., Inc. v. Target Corp. et al.*, No. 2:20-cv-00123-JRG, at 17–21.

In a moment you're each going to be given a juror notebook, and in those juror notebooks, you're going to find a blank legal pad where you can take notes over the course of the trial, if you wish to.  It will be up to each of you to decide whether or not you want to take notes about the witnesses or anything else regarding the trial, and how detailed you want those notes to be if you decide to take notes. But, remember, those notes are for your own personal use. You still have to rely on your memory of the evidence, which is why you should be paying close attention to the testimony of each and every witness. You should not abandon your own recollection because somebody else's notes indicate something different. Your notes, if you keep them, are to refresh your recollection only, and that is the only reason you should be keeping them.

In these notebooks, ladies and gentlemen, you'll see that you each have a copy of the asserted patents in this case that we've talked about. You'll also find that you have a section of what are called witness pages so that there is a photograph of each witness that could possibly testify in the trial, together with their name underneath.  The Court finds that it's very helpful to members of the jury to be able to look back and see a picture of each witness when you're recalling and reflecting on the testimony that's given by a group of several witnesses over the course of the trial.

You should also find a pen in the front flap of those notebooks in case you didn't bring one with you.

When you leave each day after we recess each day, you should make sure that those notebooks are left closed and on the table in the jury room.  They'll be there overnight, and then you'll have them to bring with you in the courtroom the next morning when we reconvene and start the next day's portion of the trial.  You should either have those notebooks with you in your

possession in the courtroom, or they should be in the jury room closed and on the table, not anywhere else.

That being said, there are times that we'll take a short recess during the course of the trial, maybe 10 or 12 minutes.  In that case, I might say to you, ladies and gentlemen, this will be a short recess, you can simply leave your notebooks closed and in your seats.  And if I do that, then you can leave them in your seat in the jury box, and it will be there when you come back from that short recess.  But unless I tell you otherwise, they should either be in your hands in your possession, or they should be in the jury room on the table and nowhere else.[17]

## **TRIAL ROADMAP[18]**

We're going to have opening statements in just a few minutes, and I want to give you a brief roadmap of how the trial is going to be structured before we have those opening statements by the attorneys.[19]

These opening statements are designed to give you a roadmap of what each side expects to offer by way of evidence.  You should remember throughout this trial that what the lawyers tell you is not evidence.  The evidence, ladies and gentlemen, is the sworn testimony of the witnesses that you'll hear presented in open court, whether it's a live witness testifying from the witness stand or a deposition witness who's played back to you over the monitors and the sound system that we have in the courtroom.  Additionally, the evidence includes the exhibits which the Court has admitted into evidence and which will be presented to you during the course of the trial.  That is the totality of the evidence in this case.  What the lawyers tell you is not evidence, but it is their

---

[17] Adapted from Preliminary Jury Instructions in *Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc. et al.*, No. 2:10-cv-216-JRG, Trial Tr. (Aug. 12, 2013) at 13–15.

[18] Adapted from Preliminary Jury Instructions in *Estech Systems, Inc. v. Target Corp. et al.*, No. 2:20-cv-00123-JRG, at 21–26.

[19] Adapted from Preliminary Jury Instructions in *Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc. et al.*, No. 2:10-cv-216-JRG, Trial Tr. (Aug. 12, 2013) at 23.

impression of what they believe the evidence will show, and they have a duty to try and point out to the jury what they believe the evidence is. But just remember what they tell you is not evidence.

Also, the commentary from the lawyers in this case is not evidence and it's also not instructions on the law. The instructions on the law in this case will come from me to you and from no other source.

After the opening statements by both sides, [**Plaintiffs' Proposal**: the Plaintiff, Barco, will present its evidence in support of its claims.] [**Defendants' Proposal**: Barco will go forward with its evidence and its case. This is called Barco's case-in-chief, and Barco will call its witnesses and present its testimony. After the witnesses have been called and testified, cross- examined, and released by the Court and all Barco's witnesses have been called, Barco will rest its case-in-chief.][20]

[**Plaintiffs' Proposal**: After Barco rests its case, then Yealink put on evidence responding to Barco's evidence.] [**Defendants' Proposal**: And when Barco rests its case-in-chief, then we will transition to Yealink's case-in-chief, and Yealink will call its witnesses and present its testimony, and its witnesses will be cross-examined by Barco. And when all Yealink's testimony and witnesses have been presented, then Yealink will rest its case-in-chief.][21]

---

[20] **Plaintiff's Position**: Barco's proposal streamlines the presentation to let the jury know the outline of trial without wading into the issues, which it has already been instructed on. **Defendants' Position**: This section is about providing an outline of the upcoming trial, which Defendants' proposed language clearly provides. Defendants' proposed language is also adopted from the Court's more recent preliminary instructions. *See* Preliminary Jury Instructions in *Multimedia Techs. PTE. Ltd. v. LG Elecs. Inc. et al.*, No. 2:22-cv-00494-JRG-RSP, at 17-18; Preliminary Jury Instructions in *Correct Transmission, LLC v. Nokia of America Corp.*, No. 2:22-cv-00343-JRG, at 20-21.

[21] Same dispute as footnote 20.

After Yealink rests its case, the Court will give you final instructions on the law that applies in this case.  Those final instructions from me to you are often called the Court's charge to the jury.  They are also called the Court's final instructions.[22]

After I've given you my final instructions, then the lawyers for both sides will present their closing arguments.  And once you've heard the closing arguments from both sides, I will instruct you to retire to the jury room and to deliberate on your verdict.  Again, the verdict will be a document containing [**Plaintiffs' Proposal**: two] [**Defendants' Proposal**: several][23] questions that you must answer unanimously.

That's an overview of the structure of the trial and how I expect it to go.  Now, I've told you not to discuss or communicate about the case with anyone in any way.  That also means you are not to discuss or communicate about the case with each other during the course of the trial.

Only when you've heard all the evidence, only when I've given you my final instructions on the law, the Court's charge to the jury, only after the parties through their attorneys have presented their closing arguments and when I instruct you to retire to the jury room to deliberate on the verdict, at that point then the rules change and you go from not being able to discuss the evidence among each other to being required to discuss the evidence among each other in an effort to reach a unanimous decision about the questions set forth in the verdict form.  But up until the point when I instruct you to retire and deliberate on your verdict, up until the point that you've heard all the evidence, my final instructions, and the attorneys' closing arguments, you must not

---

[22] Adapted from Preliminary Jury Instructions in *Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc. et al.*, No. 2:10-cv-216-JRG, Trial Tr. (Aug. 12, 2013) at 23–25.

[23] **Plaintiff's Position:**  There are only two questions on the verdict form. On the day the instructions were due to be filed, Yealink provided its initial edits to Barco's proposed verdict form which had two questions on it.  Yealink had Barco's proposed verdict form for 18 days before it elected to respond with its proposal.  **Defendants' Position:** There are more than two questions on Defendants' proposed verdict form.

discuss the case or communicate about the case with each other in any way, and that's in addition to the general instruction I gave you earlier about not communicating about the case with anyone in any way.

All right.  Ladies and gentlemen, let me also remind you that over the course of the trial you're probably unavoidably going to walk past or be in close proximity to one or more of the parties or the support teams, the trial teams working on either side of this case.  As you can see, there are quite a few people in the courtroom.  Most of them are affiliated with one side or the other in this trial.  When you pass by them, they're not going to look at you probably, they're definitely not going to talk to you, and they're not going to stop and start a conversation with you.  That's because I've instructed them not to.  That's because the sole source of the information that you must have before you to draw upon to answer the questions in the verdict form after you've heard all of the evidence must be limited to the sworn testimony presented during the course of the trial and the exhibits that the Court has admitted into evidence.  That's it.  So, when that happens, when some person walks right by you and doesn't smile or speak or even indicate that you exist, don't take that as being rude, don't take that as being unfriendly, and certainly don't hold it against anybody, because they are simply following the instruction that the Court has given them.

Now, with that we'll proceed to hear opening statements from the parties, first the Plaintiff, Barco, and then the Defendant, Yealink.

Plaintiff may now present its opening statement to the jury.

## [PROPOSED] FINAL JURY INSTRUCTIONS[24]

[PROPOSED] FINAL JURY INSTRUCTIONS                                           23

GENERAL INSTRUCTIONS                                                         24

    JURY INSTRUCTION No. 1.  Statements of the Court and Counsel ............................. 24

    JURY INSTRUCTION No. 2.  Verdict Form ................................................................ 24

    JURY INSTRUCTION No. 3.  Credibility of Witnesses and Evidence .......................... 25

    JURY INSTRUCTION No. 4.  Objections of Counsel .................................................... 26

    JURY INSTRUCTION No. 5.  Direct and Circumstantial evidence ............................... 26

    JURY INSTRUCTION No. 6.  Stipulations ................................................................... 27

    JURY INSTRUCTION No. 7.  Testimony by Deposition ................................................ 27

    JURY INSTRUCTION No. 8.  Reasonable Inferences From Evidence ........................... 27

    JURY INSTRUCTION No. 9.  Sufficiency of Testimony ............................................... 28

    JURY INSTRUCTION No. 10. Expert Witnesses ........................................................... 28

    JURY INSTRUCTION No. 11. Demonstrative Exhibits ................................................. 28

BURDENS OF PROOF                                                            30

    JURY INSTRUCTION No. 12. Preponderance of the Evidence ...................................... 30

THE CONTENTIONS OF THE PARTIES                                              31

PATENT DAMAGES - GENERALLY                                                  34

    JURY INSTRUCTION No. 13. Patent Damages - Reasonable Royalty .......................... 34

    JURY INSTRUCTION No. 14. Patent Damages – Reasonable Royalty or Georgia-Pacific Factors                35

    JURY INSTRUCTION No. 15. Patent Damages – Availability of Non-infringing Alternatives                40

    JURY INSTRUCTION No. 16. Patent Damages – Commencement of Damages ............ 42

    JURY INSTRUCTION No. 17. Willful Patent Infringement ........................................... 43

INSTRUCTIONS FOR DELIBERATIONS                                              44

---

[24] Unless otherwise specified, these final jury instructions are modeled off of the Jury Instructions in *Estech Sys., Inc. v. Target Corp. et al.*, No. 2:20-cv-00123-JRG (E.D. Tex.).

## <u>INTRODUCTION</u>

Ladies and Gentlemen of the Jury:

You've now heard the evidence in this case.  I will now instruct you on the law that you must apply.  Each of you will have a copy of these final jury instructions for your review when you retire to deliberate in a few moments.  Accordingly, there's no need for you to take written notes on these written instructions unless you particularly want to do so.

## <u>GENERAL INSTRUCTIONS</u>

### JURY INSTRUCTION NO. 1.        STATEMENTS OF THE COURT AND COUNSEL

It's your duty to follow the law as I give it to you.  On the other hand, as I've said previously, you, the jury, are the sole judges of the facts.  Do not consider any statement that I have made in the course of the trial or may make in these instructions as an indication that I have any opinion about the facts of the case.

You're about to hear closing arguments from the attorneys.  Statements and arguments of the attorneys are not evidence and are not instructions on the law.  They're intended only to assist the jury in understanding the evidence and the parties' contentions.

### JURY INSTRUCTION NO. 2.        VERDICT FORM

A verdict form has been prepared for you.  You will take this form to the jury room when you retire to deliberate.  When you have reached unanimous agreement as to your verdict, you will have your foreperson fill in the blanks in that form with your unanimous answers to the questions, date it, sign it, and then advise the Court Security Officer you have reached a verdict.  Answer each question in the verdict form from the facts as you find them.  Do not

decide who you think should win and then answer the questions to reach that result. Your answers and your verdict must be unanimous.[25]

### JURY INSTRUCTION NO. 3.          CREDIBILITY OF WITNESSES AND EVIDENCE

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them. You may consider any stipulations of the parties. And you may consider all exhibits that have been received and admitted into evidence over the course of the trial, regardless of who may have introduced or used them. Some of the testimony you heard was interpreted from another language. In consideration of a witness's testimony, it is not relevant whether his or her testimony was in English or interpreted from another language into English.

You, the jurors, are the sole judges of the credibility of all witnesses and the weight and effect of all evidence. In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest they may have in the case, any prejudice or bias about the case that the witness may have, and the consistency or inconsistency of their testimony, considered in the light of the circumstances. Has the witness been contradicted by other evidence? Has the witness made statements at other times and places contrary to what the witness said on the witness stand? You must give the testimony of each witness the amount of credibility that you think it deserves.

---

[25] Revisions consistent with *G+ Commc'ns, LLC v. Samsung Elecs. Co. Ltd.*, No. 2:22-cv-00078-JRG, Dkt. 592 (E.D. Tex. Feb. 2, 2024).

You must also keep in mind that a simple mistake does not mean the witness is not telling the truth. You must consider whether any misstatement was an intentional falsehood or a simple lapse in memory and what significance should be attached to that testimony.

**JURY INSTRUCTION NO. 4.          OBJECTIONS OF COUNSEL**

As I have told you previously, the attorneys in this case are advocates for their competing clients and have a duty to object when they believe evidence is offered that should not be admitted under the rules of this Court. When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer. However, if the objection was overruled, then you may treat the answer to that question just as you would treat the answer to any other question. By allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

At times during the trial, it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess and talking to them when you were out of the courtroom. This happened because often during a trial, something comes up that does not involve the jury. You should not speculate on what was said during such discussions that took place outside of your presence.[26]

**JURY INSTRUCTION NO. 5.          DIRECT AND CIRCUMSTANTIAL EVIDENCE**

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence such as testimony of an eyewitness. The other is

---

[26] Revisions consistent with *G+ Commc'ns, LLC v. Samsung Elecs. Co. Ltd.*, No. 2:22-cv-00078-JRG, Dkt. 592 (E.D. Tex. Feb. 2, 2024); *Ningde Amperex Tech., Ltd. v. Zhuhai Cosmx Battery Co. Ltd.*, No. 2:22-cv-232-JRG, Dkt. 383 (E.D. Tex. May 23, 2024).

indirect or circumstantial evidence, that is, the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you find the facts based on the evidence presented, both direct and circumstantial. It is for you to decide how much weight to give to any evidence in this case.

### JURY INSTRUCTION NO. 6.          STIPULATIONS

The parties may have stipulated, or agreed, to some facts in this case.  When the lawyers on both sides stipulate to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard the fact as proved.

### JURY INSTRUCTION NO. 7.          TESTIMONY BY DEPOSITION

Certain testimony in this case has been presented to you through depositions.  A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial.  If a witness cannot be present to testify in person from the witness stand, the witness's testimony may be presented, under oath, in the form of a deposition.  Before this trial, attorneys representing the parties in this case questioned these deposition witnesses under oath.  A court reporter was present and recorded the testimony.  Deposition testimony is entitled to the same consideration as testimony given by a witness in person from the witness stand.  Accordingly, you should determine the credibility and importance of deposition testimony, to the best of your ability, just as if the witness had testified in court in person.

### JURY INSTRUCTION NO. 8.          REASONABLE INFERENCES FROM EVIDENCE

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason

and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.  However, you should not base your decision on any evidence not presented by the parties during this case, including your own personal experience with any of the products that are at issue in this case.

### JURY INSTRUCTION NO. 9.     SUFFICIENCY OF TESTIMONY

Unless I instruct you otherwise, you may properly determine that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence, you believe that single witness.

### JURY INSTRUCTION NO. 10.     EXPERT WITNESSES

When knowledge of technical subject matters may be helpful to the jury, a person who has special training or experience in that technical field—called an "expert witness"—is permitted to state his or her opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is solely up to you to decide [**Plaintiffs' Proposal**: whether to rely upon it or not.] [**Defendants' Proposal**: who you believe and who you don't believe and whether or not you want to rely on their testimony.][27]

### JURY INSTRUCTION NO. 11.     DEMONSTRATIVE EXHIBITS

Certain exhibits have been shown to you during the trial that were illustrations.  We call these types of exhibits "demonstrative exhibits" or sometimes simply "demonstratives." Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial.  If your recollection of the evidence differs from the demonstrative exhibit, you should rely on your recollection.  Demonstratives themselves are not evidence, but the witness's testimony

---

[27] **Plaintiff's Position**: This language is more clear and concise. **Defendant's Position**: This language is consistent with the Court's recent instructions, as it was adapted from Proposed Final Jury Instructions in *Multimedia Techs. PTE. Ltd. v. LG Elecs. Inc. et al.*, No. 2:22-cv-00494-JRG-RSP, at 5–6.

concerning a demonstrative exhibit is evidence.  The demonstratives will not be available for you to review during your deliberations.[28]

---

[28] Revisions consistent with *G+ Commc'ns, LLC v. Samsung Elecs. Co. Ltd.*, No. 2:22-cv-00078-JRG, Dkt. 592 (E.D. Tex. Feb. 2, 2024); *Ningde Amperex Tech., Ltd. v. Zhuhai Cosmx Battery Co. Ltd.*, No. 2:22-cv-232-JRG, Dkt. 383 (E.D. Tex. May 23, 2024).

## BURDENS OF PROOF

In any legal action, facts must be proved by a required amount of evidence known as the "burden of proof."  [**Plaintiffs' Proposal**: The burden of proof in this case is on the Plaintiff, Barco, to prove what damages it is entitled to.] [**Defendants' Proposal**: The burden of proof in this case is on the Plaintiff, Barco, to prove whether Yealink has induced others to infringe Barco's patents, the damages it is entitled to, and whether Yealink willfully infringed Barco's patents.][29]

### JURY INSTRUCTION NO. 12.        PREPONDERANCE OF THE EVIDENCE

[**Plaintiffs' Proposal**: Barco has the burden of proving damages for patent infringement by a preponderance of the evidence.] [**Defendants' Proposal**: Barco has the burden of proving all issues – induced infringement, damages, and willful infringement by a preponderance of the evidence.][30][31]

A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true.  Sometimes this is talked about as being the greater weight and degree of credible testimony.

---

[29] See dispute in FN 6.
[30] See dispute in FN 6.
[31] Adapted from Proposed Final Jury Instructions in *Estech Systems, Inc. v. Target Corp. et al.*, No. 2:20-cv-00123-JRG, at 6–7.

## THE CONTENTIONS OF THE PARTIES

As I did at the start of the case, I will first give you a summary of each side's contentions in this case.  I'll then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously advised you, this case concerns [**Plaintiff's Proposal** six patents that Yealink admits it infringes.  The six patents are][32] U.S. Patent Nos. 10,762,002; 10,795,832; 10,904,103; 11,258,676; 11,403,237; and 11,422,951, which you have heard referred to throughout this trial as the '002 Patent, the '832 Patent, the '103 Patent, the '676 Patent, the '237 Patent, and the '951 Patent respectively or, collectively, the Asserted Patents.

[**Plaintiffs' Proposal**: Barco is entitled to at least a reasonable royalty to compensate it for Yealink's infringement of the Asserted Patents.]   [**Defendants' Proposal**: As I have also previously advised you, infringement of the '832 Patent and the '103 Patent by Yealink's WPP20 Presentation Pod and WPP30 Presentation Pod is established by Yealink's admission. Barco has also accused Yealink of inducing others to infringe the '002 Patent, the '676 Patent, the '273 Patent, and the '951 Patent by using the Yealink dongles, the WPP20 Presentation Pod or the WPP30 Presentation Pod, with Yealink's base units, the A20-020-TEAMS Video Bar, Meeting Board, or Room Cast, together in the same system.

Yealink denies that it has induced infringement of the '002 Patent, the '676 Patent, the '273 Patent, and the '951 Patent.

Your job is to decide whether Yealink induced infringement of the '002 Patent, the '676 Patent, the '273 Patent, and the '951 Patent.

---

[32] **Plaintiffs' Position**: Yealink has admitted to all infringement.  *See* Dkt. 85.  **Defendants' Position**: Plaintiffs' broad reference to Yealink's admission of infringement of all six patents is not accurate for the same reasons discussed in FN. 6, and has the potential to mislead the jury.

Your job is also to decide any money damages to be awarded to Barco as compensation for the infringement of the '832 Patent and the '103 Patent. If you decide that Yealink continues to induce infringement of the '002 Patent, the '676 Patent, the '273 Patent, and the '951 Patent, you will then need to decide any money damages to be awarded to Barco as compensation for the induced infringement. Barco contends it is seeking a reasonable royalty for any infringement of the Asserted Patents.][33]

**[Plaintiff's Proposal**: No instruction on induced infringement is appropriate]  **[Defendants' Proposal**:

## INDUCED PATENT INFRINGEMENT

Barco alleges that Yealink is liable for indirect infringement by actively inducing others to indirectly infringe the '002 Patent, the '676 Patent, the '273 Patent, and the '951 Patent. Here, as I instructed before, Yealink has admitted that it infringed the '002 Patent, the '676 Patent, the '273 Patent, and the '951 Patent in certain situations:

1. Yealink's WPP20 Presentation Pod or WPP30 Presentation Pod, when used with a connected device, infringed the '002 Patent and the '237 Patent;

2. Yealink's A20-020-TEAMS Video Bar and Meeting Board, when and only when used together with its WPP20 Presentation Pod or WPP30 Presentation Pod in the same system, infringed the '676 Patent; and

3. Yealink's A20-020-TEAMS Video Bar, Meeting Board, and Room Cast, when and only when used together with its WPP20 Presentation Pod or WPP30 Presentation Pod in the same system, infringed the '951 Patent.

Thus, Yealink is liable for induced patent infringement if Barco proves by a preponderance of the evidence that:

---

[33] See dispute in FN 6.

1.   Users in the United States have used Yealink's products in situations consistent with Yealink's admissions above;

2.   That Yealink has taken action that was intended to cause these infringing acts by these users in the United States; and

3.   That Yealink was aware of the '002 Patent, the '676 Patent, the '273 Patent, and the '951 Patent and knew that these acts, if taken, would constitute infringement of the Asserted Patents.

To establish induced infringement, it is not sufficient that Yealink was aware of the act(s) by users of its products that allegedly constitute the direct infringement, Nor is it sufficient that Yealink was aware of the act(s) by its users that infringed the '002 Patent, the '676 Patent, the '273 Patent, and the '951 Patent.  In order to find inducement, you must find that Yealink specifically intended users of its products to infringe the '002 Patent, the '676 Patent, the '273 Patent, and the '951 Patent or that Yealink believed that there was a high probability that its users would infringe these patents but deliberately avoided learning the infringing nature of its users' acts. The mere fact, if true, that Yealink knew or should have known that there was a substantial risk that its uses' acts would infringe these four patents would not be sufficient to support a finding of active inducement of infringement.][34][35]

---

[34] See dispute in FN 6.  Barco reserves its right to object to specific language in the induced infringement instruction if the Court finds an instruction is appropriate.

[35] Defendants believe jury instruction on induced infringement is appropriate for the same reasons discussed in FN. 6. Defendants did not broadly admit to inducing infringement, which Plaintiffs must carry their burden to establish. Defendants' proposed language is  adapted from Preliminary Jury Instructions in *Multimedia Techs. PTE. Ltd. v. LG Elecs. Inc. et al.*, No. 2:22-cv-00494-JRG-RSP, at 22-24; Federal Circuit Bar Associate Model Patent Jury Instruction 3.2.

## PATENT DAMAGES - GENERALLY

Barco is entitled to [**Plaintiffs' Proposal**: no less than a reasonable royalty] [**Defendants' Proposa**l: a reasonable royalty][36] for Yealink's infringement.  How much that is, is up to you.  Barco has the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should award only those damages that Barco establishes it more likely than not suffered as a result of Yealink's infringement.  While Barco is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty.  Barco is not entitled to damages that are remote or speculative.  However, it may be proper to award a damages amount if the evidence shows the extent of the damages as a matter of just and reasonable inference.

You must not award Barco more damages than are adequate to compensate for Yealink's infringement.  You also must not award any additional amount for the purpose of punishing Barco or setting an example.[37]

### JURY INSTRUCTION NO. 13.    PATENT DAMAGES - REASONABLE ROYALTY

A royalty is a payment to a patent holder in exchange for the right to make, use, or sell the claimed invention.  In this case, Barco seeks damages in the form of a reasonable royalty.  A

---

[36] **Plaintiff's Position**: This is the language of 35 U.S.C. § 284; appears in the Federal Circuit Bar Association's Model Patent Jury Instructions at pg. 55 ("Note, however, that [patent holder] is entitled to recover no less than a reasonable royalty for each infringing [sale; fill in other infringing act]."). **Defendant's Position:** Plaintiffs demand only a reasonable royalty in this case, and its damages expert opined that the only damages in this case are a reasonable royalty.  For the first time on July 24, 2025, Plaintiffs' counsel stated Plaintiffs intend to seek, in addition to a reasonable royalty, another form of payment as damages but refused to disclose what they intend to seek. Defendants reserve the right to seek appropriate relief related to Plaintiffs' new and undisclosed damages theory, including seeking leave to file a motion *in limine*.

[37] Revisions consistent with *G+ Commc'ns, LLC v. Samsung Elecs. Co. Ltd.*, No. 2:22-cv-00078-JRG, Dkt. 592 (E.D. Tex. Feb. 2, 2024); *Ningde Amperex Tech., Ltd. v. Zhuhai Cosmx Battery Co. Ltd.*, No. 2:22-cv-232-JRG, Dkt. 383 (E.D. Tex. May 23, 2024).

reasonable royalty is the amount of royalty that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time before the infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of Barco and  Yealink would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patents were valid and infringed and infringer both parties were willing to enter into an agreement.

The reasonable royalty you determine must be a royalty that would have resulted from this hypothetical negotiation and not simply a royalty that either party would have preferred.

### JURY INSTRUCTION NO. 14.       PATENT DAMAGES – REASONABLE ROYALTY OR GEORGIA-PACIFIC FACTORS

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the factors that you should consider in making your determination are:

1. The royalties received by the patent owner (Barco) for licensing of the asserted patent, proving or tending to prove an established royalty;

2. The rates paid by a licensee for the use of other patents comparable to the asserted patent;]

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of territory or with respect to the parties to whom the manufactured product may be sold;

4. [**Plaintiffs' Proposal**: The licensor's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by

35

granting licenses under special conditions designed to preserve that exclusivity;]

[**Defendants' Proposal**: Whether the patent owner had an established policy of granting licenses or retaining the patented invention as its exclusive right or whether the patent owner had a policy of granting licenses under special conditions designed to preserve its exclusivity;][38]

5. The commercial relationship between the licensor and the licensee, such as whether they are competitors in the same territory in the same line of business;

6. The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales to his non-patented items, and the extent of such derivative or convoyed sales;

7. The duration of the asserted patent and the term of the license;

8. The established profitability of the product made under the patent-in-suit, its commercial success, and its current popularity;

9. The utility and advantages of the patented invention over prior modes or devices that had been used for achieving similar results;

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

11. The extent to which the alleged infringer has made use of the invention and any evidence probative of the value of that use;

---

[38] **Plaintiff's Position:** Barco's proposal tracks the Federal Circuit Bar Association's model instructions (10.2.5.3) and more accurately encompasses a patent owner's right to exclude. **Defendants' Position**: Defendants' proposal tracks the language of the *Georgia-Pacific* factors, and is consistent with Final Jury Instructions in *Estech Sys., Inc. v. Target Corp. et al.*, No. 2:20-cv-00123-JRG, at 34.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13. The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14. The opinion and testimony of qualified experts; and

15. The amount that a licensor (such as Barco) and a licensee (such as Yealink) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license for the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable a prudent patentee who was willing to grant a license.

You may have heard these factors referred to as the "*Georgia-Pacific* factors."  No one factor is dispositive, and you can and should consider all the evidence that's been presented to you in this case on each of these factors.

You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent owner would have been willing to accept, acting as normally prudent business people.[39]

---

[39] Revisions consistent with *Ningde Amperex Tech., Ltd. v. Zhuhai Cosmx Battery Co. Ltd.*, No. 2:22-cv-232-JRG, Dkt. 383 (E.D. Tex. May 23, 2024).

## JURY INSTRUCTION NO. 15.    APPORTIONMENT FOR ROYALTY

The damage you award must be based on the [**Plaintiff's Proposal**: value attributable to the patented features. In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology. In other words, the royalty base must be closely tied to the invention.

A multi-component product may have both infringing and non-infringing components. In such products, royalties should be based not on the entire product, but instead on the "smallest salable unit" that practices the patented invention and has close relation to the claimed invention. If the smallest salable unit is a multi-component product containing one or more non-infringing features with no relation to the patented feature(s), damages must only be based on the portion of the value of that smallest salable unit product attributable to the patented technology. This may involve estimating the value of a feature that may not have ever been individually sold.

The entire market value rule is a narrow exception to this general rule. In order to recover damages as a percentage of revenues or profits attributable to the entire product, Barco must establish that it is more likely than not that the patented feature is the sole driver of customer demand for an entire multi-component product such that it creates the basis for customer demand or substantially creates the value of the product.  Where a comparable license is used, and the party relying on that license can establish the license is comparable, additional apportionment may not be needed.]

[**Defendant's Proposal**: incremental value that the patented invention adds to the end product.  Accordingly, your damages award should reflect the value attributable to the infringing features of the accused products, and not more.

38

The law requires that any damages awarded to Barco correspond to the value of the alleged inventions, not to the value of features of Yealink's products that are not covered by Barco's asserted claims.  This is particularly true where the accused product has multiple features and multiple components.

Accordingly, any reasonable royalty award must be based only on the incremental value that Barco's patented invention adds.  Barco bears the burden to establish the amounts attributable to the patented features.  That is, Barco must give evidence tending to separate or apportion between the patented features and the unpatented features, and such evidence must be reliable and tangible and not conjectural or speculative.

Therefore, except as specifically provided in this instruction, in applying the fifteen Georgia-Pacific factors I've just read to you, any royalty award you make must be based only on the incremental value which the patented inventions add to the Accused Products.[40]

Further, if you find that Yealink induced the infringement of the '002 Patent, the '676 Patent, the '273 Patent, and the '951 Patent, and that Barco is entitled to a reasonable royalty tied to Yealink's base units, then this reasonable royalty must be limited to the number of actual instances users used Yealink's dongles and its base units in a manner that infringed the '002 Patent,

---

[40] Adapted from Proposed Final Jury Instructions in *Estech Systems, Inc. v. Target Corp. et al.*, No. 2:20-cv-00123-JRG, at 36.

the '676 Patent, the '273 Patent, and the '951 Patent. This is because the amount of damages for induced infringement is limited by the number of instances of direct infringement.][41]

### JURY INSTRUCTION NO. 16.    PATENT DAMAGES – AVAILABILITY OF NON-INFRINGING ALTERNATIVES

[**Plaintiff's Proposal:** no instruction necessary pending Plaintiff's pending Motion to Strike]

[**Defendants' Proposal**: In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of non-infringing alternatives to the patented invention. The party asserting that there is a non-infringing alternative has the burden to show by a preponderance of the evidence that a proposed non-infringing alternative was available at the time of the hypothetical negotiation and during the damages period. Non-infringing technologies include not only existing technologies that do not infringe, but also technologies that could

---

[41] **Plaintiff's Position:** In this case there is already a license to the asserted patents that has been executed by a third party. This license already accomplished the apportionment exercise and the Jury should be instructed as such. *See Vectura Ltd. v. GlaxoSmithKline LLC, 981 F.3d 1030, 1041 (Fed. Cir. 2020)* ("Built-in apportionment effectively assumes that the negotiators of a comparable license settled on a royalty rate and royalty base combination embodying the value of the asserted patent. . . . [A] party relying on a sufficiently comparable license can adopt the comparable license's royalty rate and royalty base without further apportionment and with-out proving that the infringing feature was responsible for the entire market value of the accused product."). The remainder of this proposal is found in the Federal Circuit Bar Association's Model Patent Jury Instructions at 10.2.5.4 and 10.2.5.4. Contrary to Yealink's allegation, neither Plaintiffs nor Plaintiffs' expert disclaimed comparability, rather the Crestron license is used as a starting point for the *Georgia Pacific* analysis. Moreover, the last paragraph of Defendant's proposal is addressed in the dispute raised in FN. 6.

**Defendant's Position:** Plaintiffs' proposed instruction does not reflect any instruction from this Court and appears to be a backdoor fix to a critical deficiency in their damages case – their expert's failure to apportion damages, as noted in Defendants' *Daubert* motion (D.I. 113). Indeed, it is not proper to instruct the jury that "This license already accomplished the apportionment exercise" as Plaintiffs propose, when Plaintiffs have not shown the third-party license is comparable, and when their own expert and witnesses disclaimed comparability. Defendants' proposed instruction regarding damages tied to indirect infringement is consistent with both this Court's prior practice and binding Federal Circuit precedent. *See, e.g., Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004) ("A defendant's liability for indirect infringement must relate to the identified instances of direct infringement."). It also aligns with the Proposed Final Jury Instructions in *Lone Star Technological Innovations, LLC v. ASUSTEK Computer Inc.*, No. 19-cv-00059 (E.D. Tex.), Dkt. 227, at 30.

reasonably have been developed and that would not infringe. When a party can avoid a patent and replace an infringing product or service with a non-infringing alternative, there is little incentive for the party to take a license from the patent owner rather than simply avoid the patent by implementing a non-infringing alternative. By the same reasoning, if avoiding the patent would be difficult, expensive, and time-consuming, the amount the party would be willing to pay for a license may be greater.[42] You may compare the patented invention to non-infringing alternatives to determine the value of the patented invention, including the utility and advantages of the patent over the old modes or devices, if any, that had been used to achieve similar results.][43]

### JURY INSTRUCTION NO. 17.    LICENSE COMPARABILITY

[**Plaintiff's Proposal**:  When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patents in question. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between Barco and Yealink in order for you to consider it. However, if you choose to rely upon evidence from any license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between Barco and Yealink, in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination.]

[**Defendants' Proposal**: Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in

---

[42] Adapted from *G+ Commc'ns, LLC v. Samsung Elecs. Co. Ltd.*, No. 2:22-cv-00078-JRG, Dkt. 592 (E.D. Tex. Feb. 2, 2024).

[43] **Plaintiff's Position**:  This instruction should not be included for the reasons outlined in Barco's Motion to Strike certain opinions of Dr. Almeroth.  If that motion is denied, Barco does not object to the black text, but does object to the last sentence as it is unnecessarily duplicative of the remainder of the instruction.  **Defendants' Position**: Defendants' proposal is adapted from Proposed Final Jury Instructions in *Multimedia Techs. PTE. Ltd. v. LG Elecs. Inc. et al.*, No. 2:22-cv-00494-JRG-RSP, Dkt. 286-2 at 37.

which the value of a house is determined relative to comparable houses sold in the same neighborhood. If a license agreement is not sufficiently comparable, you may not rely on it in determining damages.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.][44]

**JURY INSTRUCTION NO. 18.        PATENT DAMAGES – COMMENCEMENT OF DAMAGES**

In determining the amount of damages, you must award damages only for infringement committed during the allowable damages time period.  Barco is only seeking damages beginning in May of 2023, when it first sent its cease and desist letter to Yealink.  Thus, allowable damages would have begun, at the earliest, on May 17, 2023.The parties dispute whether any damages are owed after April 2024, and that is a decision for you, ladies and gentlemen, to determine.

---

[44] **Plaintiff's Position**: This is the model patent jury instruction from The Federal Circuit Bar Association's 10.2.5.9 and more accurately reflects the comparability issue in this particular case. **Defendant's Position**: Plaintiffs' proposed language is overly simplistic. Defendants' proposed language is more consistent with the Court's recent instructions, as adapted from Proposed Final Jury Instructions in *Multimedia Techs. PTE. Ltd. v. LG Elecs. Inc. et al.*, No. 2:22-cv-00494-JRG-RSP, Dkt. 286-2 at 36-37.

## JURY INSTRUCTION NO. 19.    WILLFUL PATENT INFRINGEMENT

[**Plaintiffs' Proposal**: Barco contends that Yealink has willfully infringed one or more of the Asserted Patents.  Barco has the burden of proving willful infringement by a preponderance of the evidence.

You may not determine that infringement was willful just because Yealink knew of the Asserted Patents and infringed them.  You may find that Yealink willfully infringed if you find that Yealink deliberately or intentionally infringed one or more of the Asserted Patents.

You may find that Yealink's actions were willful if Yealink acted in reckless or callous disregard of, or with indifference to, Barco's patent rights.  A defendant is indifferent to the rights of another when it proceeds in disregard of a high or excessive danger of infringement that is known to it or was apparent to a reasonable person in its position.

To determine whether Yealink acted willfully, consider all the facts and assess Yealink's knowledge at the time of the infringement.  Facts that may be considered include:

1. Whether or not Yealink acted consistently with the standards of behavior for its industry;

2. Whether or not Yealink intentionally copied a product of Barco's that is covered by one or more of the Asserted Patents;

3. Whether or not Yealink reasonably believed that it did not infringe or that the asserted claims of the patents were invalid;

4. Whether or not Yealink made a good-faith effort to avoid infringing the asserted patents, for example, whether Yealink attempted to design around the asserted patents; and

5. Whether or not Yealink tried to cover up its infringement.]

[**Defendants' Proposal**: Barco also contends that Yealink has willfully infringed the asserted patents. You may not determine that the infringement was willful just because Yealink knew of the asserted patents and infringed them.  Instead, ladies and gentlemen, willful infringement is reserved for only the most serious behavior, such as where the such as where infringement was deliberate, consciously wrong, or done in bad faith.

To determine whether Yealink acted willfully, consider all the facts and assess the Yealink's knowledge at the time of the challenged conduct.  Facts that may be considered include whether or not Yealink reasonably believed that it did not infringe or the asserted patents were invalid as of the filing date of the complaint.

Now, your determination of willfulness should incorporate the totality of the circumstances based on all the evidence presented during the trial. If you decide that any infringement was willful, that decision should not affect any damages that you award.  The Court will take willfulness, if you find it, into account later.][45]

## INSTRUCTIONS FOR DELIBERATIONS

I would now like to provide you with a few final instructions before you begin your deliberations.  You must perform your duties as jurors without bias or prejudice as to any party.

---

[45] **Plaintiff's Proposal** is the proposal from the jury instructions in the *Estech* matter.  Adapted from Proposed Final Jury Instructions in *Estech Systems, Inc. v. Target Corp. et al.*, No. 2:20-cv-00123-JRG.   Moreover, Defendants' Proposal incorrectly alleges that willful infringement is reserved for only the most serious behavior, which improperly influences the jury.  **Defendants' Proposal** is legally proper, as it is adapted from the Court's *actual* final jury instructions provided during trial in *Correct Transmission, LLC v. Nokia of America Corp.*, No. 2:22-cv-00343-JRG, Trial Tr., Dkt. 341 at 1254:10-1255:10. Plaintiffs claim its proposal is from the *Estech* case, but no such instructions appear in the final instructions in that case. Further, the *Estech* case settled before trial, so the Court did not provide actual instructions in that case.

The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict, regardless of the consequences.

Answer each question in the verdict form from the facts as you find them from this case, following the instructions that the Court has included. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true in patent cases between corporations, partnerships, or individuals. A patent owner is entitled to protect his patent rights under the United States Constitution. This includes bringing suit in a United States District Court for money damages for infringement. The law recognizes no distinction among types of parties. All corporations, partnerships and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.[46]

When you retire to the jury room to deliberate on your verdict, you will each have a copy of this charge to take with you. If you desire to review any of the exhibits which the Court has admitted into evidence, you should advise me by a written note delivered to the Court Security Officer, and I will send that exhibit or exhibits to you. Once you retire, you should select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.

After you have reached your verdict, your Foreperson is to fill in on the verdict form which reflects your answers to the questions. Do not reveal your answers until such time as you are

---

[46] Adapted from Final Jury Instructions in *Joe Andrew Salazar v. AT&T Mobility LLC, et al.*, No. 2:20-cv-00004-JRG, at 20.

discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, you should give a written message or question to the Court Security Officer, who will bring it to me.  I will then respond as promptly as possible, either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict and I have discharged you, you are not required to talk with anyone about the case unless the Court orders otherwise.

I will now hand the verdict form and eight copies of these instructions to the Court Security Officer to deliver to the jury room.

Ladies and gentlemen, you may now retire to the jury room to deliberate; we await your verdict.