IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BARCO, INC. et al., § § *Plaintiffs*, § § v. § § YEALINK (USA) NETWORK § TECHNOLOGY CO., LTD. et al., § § *Defendants*. § | CASE NO. 2:23-cv-0521-JRG-RSP |

## MEMORANDUM ORDER

Before the Court is the Daubert Motion and Motion to Strike Expert Opinion of Michael C. Brogioli, filed by Yealink (USA) Network Technology Co., Ltd. and Yealink Network Technology Co., Ltd. ("Defendants"). **Dkt. No. 112**. For the reasons discussed below, the Motion is **GRANTED** as to the first sentence of paragraph 24 and the second sentence of paragraph 184, and otherwise **DENIED**.

### I.   BACKGROUND

On November 14, 2023, Plaintiffs Barco, Inc. and Barco NV ("Plaintiff") sued Defendants alleging they infringe several of Plaintiff's Patents. *See generally* Dkt. No. 1. Eventually, Defendants admitted to infringement, the extent of which the Court later resolved after a dispute arose as to this. Dkt. No. 85, Dkt. No. 189.

### II.   APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry— whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts

2

underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gatekeeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

### III. ANALYSIS

#### A. Technical Infringement Opinions

In the Motion, Defendants assert that the infringement opinions of Plaintiff's technical expert, Dr. Brogioli, should be excluded as entirely conclusory. Dkt. No. 112 at 3. In response, Plaintiff calls this a "Hail Mary attempt" by Defendants "to mitigate its failure to appreciate the impact of its admissions [of infringement][1]" and to try to "limit the fallout." Dkt. No. 120 at 2. In short, Plaintiff argues that "Dr. Brogioli . . . is under no obligation to prove facts Yealink has already admitted." *Id.*

Plaintiff is correct in this argument. Defendants, in response to Plaintiff's Motion to Compel technical discovery (Dkt. No. 75), filed their Third Amended Answer admitting infringement (Dkt. No. 85). *See also* Dkt. No. 88. They claimed that this mooted the need to

---

[1] *See supra* Section I.

3

provide the information requested (source code and technical documents) in Plaintiff's Motion to Compel (Dkt. No. 98 at 1-2), and the Court agreed (Dkt. No. 99).

Defendants may not preclude technical discovery by admitting infringement and then complain that Plaintiff's expert failed to provide a sufficiently detailed technical opinion. The reason why Dr. Brogioli cannot supply a more detailed opinion is because he never had access to the relevant technical documents. As Plaintiff correctly points out, Dr. Brogioli is merely *agreeing* with Defendants that they infringe.

Accordingly, the Motion to Strike on this basis is **DENIED**. Defendants' remaining concerns may be properly addressed on cross examination.

### B. Ongoing Infringement Opinions

Defendants next argue that "Dr. Brogioli claims that 'Yealink could have issued a firmware update to disable the use of WPP30 in the United States and instead continues to actively support it, including through ongoing firmware updates,'" but that he "does not explain the basis of his opinion – specifically, why he believes (1) Yealink could have issued a firmware update to disable the WPP30 in the United States, and (2) Yealink continues to *actively* support the WPP30." Dkt. No. 112 at 5-6 (emphasis in original). Defendants assert that Dr. Brogioli is merely offering guesswork and speculation. *Id.* at 6-7. For these reasons, Defendants seek to strike paragraph 176 of Dr. Brogioli's report. *Id.* at 7.

In response, Plaintiff argues that "Yealink seeks to strike paragraph 176 of Dr. Brogioli's report, but it does not seek to strike the preceding paragraphs, 174-175, where Dr. Brogioli states 'Yealink still supports the use of the WPP30' in the United States and that 'Yealink could have issued an update to disable the use of the WPP30 and could disable the

WPP30-releated features through a firmware update issued in the United States,' while relying on Yealink's 30(b)(6) technical fact witness who confirmed that Yealink could have done so." Dkt. No. 120 at 4 (Citing Dkt. 112-2 ("Brogioli Report") at ¶¶ 173-175). "Dr. Brogioli also confirmed that the most recent firmware update that Yealink provided was issued on July 16, 2024." *Id.* (citing Brogioli Report at ¶ 173). In sum, Plaintiff asserts that, while "Yealink alleges that Dr. Brogioli does not explain the basis of his opinion, . . . that is exactly what he did in paragraphs 174-175 . . . ." *Id.*

The Court finds that exclusion is not merited here. The paragraph at issue—paragraph 176—is adequately supported by the preceding paragraphs (chiefly paragraphs 174 and 175) such that it is sufficiently reliable.

Accordingly, the Motion to Strike on this basis is **DENIED**.

C. **State of Mind Opinions**

Defendants' third argument is that "[i]n Paragraph 24 of his expert report, Dr. Brogioli states that 'In [his] opinion, Yealink intentionally supports the continued use of the WPP20 and WPP30 products in the United States even after the End-Of-Sale Announcement and Recall Notice.' . . . [H]e goes on to make a similar statement in paragraph 184 that 'Yealink continues to induce the infringement of its customers in the United States in 2025.'" Dkt. No. 112 at 7 (citing Brogioli Report at ¶¶ 24, 184). Defendants assert that it is improper for him to offer opinions going towards Defendants' state of mind. *See id.* at 7-8.

In response, Plaintiff argues that these opinions are permissible because "[e]very continued act of infringement by Yealink after admitting its products infringe in its September 20, 2024, Second Amended Answer and March 12, 2025 Third Amended Answer

5

constitutes willful infringement." Dkt. No. 120 at 6. Plaintiff cites to no case law supporting this contention.

The Court finds that, while Dr. Brogioli is permitted to discuss his opinions on the technical issues he has examined, he will not be permitted to testify as to his opinions about the state of mind or intent of the Defendants that he believes is reflected by these technical issues. Regardless of Defendants' admissions of infringement, Dr. Brogioli is not expert in assessing someone's subjective state of mind, and so, such opinions of his are not helpful to the jurors, who can reach their own conclusions on these issues using common sense. In short, this is not something beyond the jury's ken. The jury will be instructed concerning the evidence necessary to prove these elements and it will be up to them to determine whether Plaintiff has met that standard through Dr. Brogioli and other evidence.

Accordingly, the Motion to Strike on this basis is **GRANTED** and the first sentence of paragraph 24 and the second sentence of paragraph 184 are hereby **STRICKEN**.

### D. Opinions Relying on Allegedly Untimely Disclosed Documents

Defendants' final argument is that Dr. Brogioli's opinions relying on an internal Barco document—BARCO_0067568 (Dkt. No. 112-5)—should be stricken because these documents were not timely disclosed. Dkt. No. 112 at 8. Specifically, Defendants argue that "[f]act discovery in this case closed on April 18, but Yealink agreed to depose Barco's fact witnesses out of time to accommodate their travel schedules. On April 25, *during* the deposition of Barco's final fact witness Mr. Erwin Six, at 12:50 pm eastern time, Barco produced its one-page User Analytics Graphic to Yealink." *Id.* (emphasis in original). For this reason, they seek to strike paragraphs 83, 85, and 86. *Id.* at 11.

The Court finds that this issue is moot, and the motion to strike on this ground is denied. The three paragraphs at issue are concerned with Dr. Brogioli's opinions that certain non-infringing alternatives ("NIAs") were unacceptable. *See* Brogioli Report at ¶¶ 83, 85-86. The Court has already stricken Defendants' NIA opinions as untimely. *See* Order resolving Dkt. No. 109. Because a non-infringing alternative analysis "is more similar to an affirmative defense whose burden is upon the defendant" (*Correct Transmission, LLC v. Nokia of Am. Corp.*, Case No. 2:22-cv-0343, 2024 WL 1289821, at *4 (E.D. Tex. Mar. 26, 2024)), Dr. Brogioli's opinions here are no longer relevant since Defendants no longer have any NIA opinions of their own that Plaintiff must rebut.

Accordingly, the Motion is **GRANTED** as to the first sentence of paragraph 24 and the second sentence of paragraph 184, and otherwise **DENIED**.

**SIGNED** this 13th day of October, 2025.

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE