## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| BARCO, INC. and BARCO NV, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action No. 2:23-cv-00521-JRG-RSP |
| | § | |
| YEALINK (USA) NETWORK | § | |
| TECHNOLOGY CO., LTD., and | § | |
| YEALINK NETWORK TECHNOLOGY | § | |
| CO., LTD. | § | |
| | § | |
| *Defendants*. | § | |

## DEFENDANTS' OPPOSED MOTION FOR ONGOING ROYALTY

## <u>TABLE OF CONTENTS</u>

I.    ONGOING ROYALTY IS APPROPRIATE AND WARRANTED. ................................ 1

II.   THE APPROPRIATE ONGOING ROYALTY IS AT MOST $54 PER WPP30 SOLD. . 3

    A.    The Jury Rejected Barco's Proposed Royalty Rate. ................................................. 3

    B.    The Record Confirms A Reasonable Royalty of At Most $54 Per Dongle. ........... 4

    C.    There Are No Changed Circumstances Compeling A Different Ongoing Royalty Rate. ...................................................................................................................... 6

    D.    Allegations Of Willfulness Do Not Change The Ongoing Royalty Analysis. ....... 8

III.  CONCLUSION – THIS COURT SHOULD IMPOSE AN ONGOING ROYALTY AT A MAXIMUM OF $54 PER WPP30 SOLD. ......................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adasa Inc. v. Avery Dennison Corp.*,
    55 F.4th 900 (Fed. Cir. 2022) ................................................................................6

*Apple Inc. v. Wi-LAN Inc.*,
    25 F.4th 960 (Fed. Cir. 2022) ................................................................................5

*Apple, Inc. v. Samsung Elecs. Co.*,
    No. 12-cv-00630, 2014 WL 6687122 (N.D. Cal. Nov. 25, 2014) ...........................................2

*Bianco v. Globus Med., Inc.*,
    53 F. Supp. 3d 929 (E.D. Tex. 2014) (Bryson, J.) ...................................................3

*Cioffi v. Google, Inc.*,
    No. 13-cv-103, 2017 WL 4011143 (E.D. Tex. Sept. 12, 2017)...................................... *passim*

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
    No. 15-cv-1202, 2017 WL 3034655 (E.D. Tex. July 18, 2017) (Bryson, J.) ..................6, 7, 8

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009)...........................................................................6, 7

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
    30 F.4th 1339 (Fed. Cir. 2022) ................................................................................6

*Paice LLC v. Toyota Motor Corp.*,
    504 F.3d 1293 (Fed. Cir. 2007)...........................................................................1

*Philip Morris Prods. S.A. v. R.J. Reynolds Vapor Co.*,
    No. 20-cv-393, 2023 WL 2843796 (E.D. Va. Mar. 30, 2023)...................................8

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    702 F.3d 1351 (Fed. Cir. 2012)...........................................................................1

*Rex Med., L.P. v. Intuitive Surgical, Inc.*,
    156 F.4th 1289 (Fed. Cir. 2025) .............................................................................5

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
    612 F.3d 1365 (Fed. Cir. 2010)...........................................................................1

**TABLE OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | Excerpts of November 17, 2025 Trial Transcript |
| B | Excerpts of November 18, 2025 Trial Transcript |
| C | Excerpts of November 19, 2025 Trial Transcript |
| D | Declaration of Dunxiong Cai |

After Barco filed its complaint in this case, and before trial commenced, Yealink admitted that its WPP20 and WPP30 wireless presentation pods (or, dongles) infringed the asserted patents and withdrew them from the U.S. market. Trial concluded on November 19, 2025, and the jury returned a verdict awarding Barco $907,360 as lump-sum royalty for Yealink's past infringement.

With the jury verdict and the complete trial record in place, Yealink has decided to reintroduce the WPP30 to the U.S. market in 2026. Because the parties have been unable to agree on an appropriate ongoing royalty for the WPP30 upon reintroduction, Yealink respectfully requests that the Court determine the ongoing royalty before entering final judgment, and set the ongoing royalty to $54, maximum, per WPP30 sold.

## I.    ONGOING ROYALTY IS APPROPRIATE AND WARRANTED.

Despite previously signaling an intent to seek injunctive relief, Barco ultimately elected to not pursue a permanent injunction against Yealink and its WPP20 and WPP30 dongles. *See, e.g.*, Dkt. No. 148 at 5, 9. The Federal Circuit has long held that "[u]nder some circumstances, awarding an ongoing royalty for patent infringement in lieu of an injunction may be appropriate." *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007). The Federal Circuit has also instructed that ongoing royalty is a matter of discretion for the district court. *Id.* at 1315; *see Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012) ("This court reviews the district court's decision to impose an ongoing royalty, in light of its denial of a permanent injunction, for abuse of discretion.").

Here, an ongoing royalty is warranted because the jury award has not compensated Barco for future infringement, and the parties could not agree on a royalty rate for future WPP30 sales.

Ongoing royalty is appropriate if "[plaintiff] has not been compensated for [defendant's] continuing infringement." *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1379 (Fed.

Cir. 2010). The verdict form confirms that the jury's award covers only past infringement. Question No. 2 asked what sum would compensate Barco for infringement from May 17, 2023 to April 25, 2024, and for any ongoing induced infringement after April 25, 2025. *See* Dkt. No. 235 at 5. The jury awarded $907,360 in response, but also found in Question No. 1 that Yealink did not induce infringement after April 25, 2024. *See id.* at 4, 5. Further, it is undisputed that Yealink suspended U.S. sales of the WPP20 and WPP30 by April 2024. The jury award thus clearly does not compensate Barco for any future infringement.

This Court has found it "fitting" to award an ongoing royalty when "the jury's award fails to compensate Plaintiffs for future infringement." *Cioffi v. Google, Inc.,* No. 13-cv-103, 2017 WL 4011143, at *4 (E.D. Tex. Sept. 12, 2017). The parties here have negotiated but could not agree on a royalty rate for future WPP30 sales. *See id.* at *5 ("Having given the Parties an opportunity to negotiate an appropriate rate, and finding that it would be futile to order additional negotiation efforts, this Court now exercises its discretion to impose an ongoing royalty rate for post-verdict infringement.").

As explained by Yealink's Vice President of Product Mr. Dunxiong Cai, Yealink and Barco had engaged in numerous discussions regarding this case before, during, and after trial, including negotiations over the royalty rate for WPP30 upon reintroduction to the U.S. market. *See* Decl. of Dunxiong Cai, Ex. D, at ¶¶ 6-9, 11, 13. The parties also mediated before Judge Folsom in May 2025, where the royalty rate for WPP30 upon reintroduction was discussed. *See id.* at ¶ 9. To date, however, no agreement has been reached, and Yealink believes further negotiation would be futile. *See id.* at ¶ 15. In fact, Barco opposes Yealink's current motion for an ongoing royalty. The Court's determination on an ongoing royalty rate is thus necessary. *See Apple, Inc. v. Samsung Elecs. Co.*, No. 12-cv-0630, 2014 WL 6687122, at *13 (N.D. Cal. Nov. 25, 2014) ("Therefore, the parties'

behavior indicates that any order to negotiate ongoing royalties is likely to be futile and only delay the entry of final judgment. The Court therefore determines ongoing royalty rates from the briefing.").

Indeed, "without some form of prospective relief, the patent owner is effectively forced to resort to serial litigation to receive compensation for future infringement." *Cioffi*, 2017 WL 4011143, at *2. Barco has now decided to not seek injunctive relief, and Yealink has decided to reintroduce the WPP30 to the U.S. market. *See* Ex. D at ¶ 14. The Court's determination of an ongoing royalty is thus both appropriate and warranted to avoid needless future litigation.

## II. THE APPROPRIATE ONGOING ROYALTY IS AT MOST $54 PER WPP30 SOLD.

If the Court determines that an ongoing royalty is appropriate, the proper royalty rate is "a matter committed to the sound discretion of the district court." *Cioffi*, 2017 WL 4011143, at *3 (quoting *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 n.2 (Fed. Cir. 2008)). "Courts routinely use the royalty rate implied by the jury's verdict as the starting point in determining a forward-looking royalty," and "conduct a renewed analysis of a reasonable royalty based on a post-verdict hypothetical negotiation." *Id*. In doing so, "courts have often used the so-called Georgia-Pacific factors in assessing how the changed circumstances would produce a royalty rate in a hypothetical post-verdict licensing negotiation that was different from the royalty rate the jury selected based on a hypothetical licensing negotiation at the outset of infringement." *Bianco v. Globus Med., Inc.*, 53 F. Supp. 3d 929, 933 (E.D. Tex. 2014) (Bryson, J.).

### A. The Jury Rejected Barco's Proposed Royalty Rate.

The jury awarded $907,360 in damages but did not specify a royalty rate or the number of infringing WPP20 and WPP30 units. *See* Dkt. No. 235. At trial, Barco's expert Mr. Scally

proposed rates of $96 per dongle and $24 per base unit, which would have resulted in $3,172,704 in damages. *See* Trial Tr., Ex. B, at 313:21–314:5.[1]

Those rates are inconsistent with the verdict. For example:

- At $120 per combo (one dongle + one base unit), the verdict would imply 7,561 combos ($907,360 ÷ $120).

- At $96 per dongle, it would imply 9,451 dongles ($907,360 ÷ $96).

- At $24 per base unit, it would imply 37,806 base units ($907,360 ÷ $24).

None of these unit counts appears anywhere in the record. This strongly indicates the jury rejected Barco's proposed rates. *See Cioffi*, 2017 WL 4011143, at *5 ("Although the jury did not expressly provide a royalty rate, the implied royalty rate may be calculated based on the total damages award and the user base.").

**B.    The Record Confirms A Reasonable Royalty Of At Most $54 Per Dongle.**

"Where the jury has not expressly indicated the form of its reasonable royalty award, the form of the award may be inferred based on the arguments and evidence presented to the jury during trial, the district court's instructions to the jury, and the verdict form itself." *Id.* at *3. Here, the trial record confirms that the reasonable royalty is at most $54 per dongle.

At trial, both parties' damages experts Mr. Scally and Mr. Bero agreed that the comparable license agreement between Barco and third-party Crestron, which included the six asserted patents in this case, was the appropriate starting point for determining the reasonable royalty. *See, e.g.*, Ex. B at 337:8-23 (Mr. Scally applying the Crestron license to Yealink's unit sales); *id.* at 315:13-19, 490:10-16 (both Mr. Scally and Mr. Bero treating the Crestron license as a benchmark). Both experts also agreed that the Crestron license ███████████████████████

---

[1] Excerpts of three volumes of the trial transcript are attached as Exhibits A, B, and C respectively.

████ while the hypothetical license in this case include only six U.S. patents across two families. *See, e.g.*, *id.* at 359:18-360:11; 506:4-20.

Because Yealink would receive less than Crestron from Barco, Mr. Bero opined that the reasonable royalty should be apportioned downward and thus less than what Crestron pays Barco, at most $54 per dongle. *See id.* at 508:22-509:6. Mr. Bero further explained that the $54 figure is the result of "higher apportionment" and is "to the benefit of Barco," and that the actual reasonable royalty could be even lower. *Id.* at 509:7-22.

This aligns with the jury's $907,360 award. At trial, Mr. Scally opined that the reasonable royalty should be based on 24,310 dongles Yealink sold in the U.S. *See id.* at 19-23. Barco's counsel also argued that Yealink sold "at least 29,000" dongles. *See* Ex. C at 626:24-627:6. Using these figures, the jury's award implies a per-dongle royalty well below $54, and closer to the $25 per dongle rate Mr. Bero testified would also be accurate. *See* Ex. B at 509:14-17.

This approach also is consistent with the Court's instructions to the jury regarding comparable licenses, specifically that "[i]f there are differences between the license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination." *See* Ex. C at 594:10-24. There is no evidence suggesting that the jury deviated from the Court's instructions. In fact, the Court's instructions mirror the Federal Circuit long-term guidance, and recent emphasis, on the need to apportion when the reasonable royalty determination relies on comparable licenses. *See, e.g.*, *Rex Med., L.P. v. Intuitive Surgical, Inc.*, 156 F.4th 1289, 1300 (Fed. Cir. 2025) ("Damages theories relying on comparable prior licenses must account for distinguishing facts (such as covering more patents than are at issue in the action and covering foreign intellectual property rights) when invoking them to value the patented invention.") (citations omitted); *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 971 (Fed. Cir. 2022) ("When relying

on comparable licenses to prove a reasonable royalty, we require a party to account for differences in the technologies and economic circumstances of the contracting parties."); *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022).

Finally, the evidence supports that the jury assessed no royalty based on Yealink's base units, when there is no dispute that (1) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*see id.* at 362:17-24), (2) Yealink's base units themselves do not infringe (*see id.* at 344:6-14), and (3) there is no evidence of any customer in the U.S. using Yealink's dongles with its base units (*see* Ex. A at 291:7-18). *See Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022) (finding expert's failure to account for noninfringing uses legally improper).

## C. There Are No Changed Circumstances Compeling A Different Ongoing Royalty Rate.

The ongoing royalty rate should remain at $54, maximum, per WPP30 sold. In analyzing ongoing royalty, courts "focus on any new evidence that was not before the jury and additionally any changed circumstances (other than willfulness) between a hypothetical negotiation that occurred at the time infringement began (which the jury determined) and a hypothetical negotiation that would occur after the judgment (which this Court is determining)." *Cioffi*, 2017 WL 4011143, at *3 (citations omitted). Here, no such changed circumstances exist.

Indeed, "[w]hile the economic factors bearing on the post-verdict royalty rate may differ from those that informed the pre-verdict rate, the basic assumptions informing the hypothetical negotiation in those two settings are often not dramatically different." *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 15-cv-1202, 2017 WL 3034655, at *6 (E.D. Tex. July 18, 2017) (Bryson, J.) ("*UroPep*"). The jury's analysis of the hypothetical negotiation between Barco and Yealink involves "ascertain[ing] the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent Techs., Inc. v.*

*Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). As this Court had noted, "[a]lthough the new hypothetical negotiation occurs on the date of the jury verdict, this underlying assumption—that the patents are valid and infringed—has not changed since the date of the hypothetical negotiation considered by the jury," and that "the circumstances that would give Plaintiffs strengthened bargaining power (that the patents are infringed and not invalid) were already assumed and in place when the jury set its implied royalty rate." *Cioffi*, 2017 WL 4011143, at *4, *6.

In fact, the post-verdict negotiation in this case is even more comparable to the hypothetical negotiation the jury analyzed, because Yealink currently does not sell the WPP30 in the U.S., and the ongoing royalty applies when Yealink actually reintroduces the WPP30 in the U.S. In that sense, the post-verdict negotiation here, just like the hypothetical negotiation, again involves "ascertain[ing] the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent*, 580 F.3d at 1324.

Moreover, Barco chose to not seek injunctive relief in this case, and "the extent to which the imposition of an injunction is a realistic threat is an important factor that largely accounts for the difference between pre-verdict and post-verdict hypothetical negotiations." *UroPep*, 2017 WL 3034655, at *5. As Judge Bryson found, "[w]here an injunction is no longer proper, the Court is hard pressed to find in what material respect the situation is different now than it was during trial." *Id.* (citations omitted). Barco's decision to forgo injunctive relief here further supports adopting the $54 maximum per dongle royalty rate.

Because no changed circumstances justify increasing the ongoing royalty above $54 per WPP30 sold, the Court should therefore adopt $54 as the maximum ongoing royalty.

### D.    Allegations Of Willfulness Do Not Change The Ongoing Royalty Analysis.

To the extent Barco alleges that Yealink's reintroduction of its WPP30 constitutes willful infringement and warrants enhancing the ongoing royalty, this Court has already observed that the Federal Circuit "held that willfulness was not the relevant inquiry when setting the royalty rate for post-verdict sales, even where the defendant knew that a permanent injunction of those sales would become effective in the future." *Cioffi*, 2017 WL 4011143, at *8 (citing *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 (Fed. Cir. 2008)). Such allegation should therefore be disregarded.

As was the case in *Cioffi*, "all Parties are aware that no permanent injunction will issue in this case because Plaintiffs have elected not to seek a permanent injunction. Thus, future infringement will be authorized, even though [Yealink] will be required to pay a royalty for any such infringement." *Id.* at *8. In *Cioffi*, this Court declined to enhance the ongoing royalty based on willfulness, and should likewise reject any request to do the same here.

Indeed, Barco has already alleged at trial that Yealink infringed the asserted patents willfully, a charge the jury rejected. *See* Dkt. No. 235 at 6. The only difference between Yealink's conduct pre-verdict and its planned reintroduction of the WPP30 is the entry of the jury verdict itself, but "the entry of a verdict and judgment does not justify recharacterizing [Yealink's] post-verdict behavior as wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *UroPep*, 2017 WL 3034655, at *11 (citations omitted). Here, Yealink merely seeks to "continue[] its previous conduct with the reasonable belief that [Barco] would not seek an injunction and in circumstances in which [Yealink] would be required to pay any ongoing royalty to which [Barco] is entitled." *Id.* Therefore, Yealink's planned reintroduction of the WPP30, for which Yealink will pay Barco an ongoing royalty, cannot constitute willful infringement. *See Philip Morris Prods. S.A. v. R.J. Reynolds Vapor Co.*, No. 20-cv-393, 2023 WL

2843796, at *13 (E.D. Va. Mar. 30, 2023) ("because Reynolds' continued infringement will be permitted pursuant to a court-ordered ongoing royalty, Reynolds cannot be considered to have the 'specific intent to infringe.'").

## III.   CONCLUSION – THIS COURT SHOULD IMPOSE AN ONGOING ROYALTY AT A MAXIMUM OF $54 PER WPP30 SOLD.

The Court should exercise its discretion to impose an ongoing royalty for Yealink's future sales of the WPP30. The trial record, expert testimony, and Federal Circuit precedent confirm that a reasonable ongoing royalty is, at most, $54 per WPP30 sold. No changed circumstances justify a higher rate, and any allegations of willfulness would be legally irrelevant. Yealink respectfully requests that the Court adopt this rate in its final judgment to ensure fairness, judicial efficiency, and avoid unnecessary serial litigation in the future.

Date: January 13, 2026

DENTONS US LLP

By: /s/ *Victor C. Johnson*
Victor C. Johnson
Texas Bar No. 24029640
Forrest D. Gothia
Texas Bar No. 24125250
100 Crescent Court, Suite 900
Dallas, Texas 75201
Email: victor.johnson@dentons.com
(214) 259-1876
Email: forrest.gothia@dentons.com
(214) 259-1887

Stephen Yang (*pro hac vice* granted)
1221 Avenue of the Americas
New York, New York 10020
Email: Stephen.yang@dentons.com
(212) 398-4890

Timothy C. Bickham
DC State Bar No. 45614
Kevin R. Greenleaf

1900 K Street, NW
Washington, DC 20006
Email: Timothy.bickham@dentons.com
(202) 408-6390
Email: Kevin.greenleaf@dentons.com
(202) 408-6390

*Attorneys for Defendants Yealink (USA)
Network Technology Co., Ltd. and Yealink
Network Technology Co., Ltd.*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served via email to counsel for Plaintiffs on January 13, 2026.

*/s/ Victor Johnson*
Victor C. Johnson

<u>**CERTIFICATE OF AUTHORIZATION TO SEAL**</u>

I hereby certify that pursuant to Local Rule CV-5(a)(7), the foregoing document was filed under seal pursuant to the Court's Protective Order entered in this matter (Dkt. No. 30).

*/s/ Victor C. Johnson*
Victor C. Johnson

<u>**CERTIFICATE OF CONFERENCE**</u>

The undersigned hereby certifies that on December 19 and December 29, 2025, counsel for the parties conferred to discuss the substance of this Motion pursuant to Local Rule CV-7(h). Counsel for Plaintiffs indicated that it opposed the request.

*/s/ Victor C. Johnson*
Victor C. Johnson