**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| BARCO, INC. and BARCO NV,<br><br>Plaintiffs,<br><br>v.<br><br>YEALINK (USA) NETWORK TECHNOLOGY CO., LTD., and YEALINK NETWORK TECHNOLOGY CO., LTD.<br><br>Defendants. | Case No. 2:23-CV-00521-JRG-RSP<br><br>JURY TRIAL DEMANDED<br><br>[redacted] |

**PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION**

## Table of Contents

**I. INTRODUCTION** .......... 1
**II. LEGAL STANDARD** .......... 3
**III. ARGUMENT** .......... 4
**A. The Court Should Permanently Enjoin Yealink** .......... 5
**1) Barco has Suffered Irreparable Injury** .......... 5
**2) Barco's Remedies at Law are Inadequate** .......... 10
**3) The Balance of Hardships Supports an Injunction** .......... 13
**4) Public Interest is furthered by a Permanent Injunction** .......... 14
**IV. CONCLUSION** .......... 15

## Table of Authorities

### Cases

*Acumed LLC v. Stryker Corp.*,
551 F.3d 1323 (Fed. Cir. 2008) ........ 3, 4, 5, 12

*Belden Techs. Inc. v. Superior Essex Commc'ns LP*,
802 F. Supp. 2d 555 (D. Del. 2011) ........ 14

*Bright Data Ltd. v. Teso LT, UAB*,
584 F.Supp.3d 193 (E.D. Tex. 2022) ........ 11

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
664 F.3d 922 (Fed. Cir. 2012) ........ 4, 6

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) ........ 7

*Cordis Corp. v. Boston Scientific Corp.*,
Nos. Civ. A. 03–027, 03–283, 2003 WL 22843072 (D. Del. Nov. 21, 2003) ........ 14

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
717 F.3d 1336 (Fed. Cir. 2013) ........ 6, 8

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ........ 3, 5, 9, 12

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.,*
C 03–1431 SBA, 2008 WL 928496 (N.D. Cal. Apr. 4, 2008) ........ 5

*Fresenius USA, Inc. v. Baxter Int'l, Inc.,*
582 F.3d 1288 (Fed. Cir. 2009) ........ 5

*Golden Hour Data Sys., Inc. v. emsCharts, Inc.*,
2014 WL 8708239 (E.D. Tex. March 31, 2014) ........ 5, 8, 9, 12

*Hynix Semiconductor Inc. v. Rambus Inc.,*
609 F.Supp.2d 951 (N.D. Cal. 2009) ........ 9

*Ion, Inc. v. Sercel, Inc.*,
No. 5:06-CV-236-DF, 2010 WL 3911378 (E.D. Tex. Sept. 16, 2010) ........ 6

*Kolcraft Enters., Inc. v. Chicco USA, Inc.*,
No. 09-CV-03339, 2019 WL 4242482 (N.D. Ill. 2019) ........ 10

*Mass Engineered Design, Inc. v. Ergotron, Inc.,*
633 F.Supp.2d 361 (E.D. Tex. 2009) ........ 15

*Retractable Techs., Inc. v. Occupational & Med. Innovations, LTD.*,
No. 6:08 CV 120, 2010 WL 3199624 (E.D. Tex. Aug. 11, 2010) ........ 14

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011) ........ 6, 11, 12

*Sanofi-Synthelabo v. Apotex, Inc.*,
470 F.3d 1368 (Fed. Cir. 2006) ........ 4, 14

*TiVo Inc. v. EchoStar Communications Corp.*,
446 F.Supp.2d 664 (E.D. Tex. 2006) ........ 8

*U.S. Silica Co. v. Amberger Kaolinwerke Eduard Kick Gmbh & Co. KG*,
No. 2:20-CV-00298-JRG, 2023 WL 2716557 (E.D. Tex. Mar. 29, 2023) ........ passim

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.*,
842 F.2d 1275 (Fed. Cir. 1988) ........ 10

*Windsurfing Int'l Inc. v. AMF, Inc.*,
782 F.2d 995 (Fed. Cir. 1986) ........ 14

*Zoltek Corp. v. U.S.*,
672 F.3d 1309 (Fed. Cir. 2012) ........ 10

**Statutes**

35 U.S.C. § 154 ........ 3, 5
35 U.S.C. § 283 ........ 3

**Treatises**

Douglas Laycock, *The Death of the Irreparable Injury Rule* 37
(Oxford University Press 1991) ........ 9

Yealink admits its WPP products infringe every asserted claim of each asserted patent. Yealink did so, purposefully, only after announcing to the world that it had withdrawn its infringing products from market. Yealink made its representations to the Court and to the jury to minimize the impact of the litigation and to diminish the true value of Barco's patents. Now, not two months after the jury returned its verdict based on Yealink's representations that its WPP products were mere accessories and Barco's Clickshare dongles and patents had limited value, Yealink seeks this Court's permission to reintroduce its infringing WPP dongle products, confirming what Barco knew all along: Barco's patented technology is essential to participation in the high-end wireless conference room market. Yealink's brazen declaration that it "has decided" to commit willful infringement cannot be allowed to stand. As this Court still retains jurisdiction over the parties' dispute, Barco respectfully requests a permanent injunction to preserve *status quo*.

A narrowly tailored injunction to prevent the making, using, offering for sale, selling, or importing of the WPP dongle products, including any colorable imitations thereof, in or into the United States is appropriate and should be granted as outlined below.

## I. INTRODUCTION

Plaintiffs Barco Inc. and Barco NV (collectively "Barco") request a permanent injunction to preserve *status quo* and prevent Defendants Yealink (USA) Network Technology Co. Ltd. and Yealink Network Technology Co. Ltd. (collectively "Yealink") from reintroducing the admittedly infringing WPP products into the United States. If not enjoined, Yealink "has decided" to now willfully infringe Barco's six asserted patents, U.S. Patent Nos. 10,762,002 (the "'002 Patent"); 10,795,832 (the "'832 Patent"); 10,904,103 (the "'103 Patent"); 11,258,676 (the "'676 Patent");

11,403,237 (the "'237 Patent"); and 11,422,951 (the "'951 Patent") (collectively, the "Asserted Patents").

The Court should not grant Yealink's motion (Dkt. 243) seeking a compulsory license. Instead, since "*Yealink has decided to* ***reintroduce*** *its WPP30 in the United States, and* ***will resume*** *selling its WPP30 dongle*" (Dkt. 243-4 (Exhibit D), Cai Declaration at ¶14),[1] Barco respectfully requests entry of a permanent injunction.

Yealink admits its WPP products infringe all 75 patent claims asserted at trial. Ex. A, Trial Tr. 413:13-16 (admitting a peripheral device is required to infringe all 75 asserted claims).[2] Yealink admitted infringement deliberately, to avoid technical discovery (*see, e.g.*, Ex. B, Second Motion to Compel Hearing Tr. at 39:5-9), discovery that surely would have helped Barco establish Yealink willfully infringed Barco's patents.

Yealink admitted infringement only after this lawsuit was filed and deliberately announced that it "*will no longer sell*" and had *recalled* its infringing WPP products in the United States. Ex. C (JX-8, Yealink's April 25, 2024, Recall Announcement). Yealink used its end of sale and recall Announcement to argue to the Court and the jury that Yealink was not a willful infringer (*see, e.g.*, Ex. A, Trial Tr. 625:6-14), its WPP dongle was "just a small part to [its] whole videoconference solution" (*see, e.g.*, Ex. A, Trial Tr. 459:8-461:1) and Barco's patents were "not technically important to Yealink." *See, e.g.*, Ex. A, Trial Tr. 411:10-19.

---

[1] All emphasis added unless indicated.

[2] On March 12, 2025, after 16 months of litigation, including two Answers denying infringement, Yealink filed its Third Amended Answer admitting to directly and indirectly infringing claims 1-7 and 10 of the '002 Patent, claims 1-20 of the '676 Patent, claims 1-5, 7-8, and 19 of the '237 Patent and claims 1-15 and 17-21 of the '951 Patent when its WPP20 and WPP30 presentations pods were used with a connected device; and to directly and indirectly infringe claims 1-4, 6-8, 13-14, and 16-19 of the '832 Patent, and claims 1, 2, 16-17, and 19-20 of the '103 Patent when its WPP20 and WPP30 presentation were pods sold in the United States. Dkt. No. 85 (Third Amended Answer ¶¶41, 51, 61, 71, 81 and 91); Dkt. 189.

Now, a mere two months after the jury returned a verdict based on these assertions, Yealink shamelessly seeks a compulsory license, over Barco's objections, so that Yealink may supply its competing, infringing WPP dongle products in the United States. Yealink's request confirms what Barco knew, and Barco's witnesses consistently testified. Barco's patented Clickshare technology is essential to Yealink's participation in the high-end wireless conference room market. Yealink's brazen attempt to obtain Court approval to commit willful patent infringement must not stand. Yealink's gamesmanship should not be rewarded. Yealink withdrew the competing WPP dongle products, relied on its withdrawal to avoid discovery, and argued to the jury that Barco's Clickshare dongle patents had little value and Yealink acted reasonably, withdrawing them from the market so not to willfully infringe Barco's patents. Now, to preserve *status quo*, a permanent injunction against Yealink should be entered

## II. LEGAL STANDARD

The Patent Act provides that in cases of patent infringement, a court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. To obtain a permanent injunction, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

"The essential attribute of a patent grant is that it provides a right to exclude ***competitors*** from infringing the patent." *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) (citing 35 U.S.C. § 154(a)(1)). "In view of that right, infringement may cause a patentee

irreparable harm not remediable by a reasonable royalty." *Id.* "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).

The entry of injunctions encourages respect for patent rights and fosters innovation. *See, e.g., Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) ("We have long acknowledged the importance of the patent system in encouraging innovation.").

## III. ARGUMENT

Barco, as an entity practicing the Asserted Patents, is entitled to use the rights granted by its patents to maintain control over the market it has developed. *U.S. Silica Co. v. Amberger Kaolinwerke Eduard Kick Gmbh & Co. KG*, No. 2:20-CV-00298-JRG, 2023 WL 2716557, at *5 (E.D. Tex. Mar. 29, 2023) ("For the reasons stated above, the Court finds that U.S. Silica has met its burden to show all four *eBay* factors favor an injunction."). For example, Barco has sold millions of its Clickshare dongle products and has a history of litigating and obtaining injunctions to maintain its patent rights. *See, e.g.*, Ex. A, Trial Tr. at 168:10-171:17; 173:9-174:8; 182:17-183:7). That said, for competitors that may design around Barco's patented ClickShare technology, they are free to participate in adjacent markets. Ex. D (PX-17, Press Release of Successful Enforcement) ("Barco ended its case against Sahara Presentation Systems after obtaining that [Sarahra's] Clevershare products were ***materially redesigned*** to avoid patent infringement"), *id.* ("As a direct result of Barco's enforcement action, Delta and Vivitek have ***agreed to withdraw*** their LauncherPlus wireless presentation product in the United States"); Ex. E (PX-25 Consent Judgment).

Barco, however, through its patent portfolio, maintains the right to decide who else is allowed to practice its patents. *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.,* C 03–

1431 SBA, 2008 WL 928496, at *3 (N.D. Cal. Apr. 4, 2008) ("The law favors [the patentee's] right to the full value of its property, particularly the ability to keep it out of its main competitor's hands."), *aff'd in part, rev'd in part sub nom., Fresenius USA, Inc. v. Baxter Int'l, Inc.,* 582 F.3d 1288, 1302–03 (Fed. Cir. 2009) (holding the district court did not abuse its discretion in granting a permanent injunction). Barco has only agreed to license one sophisticated and trusted company—Crestron Electronics—to use Barco's patented Clickshare technology. Ex. A, Trial Tr. 180:10-181:2; 181:11-182:7. This decision to license a single trusted company does not diminish the value of Barco's right to exclude other infringers from the market. *Golden Hour Data Sys., Inc. v. emsCharts, Inc.*, 2014 WL 8708239, at *10 (E.D. Tex. March 31, 2014) (a "district court may consider a patentee's past licensing behavior in deciding whether reasonable royalty from an infringer constitutes damages adequate to compensate for the infringement.").

### A. The Court Should Permanently Enjoin Yealink

To obtain injunctive relief, Barco must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay*, 547 U.S. at 391. Barco satisfies all four prongs.

#### 1) Barco has Suffered Irreparable Injury

"The essential attribute of a patent grant is that it provides a right to exclude ***competitors*** from infringing the patent." *Acumed*, 551 F.3d at 1328 (citing 35 U.S.C. § 154(a)(1)). "In view of that right, infringement may cause a patentee irreparable harm not remediable by a reasonable royalty." *Id.* "Price erosion, loss of goodwill, damage to reputation, and loss of business

opportunities are all valid grounds for finding irreparable harm." *Celsis In Vitro,* 664 F.3d at 930 (citations omitted).

Patentees should be able to exclude others from practicing their inventions; otherwise, innovation will be stifled due to a reluctance to rely on other companies in bringing the invention to market. The right to exclude "is particularly apt in traditional cases, such as this one, where the patentee and adjudged infringer both practice the patented technology." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1150 (Fed. Cir. 2011). Barco's ClickShare products practice its patents. Ex. A, Trial Tr. 168:10-173:17; Ex. F (Barco's Marking Page).

Yealink's WPP products infringe Barco's patents and Yealink "is also a competitor of Barco in the market sense." Dkt. 189; Ex. A, Trial Tr. 226:4-6 (Q. Okay. Yealink is also a competitor of Barco in the market sense. Correct? A. Yes). Accordingly, Barco and Yealink are direct competitors. *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions."); *Ion, Inc. v. Sercel, Inc.*, No. 5:06-CV-236-DF, 2010 WL 3911378, at *4 (E.D. Tex. Sept. 16, 2010) (finding irreparable harm where the "companies compete directly"). Barco's corporate witness Mr. Six testified that Barco lost customers due to Yealink's infringement. *See, e.g.*, Ex. A, Trial Tr. 203:19-22 (Q. And you don't know whether Barco has lost customers to Yealink in the ClickShare space. A. That I'm not -- no. Wait. I do know that some sales -- that salespeople say that they lost customers, yes."). [redacted] Ex. G, Deposition Testimony of W. Lightcap, 52:16-54:23.

As part of the verdict, the jury credited Yealink's testimony that it stopped its infringement in April of 2024 and awarded Barco lump-sum past damages for Yealink's ***past*** infringement from May 17, 2023 to April 25, 2024. Dkt. 235 (finding no ongoing infringement). Said otherwise, Barco's patents did their job. Yealink withdrew its competing, infringing WPP products from the market and the exclusivity rights of Barco's patents were respected by Yealink going-forward. On January 13, 2026, however, Yealink submitted a declaration to this Court stating that, after telling the Jury Barco's patents had no value and Yealink had decided to exit the market, "Yealink *has decided* to reintroduce its WPP30 in the United States, and *will resume selling* its WPP30 dongle in 2026." Dkt. 243-4 (Exhibit D), Cai Declaration at ¶14. Barco now seeks the Court's issuance of an injunction to maintain *status quo*.

Injunctive relief is prospective, requiring "a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983). Yealink's declaration changed the factual landscape, and confirms that Yealink has decided to intentionally, willfully and wantonly infringe Barco's patents' rights. This is exactly the type of "real and immediate threat" that Barco will be "wronged again" that justifies obtaining injunctive relief. *Id.* at 96.

Barco and Yealink were direct competitors in the dongle space. Ex. A, Trial Tr. 226:4-6. While Barco sold millions of Clickshare dongles, and has only licensed its ClickShare patents to one entity, Crestron, it did so under terms agreeable to and negotiated by both parties. Ex. A, Trial Tr. 180:10-181:2; 181:11-182:7. Other than Crestron, Barco has an established practice of enforcing its patent rights and excluding competitors from the market. Ex. A, Trial Tr. 182:17-183:7. In this regard Barco has effectively excluded all unwanted competitors from the wireless dongle market, maintaining its monopoly.

Yealink did not follow the framework of Crestron, electing to unlawfully launch its infringing WPP product and spend years infringing and litigating against Barco's patented technology. The fact that Barco and Yealink were, and are now again, direct competitors supports a finding of irreparable injury. *Douglas Dynamics*, 717 F.3d at 1345.

[redacted]. Ex. G, Deposition Testimony of W. Lightcap, 52:16-54:23; 83:17-86:25 [redacted]).

[redacted]. *Id.* This kind of customer loss impacts not only immediate sales, but future sales as once a customer has installed a non-Barco system, they are less likely to later purchase a Barco dongle, as the additional capital costs associated with a Barco base unit is unappealing. *TiVo Inc. v. EchoStar Communications Corp.*, 446 F.Supp.2d 664, 669–70 (E.D. Tex. 2006) (granting permanent injunction where customers tend to remain loyal to the company from which they obtained their system, "shaping the market to [p]laintiff's disadvantage and result[ing] in long-term customer loss").

The loss of business and future business opportunities further constitutes irreparable harm. *Golden Hour*, 2014 WL 8708239 at *8 ("[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm"). Just like in

*Golden Hour*, loss of opportunity to work with future business relationships hampers future innovation. *Id.* at *9 ("Golden Hour's loss of market share and revenue in turn lessens its opportunity to work closely with entities providing emergency transport, and hampers its ability to identify technical problems and direct its research efforts to solve them.") (citing *Hynix Semiconductor Inc. v. Rambus Inc.,* 609 F.Supp.2d 951, 981 (N.D. Cal. 2009) (recognizing the patentee's exclusion from the "innovation loop" as a type of irreparable injury)).

Further, because Yealink has unilaterally decided to re-enter the market, Barco has been denied veto-power control over its patented technology, and that harm will continue until it is restored via injunction. That is an irreparable harm that cannot be remedied through legal remedies. *See eBay*, 547 U.S. at 395 (Roberts, C.J., concurring); Douglas Laycock, *The Death of the Irreparable Injury Rule* 37 (Oxford University Press 1991) ("Injury is irreparable if plaintiff cannot use damages to replace the specific thing he has lost.").

To be entitled to an injunction, Barco must show "that there exists 'some causal nexus' between [Yealink's] infringement and the alleged harm." *U.S. Silica*, 2023 WL 2716557, at *3. Yealink's admission of infringement, coupled with the loss of business, confirms the nexus between Yealink's infringement and the irreparable harm it causes Barco. Moreover, because there is effectively a two-player market, there is at least some causal nexus to the harm Barco faces.

Notably, the presence of licensee Crestron does not undermine this harm because Crestron's presence was willingly licensed by and necessarily benefits Barco. Presently, dongle sales that use Barco's technology are fulfilled by either Barco or Crestron. The re-entry of Yealink's admittedly infringing, inferior dongles will alter the market dynamic to the pre-2024 landscape, where Barco was losing customers to Yealink.

[redacted] *See* Ex. H, Deposition Testimony of Erwin Six, 146:22-147:25. [redacted] *Id*. at 147:7-149:15; 196:17-197:25 [redacted]. [redacted] *Id.* at 196:17-197:25.

Irreparable injury is imminent, and a causal nexus is present. The first step of the *eBay* analysis supports an injunction.

**2) Barco's Remedies at Law are Inadequate**

Yealink may claim that it voluntarily ceased its infringement and therefore no injunction should issue. But this fact does not counsel against the inquiry regarding inadequate remedy. *See W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281-82 (Fed. Cir. 1988), *abrogated on other grounds as recognized in Zoltek Corp. v. U.S.*, 672 F.3d 1309 (Fed. Cir. 2012) ("The fact that the defendant has stopped infringing is generally not a reason for denying an injunction against future infringement unless the evidence is very persuasive that further infringement will not take place."); *Kolcraft Enters., Inc. v. Chicco USA, Inc.*, No. 09-CV-03339, 2019 WL 4242482, at *17 (N.D. Ill. 2019) ("There is no indication that it lacks the capacity or the capital to produce them or [re-enter] the market. This is enough to show that there is a risk of future infringement."). Indeed,

Yealink unilaterally submitted a declaration that it "has decided" to re-enter the market, without obtaining Barco's permission, requiring the entry of this injunction.

Further, Barco's ability to execute on a judgment (and to collect any potential future royalties) is severely hindered by Yealink's lack of U.S. assets and the geopolitical relationship with China. "While competitive harms theoretically can be offset by monetary payments in certain circumstances, the likely availability of those monetary payments helps define the circumstances in which this is so." *Robert Bosch*, 659 F.3d at 1155-56 ("'all three defendants are foreign corporations and . . . there is little assurance that it could collect monetary damages'"). The uncertainty surrounding Barco's actual ability to collect any judgment, let alone jurisdiction over and collection of future damages/royalties from Yealink strongly favors an injunction.

Yealink may further argue that because past-damages were awarded, financial remedies are available thereby preventing the need for the granting of an injunction. *See, e.g.*, *Bright Data Ltd. v. Teso LT, UAB*, 584 F.Supp.3d 193, 197 (E.D. Tex. 2022). However, *Bright Data* did not purport to establish a *per se* rule that a calculation of past damages prohibits injunctive relief, and such a categorical rule would defy the lesson of *eBay*. Where, as here and as in *U.S. Silica*, the *eBay* factors are still satisfied, and Yealink and Barco are competitors, an injunction is proper. *U.S. Silica*, 2023 WL 2716557, at *5. Moreover, the past damages the jury found were awarded on an incomplete and now misleading record. Namely, Yealink used its End of Sale and Recall Announcement to argue that it was not a willful infringer (*see, e.g.*, Ex. A, Trial Tr. 625:6-14), its WPP dongle was "just a small part to [its] whole videoconference solution" (Ex. A, Trial Tr. 459:8-461:1), Barco's patents were "not technically important to Yealink" and the past damages Barco sought were overstated. *See, e.g.*, Ex. A, Trial Tr. 411:10-19. Thus, at a minimum, the past

damages awarded cannot possibly be reflective of the true value of Barco's Asserted Patents given Yealink "has decided" to reintroduce its WPP product.

Yealink may further argue that Barco's license with Crestron counsels against the award of any injunctive relief. However, that is similarly false. As set forth in both *U.S. Silica*, and in *Golden Hour*, a "district court may consider a patentee's past licensing behavior in deciding whether reasonable royalty from an infringer constitutes damages adequate to compensate for the infringement." *Golden Hour*, 2014 WL 8708239, at *10; *see also U.S. Silica*, 2023 WL 2716557, at *5. Barco has been very deliberate with whom it enters into license agreements—agreeing to only one Clickshare license with Crestron, a company Barco believes to be a good collaborator (Ex. A, Trial Tr. 181:11-182:7)—and with whom Barco elects to exclude from the market—excluding Delta/Vivitek and Sahara from the market (Ex. D (PX-17, Press Release of Successful Enforcement); Ex. E (PX-25 Consent Judgment))—Barco's prior licensing decisions (and decisions not to license) confirms an injunction is appropriate. *Acumed*, 551 F.3d at 1328 ("A plaintiff's past willingness to license its patent is not sufficient per se to establish lack of irreparable harm if a new infringer were licensed.") (citing *eBay*, 547 U.S. at 393). Indeed, "adding a new competitor to the market may create an irreparable harm that the prior licenses did not." *Id*. at 1329. Here, the *status quo* where an entity Barco trusts, can reliably audit under the full jurisdiction of U.S. Courts is entirely different than an unwelcomed compulsory license to a foreign company who has unlawfully profited from Barco's patented technology for years without any payment. *Robert Bosch*, 659 F.3d at 1155-56 (relying in part on the potential inability to collect royalties from foreign infringers when entering a limited permanent injunction).

Legal remedies are insufficient. The second step in the *eBay* analysis is met and weighs in favor of a permanent injunction.

**3) The Balance of Hardships Supports an Injunction**

Yealink purposefully withdrew its WPP products from the market. Ex. A, Trial Tr. at 445:8-457:6; 487:3-12. Yealink faces no legitimate hardship from not selling the WPP products in the United States as it voluntarily placed itself in this very position. Yealink could have continued selling the competing WPP product throughout the course of trial in which case the jury would have heard evidence of Yealink's ongoing infringement and accounted for that when the jury reached its damages award and willful infringement findings. Rather, Yealink painted a now-proven-false picture presented to the jury regarding the true value of Barco's Clickshare products, Asserted Patents and Yealink's representations that they were technically unimportant . Ex. A, Trial Tr. 622:9-623:1 ("after they had studied [] Yealink's products for about a year, [Barco] started accusing Yealink of infringing all six patents with multiple products. Yealink also took a year, less than a year, to confirm that, okay, there is probably infringement"). In doing so, Yealink misled the jury regarding the full value of Barco's Clickshare dongle products and patents and should not be permitted to now change its mind and reintroduce its admittedly infringing WPP products that it decided to "pull [] from the United States market," an action and timeline Yealink argued was reasonable, and in a successful effort to combat Barco's claim of willful infringement.

Yealink's self-imposed injunction, coupled with the reliance on these actions by Barco, and the jury, there can be no finding of hardship on Yealink if the status quo excluding the WPP dongle products from the market is maintained. There is no need for any grace period. There is no need for any tailoring beyond the scope of injunction that Yealink itself represented to the Court and previously imposed. Federal Circuit precedent correctly recognizes that any harm to an infringer cannot be self-imposed. *See Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be

heard to complain if an injunction against continuing infringement destroys the business so elected."). Rather, "any effort by [Yealink] to market a product already found to infringe would certainly create significant hardship for [Barco]." *U.S. Silica*, 2023 WL 2716557, at *4.

The third step in the *eBay* analysis is met. It favors Barco's request for a permanent injunction.

**4) Public Interest is furthered by a Permanent Injunction**

Public interest will be bettered by preserving *status quo*. Yealink has not participated in the WPP dongle market for nearly two years. Moreover, "it is in the public interest to enforce patent rights and encourage innovation." *Retractable Techs., Inc. v. Occupational & Med. Innovations, LTD.*, No. 6:08 CV 120, 2010 WL 3199624, at *5 (E.D. Tex. Aug. 11, 2010). Issuing a permanent injunction is an important means to encourage respect for patent rights and to foster innovation. *See, e.g.*, *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) ("We have long acknowledged the importance of the patent system in encouraging innovation.").

There is no evidence of any disservice to the public interest by enjoining Yealink from re-starting its halted infringement. The public has managed without Yealink since April 25, 2024. Yealink presents no evidence that public interest will be harmed by granting of this injunction. *Cf. Cordis Corp. v. Boston Scientific Corp.*, Nos. Civ. A. 03–027, 03–283, 2003 WL 22843072, at *2 (D. Del. Nov. 21, 2003) (noting the "obvious concern of depriving the public of the best and safest medical devices by limiting competition"); *Belden Techs. Inc. v. Superior Essex Commc'ns LP*, 802 F. Supp. 2d 555, 579 (D. Del. 2011) ("the public would not be harmed by the issuance of a permanent injunction as this is not a matter of public health or safety, nor will an injunction have the effect of limiting the public's access to a category of products") (citing *Mass Engineered Design, Inc. v. Ergotron, Inc.,* 633 F.Supp.2d 361, 394 (E.D. Tex. 2009)).

As Yealink has already demonstrated a desire and willingness to play games regarding the true value of Barco's Clickshare dongle products and Asserted Patents with the jury, the Court, and Barco, granting a permanent injunction in this case serves the public interest.

## IV. CONCLUSION

The preservation of adjudicated intellectual property rights, including Barco's, is paramount. While the free market and fair competition are unquestionably important, the entry of a tailored permanent injunction preserving *status quo* and precluding Yealink from re-engaging in unlawful, competition and willful infringing conduct does not impede Yealink's right to otherwise legally compete in adjacent markets or sell dongles where Barco does not have patent protection. In the United States, however, the *eBay* test is satisfied and the *status quo* Yealink created with its purposeful withdrawal of its WPP products should be maintained. Yealink should be permanently enjoined from re-introducing these admittedly infringing products for the remaining life of the infringed Asserted Patents' claims.

A proposed order, which should replace the proposed order submitted with Dkt. 240, is attached here. The attached proposed order is identical to that submitted with Dkt. 240, with the addition of the last paragraph defining the scope of Barco's requested injunctive relief.

Dated: January 27, 2026

Respectfully submitted,

*/s/ Erik J. Halverson*
Melissa Smith (Texas Bar No. 24001351)
Andrew T. Gorham
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: +1 903 934 8450
Facsimile: +1 903 934 9257
melissa@gillamsmithlaw.com
tom@gillamsmithlaw.com

Christopher Centurelli (*pro hac vice*)
christopher.centurelli@klgates.com
Anna E. L'Hommedieu (*pro hac vice*)
Anna.lhommedieu@klgates.com
Joshua N. Andrews (*pro hac vice*)
Joshua.Andrews@klgates.com
**K&L GATES LLP**
1 Congress Street, Suite 2900
Boston, MA 02114-2023
Telephone: (617) 261-3100

Erik J. Halverson (Bar No. 333492CA)
erik.halverson@klgates.com
**K&L GATES LLP**
Four Embarcadero Center,
Suite 1200
San Francisco, CA 94111
Telephone: (415) 882-8238

*Attorneys for Plaintiffs*
*Barco, Inc. and Barco N.V.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2026, the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served via email on all counsel of record.

*/s/ Erik J. Halverson*
Erik Halverson

**CERTIFICATE OF AUTHORIZATION TO SEAL**

I hereby certify that pursuant to Local Rule CV-5(a)(7), the foregoing document was filed under seal pursuant to the Court's Protective Order entered in this matter (Dkt. 30).

*/s/ Erik J. Halverson*
Erik Halverson

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h), the undersigned hereby certifies that counsel for the parties met and conferred on January 23, 2025 by telephone, and Defendants have stated they oppose the relief sought in this motion.

*/s/ Erik J. Halverson*
Erik Halverson