# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| BARCO, INC. and BARCO NV, | § | |
|---|---|---|
| *Plaintiffs*, | § § § | |
| v. | § § | Civil Action No. 2:23-cv-00521-JRG-RSP |
| YEALINK (USA) NETWORK TECHNOLOGY CO., LTD., and YEALINK NETWORK TECHNOLOGY CO., LTD. | § § § § § § | |
| *Defendants*. | § | |

**DEFENDANTS' REPLY TO THEIR MOTION FOR ONGOING ROYALTY**

# **TABLE OF CONTENTS**

I. THE COURT CAN AND SHOULD IMPOSE AN ONGOING ROYALTY .................... 1

II. THE APPROPRIATE ONGOING ROYALTY IS AT MOST $54 PER DONGLE. ........ 2

    A. The Starting Point Is At Most $54 Per Dongle. ........................................................ 2

    B. There Is No Reason To Disregard The Jury Verdict. .............................................. 3

    C. There Is No Reason to Depart From the $54 Maximum Royalty Rate. .................. 4

III. BARCO'S OTHER ARGUMENTS ARE IRRELEVANT AND MISPLACED............... 5

IV. CONCLUSION............................................................................................................... 5

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012)..................................................................................................1

*Adasa Inc. v. Avery Dennison Corp.*,
  55 F.4th 900 (Fed. Cir. 2022) ....................................................................................................5

*Apple Inc. v. Wi-LAN Inc.*,
  25 F.4th 960 (Fed. Cir. 2022) ....................................................................................................5

*BASF Plant Sci., LP v. CSIRO*,
  No. 17-cv-503, 2019 WL 8108116 (E.D. Va. Dec. 23, 2019), *rev'd in part on
  other grounds*, 28 F.4th 1247 (Fed. Cir. 2022) .....................................................................1, 2

*Cioffi v. Google, Inc.*,
  No. 13-cv-103, 2017 WL 4011143 (E.D. Tex. Sept. 12, 2017).........................................1, 4, 5

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
  No. 15-cv-1202, 2017 WL 3034655 (E.D. Tex. July 18, 2017) ................................................4

*Rex Med., L.P. v. Intuitive Surgical, Inc.*,
  156 F.4th 1289 (Fed. Cir. 2025) ................................................................................................5

**Statutes**

35 U.S.C. § 289..............................................................................................................................3

**TABLE OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---|---|
| A | Excerpts of November 17, 2025 Trial Transcript |
| B | Excerpts of November 18, 2025 Trial Transcript |
| C | Excerpts of November 19, 2025 Trial Transcript |
| D | Declaration of Dunxiong Cai |

Barco does not propose what the appropriate ongoing royalty should be for Yealink's WPP30 upon reintroduction, arguing only that the Court should not impose an ongoing royalty. Barco prefers to have the parties, and the Court, to engage in exactly the kind of duplicative, time-consuming, and resource-draining retrial or new litigation that ongoing royalties avoid. The law is clear that the Court has discretion to impose an ongoing royalty in lieu of injunction, and Barco has provided no reason to depart from the $54 per WPP30 royalty proposed by Yealink.

## I. THE COURT CAN AND SHOULD IMPOSE AN ONGOING ROYALTY.

Barco's assertion that a *defendant* cannot request an ongoing royalty post-verdict reflects a fundamental misunderstanding of the law. "The award of an ongoing royalty is equitable in nature." *Cioffi*, 2017 WL 4011143, at *2 (citations omitted); *see ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1343 (Fed. Cir. 2012) ("We leave the procedural aspects of how to proceed on the issue of prospective damages to the discretion of the district court."). A party's label cannot affect the court's equitable powers or its discretion.

The procedural posture here underscores that an ongoing royalty is both proper and necessary. Barco initially chose to not seek injunctive relief when it moved for final judgment. *See* Dkt. 240. After Yealink sought an ongoing royalty, Barco reversed course and sought a permanent injunction. *See* Dkt. 250. If the Court denies Barco's belated injunction request, the absence of an ongoing royalty would invite precisely the serial, duplicative litigation that equitable prospective relief is meant to avoid. *Cf. BASF Plant Sci., LP v. CSIRO*, No. 17-cv-503, 2019 WL 8108116, at *21 (E.D. Va. Dec. 23, 2019), *rev'd in part on other grounds*, 28 F.4th 1247 (Fed. Cir. 2022) (awarding ongoing royalty and rejecting patentees' contention that "they should be allowed to bring another patent infringement lawsuit in the future to attempt to obtain some other remedy.").

Barco's ripeness argument fares no better. Its own motion for permanent injunction asserts that Yealink's future infringement is imminent and severe enough to warrant the extraordinary

1

remedy of injunctive relief, yet it simultaneously claims here that Yealink's request for equitable prospective relief is premature. Regardless, courts have imposed ongoing royalties even when the infringing product is not yet on the market, after the defendant has stated its intent to reintroduce or launch the product. *See BASF*, 2019 WL 8108116, at *21 (ongoing royalty appropriate where infringer "expressed interest in bringing its infringing product to market").

## II. THE APPROPRIATE ONGOING ROYALTY IS AT MOST $54 PER DONGLE.

As explained in Yealink's motion, Dkt. 243, the trial record and Federal Circuit precedent confirm that the ongoing royalty here should be, at most, $54 per WPP30 sold. Barco does not, and cannot, identify any post-verdict fact that would increase, or depart from, that number.

### A. The Starting Point Is At Most $54 Per Dongle.

Barco first argues that the jury verdict cannot support the $54 royalty starting point because it accounts for "16,803 dongle sales . . . if not thousands more." Dkt. 251 at 4-5. But as Yealink explained, Barco itself repeatedly asserted that far more than 16,803 dongles were sold. Mr. Scally testified that Yealink sold 24,310 infringing dongles, and Barco's counsel argued that Yealink sold "at least 29,000" dongles. *See* Dkt. 243 at 5 (citing Trial Tr., Ex. B at 349:19-23; Ex. C at 626:24-627:6).[1] A per-dongle royalty no higher than $54 is fully consistent with the jury's verdict.

Moreover, Yealink's expert did not opine that the reasonable royalty is exactly $54 but that it should be *at most* $54, which is of "higher apportionment" that is "to the benefit of Barco." *See* Ex. B at 509:7-22. The actual royalty could be materially lower. This further confirms that $54 is not a floor but a ceiling, and that the record comfortably supports Yealink's proposed rate.

Barco next speculates that the jury may have "disgorged" Yealink's profits. Dkt. 251 at 5.

---

[1] In Yealink's Opposed Motion for Ongoing Royalty, the citation to and the corresponding excerpt of Exhibit B, page 349:19-23 were mistakenly omitted. For convenience, Yealink reattaches its Exhibits A through D to this Reply with corrected excerpts.

2

Yet Barco never asked, nor did the Court instruct, the jury to disgorge Yealink's profits. Also, with no design patents at issue, disgorgement of profit is not available to Barco. *Cf.* 35 U.S.C. § 289.

Accordingly, the evidence supports Yealink's position that the appropriate starting point for any ongoing royalty is at most $54 per dongle, and potentially less.

### B. There Is No Reason To Disregard The Jury Verdict.

Barco next appears to argue that the jury's verdict cannot be used to set an ongoing royalty because of Yealink's representations at trial. Dkt. 251 at 5-6. Barco never explains how Yealink's representations were supposedly misleading, or why they would undermine the verdict. Nor could it. Barco, represented by capable counsel, had every opportunity to and did present its case, cross examine Yealink's witnesses, and argue whatever inferences it believed the jury should draw. Its post hoc dissatisfaction with the outcome provides no basis to disregard the verdict.

More fundamentally, Yealink's present request for an ongoing royalty and its plan to reintroduce the WPP30 do not conflict with anything the jury heard at trial. The verdict reflects the jury's assessment of two distinct time periods:

1. **May 2023 through April 2024**, when Yealink sold the WPP20 and WPP30 dongles and did not dispute infringement. The jury awarded Barco $907,360 in damages for this period.

2. **After April 2024**, when Yealink had suspended U.S. sales of its dongles and disputed any continued infringement. The jury found that Barco failed to prove any post-April 2024 infringement, and awarded no damages.

*See* Dkt. 235 at 4-5. The testimony that Yealink had stopped its dongle sales, and that the dongles were of limited values, is true, and relates only to the latter period where the jury found no infringement occurred. It has no bearing on the damages the jury awarded for the earlier period, when Yealink sold its dongles and infringed. Barco cannot blur these two distinct periods.

Barco also never explains how Yealink supposedly "misrepresented" anything at trial. It cannot. Barco has long known that Yealink intended to reintroduce its dongles, which the parties

3

discussed repeatedly over multiple years of negotiations. *See* Cai Decl., Ex. D at ¶¶ 6-9, 11, 13. Notably, Barco itself previously acknowledged that Yealink had suspended, not permanently ceased, sales of its dongles. *See* Dkt. 240 at 4 (referring to "Yealink's litigation strategy to *suspend* the sale of its [dongles]") (emphasis added). Barco's current claim of surprise is unfounded.

In short, nothing about Yealink's testimony, conduct, or litigation strategy undermines the jury's verdict or prevents the Court from using it as the basis for an ongoing royalty.

### C. There Is No Reason to Depart From the $54 Maximum Royalty Rate.

Barco does not propose an ongoing royalty rate, only speculating that Yealink's alleged misrepresentations *may* change the analysis for *Georgia-Pacific* factor Nos. 5, 6, 8, 9, and 10. Dkt. 251 at 8-10. Barco falls short of its burden to justify enhancement to the jury's rate.

As discussed above, Barco's argument again ignores that the jury's $907,360 award is for the May 2023 to April 2024 time period, when Yealink sold its infringing dongles in the U.S. and for which Yealink did not dispute infringement. Thus, the hypothetical negotiation relevant to that damages period is *the same* hypothetical negotiation that governs an ongoing royalty analysis here.

Indeed, in that May 2023 to April 2024 period, Yealink's dongles were on the market as they would be upon reintroduction, had their market share as they would upon reintroduction, and had their profitability as they would upon reintroduction. Noninfringing alternatives had been available, as they would be upon reintroduction. The "underlying assumption—that the patents are valid and infringed—has not changed since the date of the hypothetical negotiation considered by the jury," and "the circumstances that would give Plaintiffs strengthened bargaining power (that the patents are infringed and not invalid) were already assumed and in place when the jury set its implied royalty rate." *Cioffi*, 2017 WL 4011143, at *4, *6; *see also UroPep*, 2017 WL 3034655, at *6. In fact, Barco's repeated references to the availability of noninfringing alternatives actually "weigh[] against a higher royalty rate." *Cioffi*, 2017 WL 4011143, at *7.

4

Moreover, there is no dispute that the comparable Crestron license is the benchmark for the reasonable royalty. As the Court correctly instructed the jury, the royalty analysis must account for "differences between the [comparable] license agreement and the hypothetical license." *See* Ex. C at 594:10-24. The Federal Circuit likewise mandates that any damages theory relying on comparable licenses must account for distinguishing facts, such as the number of patents, the scope of the technology, and the economic circumstances. *See, e.g.*, *Rex Med.,* 156 F.4th at 1300; *Apple*, 25 F.4th at 971; *Adasa*, 55 F.4th at 915. The Crestron license, with a ▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, while the hypothetical license here covers six patents in two families. Adjusting for those undisputed differences yields $54 per dongle at most, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.

### III. BARCO'S OTHER ARGUMENTS ARE IRRELEVANT AND MISPLACED.

Barco repeatedly asserts that Yealink's future infringement will be "willful," yet offers no reason why this Court should disregard its prior finding that "willfulness was not the relevant inquiry when setting the royalty rate for post-verdict sales." *Cioffi*, 2017 WL 4011143, at *8. Willfulness cannot justify increasing the ongoing royalty, much less a new trial sought by Barco.

Barco's unsubstantiated concerns about the quality of Yealink's product, and its ability to collect from Yealink, are relevant, if at all, to injunctions, not ongoing royalties. And as Yealink explained in its opposition to Barco's permanent injunction motion, Dkt. 256 at 6-8, Barco's past conduct, including its "alliance" with and offer to license Yealink, undercuts these concerns.

### IV. CONCLUSION

Barco identifies no legal or factual reason to reject an ongoing royalty or to deviate from the $54 maximum rate supported by the trial record and Federal Circuit precedent. An ongoing royalty will avoid unnecessary future litigation and ensure Barco is fully compensated for any future WPP30 sales. The Court should impose an ongoing royalty of no more than $54 per WPP30.

5

|  |  |
|---|---|
| Date: February 10, 2026 | **DENTONS US LLP**<br><br>By: /s/ *Victor C. Johnson*<br>Victor C. Johnson<br>Texas Bar No. 24029640<br>Forrest D. Gothia<br>Texas Bar No. 24125250<br>100 Crescent Court, Suite 900<br>Dallas, Texas 75201<br>Email: victor.johnson@dentons.com<br>(214) 259-1876<br>Email: forrest.gothia@dentons.com<br>(214) 259-1887<br><br>Stephen Yang (*pro hac vice* granted)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Email: Stephen.yang@dentons.com<br>(212) 398-4890<br><br>Timothy C. Bickham<br>DC State Bar No. 45614<br>Kevin R. Greenleaf<br>1900 K Street, NW<br>Washington, DC 20006<br>Email: Timothy.bickham@dentons.com<br>(202) 408-6390<br>Email: Kevin.greenleaf@dentons.com<br>(202) 408-6390<br><br>***Attorneys for Defendants Yealink (USA) Network Technology Co., Ltd. and Yealink Network Technology Co., Ltd.*** |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served *via* email to counsel for Plaintiffs on February 10, 2026.

                                           */s/ Victor Johnson*
                                           Victor C. Johnson

## CERTIFICATE OF AUTHORIZATION TO SEAL

I hereby certify that pursuant to Local Rule CV-5(a)(7), the foregoing document was filed under seal pursuant to the Court's Protective Order entered in this matter (Dkt. No. 30).

*/s/ Victor C. Johnson*
Victor C. Johnson