# EXHIBIT G

# UNITED STATES PATENT AND TRADEMARK OFFICE

---

## BEFORE THE PATENT TRIAL AND APPEAL BOARD

---

YEALINK (USA) NETWORK TECHNOLOGY CO., LTD., AND YEALINK NETWORK TECHNOLOGY CO., LTD.,

Petitioners,

v.

BARCO N.V.

Patent Owner.

---

CASE: IPR2024-01436

U.S. PATENT NO. 10,762,002

---

## PATENT OWNER'S REQUEST FOR DIRECTOR REVIEW

Request for Director Review - IPR2024-01436
U.S. Patent No. 10,762,002

**Table of Contents**

I.      Introduction...............................................................................................1

II.     Standard for Granting Review ...........................................................4

III.    The Crestron License...........................................................................5

   A.    Origin of the License.......................................................................5

   B.    The Panel's Incorrect Treatment of the Crestron License...........................7

IV.     The Practicing Products.....................................................................10

V.      Conclusion .........................................................................................13

i

Request for Director Review - IPR2024-01436
U.S. Patent No. 10,762,002

## I.   INTRODUCTION

U.S. Patent No. 10,762,002 is the subject of a license by sophisticated competitor Crestron Electronics, ███████████████████████████ ████████████████████ to obtain patent rights needed to compete in the presentation-dongle market that Barco created and now dominates with Crestron. Ex. 2023 at 58:14–23, 59:8–24. Similarly, Petitioner sought a compulsory license to the challenged claims of the '002 Patent after admitting it had infringed all asserted claims of the '002 Patent. Paper 58; Exs. 2035, 2036. The Panel erred by discounting this evidence of competitor acquiescence and by suggesting the Crestron License would be persuasive only if the parties had executed twenty-plus separate licenses.

That approach reflects neither business reality nor sound policy. When an operating company like Barco—whose patent-practicing products have generated hundreds of millions of dollars in success—████████████████████ ███████████████████████ the negotiated value necessarily reflects the patent family required to compete. The Panel instead disregarded this commercial reality. *See generally* Ex. 2010; Ex. 2004 at ¶¶122–147.

The Panel also misapplied the Federal Circuit's decision in *Ancora Techs., Inc. v. Roku, Inc.*, 140 F.4th 1351 (Fed. Cir. 2025), which confirms that licenses can be strong objective evidence even when they cover more than one patent. Although

the Crestron License covers more than a single patent, it is limited to three patent families ███████████████████████████████████ Ex. 2023 at 58:14–23. And the Federal Circuit is explicit: "Licenses to the challenged patent . . . do not require a nexus with respect to the specific claims at issue, ***nor does our nexus law require that a particular patent be the only patent being licensed or the sole motivation for entering into a license***." *Ancora*, 140 F.4th at 1362 (emphasis added). Yet the FWD fully discounted the Crestron License because it covered multiple patents, giving it "little weight." FWD (Paper 62) at 36.

Crestron—an innovator with hundreds of its own patents in this space—was represented by competent IP counsel and determined that the licensed Barco patents had value. *See* Ex. 2018. ████████████████████████████████ Ex. 2023 at 4:1–10, 9:1–6, 58:14–23.

Secondary considerations are a cornerstone of the obviousness analysis. They can show that "an invention appearing to have been obvious in light of the prior art was not." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012). Under the Panel's approach, the Office would invalidate seven, narrow, product specific, USPTO Examined, Barco patents despite substantial evidence of industry acceptance. *See* IPR2024-01436, Paper 62;

2

Request for Director Review - IPR2024-01436
U.S. Patent No. 10,762,002

IPR2024-01437, Paper 55; IPR2024-01438, Paper 55; IPR2024-01439, Paper 60; IPR2025-00491, Paper 20; IPR2025-00597, Paper 11; IPR2025-00598, Paper 12.

Petitioner Yealink admitted its WPP30 product infringes **75 claims** of six challenged patents, including Claims 1–7 and 10[1] of the '002 Patent when used in the United States (*see Barco Inc. v. Yealink (USA) Network Technology Co.*, No. 2:23-cv-00521 (E.D. Tex., filed Nov. 14, 2023), Dkt. 85; Dkt. 189). Yet Yealink deceptively downplayed WPP30 as "merely a small and optional accessory[,]" withdrawing them from the market before trial, only to seek a compulsory license after trial to these same patents so that it could reintroduce them without fear of further litigation. *See* Paper 59 at 3; Paper 58 at 1–2 (citing Exs. 2035, 2036). That compulsory-license request powerfully confirms nexus: the challenged claims are necessary for Yealink to compete with Barco and Crestron in this market. The Panel's decision instead rewards an admitted infringer by nullifying the market evidence reflected in the Crestron License.

---

[1] Yealink challenged a subset of the asserted claims in this IPR, yet admitted it infringed all asserted claims in the district court action.  It then, after the 1-year bar date passed, filed *ex parte* reexamination requests with nearly identical challenges to the CRU, despite not having included those challenges in its IPR.

Request for Director Review - IPR2024-01436
U.S. Patent No. 10,762,002

The FWD should be reversed because it erroneously discounts "[o]bjective evidence of non-obviousness," which "may often be the most probative and cogent evidence in the record" and may show that an invention "appearing to have been obvious in light of the prior art was not." FWD at 30 (citing *Transocean*, 699 F.3d at 1349). Despite the '002 Patent's targeted license to a key competitor and Yealink's own request for a compulsory license, the FWD minimized the probative value of the surrounding commercial arrangements. FWD at 30–38. Invalidating patent claims the market has deemed valuable requires more.

Patent Owner respectfully requests reversal of the FWD, or, alternatively, vacatur of the FWD and termination of the IPR. 37 C.F.R. § 42.75; *Interactive Comm. Int'l, Inc. v. Blackhawk Network, Inc.*, IPR2024-00465, Paper 40 at 4 (PTAB Oct. 9, 2025).

## II.    STANDARD FOR GRANTING REVIEW

The FWD misapplied *Ancora* and, in doing so, effectively adopted a policy that would pressure parties to execute multiple single-patent licenses rather than targeted, product-specific family licenses. That approach is inconsistent with how businesses actually license technology and would systematically disadvantage patent owners who enter multi-patent product licenses. If the circumstances

4

surrounding the Crestron License do not qualify as compelling secondary considerations of non-obviousness, then few, if any, licenses would.

Given these legal errors and policy implications, Director review is warranted. *See United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021).

## III.    THE CRESTRON LICENSE

### A.    *Origin of the Crestron License*

Crestron Electronics, Inc. is a sophisticated technology company that owns over 450 patent families. Ex. 2019. Crestron even provides conferencing equipment used at the PTAB. Hearing Transcript (Paper 60) at 124:21–125:2. Patent Owner Barco competes with Crestron in the conference and presentation market. Ex. 2023 at 28:22–29:16.

████████████████████████████████████████████████ —

including the '002 Patent—technology undisputedly practiced by Barco, Crestron, and Yealink. Ex. 2023 at 58:14–19; Ex. 2004 at ¶¶122–147; *Barco Inc. v. Yealink (USA) Network Technology Co.*, No. 2:23-cv-00521 (E.D. Tex., filed Nov. 14, 2023), Dkt. 85; Dkt. 189. ████████████████████████

████████████████████████████████████████████████

████████████████████    Ex. 2023 at 4:3–10, 9:1–6, 58:18–19. Crestron agreed to the license without any litigation being filed or threatened. *Id.* at 58:14–17.

5

Crestron agreed to a "Patent License Agreement" paying Barco ███████

████████████████████████████████████████ Ex. 2011 at 1, 17.

Crestron also agreed to pay Barco ████████████████████████████

████████████████ *Id.* at 16. Petitioner offered no evidence that the patent

license was merely a cost-saving measure or anything other than a decision to obtain

access to use valuable technology needed to compete. ████████████

████████████████████████████████████████

████████████████████████████████ Ex. 2023 at 76:12–18.

The Panel wrongly discounted this commercial context while favoring Petitioner's

decision to launch without taking a negotiated license.

The record also does not support the FWD's conclusion that the agreement

was "driven by business factors, interests, and benefits beyond the patents

themselves." FWD at 36. █████████████████████████

██████████████████████████ Ex. 2011; 2023 at 58:14–19. Crestron

identified no other "business interests[.]" *Id.* at 58:10–13. Interpreting Mr. Ludke's

testimony otherwise ignores the context of that testimony. *See id.* 58:10–23. The

other cited testimony addresses why *Patent Owner* was willing to license Crestron,

████████████████████████████████████████

6

Request for Director Review - IPR2024-01436
U.S. Patent No. 10,762,002

████. *See* Ex. 1091 at 73:7–74:3 ("And so that created an opportunity for ***Barco*** to benefit…").

### B.    *The Panel's Incorrect Treatment of the Crestron License*

The FWD's narrow reading of *Ancora v. Roku* is wrong. 140 F.4th 1351 (Fed. Cir. 2025). "Unlike products, which may incorporate numerous features beyond those claimed or described in a patent and therefore may require careful parsing to establish a nexus, actual licenses to the subject patent do not demand the same, as they are, by their nature, directly tied to the patented technology." *Ancora*, 140 F.4th at 1362. ████████████████████████████████████

████████████████████████ Ex. 2023 at 58:14–19.

The Panel held the Crestron Patent License Agreement to an improper standard. It reasoned that because the license covered three patent families ████

████████████████████ *Ancora's* presumption of nexus did not apply. FWD at 36. But *Ancora* does not require single-patent licenses or proof that only one patent is "essential." This is not a broad, portfolio-wide license between non-competitors; it is a product-specific license between competitors, ████████

███████████████████████████████████████████ Ex. 2011; Ex. 2023 at 58:14–19.

7

Request for Director Review - IPR2024-01436
U.S. Patent No. 10,762,002

*Ancora* explains that a patent owner is entitled to a rebuttable presumption of nexus when the objective evidence is tied to a specific product that embodies the claimed features and is coextensive with them. *Ancora*, 140 F.4th at 1361. Patent Owner has shown that Barco and Crestron practice the '002 Patent (POR at 49–62; Ex. 2017; Ex. 2018); ███████████████████████████████ (Ex. 2023 at 58:14–19); and that the products have been commercially successful (POR at 63). Yealink offers no contrary evidence beyond noting that the license covers multiple patents.

Barco's ClickShare products practice the '002 Patent. Ex. 2017. Crestron likewise marks its AirMedia line as practicing the '002 Patent (among others). Ex. 2018. This unrebutted evidence confirms the '002 Patent's value to both companies' commercial products.

The parties' marking evidence and unrebutted testimony from Barco's technical expert regarding practice of the '002 Patent by Barco's products, combined with Yealink's infringement admissions and compulsory-license request, confirms that multiple patent rights are required to compete in this market. Ex. 2004 at ¶¶122–147; Ex. 2017; Ex. 2018; Ex. 2023 at 58:14–19. The Crestron License reflects that commercial reality: it is limited to the specific patents ████████████████ ██████ Ex. 2011; Ex. 2023 at 58:14–19. The fact that more than one patent is

8

required does not diminish the probative value of the license; it underscores that each licensed patent is valuable and required for market participation.

The FWD effectively implies that each patent must be licensed separately rather than through a product-specific family license. That premise is unsupported and inconsistent with commercial practice. Petitioner offered no evidence that separate, individual patent licenses are the norm. To the contrary, Yealink's request for a compulsory license to all six challenged patents confirms that a product may require multiple patent rights. The Panel therefore erred in affording the Crestron License "little weight." *See* FWD at 36.

This case is stronger than the Director Review request in *Nintendo Co. Ltd. v. Ancora Tech., Inc.*, IPR2021-01338 (Paper 74) (PTAB Feb. 20, 2026). Unlike Ancora, Barco is an operating company with substantial sales of patent-practicing products, and a sophisticated competitor (Crestron) sought a license **before** launching its product—without any litigation being filed or threatened.

Ex. 2011; Ex. 2023 at 58:10–23.

Ex. 2011. This structure is consistent with the notion that

9

the Crestron License was to produce products, not merely to avoid litigation. And Crestron's desire to build practicing products underscores the '002 Patent's commercial value.

If a targeted license negotiated between sophisticated competitors is not probative of value and nonobviousness, then licenses will rarely if ever inform the obviousness inquiry. A patent license between competitors ███████████, like the Crestron Patent License Agreement, should carry substantial weight.

## IV.    THE PRACTICING PRODUCTS

Yealink itself confirmed the '002 Patent's value by seeking a compulsory license. Exs. 2035, 2036. After withdrawing its admittedly infringing product to limit litigation exposure, Yealink sought to reintroduce WPP30 and asked the court to order a license to the very claims challenged here. Ex. 2035 at ¶¶5 ("Yealink decided to suspend sales of the WPP20 and WPP30 in the United States…to minimize any potential damages to Barco before the litigation concluded, when the scope of the damages Yealink should pay Barco remained unclear"), 14 ("At the same time, now that the trial has concluded and the jury has decided that Yealink should pay Barco $907,360 for its past infringement, Yealink has decided to reintroduce its WPP30 in the United Sates, and will resume selling its WPP30 dongle in 2026"). Yealink's request directly ties the challenged claims to commercial value

10

and confirms that the patented technology is necessary to compete in this market. The Panel therefore erred in giving this evidence only "some weight," rather than the "significant weight" it should be ascribed.

The FWD also gave Patent Owner's commercial-success evidence "little weight." FWD at 35. Nexus is presumed when the patentee shows the objective evidence is tied to a specific product that embodies the claimed features and is coextensive with them. *Polaris Indus. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1072 (Fed. Cir. 2018) (citing *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000)). Perfect correspondence is not required; correspondence falls on a spectrum, and additional unclaimed features do not defeat nexus if they are insignificant. *Fox Factory, Inc. v. SRAM LLC*, 944 F.3d 1366, 1374 (Fed. Cir. 2019). Patent Owner mapped the claimed features to ClickShare, and Petitioner offered no evidence to rebut that showing.

The record shows consumers overwhelmingly desire products with the claimed inventions. ███████████████████████████████████████████████ ██████████████████████████████████████ Ex. 2023 at 58:14–19. Second, Yealink requested a compulsory license to each challenged patent. Exs. 2035, 2036. Third, **85%** of Patent Owner customers use the ClickShare dongle practicing the claimed invention rather than dongle-less implementations.

11

Request for Director Review - IPR2024-01436
U.S. Patent No. 10,762,002

Ex. 1078 at 199:25–200:18; Ex. 1091 at 147:18–148:2. Together, this evidence establishes nexus between the challenged claims and commercial success.

The FWD did not address this evidence. At a minimum, the unrebutted 85% dongle-usage rate supports attributing the overwhelming share of product value to the patented features. And even without a presumption of nexus, the 85% usage evidence—combined with Yealink's infringement admission and compulsory-license request—constitutes direct evidence tying the claimed features to commercial value.

Patent Owner showed the ClickShare products are coextensive with the '002 Patent. POR at 49–62. Petitioner argued coextensiveness is undermined because ClickShare can connect via the ClickShare App, Teams, or Zoom. FWD at 34. But Petitioner offered no evidence—and the Panel cited none—showing how often those alternatives are used to rebut Patent Owner's 85% dongle-usage figures. The unrebutted record confirms the predominant use is with the claimed dongle. The Panel erred in discounting the commercial value of Barco's technology to Barco, Crestron, and Yealink.

The FWD treated dongle-less use as a significant unclaimed feature, but the mere availability of dongle-less use does not show it is significant in practice. Even

12

Request for Director Review - IPR2024-01436
U.S. Patent No. 10,762,002

under the Panel's framing, the unrebutted evidence indicates the patented dongle features account for the vast majority of real-world use and value.

## V.    CONCLUSION

The FWD failed to give appropriate weight to (1) the Crestron Patent License Agreement or (2) ClickShare's substantial commercial success, given the demonstrated nexus between the '002 Patent and Barco's, Crestron's and Yealink's commercial products. For these reasons, the findings as to all Challenged Claims should be reversed, and the patentability of the challenged claims confirmed in view of the '002 Patent's indicia of nonobviousness. Alternatively, Patent Owner requests vacatur of the FWD and termination of this IPR.

Dated: April 22, 2026                  Respectfully submitted,

By:    */Erik J. Halverson/*
Erik Halverson
Reg. No. 73,552
**K&L GATES LLP**
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111
erik.halverson@klgates.com
T: (415) 882-8238
F: (415) 882-8220

Chris Centurelli
Reg. No. 44,599
chris.centurelli@klgates.com

13

Request for Director Review - IPR2024-01436
U.S. Patent No. 10,762,002

Joshua Andrews
Reg. No. 79,215
joshua.andrews@klgates.com
**K&L GATES LLP**
1 Congress St., Suite 2900
Boston, MA 02114
T: (617) 261-3276
F: (617) 261-3175

*Counsel for Patent Owner*

14

Request for Director Review - IPR2024-01436
U.S. Patent No. 10,762,002

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2026 a true and correct copy of the foregoing was caused to be served on the following counsel of record for Petitioner by electronic mail at the following addresses:

Stephen Yang (Reg. No. 70,589)
stephen.yang@dentons.com
Kevin R. Greenleaf (Reg. No. 64,062)
kevin.greenleaf@dentons.com
Timothy C. Bickham (Reg. No. 41,618)
timothy.bickham@dentons.com
Forrest Gothia (Reg. No. 80,399)
forrest.gothia@dentons.com
Dentons US LLP
233 South Wacker Drive,
Suite 5800
Chicago, IL 60606
Tel: (212) 398-4890
Fax: (212) 768-6800
Email: ipt.docketchi@dentons.com

By:    /Erik J. Halverson/
Erik Halverson
Reg. No. 73,552

15

# UNITED STATES PATENT AND TRADEMARK OFFICE

---

## BEFORE THE PATENT TRIAL AND APPEAL BOARD

---

YEALINK (USA) NETWORK TECHNOLOGY CO., LTD., AND YEALINK NETWORK TECHNOLOGY CO., LTD.,

Petitioners,

v.

BARCO N.V.

Patent Owner.

---

CASE: IPR2024-01437

U.S. PATENT NO. 11,403,237

---

## PATENT OWNER'S REQUEST FOR DIRECTOR REVIEW

Request for Director Review - IPR2024-01437
U.S. Patent No. 11,403,237

**Table of Contents**

I.      Introduction.................................................................................................1

II.     Standard for Granting Review .....................................................................4

III.    The Crestron License...................................................................................5

    A.      Origin of the License...........................................................................5

    B.      The Panel's Incorrect Treatment of the Crestron License...........................7

IV.     The Practicing Products.............................................................................10

V.      Conclusion ................................................................................................13

i

Request for Director Review - IPR2024-01437
U.S. Patent No. 11,403,237

## I.    INTRODUCTION

U.S. Patent No. 11,403,237 is the subject of a license by sophisticated competitor Crestron Electronics, ███████████████████████████ ███████████████ to obtain patent rights needed to compete in the presentation-dongle market that Barco created and now dominates with Crestron. Ex. 2023 at 58:14–23, 59:8–24. Similarly, Petitioner sought a compulsory license to the challenged claims of the '237 Patent after admitting it had infringed all asserted claims of the '237 Patent. Paper 51; Exs. 2035, 2036. The Panel erred by discounting this evidence of competitor acquiescence and by suggesting the Crestron License would be persuasive only if the parties had executed twenty-plus separate licenses.

That approach reflects neither business reality nor sound policy. When an operating company like Barco—whose patent-practicing products have generated hundreds of millions of dollars in success—██████████████████████ ██████████████████████ the negotiated value necessarily reflects the patent family required to compete. The Panel instead disregarded this commercial reality. *See generally* Ex. 2010; Ex. 2004 at ¶¶105–128.

The Panel also misapplied the Federal Circuit's decision in *Ancora Techs., Inc. v. Roku, Inc.*, 140 F.4th 1351 (Fed. Cir. 2025), which confirms that licenses can be strong objective evidence even when they cover more than one patent. Although

1

Request for Director Review - IPR2024-01437
U.S. Patent No. 11,403,237

the Crestron License covers more than a single patent, it is limited to three patent families ████████████████████████████████ Ex. 2023 at 58:14–23. And the Federal Circuit is explicit: "Licenses to the challenged patent . . . do not require a nexus with respect to the specific claims at issue, ***nor does our nexus law require that a particular patent be the only patent being licensed or the sole motivation for entering into a license***." *Ancora*, 140 F.4th at 1362 (emphasis added). Yet the FWD fully discounted the Crestron License because it covered multiple patents, giving it "little weight." FWD (Paper 55) at 32.

Crestron—an innovator with hundreds of its own patents in this space—was represented by competent IP counsel and determined that the licensed Barco patents had value. *See* Ex. 2018. ████████████████████████████████ Ex. 2023 at 4:1–10, 9:1–6, 58:14–23.

Secondary considerations are a cornerstone of the obviousness analysis. They can show that "an invention appearing to have been obvious in light of the prior art was not." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012). Under the Panel's approach, the Office would invalidate seven, narrow, product specific, USPTO Examined, Barco patents despite substantial evidence of industry acceptance. *See* IPR2024-01436, Paper 62;

2

Request for Director Review - IPR2024-01437
U.S. Patent No. 11,403,237

IPR2024-01437, Paper 55; IPR2024-01438, Paper 55; IPR2024-01439, Paper 60; IPR2025-00491, Paper 20; IPR2025-00597, Paper 11; IPR2025-00598, Paper 12.

Petitioner Yealink admitted its WPP30 product infringes **75 claims** of six challenged patents, including Claims 1–7 and 10[1] of the '237 Patent when used in the United States (*see Barco Inc. v. Yealink (USA) Network Technology Co.*, No. 2:23-cv-00521 (E.D. Tex., filed Nov. 14, 2023), Dkt. 85; Dkt. 189). Yet Yealink deceptively downplayed WPP30 as "merely a small and optional accessory[,]" withdrawing them from the market before trial, only to seek a compulsory license after trial to these same patents so that it could reintroduce them without fear of further litigation. *See* Paper 52 at 3; Paper 51 at 1–2 (citing Exs. 2035, 2036). That compulsory-license request powerfully confirms nexus: the challenged claims are necessary for Yealink to compete with Barco and Crestron in this market. The Panel's decision instead rewards an admitted infringer by nullifying the market evidence reflected in the Crestron License.

---

[1] Yealink challenged a subset of the asserted claims in this IPR, yet admitted it infringed all asserted claims in the district court action.  It then, after the 1-year bar date passed, filed *ex parte* reexamination requests with nearly identical challenges to the CRU, despite not having included those challenges in its IPR.

3

Request for Director Review - IPR2024-01437
U.S. Patent No. 11,403,237

The FWD should be reversed because it erroneously discounts "[o]bjective evidence of non-obviousness," which "may often be the most probative and cogent evidence in the record" and may show that an invention "appearing to have been obvious in light of the prior art was not." FWD at 25 (citing *Transocean*, 699 F.3d at 1349). Despite the '237 Patent's targeted license to a key competitor and Yealink's own request for a compulsory license, the FWD minimized the probative value of the surrounding commercial arrangements. FWD at 25–33. Invalidating patent claims the market has deemed valuable requires more.

Patent Owner respectfully requests reversal of the FWD, or, alternatively, vacatur of the FWD and termination of the IPR. 37 C.F.R. § 42.75; *Interactive Comm. Int'l, Inc. v. Blackhawk Network, Inc.*, IPR2024-00465, Paper 40 at 4 (PTAB Oct. 9, 2025).

## II.    STANDARD FOR GRANTING REVIEW

The FWD misapplied *Ancora* and, in doing so, effectively adopted a policy that would pressure parties to execute multiple single-patent licenses rather than targeted, product-specific family licenses. That approach is inconsistent with how businesses actually license technology and would systematically disadvantage patent owners who enter multi-patent product licenses. If the circumstances

4

surrounding the Crestron License do not qualify as compelling secondary considerations of non-obviousness, then few, if any, licenses would.

Given these legal errors and policy implications, Director review is warranted. *See United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021).

## III.    THE CRESTRON LICENSE

### A.    *Origin of the Crestron License*

Crestron Electronics, Inc. is a sophisticated technology company that owns over 450 patent families. Ex. 2019. Crestron even provides conferencing equipment used at the PTAB. Hearing Transcript (Paper 53) at 124:21–125:2. Patent Owner Barco competes with Crestron in the conference and presentation market. Ex. 2023 at 28:22–29:16.



—technology undisputedly practiced by Barco, Crestron, and Yealink. Ex. 2023 at 58:14–19; Ex. 2004 at ¶¶105–128; *Barco Inc. v. Yealink (USA) Network Technology Co.*, No. 2:23-cv-00521 (E.D. Tex., filed Nov. 14, 2023), Dkt. 85; Dkt. 189.

Ex. 2023 at 4:3–10, 9:1–6, 58:18–19. Crestron agreed to the license without any litigation being filed or threatened. *Id.* at 58:14–17.

Request for Director Review - IPR2024-01437
U.S. Patent No. 11,403,237

Crestron agreed to a "Patent License Agreement" paying Barco ████████ ████████████████████████████████████████████████ Ex. 2011 at 1, 17.

Crestron also agreed to pay Barco ████████████████████████████ ██████████████████████ *Id.* at 16. Petitioner offered no evidence that the patent license was merely a cost-saving measure or anything other than a decision to obtain access to use valuable technology needed to compete. ██████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ Ex. 2023 at 76:12–18. The Panel wrongly discounted this commercial context while favoring Petitioner's decision to launch without taking a negotiated license.

The record also does not support the FWD's conclusion that the agreement was "driven by business factors, interests, and benefits beyond the patents themselves." FWD at 31. ████████████████████████████████ ████████████████████████████ Ex. 2011; 2023 at 58:14–19. Crestron identified no other "business interests[.]" *Id*. at 58:10–13. Interpreting Mr. Ludke's testimony otherwise ignores the context of that testimony. *See id*. 58:10–23. The other cited testimony addresses why *Patent Owner* was willing to license Crestron,

6

Request for Director Review - IPR2024-01437
U.S. Patent No. 11,403,237

██████   *See* Ex. 1091 at 73:7–74:3 ("And so that created an opportunity for ***Barco*** to benefit…").

### B.   *The Panel's Incorrect Treatment of the Crestron License*

The FWD's narrow reading of *Ancora v. Roku* is wrong. 140 F.4th 1351 (Fed. Cir. 2025). "Unlike products, which may incorporate numerous features beyond those claimed or described in a patent and therefore may require careful parsing to establish a nexus, actual licenses to the subject patent do not demand the same, as they are, by their nature, directly tied to the patented technology." *Ancora*, 140 F.4th at 1362. ████████████████████████████████████████████████ ██████████████████████████████████   Ex. 2023 at 58:14–19.

The Panel held the Crestron Patent License Agreement to an improper standard. It reasoned that because the license covered three patent families ████████ ██████████████████████████, *Ancora's* presumption of nexus did not apply. FWD at 31–32. But *Ancora* does not require single-patent licenses or proof that only one patent is "essential." This is not a broad, portfolio-wide license between non-competitors; it is a product-specific license between competitors, ████████████ ███████████████████████████████████████████████████. Ex. 2011; Ex. 2023 at 58:14–19.

7

*Ancora* explains that a patent owner is entitled to a rebuttable presumption of nexus when the objective evidence is tied to a specific product that embodies the claimed features and is coextensive with them. *Ancora*, 140 F.4th at 1361. Patent Owner has shown that Barco and Crestron practice the '237 Patent (POR at 41–52; Ex. 2017; Ex. 2018); ████████████████████████████ (Ex. 2023 at 58:14–19); and that the products have been commercially successful (POR at 52–53). Yealink offers no contrary evidence beyond noting that the license covers multiple patents.

Barco's ClickShare products practice the '237 Patent. Ex. 2017. Crestron likewise marks its AirMedia line as practicing the '237 Patent (among others). Ex. 2018. This unrebutted evidence confirms the '237 Patent's value to both companies' commercial products.

The parties' marking evidence and unrebutted testimony from Barco's technical expert regarding practice of the '237 Patent by Barco's products, combined with Yealink's infringement admissions and compulsory-license request, confirms that multiple patent rights are required to compete in this market. Ex. 2004 at ¶¶105–128; Ex. 2017; Ex. 2018; Ex. 2023 at 58:14–19. The Crestron License reflects that commercial reality: it is limited to the specific patents ████████████ ████ Ex. 2011; Ex. 2023 at 58:14–19. The fact that more than one patent is

8

Request for Director Review - IPR2024-01437

U.S. Patent No. 11,403,237

required does not diminish the probative value of the license; it underscores that each licensed patent is valuable and required for market participation.

The FWD effectively implies that each patent must be licensed separately rather than through a product-specific family license. That premise is unsupported and inconsistent with commercial practice. Petitioner offered no evidence that separate, individual patent licenses are the norm. To the contrary, Yealink's request for a compulsory license to all six challenged patents confirms that a product may require multiple patent rights. The Panel therefore erred in affording the Crestron License "little weight." *See* FWD at 32.

This case is stronger than the Director Review request in *Nintendo Co. Ltd. v. Ancora Tech., Inc.*, IPR2021-01338 (Paper 74) (PTAB Feb. 20, 2026). Unlike Ancora, Barco is an operating company with substantial sales of patent-practicing products, and a sophisticated competitor (Crestron) sought a license ***before*** launching its product—without any litigation being filed or threatened.

Ex. 2011; Ex. 2023 at 58:10–23.

Ex. 2011. This structure is consistent with the notion that

9

Request for Director Review - IPR2024-01437
U.S. Patent No. 11,403,237

the Crestron License was to produce products, not merely to avoid litigation. And Crestron's desire to build practicing products underscores the '237 Patent's commercial value.

If a targeted license negotiated between sophisticated competitors is not probative of value and nonobviousness, then licenses will rarely if ever inform the obviousness inquiry. A patent license between competitors ▮▮▮▮▮▮▮, like the Crestron Patent License Agreement, should carry substantial weight.

## IV.    THE PRACTICING PRODUCTS

Yealink itself confirmed the '237 Patent's value by seeking a compulsory license. Exs. 2035, 2036. After withdrawing its admittedly infringing product to limit litigation exposure, Yealink sought to reintroduce WPP30 and asked the court to order a license to the very claims challenged here. Ex. 2035 at ¶¶5 ("Yealink decided to suspend sales of the WPP20 and WPP30 in the United States…to minimize any potential damages to Barco before the litigation concluded, when the scope of the damages Yealink should pay Barco remained unclear"), 14 ("At the same time, now that the trial has concluded and the jury has decided that Yealink should pay Barco $907,360 for its past infringement, Yealink has decided to reintroduce its WPP30 in the United Sates, and will resume selling its WPP30 dongle in 2026"). Yealink's request directly ties the challenged claims to commercial value

10

and confirms that the patented technology is necessary to compete in this market. The Panel therefore erred in giving this evidence only "some weight," rather than the "significant weight" it should be ascribed.

The FWD also gave Patent Owner's commercial-success evidence "little weight." FWD at 32. Nexus is presumed when the patentee shows the objective evidence is tied to a specific product that embodies the claimed features and is coextensive with them. *Polaris Indus. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1072 (Fed. Cir. 2018) (citing *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000)). Perfect correspondence is not required; correspondence falls on a spectrum, and additional unclaimed features do not defeat nexus if they are insignificant. *Fox Factory, Inc. v. SRAM LLC*, 944 F.3d 1366, 1374 (Fed. Cir. 2019). Patent Owner mapped the claimed features to ClickShare, and Petitioner offered no evidence to rebut that showing.

The record shows consumers overwhelmingly desire products with the claimed inventions. ███████████████████████████████████████████ ███████████████████████████████████████████ Ex. 2023 at 58:14–19. Second, Yealink requested a compulsory license to each challenged patent. Exs. 2035, 2036. Third, **85%** of Patent Owner customers use the ClickShare dongle practicing the claimed invention rather than dongle-less implementations.

11

Ex. 1078 at 199:25–200:18; Ex. 1091 at 147:18–148:2. Together, this evidence establishes nexus between the challenged claims and commercial success.

The FWD did not address this evidence. At a minimum, the unrebutted 85% dongle-usage rate supports attributing the overwhelming share of product value to the patented features. And even without a presumption of nexus, the 85% usage evidence—combined with Yealink's infringement admission and compulsory-license request—constitutes direct evidence tying the claimed features to commercial value.

Patent Owner showed the ClickShare products are coextensive with the '237 Patent. POR at 41–52. Petitioner argued coextensiveness is undermined because ClickShare can connect via the ClickShare App, Teams, or Zoom. FWD at 29. But Petitioner offered no evidence—and the Panel cited none—showing how often those alternatives are used to rebut Patent Owner's 85% dongle-usage figures. The unrebutted record confirms the predominant use is with the claimed dongle. The Panel erred in discounting the commercial value of Barco's technology to Barco, Crestron, and Yealink.

The FWD treated dongle-less use as a significant unclaimed feature, but the mere availability of dongle-less use does not show it is significant in practice. Even

12

Request for Director Review - IPR2024-01437
U.S. Patent No. 11,403,237

under the Panel's framing, the unrebutted evidence indicates the patented dongle features account for the vast majority of real-world use and value.

## V.     CONCLUSION

The FWD failed to give appropriate weight to (1) the Crestron Patent License Agreement or (2) ClickShare's substantial commercial success, given the demonstrated nexus between the '237 Patent and Barco's, Crestron's and Yealink's commercial products. For these reasons, the findings as to all Challenged Claims should be reversed, and the patentability of the challenged claims confirmed in view of the '237 Patent's indicia of nonobviousness. Alternatively, Patent Owner requests vacatur of the FWD and termination of this IPR.

Dated: April 22, 2026

Respectfully submitted,

By:     */Erik J. Halverson/*
Erik Halverson
Reg. No. 73,552
**K&L GATES LLP**
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111
erik.halverson@klgates.com
T: (415) 882-8238
F: (415) 882-8220

Chris Centurelli
Reg. No. 44,599
chris.centurelli@klgates.com

13

Request for Director Review - IPR2024-01437
U.S. Patent No. 11,403,237

Joshua Andrews
Reg. No. 79,215
joshua.andrews@klgates.com
**K&L GATES LLP**
1 Congress St., Suite 2900
Boston, MA 02114
T: (617) 261-3276
F: (617) 261-3175

*Counsel for Patent Owner*

14

Request for Director Review - IPR2024-01437
U.S. Patent No. 11,403,237

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 22, 2026 a true and correct copy of the foregoing was caused to be served on the following counsel of record for Petitioner by electronic mail at the following addresses:

Stephen Yang (Reg. No. 70,589)
stephen.yang@dentons.com
Kevin R. Greenleaf (Reg. No. 64,062)
kevin.greenleaf@dentons.com
Timothy C. Bickham (Reg. No. 41,618)
timothy.bickham@dentons.com
Forrest Gothia (Reg. No. 80,399)
forrest.gothia@dentons.com
Dentons US LLP
233 South Wacker Drive,
Suite 5800
Chicago, IL 60606
Tel: (212) 398-4890
Fax: (212) 768-6800
Email: ipt.docketchi@dentons.com

By:    */Erik J. Halverson/*
Erik Halverson
Reg. No. 73,552

15

# UNITED STATES PATENT AND TRADEMARK OFFICE

_____

# BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

YEALINK (USA) NETWORK TECHNOLOGY CO., LTD., AND YEALINK NETWORK TECHNOLOGY CO., LTD.,

Petitioners,

v.

BARCO N.V.

Patent Owner.

_____

CASE: IPR2024-01438

U.S. PATENT NO. 11,258,676

_____

# PATENT OWNER'S REQUEST FOR DIRECTOR REVIEW

Request for Director Review - IPR2024-01438
U.S. Patent No. 11,258,676

**Table of Contents**

I.     Introduction.................................................................................................1

II.     Standard for Granting Review ........................................................4

III.     The Crestron License ....................................................................5

    A.     Origin of the License.................................................................5

    B.     The Panel's Incorrect Treatment of the Crestron License..........................7

IV.     The Practicing Products...............................................................10

V.     Conclusion ..............................................................................13

Request for Director Review - IPR2024-01438
U.S. Patent No. 11,258,676

## I.    INTRODUCTION

U.S. Patent No. 11,258,676 is the subject of a license by sophisticated competitor Crestron Electronics, ████████████████████████ ███████████████ to obtain patent rights needed to compete in the presentation-dongle market that Barco created and now dominates with Crestron. Ex. 2023 at 58:14–23, 59:8–24. Similarly, Petitioner sought a compulsory license to the challenged claims of the '676 Patent after admitting it had infringed all asserted claims of the '676 Patent. Paper 51; Exs. 2035, 2036. The Panel erred by discounting this evidence of competitor acquiescence and by suggesting the Crestron License would be persuasive only if the parties had executed twenty-plus separate licenses.

That approach reflects neither business reality nor sound policy. When an operating company like Barco—whose patent-practicing products have generated hundreds of millions of dollars in success—█████████████████████ ███████████████████ the negotiated value necessarily reflects the patent family required to compete. The Panel instead disregarded this commercial reality. *See generally* Ex. 2010; Ex. 2004 at ¶¶160–195.

The Panel also misapplied the Federal Circuit's decision in *Ancora Techs., Inc. v. Roku, Inc.*, 140 F.4th 1351 (Fed. Cir. 2025), which confirms that licenses can be strong objective evidence even when they cover more than one patent. Although

1

Request for Director Review - IPR2024-01438
U.S. Patent No. 11,258,676

the Crestron License covers more than a single patent, it is limited to three patent families ███████████████████████████████████ Ex. 2023 at 58:14–23. And the Federal Circuit is explicit: "Licenses to the challenged patent . . . do not require a nexus with respect to the specific claims at issue, ***nor does our nexus law require that a particular patent be the only patent being licensed or the sole motivation for entering into a license***." *Ancora*, 140 F.4th at 1362 (emphasis added). Yet the FWD fully discounted the Crestron License because it covered multiple patents, giving it "little weight." FWD (Paper 55) at 85.

Crestron—an innovator with hundreds of its own patents in this space—was represented by competent IP counsel and determined that the licensed Barco patents had value. *See* Ex. 2018. ███████████████████████████ Ex. 2023 at 4:1–10, 9:1–6, 58:14–23.

Secondary considerations are a cornerstone of the obviousness analysis. They can show that "an invention appearing to have been obvious in light of the prior art was not." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012). Under the Panel's approach, the Office would invalidate seven, narrow, product specific, USPTO Examined, Barco patents despite substantial evidence of industry acceptance. *See* IPR2024-01436, Paper 62;

2

Request for Director Review - IPR2024-01438
U.S. Patent No. 11,258,676

IPR2024-01437, Paper 55; IPR2024-01438, Paper 55; IPR2024-01439, Paper 60; IPR2025-00491, Paper 20; IPR2025-00597, Paper 11; IPR2025-00598, Paper 12.

Petitioner Yealink admitted its WPP30 product infringes **75 claims** of six challenged patents, including Claims 1–7 and 10[1] of the '676 Patent when used in the United States (*see Barco Inc. v. Yealink (USA) Network Technology Co.*, No. 2:23-cv-00521 (E.D. Tex., filed Nov. 14, 2023), Dkt. 85; Dkt. 189). Yet Yealink deceptively downplayed WPP30 as "merely a small and optional accessory[,]" withdrawing them from the market before trial, only to seek a compulsory license after trial to these same patents so that it could reintroduce them without fear of further litigation. *See* Paper 52 at 3; Paper 51 at 1–2 (citing Exs. 2035, 2036). That compulsory-license request powerfully confirms nexus: the challenged claims are necessary for Yealink to compete with Barco and Crestron in this market. The Panel's decision instead rewards an admitted infringer by nullifying the market evidence reflected in the Crestron License.

---

[1] Yealink challenged a subset of the asserted claims in this IPR, yet admitted it infringed all asserted claims in the district court action. It then, after the 1-year bar date passed, filed *ex parte* reexamination requests with nearly identical challenges to the CRU, despite not having included those challenges in its IPR.

3

The FWD should be reversed because it erroneously discounts "[o]bjective evidence of non-obviousness," which "may often be the most probative and cogent evidence in the record" and may show that an invention "appearing to have been obvious in light of the prior art was not." *Transocean*, 699 F.3d at 1349. Despite the '676 Patent's targeted license to a key competitor and Yealink's own request for a compulsory license, the FWD minimized the probative value of the surrounding commercial arrangements. FWD at 81–86. Invalidating patent claims the market has deemed valuable requires more.

Patent Owner respectfully requests reversal of the FWD, or, alternatively, vacatur of the FWD and termination of the IPR. 37 C.F.R. § 42.75; *Interactive Comm. Int'l, Inc. v. Blackhawk Network, Inc.*, IPR2024-00465, Paper 40 at 4 (PTAB Oct. 9, 2025).

## II.    STANDARD FOR GRANTING REVIEW

The FWD misapplied *Ancora* and, in doing so, effectively adopted a policy that would pressure parties to execute multiple single-patent licenses rather than targeted, product-specific family licenses. That approach is inconsistent with how businesses actually license technology and would systematically disadvantage patent owners who enter multi-patent product licenses. If the circumstances

Request for Director Review - IPR2024-01438<br>U.S. Patent No. 11,258,676

surrounding the Crestron License do not qualify as compelling secondary considerations of non-obviousness, then few, if any, licenses would.

Given these legal errors and policy implications, Director review is warranted. *See United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021).

## III.    THE CRESTRON LICENSE

### A.    *Origin of the Crestron License*

Crestron Electronics, Inc. is a sophisticated technology company that owns over 450 patent families. Ex. 2019. Crestron even provides conferencing equipment used at the PTAB. Hearing Transcript (Paper 53) at 124:21–125:2. Patent Owner Barco competes with Crestron in the conference and presentation market. Ex. 2023 at 28:22–29:16.



—technology undisputedly practiced by Barco, Crestron, and Yealink. Ex. 2023 at 58:14–19; Ex. 2004 at ¶¶160–195; *Barco Inc. v. Yealink (USA) Network Technology Co.*, No. 2:23-cv-00521 (E.D. Tex., filed Nov. 14, 2023), Dkt. 85; Dkt. 189.

Ex. 2023 at 4:3–10, 9:1–6, 58:18–19. Crestron agreed to the license without any litigation being filed or threatened. *Id.* at 58:14–17.

5

Request for Director Review - IPR2024-01438
U.S. Patent No. 11,258,676

Crestron agreed to a "Patent License Agreement" paying Barco ███████

████████████████████████████████████████████████ Ex. 2011 at 1, 17.

Crestron also agreed to pay Barco ████████████████████████████████

████████████████████ *Id.* at 16. Petitioner offered no evidence that the patent

license was merely a cost-saving measure or anything other than a decision to obtain

access to use valuable technology needed to compete. ████████████

████████████████████████████████████████████████

████████████████████████████████████ Ex. 2023 at 76:12–18.

The Panel wrongly discounted this commercial context while favoring Petitioner's

decision to launch without taking a negotiated license.

The record also does not support the FWD's conclusion that the agreement

was "driven by business factors, interests, and benefits beyond the patents

themselves." FWD at 84. ████████████████████████████████

████████████████████████ Ex. 2011; 2023 at 58:14–19. Crestron

identified no other "business interests[.]" *Id.* at 58:10–13. Interpreting Mr. Ludke's

testimony otherwise ignores the context of that testimony. *See id.* 58:10–23. The

other cited testimony addresses why *Patent Owner* was willing to license Crestron,

████████████████████████████████████████████████

6

██████. *See* Ex. 1091 at 73:7–74:3 ("And so that created an opportunity for ***Barco*** to benefit…").

## B.    *The Panel's Incorrect Treatment of the Crestron License*

The FWD's narrow reading of *Ancora v. Roku* is wrong. 140 F.4th 1351 (Fed. Cir. 2025). "Unlike products, which may incorporate numerous features beyond those claimed or described in a patent and therefore may require careful parsing to establish a nexus, actual licenses to the subject patent do not demand the same, as they are, by their nature, directly tied to the patented technology." *Ancora*, 140 F.4th at 1362. ████████████████████████████████████ ██████████████████████████████. Ex. 2023 at 58:14–19.

The Panel held the Crestron Patent License Agreement to an improper standard. It reasoned that because the license covered three patent families ████████ ████████████████████ *Ancora's* presumption of nexus did not apply. FWD at 85. But *Ancora* does not require single-patent licenses or proof that only one patent is "essential." This is not a broad, portfolio-wide license between non-competitors; it is a product-specific license between competitors, ████████ ████████████████████████████████████████████. Ex. 2011; Ex. 2023 at 58:14–19.

7

*Ancora* explains that a patent owner is entitled to a rebuttable presumption of nexus when the objective evidence is tied to a specific product that embodies the claimed features and is coextensive with them. *Ancora*, 140 F.4th at 1361. Patent Owner has shown that Barco and Crestron practice the '676 Patent (POR at 51–67; Ex. 2017; Ex. 2018); ███████████████████████████████ (Ex. 2023 at 58:14–19); and that the products have been commercially successful (POR at 67–68). Yealink offers no contrary evidence beyond noting that the license covers multiple patents.

Barco's ClickShare products practice the '676 Patent. Ex. 2017. Crestron likewise marks its AirMedia line as practicing the '676 Patent (among others). Ex. 2018. This unrebutted evidence confirms the '676 Patent's value to both companies' commercial products.

The parties' marking evidence and unrebutted testimony from Barco's technical expert regarding practice of the '676 Patent by Barco's products, combined with Yealink's infringement admissions and compulsory-license request, confirms that multiple patent rights are required to compete in this market. Ex. 2004 at ¶¶160–195; Ex. 2017; Ex. 2018; Ex. 2023 at 58:14–19. The Crestron License reflects that commercial reality: it is limited to the specific patents ████████████ ██████ Ex. 2011; Ex. 2023 at 58:14–19. The fact that more than one patent is

8

Request for Director Review - IPR2024-01438

U.S. Patent No. 11,258,676

required does not diminish the probative value of the license; it underscores that each licensed patent is valuable and required for market participation.

The FWD effectively implies that each patent must be licensed separately rather than through a product-specific family license. That premise is unsupported and inconsistent with commercial practice. Petitioner offered no evidence that separate, individual patent licenses are the norm. To the contrary, Yealink's request for a compulsory license to all six challenged patents confirms that a product may require multiple patent rights. The Panel therefore erred in affording the Crestron License "little weight." *See* FWD at 85.

This case is stronger than the Director Review request in *Nintendo Co. Ltd. v. Ancora Tech., Inc.*, IPR2021-01338 (Paper 74) (PTAB Feb. 20, 2026). Unlike Ancora, Barco is an operating company with substantial sales of patent-practicing products, and a sophisticated competitor (Crestron) sought a license ***before*** launching its product—without any litigation being filed or threatened. ███

█████████████████████████████████

█████████████████████████████████

███████ Ex. 2011; Ex. 2023 at 58:10–23. ████████

███████████████████████████

██████████████ Ex. 2011. This structure is consistent with the notion that

9

the Crestron License was to produce products, not merely to avoid litigation. And Crestron's desire to build practicing products underscores the '676 Patent's commercial value.

If a targeted license negotiated between sophisticated competitors is not probative of value and nonobviousness, then licenses will rarely if ever inform the obviousness inquiry. A patent license between competitors ██████████, like the Crestron Patent License Agreement, should carry substantial weight.

## IV.    THE PRACTICING PRODUCTS

Yealink itself confirmed the '676 Patent's value by seeking a compulsory license. Exs. 2035, 2036. After withdrawing its admittedly infringing product to limit litigation exposure, Yealink sought to reintroduce WPP30 and asked the court to order a license to the very claims challenged here. Ex. 2035 at ¶¶5 ("Yealink decided to suspend sales of the WPP20 and WPP30 in the United States…to minimize any potential damages to Barco before the litigation concluded, when the scope of the damages Yealink should pay Barco remained unclear"), 14 ("At the same time, now that the trial has concluded and the jury has decided that Yealink should pay Barco $907,360 for its past infringement, Yealink has decided to reintroduce its WPP30 in the United Sates, and will resume selling its WPP30 dongle in 2026"). Yealink's request directly ties the challenged claims to commercial value

10

and confirms that the patented technology is necessary to compete in this market. The Panel therefore erred in giving this evidence only "some weight," rather than the "significant weight" it should be ascribed.

The FWD also did not give Patent Owner's commercial-success evidence "any patentable weight." FWD at 83. Nexus is presumed when the patentee shows the objective evidence is tied to a specific product that embodies the claimed features and is coextensive with them. *Polaris Indus. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1072 (Fed. Cir. 2018) (citing *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000)). Perfect correspondence is not required; correspondence falls on a spectrum, and additional unclaimed features do not defeat nexus if they are insignificant. *Fox Factory, Inc. v. SRAM LLC*, 944 F.3d 1366, 1374 (Fed. Cir. 2019). Patent Owner mapped the claimed features to ClickShare, and Petitioner offered no evidence to rebut that showing.

Nevertheless, the FWD determined that the ClickShare is not coextensive with the '676 Patent because the ClickShare is also practiced by U.S. Patent Nos. 10,672,002, 11,403,237, and 11,422,951. FWD at 82–83. Each of these patents include U.S. Patent No. 8,756,348 as a common parent, share a substantially similar specification, and cover related if not overlapping subject matter. Each claims closely related features such that there are no significant unclaimed features. Patent

11

Owner made its prima facie showing of coextensiveness and Petitioner identified no feature in the other challenged patents that constitute a significant unclaimed feature. As a result, the FWD erred by finding the '676 Patent not coextensive with the ClickShare product.

The record shows consumers overwhelmingly desire products with the claimed inventions. ███████████████████████████████████████████ ████████████████████████████████████████ Ex. 2023 at 58:14–19. Second, Yealink requested a compulsory license to each challenged patent. Exs. 2035, 2036.  Third, **85%** of Patent Owner customers use the ClickShare dongle practicing the claimed invention rather than dongle-less implementations. Ex. 1078 at 199:25–200:18; Ex. 1091 at 147:18–148:2. Together, this evidence establishes nexus between the challenged claims and commercial success.

The FWD did not address this evidence. At a minimum, the unrebutted 85% dongle-usage rate supports attributing the overwhelming share of product value to the patented features. And even without a presumption of nexus, the 85% usage evidence—combined with Yealink's infringement admission and compulsory-license request—constitutes direct evidence tying the claimed features to commercial value.

Patent Owner showed the ClickShare products are coextensive with the '676 Patent. POR at 51–67. Petitioner argued coextensiveness is undermined because ClickShare can connect via the ClickShare App, Teams, or Zoom. FWD at 82 (citing Paper 23 at 26–28). But Petitioner offered no evidence—and the Panel cited none—showing how often those alternatives are used to rebut Patent Owner's 85% dongle-usage figures. The unrebutted record confirms the predominant use is with the claimed dongle. The Panel erred in discounting the commercial value of Barco's technology to Barco, Crestron, and Yealink.

The FWD treated dongle-less use as a significant unclaimed feature, but the mere availability of dongle-less use does not show it is significant in practice. Even under the Panel's framing, the unrebutted evidence indicates the patented dongle features account for the vast majority of real-world use and value.

## V.    CONCLUSION

The FWD failed to give appropriate weight to (1) the Crestron Patent License Agreement or (2) ClickShare's substantial commercial success, given the demonstrated nexus between the '676 Patent and Barco's, Crestron's and Yealink's commercial products. For these reasons, the findings as to all Challenged Claims should be reversed, and the patentability of the challenged claims confirmed in view

13

of the '676 Patent's indicia of nonobviousness. Alternatively, Patent Owner requests

vacatur of the FWD and termination of this IPR.

Dated: April 22, 2026                    Respectfully submitted,

                              By:    */Erik J. Halverson/*
                                     *Erik Halverson*
                                     *Reg. No. 73,552*
                                     **K&L GATES LLP**
                                     4 Embarcadero Center, Suite 1200
                                     San Francisco, CA 94111
                                     erik.halverson@klgates.com
                                     T: (415) 882-8238
                                     F: (415) 882-8220

                                     Chris Centurelli
                                     Reg. No. 44,599
                                     chris.centurelli@klgates.com
                                     Joshua Andrews
                                     Reg. No. 79,215
                                     joshua.andrews@klgates.com
                                     **K&L GATES LLP**
                                     1 Congress St., Suite 2900
                                     Boston, MA 02114
                                     T: (617) 261-3276
                                     F: (617) 261-3175

                                     *Counsel for Patent Owner*

14

Request for Director Review - IPR2024-01438
U.S. Patent No. 11,258,676

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2026 a true and correct copy of the foregoing was caused to be served on the following counsel of record for Petitioner by electronic mail at the following addresses:

Stephen Yang (Reg. No. 70,589)
stephen.yang@dentons.com
Kevin R. Greenleaf (Reg. No. 64,062)
kevin.greenleaf@dentons.com
Timothy C. Bickham (Reg. No. 41,618)
timothy.bickham@dentons.com
Forrest Gothia (Reg. No. 80,399)
forrest.gothia@dentons.com
Dentons US LLP
233 South Wacker Drive,
Suite 5800
Chicago, IL 60606
Tel: (212) 398-4890
Fax: (212) 768-6800
Email: ipt.docketchi@dentons.com

By:   */Erik J. Halverson/*
Erik Halverson
Reg. No. 73,552

15

**UNITED STATES PATENT AND TRADEMARK OFFICE**

---

**BEFORE THE PATENT TRIAL AND APPEAL BOARD**

---

YEALINK (USA) NETWORK TECHNOLOGY CO., LTD., AND YEALINK NETWORK TECHNOLOGY CO., LTD.,

Petitioners,

v.

BARCO N.V.

Patent Owner.

---

CASE: IPR2024-01439

U.S. PATENT NO. 11,422,951

---

**PATENT OWNER'S REQUEST FOR DIRECTOR REVIEW**

Request for Director Review - IPR2024-01439
U.S. Patent No. 11,422,951

**Table of Contents**

I.     Introduction.................................................................................................1

II.    Standard for Granting Review .....................................................................4

III.   The Crestron License...................................................................................5

   A.    Origin of the License..........................................................................5

   B.    The Panel's Incorrect Treatment of the Crestron License...........................7

IV.    The Practicing Products.............................................................................10

V.     Conclusion ................................................................................................13

i

Request for Director Review - IPR2024-01439
U.S. Patent No. 11,422,951

## I.    INTRODUCTION

U.S. Patent No. 11,422,951 is the subject of a license by sophisticated competitor Crestron Electronics, ███████████████████████████ ████████████████ to obtain patent rights needed to compete in the presentation-dongle market that Barco created and now dominates with Crestron. Ex. 2023 at 58:14–23, 59:8–24. Similarly, Petitioner sought a compulsory license to the challenged claims of the '951 Patent after admitting it had infringed all asserted claims of the '951 Patent. Paper 56; Exs. 2035, 2036. The Panel erred by discounting this evidence of competitor acquiescence and by suggesting the Crestron License would be persuasive only if the parties had executed twenty-plus separate licenses.

That approach reflects neither business reality nor sound policy. When an operating company like Barco—whose patent-practicing products have generated hundreds of millions of dollars in success—███████████████████ ████████████████████ the negotiated value necessarily reflects the patent family required to compete. The Panel instead disregarded this commercial reality. *See generally* Ex. 2010; Ex. 2004 at ¶¶147–193.

The Panel also misapplied the Federal Circuit's decision in *Ancora Techs., Inc. v. Roku, Inc.*, 140 F.4th 1351 (Fed. Cir. 2025), which confirms that licenses can be strong objective evidence even when they cover more than one patent. Although

1

Request for Director Review - IPR2024-01439
U.S. Patent No. 11,422,951

the Crestron License covers more than a single patent, it is limited to three patent families ███████████████████████████████████████ Ex. 2023 at 58:14–23. And the Federal Circuit is explicit: "Licenses to the challenged patent . . . do not require a nexus with respect to the specific claims at issue, ***nor does our nexus law require that a particular patent be the only patent being licensed or the sole motivation for entering into a license***." *Ancora*, 140 F.4th at 1362 (emphasis added). Yet the FWD fully discounted the Crestron License because it covered multiple patents, giving it "little weight." FWD (Paper 60) at 69.

Crestron—an innovator with hundreds of its own patents in this space—was represented by competent IP counsel and determined that the licensed Barco patents had value. *See* Ex. 2018. ████████████████████████████████ Ex. 2023 at 4:1–10, 9:1–6, 58:14–23.

Secondary considerations are a cornerstone of the obviousness analysis. They can show that "an invention appearing to have been obvious in light of the prior art was not." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012). Under the Panel's approach, the Office would invalidate seven, narrow, product specific, USPTO Examined, Barco patents despite substantial evidence of industry acceptance. *See* IPR2024-01436, Paper 62;

2

IPR2024-01437, Paper 55; IPR2024-01438, Paper 55; IPR2024-01439, Paper 60;

IPR2025-00491, Paper 20; IPR2025-00597, Paper 11; IPR2025-00598, Paper 12.

Petitioner Yealink admitted its WPP30 product infringes *75 claims* of six challenged patents, including Claims 1–7 and 10[1] of the '951 Patent when used in the United States (*see Barco Inc. v. Yealink (USA) Network Technology Co.*, No. 2:23-cv-00521 (E.D. Tex., filed Nov. 14, 2023), Dkt. 85; Dkt. 189). Yet Yealink deceptively downplayed WPP30 as "merely a small and optional accessory[,]" withdrawing them from the market before trial, only to seek a compulsory license after trial to these same patents so that it could reintroduce them without fear of further litigation. *See* Paper 57 at 3; Paper 56 at 1–2 (citing Exs. 2035, 2036). That compulsory-license request powerfully confirms nexus: the challenged claims are necessary for Yealink to compete with Barco and Crestron in this market. The Panel's decision instead rewards an admitted infringer by nullifying the market evidence reflected in the Crestron License.

---

[1] Yealink challenged a subset of the asserted claims in this IPR, yet admitted it infringed all asserted claims in the district court action.  It then, after the 1-year bar date passed, filed *ex parte* reexamination requests with nearly identical challenges to the CRU, despite not having included those challenges in its IPR.

The FWD should be reversed because it erroneously discounts "[o]bjective evidence of non-obviousness," which "may often be the most probative and cogent evidence in the record" and may show that an invention "appearing to have been obvious in light of the prior art was not." *Transocean*, 699 F.3d at 1349. Despite the '951 Patent's targeted license to a key competitor and Yealink's own request for a compulsory license, the FWD minimized the probative value of the surrounding commercial arrangements. FWD at 65–70. Invalidating patent claims the market has deemed valuable requires more.

Patent Owner respectfully requests reversal of the FWD, or, alternatively, vacatur of the FWD and termination of the IPR. 37 C.F.R. § 42.75; *Interactive Comm. Int'l, Inc. v. Blackhawk Network, Inc.*, IPR2024-00465, Paper 40 at 4 (PTAB Oct. 9, 2025).

## II.    STANDARD FOR GRANTING REVIEW

The FWD misapplied *Ancora* and, in doing so, effectively adopted a policy that would pressure parties to execute multiple single-patent licenses rather than targeted, product-specific family licenses. That approach is inconsistent with how businesses actually license technology and would systematically disadvantage patent owners who enter multi-patent product licenses. If the circumstances

4

Request for Director Review - IPR2024-01439

U.S. Patent No. 11,422,951

surrounding the Crestron License do not qualify as compelling secondary considerations of non-obviousness, then few, if any, licenses would.

Given these legal errors and policy implications, Director review is warranted. *See United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021).

## III.   THE CRESTRON LICENSE

### A.   *Origin of the Crestron License*

Crestron Electronics, Inc. is a sophisticated technology company that owns over 450 patent families. Ex. 2019. Crestron even provides conferencing equipment used at the PTAB. Hearing Transcript (Paper 58) at 124:21–125:2. Patent Owner Barco competes with Crestron in the conference and presentation market. Ex. 2023 at 28:22–29:16.



—technology undisputedly practiced by Barco, Crestron, and Yealink. Ex. 2023 at 58:14–19; Ex. 2004 at ¶¶147–193; *Barco Inc. v. Yealink (USA) Network Technology Co.*, No. 2:23-cv-00521 (E.D. Tex., filed Nov. 14, 2023), Dkt. 85; Dkt. 189.

Ex. 2023 at 4:3–10, 9:1–6, 58:18–19. Crestron agreed to the license without any litigation being filed or threatened. *Id.* at 58:14–17.

5

Request for Director Review - IPR2024-01439
U.S. Patent No. 11,422,951

Crestron agreed to a "Patent License Agreement" paying Barco ███████

███████████████████████████████████████████ Ex. 2011 at 1, 17.

Crestron also agreed to pay Barco ██████████████████████████

█████████████████ *Id.* at 16. Petitioner offered no evidence that the patent

license was merely a cost-saving measure or anything other than a decision to obtain

access to use valuable technology needed to compete. █████████

████████████████████████████████████████████

███████████████████████████████ Ex. 2023 at 76:12–18.

The Panel wrongly discounted this commercial context while favoring Petitioner's

decision to launch without taking a negotiated license.

The record also does not support the FWD's conclusion that the agreement

was "driven by business factors, interests, and benefits beyond the patents

themselves." FWD at 68. █████████████████████████

███████████████████ Ex. 2011; 2023 at 58:14–19. Crestron

identified no other "business interests[.]" *Id*. at 58:10–13. Interpreting Mr. Ludke's

testimony otherwise ignores the context of that testimony. *See id*. 58:10–23. The

other cited testimony addresses why *Patent Owner* was willing to license Crestron,

████████████████████████████████████████████

6

██████. *See* Ex. 1091 at 73:7–74:3 ("And so that created an opportunity for ***Barco*** to benefit…").

### B.    *The Panel's Incorrect Treatment of the Crestron License*

The FWD's narrow reading of *Ancora v. Roku* is wrong. 140 F.4th 1351 (Fed. Cir. 2025). "Unlike products, which may incorporate numerous features beyond those claimed or described in a patent and therefore may require careful parsing to establish a nexus, actual licenses to the subject patent do not demand the same, as they are, by their nature, directly tied to the patented technology." *Ancora*, 140 F.4th at 1362. ████████████████████████████████████████ ████████████████████████████ Ex. 2023 at 58:14–19.

The Panel held the Crestron Patent License Agreement to an improper standard. It reasoned that because the license covered three patent families ███████ ██████████████████████████, *Ancora's* presumption of nexus did not apply. FWD at 69. But *Ancora* does not require single-patent licenses or proof that only one patent is "essential." This is not a broad, portfolio-wide license between non-competitors; it is a product-specific license between competitors, ████████ ██████████████████████████████████████████████. Ex. 2011; Ex. 2023 at 58:14–19.

7

*Ancora* explains that a patent owner is entitled to a rebuttable presumption of nexus when the objective evidence is tied to a specific product that embodies the claimed features and is coextensive with them. *Ancora*, 140 F.4th at 1361. Patent Owner has shown that Barco and Crestron practice the '951 Patent (POR at 49–70; Ex. 2017; Ex. 2018); ████████████████████████████████ (Ex. 2023 at 58:14–19); and that the products have been commercially successful (POR at 71–72). Yealink offers no contrary evidence beyond noting that the license covers multiple patents.

Barco's ClickShare products practice the '951 Patent. Ex. 2017. Crestron likewise marks its AirMedia line as practicing the '951 Patent (among others). Ex. 2018. This unrebutted evidence confirms the '951 Patent's value to both companies' commercial products.

The parties' marking evidence and unrebutted testimony from Barco's technical expert regarding practice of the '951 Patent by Barco's products, combined with Yealink's infringement admissions and compulsory-license request, confirms that multiple patent rights are required to compete in this market. Ex. 2004 at ¶¶147–193; Ex. 2017; Ex. 2018; Ex. 2023 at 58:14–19. The Crestron License reflects that commercial reality: it is limited to the specific patents ████████████████ ████████ Ex. 2011; Ex. 2023 at 58:14–19. The fact that more than one patent is

8

required does not diminish the probative value of the license; it underscores that each licensed patent is valuable and required for market participation.

The FWD effectively implies that each patent must be licensed separately rather than through a product-specific family license. That premise is unsupported and inconsistent with commercial practice. Petitioner offered no evidence that separate, individual patent licenses are the norm. To the contrary, Yealink's request for a compulsory license to all six challenged patents confirms that a product may require multiple patent rights. The Panel therefore erred in affording the Crestron License "little weight." *See* FWD at 69.

This case is stronger than the Director Review request in *Nintendo Co. Ltd. v. Ancora Tech., Inc.*, IPR2021-01338 (Paper 74) (PTAB Feb. 20, 2026). Unlike Ancora, Barco is an operating company with substantial sales of patent-practicing products, and a sophisticated competitor (Crestron) sought a license **before** launching its product—without any litigation being filed or threatened. █████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████ Ex. 2011; Ex. 2023 at 58:10–23. █████████

█████████████████████████████████████████████

█████████████████████ Ex. 2011. This structure is consistent with the notion that

9

the Crestron License was to produce products, not merely to avoid litigation. And Crestron's desire to build practicing products underscores the '951 Patent's commercial value.

If a targeted license negotiated between sophisticated competitors is not probative of value and nonobviousness, then licenses will rarely if ever inform the obviousness inquiry. A patent license between competitors ████████, like the Crestron Patent License Agreement, should carry substantial weight.

## IV.    THE PRACTICING PRODUCTS

Yealink itself confirmed the '951 Patent's value by seeking a compulsory license. Exs. 2035, 2036. After withdrawing its admittedly infringing product to limit litigation exposure, Yealink sought to reintroduce WPP30 and asked the court to order a license to the very claims challenged here. Ex. 2035 at ¶¶5 ("Yealink decided to suspend sales of the WPP20 and WPP30 in the United States…to minimize any potential damages to Barco before the litigation concluded, when the scope of the damages Yealink should pay Barco remained unclear"), 14 ("At the same time, now that the trial has concluded and the jury has decided that Yealink should pay Barco $907,360 for its past infringement, Yealink has decided to reintroduce its WPP30 in the United Sates, and will resume selling its WPP30 dongle in 2026"). Yealink's request directly ties the challenged claims to commercial value

10

and confirms that the patented technology is necessary to compete in this market. The Panel therefore erred in giving this evidence only "some weight," rather than the "significant weight" it should be ascribed.

The FWD also did not give Patent Owner's commercial-success evidence "any patentable weight." FWD at 67. Nexus is presumed when the patentee shows the objective evidence is tied to a specific product that embodies the claimed features and is coextensive with them. *Polaris Indus. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1072 (Fed. Cir. 2018) (citing *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000)). Perfect correspondence is not required; correspondence falls on a spectrum, and additional unclaimed features do not defeat nexus if they are insignificant. *Fox Factory, Inc. v. SRAM LLC*, 944 F.3d 1366, 1374 (Fed. Cir. 2019). Patent Owner mapped the claimed features to ClickShare, and Petitioner offered no evidence to rebut that showing.

Nevertheless, the FWD determined that the ClickShare is not coextensive with the '951 Patent because the ClickShare is also practiced by U.S. Patent Nos. 10,672,002, 11,258,676, and 11,403,237. FWD at 66–67. Each of these patents include U.S. Patent No. 8,756,348 as a common parent, share a substantially similar specification, and cover related if not overlapping subject matter. Each claims closely related features such that there are no significant unclaimed features. Patent

11

Owner made its prima facie showing of coextensiveness and Petitioner identified no feature in the other challenged patents that constitute a significant unclaimed feature. As a result, the FWD erred by finding the '951 Patent not coextensive with the ClickShare product.

The record shows consumers overwhelmingly desire products with the claimed inventions. ███████████████████████████████████████████ ██████████████████████████████████████████ Ex. 2023 at 58:14–19. Second, Yealink requested a compulsory license to each challenged patent. Exs. 2035, 2036. Third, **85%** of Patent Owner customers use the ClickShare dongle practicing the claimed invention rather than dongle-less implementations. Ex. 1078 at 199:25–200:18; Ex. 1091 at 147:18–148:2. Together, this evidence establishes nexus between the challenged claims and commercial success.

The FWD did not address this evidence. At a minimum, the unrebutted 85% dongle-usage rate supports attributing the overwhelming share of product value to the patented features. And even without a presumption of nexus, the 85% usage evidence—combined with Yealink's infringement admission and compulsory-license request—constitutes direct evidence tying the claimed features to commercial value.

12

Patent Owner showed the ClickShare products are coextensive with the '951 Patent. POR at 49–70. Petitioner argued coextensiveness is undermined because ClickShare can connect via the ClickShare App, Teams, or Zoom. FWD at 65 (Citing Paper 28 at 26–27). But Petitioner offered no evidence—and the Panel cited none— showing how often those alternatives are used to rebut Patent Owner's 85% dongle-usage figures. The unrebutted record confirms the predominant use is with the claimed dongle. The Panel erred in discounting the commercial value of Barco's technology to Barco, Crestron, and Yealink.

The FWD treated dongle-less use as a significant unclaimed feature, but the mere availability of dongle-less use does not show it is significant in practice. Even under the Panel's framing, the unrebutted evidence indicates the patented dongle features account for the vast majority of real-world use and value.

## V.    CONCLUSION

The FWD failed to give appropriate weight to (1) the Crestron Patent License Agreement or (2) ClickShare's substantial commercial success, given the demonstrated nexus between the '951 Patent and Barco's, Crestron's and Yealink's commercial products. For these reasons, the findings as to all Challenged Claims should be reversed, and the patentability of the challenged claims confirmed in view

13

Request for Director Review - IPR2024-01439
U.S. Patent No. 11,422,951

of the '951 Patent's indicia of nonobviousness. Alternatively, Patent Owner requests

vacatur of the FWD and termination of this IPR.

Dated: April 22, 2026                    Respectfully submitted,

By:    */Erik J. Halverson/*
Erik Halverson
Reg. No. 73,552
**K&L GATES LLP**
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111
erik.halverson@klgates.com
T: (415) 882-8238
F: (415) 882-8220

Chris Centurelli
Reg. No. 44,599
chris.centurelli@klgates.com
Joshua Andrews
Reg. No. 79,215
joshua.andrews@klgates.com
**K&L GATES LLP**
1 Congress St., Suite 2900
Boston, MA 02114
T: (617) 261-3276
F: (617) 261-3175

*Counsel for Patent Owner*

14

Request for Director Review - IPR2024-01439

U.S. Patent No. 11,422,951

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2026 a true and correct copy of the foregoing was caused to be served on the following counsel of record for Petitioner by electronic mail at the following addresses:

Stephen Yang (Reg. No. 70,589)
stephen.yang@dentons.com
Kevin R. Greenleaf (Reg. No. 64,062)
kevin.greenleaf@dentons.com
Timothy C. Bickham (Reg. No. 41,618)
timothy.bickham@dentons.com
Forrest Gothia (Reg. No. 80,399)
forrest.gothia@dentons.com
Dentons US LLP
233 South Wacker Drive,
Suite 5800
Chicago, IL 60606
Tel: (212) 398-4890
Fax: (212) 768-6800
Email: ipt.docketchi@dentons.com

By:    */Erik J. Halverson/*
Erik Halverson
Reg. No. 73,552

15