**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| BARCO, INC. and BARCO NV, *Plaintiffs*, | § | |
| v. | § | CASE NO. 2:23-CV-00521-JRG-RSP |
| YEALINK (USA) NETWORK TECHNOLOGY CO., LTD., and YEALINK NETWORK TECHNOLOGY CO., LTD., *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion for Permanent Injunction (the "Motion") filed by Plaintiffs Barco Inc. and Barco NV ("Barco"). (Dkt. No. 250.) Having considered the Motion, all related briefing, and the parties' oral arguments, the Court finds that it should be and hereby is **GRANTED**.

## I. BACKGROUND

Barco filed the above-captioned case against Defendants Yealink (USA) Network Technology Co., Ltd. and Yealink Network Technology Co., Ltd. ("Yealink") on November 14, 2023. (Dkt. No. 1.) The Court specially set the case for trial to proceed on November 17, 2025. (Dkt. No. 213.) At trial, Barco asserted six patents: U.S. Patent Nos. 10,762,002 (the "'002 Patent"); 10,795,832 (the "'832 Patent"); 10,904,103 (the "'103 Patent"); 11,258,676 (the "'676 Patent"); 11,403,237 (the "'237 Patent"); and 11,422,951 (the "'951 Patent") (together, the "asserted patents"). (Dkt. No. 228.) Prior to trial, Yealink conceded the issues of direct and indirect infringement of the asserted patents. (*See* Dkt. No. 189.)

On November 19, 2025, the jury returned a verdict that Yealink did not induce its customers to infringe any of the asserted patents after April 25, 2024, and that Yealink did not willfully infringe any of the asserted patents. (Dkt. No. 235.) The jury awarded Barco a lump sum royalty of $907,360.00 USD to compensate Barco for Yealink's admitted infringement of the asserted patents from May 17, 2023, to April 25, 2024. (*Id.* at 5.) Following trial, Barco filed the instant Motion seeking injunctive relief. (Dkt. No. 250.) The Court held a hearing addressing the Motion and other outstanding post-trial issues on July 23, 2026. (Dkt. No. 276.)

## II. LEGAL AUTHORITY

Congress has authorized district courts to issue injunctions "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. The Supreme Court has made clear that the same generally applicable four-factor test for permanent injunctive relief must also be applied in patent cases. *See eBay Inc. v. MercExchange, L.C.C.*, 547 U.S. 388, 391 (2006). Accordingly, "a plaintiff seeking a permanent injunction… must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.*

The *eBay* Court further set out that "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and [] such discretion must be exercised consistent with traditional principles of equity." *Id.* at 394.

## III. ANALYSIS

Barco seeks an injunction from this Court stating that "[Yealink] and any other persons who are in active concert with [Yealink] or participate with [Yealink], are permanently enjoined from infringing the Asserted Patents, including by making, using, offering for sale, selling, or importing the WPP20 or WPP30 dongle ("WPP") products, including any colorable imitations thereof, into the United States." (Dkt. No. 250-10 at 3.) The Court considers this request in view of the four-factor *eBay* test below.

### A. Irreparable Harm

Barco asserts that it faces irreparable harm absent injunctive relief, *inter alia*, because Yealink is Barco's direct competitor. As such, Barco will be forced to compete against its own patented technology, and it will lose the right to decide who it would exclude from the market with its patents. (*See generally* Dkt. No. 250.) In response to these arguments, Yealink points out that "the mere existence of competition" alone cannot establish an irreparable injury. It further argues that Yealink and Barco's patent-practicing products are not interchangeable, and Barco's licensing behavior with Crestron, and offers to Yealink, undercut any claim of an irreparable injury. (Dkt. No. 256 at 5-7.)

In considering the record before it, the Court finds that Barco has established irreparable harm, particularly in light of Yealink's post-trial behavior addressed below. While ongoing infringement does not establish irreparable harm as a matter of law, it is a strong indicator that a plaintiff is indeed suffering forward-looking irreparable harm. *See Collision Comms., Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:25-cv-00587, 2026 WL 1391885, at *5 (E.D. Tex. May 18, 2026). In this particular case, Yealink represented before trial—and the parties had a joint trial exhibit stating—that Yealink planned to "no longer sell WPP20/WPP30 products as standalone devices

or in combination with corresponding video conferencing systems in the United States market." (*See* JX-8.001; *see also* Dkt. No. 243-4 at 1-2.) The verdict form reflected this position from Yealink, as it asked the jury to award damages to compensate Barco solely for infringement from May 17, 2023, up to and including April 25, 2024. (Dkt. No. 235 at 5.) However, since making these representations to Barco and to the jury, Yealink has submitted a declaration stating that "now that the trial has concluded and the jury has decided that Yealink should pay Barco $907,360 for its past infringement, Yealink has decided to reintroduce its WPP30 in the United States, and will resume selling its WPP30 dongle in 2026." (Dkt. No. 243-4 at 3.) In summary, Yealink has now determined it will resume infringement the asserted patents in light of the favorable royalty rate and damages award it received at trial. The Court finds that such post-trial conduct, now subjecting Barco to admitted ongoing infringement of its patents, strongly counsels in favor of a finding of irreparable harm.[1]

In addition, Barco's rights to select who will practice its patents, and to exclude competitors from using its technology, have been violated by Yealink's past and renewed infringement. As Chief Justice Roberts' concurrence in *eBay* sets out, the "difficulty of protecting a right to *exclude* through monetary remedies that allow an infringer to *use* an invention against the patentee's wishes . . . often implicates the first two factors of the traditional test." 547 U.S. at 395 (Roberts, J., concurring). The Federal Circuit has further recognized that this right to exclude "is particularly apt in traditional cases . . . where the patentee and adjudged infringer both practice the patented technology." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1150 (Fed. Cir. 2011).

[1] The Supreme Court has further set out that injunctive relief is prospective, requiring "a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). In light of Yealink deciding to resume its infringement of the asserted patents following the trial, Barco has clearly demonstrated that it faces a "real and immediate threat" of being "wronged again" going forward.

In response to these authorities, Yealink argues both that (1) the dongles offered by Yealink and Barco "are not interchangeable," such that the parties are not direct competitors, and (2) Barco has offered licenses to "significant competitors," such as Crestron and Yealink itself. The Court finds each of these arguments unpersuasive.

Yealink asserts that since "a customer with Yealink base units cannot use a Barco dongle, and a customer with Barco base units cannot use a Yealink WPP30," the parties are not in "direct" competition. (Dkt. No. 256 at 5.) This is due to a lock-in effect: purchasing a Barco system makes a customer unlikely to purchase a non-Barco dongle, and vice versa. (*Id.*) Accordingly, Yealink argues that the parties' base units compete, but that those units "function fully without any dongle," and that these base units drive sales rather than the dongles themselves. (*Id.*)

The Court finds this argument unavailing. During trial, Mr. Six—Barco's corporate witness—provided testimony that Yealink is "a competitor of Barco in the market sense." (Preliminary Transcript at 226:4-6.) Although the dongle products are part of an inter-related system of items, Yealink itself admits in its briefing that Barco and Yealink do compete. (Dkt. No. 256 at 5.) And the Federal Circuit's language in *Robert Bosch* is broader than "direct" competition—it acknowledges that a breach of the right to exclude is implicated "where the patentee and adjudged infringer both *practice* the patented technology." 659 F.3d at 1150 (emphasis added). There is no dispute that both Barco and Yealink practice the patented technology through their production and marketing of these dongles.

Yealink next argues that Barco cannot prove it has suffered irreparable harm due to its licensing practices—namely, licensing to Crestron and offering a license to Yealink itself. (Dkt. No. 256 at 6-8.) Yealink argues that Barco cannot have suffered an irreparable injury from

Yealink's infringement when Barco willingly offers a non-exclusive license to its competitor, Crestron, and offered Yealink a non-exclusive license in 2023. (*Id*. at 6-7.)

The Court does not find these arguments undermine irreparable harm. Yealink is correct that under Federal Circuit precedent, Barco's license with Crestron "can carry weight in the irreparable harm inquiry." *Nichia Corp. v. Everlight Americas, Inc.*, 855 F.3d 1328, 1343 (Fed. Cir. 2017). However, this must be considered alongside the guidance that "[a] plaintiff's past willingness to license its patent is not sufficient per se to establish a lack of irreparable harm." *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) (citing *eBay*, 547 U.S. at 393).

In licensing to Crestron, Barco had the opportunity to negotiate terms it found mutually agreeable. Barco's Mr. Six testified that a representative from Crestron approached Barco to begin negotiations before Crestron had launched their product, and that this timeline was "important to Barco's decisions to license its patents to Crestron." (Preliminary Transcript at 180:18-181-2.) Crestron is Barco's sole licensee of this technology (Dkt. No. 250 at 9), and Mr. Six testified that Barco found Crestron's quality to be up to Barco's standards (Dkt. No. 250-9 at 146:22-147:6), but was less pleased with the quality of Yealink's products (*Id*. at 147:7-20).[2]

The Court further finds that Barco's previous licensing offer to Yealink does not counsel against a finding of irreparable harm, in this case. Barco offered a license to Yealink in June 2023—prior to the filing of this action. (Dkt. No. 256 at 7.) Circumstances have materially changed since June 2023. Yealink stated it would stop producing the accused products prior to trial, but has

[2] Yealink understandably protests that there is "no evidence, other than broad and unsupported statements from Barco's own witnesses," substantiating the claims that Crestron has "quality" products or that Yealink has "inferior" products. (Dkt. No. 256 at 7.) However, the Court does not find that Barco must prove those claims in order for them to establish irreparable harm—it is the right of a patent holder to determine who they would choose to exclude from using their technology thot matters, not the comparative quality of the products that compete.

since reneged on this statement and publicly confirmed it will resume production and sale of these products in the marketplace.

Yealink relies on *Bright Data* to argue that the Court should deny injunctive relief where Barco has previously offered a license to it. However, in that case, the plaintiff had "initiated discussions about licensing its technology to an *extensive swathe* of other entities engaged in the [] industry." 584 F.Supp.3d 193, 198 (E.D. Tex. 2022) (emphasis added). Here, Barco ultimately licensed the asserted patents only to Crestron, and there is no evidence Barco has entered into negotiations with "an extensive swathe of other entities" engaged in producing items like the accused products.

Considering the entirety of the record, the Court finds that Barco has made a sufficient showing of irreparable harm to warrant injunctive relief in this case. Particularly relevant to this finding is Yealink's post-trial decision to resume its infringement, as well as Barco and Yealink's status as competitors.

**B. Adequacy of Monetary Damages**

As this Court has previously acknowledged, "irreparable harm and adequacy of remedies at law are inextricably intertwined." *Bright Data*, 584 F.Supp.3d at 196 (quoting *ActiveVideo Networks, Inc. v. Verizon Comms. Inc.*, 694 F.3d 1312, 1337 (Fed. Cir. 2012)). Accordingly, for many of the same reasons that the Court finds Barco has demonstrated irreparable harm, it similarly finds that Barco has sufficiently established that monetary damages are inadequate to remedy the harm it has and will suffer.

The jury's award addresses only past infringement. That award was part and parcel of a trial where the jury was presented evidence that Yealink had ceased selling the accused products. Here, the jury did not have any opportunity to consider ongoing infringement, and such harm is

always speculative by nature and consequently is difficult to value. This Court often finds that "money damages are inadequate to compensate for [an infringer's] ongoing infringement, as it is difficult to gauge the extent of the harm inflicted by such infringement." *Golden Hour Data Sys., Inc. v. emsCharts, Inc.*, No. 2:06-cv-00381, 2014 WL 8708239, at *10 (E.D. Tex. Mar. 31, 2014); *see also U.S. Silica Co. v. Amberger Kaolinwerke Eduard Kick Gmbh & Co. KG*, No. 2:20-cv-00298, 2023 WL 2716557, at *4 (E.D. Tex. Mar. 29, 2023).

Further, the "loss of the right to exclude and the resulting loss of business opportunities" that a patent holder suffers when a competitor infringes their patents counsels in favor of a finding money damages inadequate. *Golden Hour*, 2014 WL 8708239, at *10. Barco asserts that is has been "very deliberate with whom it enters into license agreements… and with whom Barco elects to exclude from the market." (Dkt. No. 250 at 12.) Yealink responds that Barco has not maintained the exclusivity it represents given that it at one point engaged in licensing negotiations with Delta, and offered a license to Yealink itself. (Dkt. No. 256 at 11.) Yealink further argues that Barco's inaction towards third-party sellers of Yealink's dongles on Amazon "undermine[s]" Barco's claim that monetary damages are inadequate in this case. (*Id.*)

The Court does not find that Barco's licensing negotiations undermine Barco's arguments regarding the inadequacy of monetary damages in this case. Such negotiations did not result in licenses to either Delta or Yealink. At present, Barco has agreed to "only one Clickshare license with Crestron, a company Barco believes to be a good collaborator." (Dkt. No. 250 at 12.) The record reflects that Barco has not indiscriminately licensed its patents, and has instead elected to enforce its patents against certain competitors by forcing them to withdraw infringing products from the market. (Dkt. No. 250-5 at 1-2.) Notably, the Federal Circuit has acknowledged that "[a]dding a new competitor to the market may create an irreparable harm that the prior licenses

did not," addressing similar facts where the patent holder had previously offered licenses to competitors under "particular sets of circumstances." *Acumed*, 551 F.3d at 1329. Also, the Court does not find that Barco's behavior regarding the unauthorized Amazon resellers outweighs the rest of these considerations, which demonstrate the inadequacy of monetary damages in this case.

### C. Balance of Hardships

Barco argues that the balance of hardships favors the granting an injunction based upon Yealink's conduct related to the accused products, both before and after trial. As previously discussed, Barco's position is that Yealink "purposefully withdrew" the accused products from the market ahead of trial and suggested it would not reenter the market after trial. (Dkt. No. 250 at 13.) In so doing, Barco asserts, Yealink was able to paint itself as a good actor and neutralize Barco's claims of willful infringement and higher damages. (*Id.*) Barco says that Yealink should not be rewarded as it "misled" the jury, and should instead be held to the behavior it held out for itself—not reentering the market. (*Id.*)

Yealink responds that Barco fails to identify any hardship or injury it would suffer if the injunction it seeks is denied. (Dkt. No. 256 at 12-13.) Yealink stresses that it began selling the accused products before the asserted patents issued, and that it did not "build its business around the WPP[]" products. (*Id.*) Yealink further responds that Barco's claims regarding the timing and presentation to the jury of Yealink's withdrawal from the market, allegedly to neutralize willful infringement and lessen damages, have "no bearing on the balance-of-hardships inquiry." (*Id.*)

The Court finds that the balance of hardships between Barco and Yealink favors granting an injunction in this case. The manner in which Yealink positioned itself at trial—as having withdrawn from the market—seems likely to have impacted the jury's finding of Yealink's liability and damages. The jury heard Yealink's evidence that it both withdrew from the market and did

not consider the accused products important to its business model. (*See, e.g.,* Dkt. No. 250-2 at 625:6–14 ("[D]id Yealink act willfully with such bad faith to infringe Barco's patents? *[I]t . . . removed voluntarily and stopped selling the products* from the U.S. market. I think based on the evidence we have seen, I do not believe Barco has met the burden." (emphasis added)); *id.* at 459:8–13 ("The dongle is *just a small part to our* whole videoconference *solution* . . . ." (emphasis added)).) Upon being presented with this closing argument, the jury found that Yealink did not willfully infringe the asserted patents, and awarded $907,360 USD—a fraction of Barco's damages ask. (Dkt. No. 235 at 5-6.) Such posturing at trial weighs in favor of granting an injunction.

To deny Barco's requested injunction would indirectly reward Yealink's bait-and-switch[3] tactic, and would cause material hardship for Barco. Although speculative, the Court can readily see that Yealink might well have received a different verdict if it had represented it would continue to sell the accused products. The Court is equally convinced that Yealink would not have reversed the position it presented at trial—that it would not resume selling the infringing accused products—if the damages awarded had not made such economically inviting. *See Gen. Elec. Co. v. New England Elec. Mfg. Co.*, 128 F. 738, 740 (2d Cir. 1904) ("If the defendant be honest in his protestations an injunction will do him no harm; if he be dishonest the court should place a strong hand upon him in limine."). The Court also finds that Yealink will not face an undue hardship stemming from an injunction covering products it represented at trial were a "small" part of its business model. (Dkt. No. 250-2 at 459:8–13.)

Yealink's newly expressed intention to continue selling the accused products despite the jury's finding confirms Barco's prejudice. (*See, e.g.*, Dkt. No. 243.) The law is clear that an injunction may be granted even if Yealink had completely stopped selling the accused products.

[3] The "bait" was the representation that Yealink had stopped making and selling their infringing dongle. The "switch" came when the damages award made the prospect of renewed sales attractive from a economic/royalty rate perspective.

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281–82 (Fed. Cir. 1988), *abrogated on other grounds as recognized in Zoltek Corp. v. U.S.*, 672 F.3d 1309 (Fed. Cir. 2012) ("The fact that the defendant has stopped infringing is generally not a reason for denying an injunction against future infringement unless the evidence is very persuasive that further infringement will not take place."). This guidance favors granting an injunction. While Yealink now intends to resume selling the accused products, an injunction would still be proper even if Yealink had done what it told the jury it would do. *See id.*

**D. Public Interest**

The Court finds that the public interest would not be disserved by granting an injunction in this case, for much the same reasons as discussed above on the balance of hardships factor. Barco's primary contention on this factor is that the public would not be disserved if this Court were to enjoin Yealink from future infringement, given that Yealink voluntarily stopped its admitted infringement in advance of trial. (Dkt. No. 250 at 14-15.) Yealink responds that granting an injunction in this case would stifle competition and raise prices. (Dkt. No. 256 at 13-14.) Yealink also asserts that an injunction is not in the public interest where the asserted patents are currently subject to post-grant review proceedings before the United States Patent and Trademark Office ("USPTO"). (*See generally* Dkt. No. 274.)

The Court finds that permitting Yealink to resume selling the accused products—after it touted its withdrawal from the market and told the jury at trial that the accused products were not important to its business model—would disserve the public interest. (*See, e.g.,* Dkt. No. 250-2 at 625:6–14, 459:8–13.) While Yealink did not advance the position at trial that it would *never* resume selling the accused products, Yealink's behavior in this case could well encourage other litigants to pursue a similar bait and switch approach in the future. Denying this injunction could

be viewed as sanctioning Yealink's gamesmanship, which would undermine the public's interest in enforcing patent rights.

Yealink's remaining arguments are inapposite. Yealink cites no evidence that granting an injunction would stifle competition as to the accused products, nor does it cite any evidence that prices for these types of products would rise as a result of an injunction. (Dkt. No. 256 at 14.) Yealink's argument that the asserted patents are subject to review at the USPTO disregards the reality that it did not contest infringement of each and every one of the seventy-five patent claims asserted at trial. (Dkt. No. 250-2 at 413:13–16 ("Q. And you would agree that a peripheral device like the dongles that we've been talking about this week is required to meet all 75 of the asserted claims. Right? A. Yes.").)

**E. Barco Is Required to Post a Bond Pending Appeal**

Having found that Barco is entitled to injunctive relief, the Court next addresses whether Barco should give security for costs and damages that may be incurred by Yealink if it is later held that Yealink has been wrongfully enjoined or restrained. One such possible instance would arise if the asserted claims are ultimately invalidated by post-grant proceedings. The Court recognizes that security against such an event is not required when the Court issues a permanent injunction. *See* Federal Rule of Civil Procedure 65(c) (requiring security for a temporary restraining order and a preliminary injunction, but remaining silent on whether security is required or prohibited for a permanent injunction). However, the Court finds that security in the form of a bond is proper in this case, and that the Court is not prohibited from ordering one when sitting in equity. A final and non-appealable post-grant finding that renders the asserted claims unenforceable would mean that Yealink would have been "wrongfully enjoined or restrained" from selling the accused products

for the duration of the injunction. Security in the form of an appropriate bond mitigates such risk of harm.

Accordingly, the Court **ORDERS** that Barco shall post a bond, approved by the Court, in the amount of nine hundred seven thousand, three hundred sixty dollars and no cents ($907,360.00). The Court finds that this amount is appropriate "to pay the costs and damages sustained" by Yealink if for any reason it is later found that Yealink has been wrongfully enjoined or restrained, including if the asserted claims are found unenforceable in post-grant proceedings before the USPTO which are final and non-appealable. Federal Rule of Civil Procedure 65(c). The Court explains that this is the same amount as the damages awarded by the jury at trial. The Court finds that this amount is appropriate to compensate Yealink because it is what the jury found to be reasonable and fair compensation for Yealink's infringing activity over the course of approximately one year (between May 17, 2023, and April 25, 2024). The Court finds that the jury's award is a reasonable estimate for the volume of Yealink's sales impacted by the permanent injunction.

Such bond shall list Barco as principal and shall include as surety a corporate entity whose financial ratings and standing are, in the Court's eyes, adequate and appropriate to provide the intended security. Evidence of such bond shall be provided to the Court within forty-five (45) days of this date. Upon approval of the bond by subsequent order, Barco shall deliver the original to Yealink and file a copy thereof on the docket. The bond shall be conditioned solely upon a subsequent and final judicial finding of this Court or an appellate court in review of this Court that Yealink has been wrongfully enjoined or restrained by this injunction.

## IV. CONCLUSION

For the reasons stated herein, Barco's Motion for Permanent Injunction (Dkt. No. 250) is **GRANTED**. Yealink is **PERMANENTLY ENJOINED** from infringing the Asserted Patents, including by making, using, offering for sale, or selling the WPP20 or WPP30 dongle ("WPP") products, or any colorable imitations thereof, in the United States, or importing such products into the United States. The Court **ORDERS** Barco to post a bond in the amount of nine hundred seven thousand, three hundred sixty dollars and no cents ($907,360.00) under the terms and conditions set forth herein. This permanent injunction is effective immediately and shall remain in effect until further order of the Court.

Even though the Parties filed their briefing under seal, the Court sees no basis to seal this injunction. Immediate notice furthers the intended preclusive and injunctive effect hereof.

**So ORDERED and SIGNED this 27th day of August, 2026.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE